IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE GILLETTE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-1158-LPS-CJB |
| | ) | |
| DOLLAR SHAVE CLUB, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

**DOLLAR SHAVE CLUB, INC.'S ANSWER AND COUNTERCLAIMS**

Defendant Dollar Shave Club, Inc. ("DSC"), by and through its undersigned counsel, demands a trial by jury on all issues so triable, hereby answers the Complaint of The Gillette Company ("Gillette"), and sets forth its affirmative defenses and counterclaims as follows.

**I. ANSWER**

NATURE OF THE ACTION

1. DSC admits that Gillette alleges patent infringement under the patent laws of the United States, including 35 U.S.C. sections 271, *et seq.* DSC admits that Gillette purports to have attached as Exhibit A to its Complaint U.S. Patent No. 6,684,513 ("the '513 patent"). DSC admits that Gillette purports to seek injunctive relief and a recovery of monetary damages. Except as expressly admitted, DSC denies the remaining allegations in Paragraph 1 of the Complaint.

2. DSC admits that it markets and sells razor products under the names "The Humble Twin," "The 4X," and "The Executive." Except as expressly admitted, DSC denies the remaining allegations in Paragraph 2 of the Complaint.

## THE PARTIES

3. DSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 of the Complaint and, therefore, denies them.

4. DSC admits that it is incorporated in the State of Delaware. Except as expressly admitted, DSC denies the remaining allegations in Paragraph 4 of the Complaint.

## JURISDICTION AND VENUE

5. Paragraph 5 of the Complaint states a legal conclusion with respect to jurisdiction to which no response is required.

6. Paragraph 6 of the Complaint states a legal conclusion with respect to jurisdiction to which no response is required. DSC admits that it sells and offers for sale its razor products to customers located in this judicial district. Except as expressly admitted, DSC denies the remaining allegations in Paragraph 6 of the Complaint.

7. Paragraph 7 of the Complaint states a legal conclusion with respect to venue to which no response is required. DSC admits that it conducts business in this district but denies that this is a convenient forum for this litigation. Except as expressly admitted, DSC denies the remaining allegations in Paragraph 7 of the Complaint.

## FACTUAL BACKGROUND

8. DSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the Complaint and, therefore, denies them.

9. DSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 of the Complaint and, therefore, denies them.

10. DSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 of the Complaint and, therefore, denies them.

11. DSC admits that it launched its membership service in March 2012. Except as expressly admitted, DSC denies the remaining allegations in Paragraph 11 of the Complaint.

12. DSC admits that it sells razors, shaving butters, shaving creams, and repair serums online at www.dollarshaveclub.com. Except as expressly admitted, DSC denies the remaining allegations in Paragraph 12 of the Complaint.

13. Admitted.

14. DSC admits that its membership club has acquired over 2 million subscribers. Except as expressly admitted, DSC denies the remaining allegations in Paragraph 14 of the Complaint.

15. DSC admits that the '513 patent bears on its face February 3, 2004 as its issue date, and that the '513 patent indicates on its face "Razor Blade Technology" as its title. Except as expressly admitted, DSC denies the remaining allegations of Paragraph 15.

16. DSC admits that the Abstract of the '513 patent states: "A razor blade including a substrate with a cutting edge defined by a sharpened tip and adjacent facets, a layer of hard coating on the cutting edge, an overcoat layer of a chromium containing material on the layer of hard carbon coating, and an outer layer of polytetrafluoroethylene coating over the overcoat layer." Except as expressly admitted, DSC denies the remaining allegations in Paragraph 16 of the Complaint.

17. Denied.

18. DSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 of the Complaint and, therefore, denies them.

19. DSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of the Complaint and, therefore, denies them.

20. DSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the Complaint and, therefore, denies them.

21. DSC admits that it has sold, offered for sale in the United States and imported into the United States, razors. Except as expressly admitted, DSC denies the remaining allegations in Paragraph 21 of the Complaint.

22. Denied.

## COUNT I

23. DSC repeats and incorporates by reference the admissions and denials of Paragraphs 1-22 above as if fully set forth herein.

24. Denied.

25. Admitted.

26. Denied.

27. Denied.

28. Denied.

29. Denied.

## RESPONSE TO GILLETTE'S PRAYER FOR RELIEF

30. DSC denies that Gillette is entitled to any relief in this action, as requested or otherwise.

## II.  AFFIRMATIVE DEFENSES

31. DSC asserts the following Affirmative Defenses, without assuming the burden of proof or the burden of persuasion on any issue, whether in whole or in part, where such burden(s) would otherwise be borne by Gillette.

### FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

32. Count I of Gillette's Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

### (Non-Infringement)

33. DSC has not infringed, and currently does not infringe, directly, indirectly, contributorily, by inducement or under the doctrine of equivalents, any valid and enforceable claim of the '513 patent.

### THIRD AFFIRMATIVE DEFENSE

### (Invalidity)

34. The claims of the '513 patent are invalid for failure to satisfy one or more of the conditions for patentability specified in Title 35 of the United States Code, including without limitation sections 101, 102, 103, 112, and/or 116.

### FOURTH AFFIRMATIVE DEFENSE

### (Waiver, Acquiescence, and Estoppel)

35. The purported claim set forth in Gillette's Complaint is barred by the doctrines of waiver, acquiescence, and estoppel.

### FIFTH AFFIRMATIVE DEFENSE

### (Laches)

36. The '513 patent is unenforceable, in whole or in part, against DSC under the doctrine of laches.

## SIXTH AFFIRMATIVE DEFENSE

### (Prosecution History Estoppel)

37. The relief sought by Gillette as to the claims of the '513 patent is barred under the doctrine of prosecution history estoppel.

## SEVENTH AFFIRMATIVE DEFENSE

### (Limitation on Damages)

38. Gillette's claim for damages for alleged infringement is limited by 35 U.S.C. section 287. Gillette also cannot prove that this is an exceptional case under 35 U.S.C. section 285, and, consequently Gillette is not entitled to enhanced damages or attorneys' fees. Gillette is also barred by 35 U.S.C. section 288 from recovering costs associated with this action.

## EIGHTH AFFIRMATIVE DEFENSE

### (No Equitable Relief)

39. Gillette is not entitled to equitable relief, including but not limited to Gillette's request for injunctive relief, as it has an adequate remedy at law and cannot show that it has or will suffer any immediate or irreparable harm from DSC's actions.

## NINTH AFFIRMATIVE DEFENSE

### (No Lost Profits Recovery)

40. Gillette is not entitled to recover lost profits as a measure of damages because Gillette cannot prove that but for DSC's sales of the "Accused Products," Gillette would have made such sales.

## ADDITIONAL DEFENSES

41. DSC reserves the right to assert additional defenses based on information learned or obtained during discovery.

## III. COUNTERCLAIMS

42. Dollar Shave Club, Inc. ("DSC") hereby alleges the following Counterclaims against The Gillette Company ("Gillette"):

### THE PARTIES

43. Counterclaim Plaintiff DSC is a Delaware corporation with a place of business in Marina Del Rey, California.

44. On information and belief, Counterclaim Defendant Gillette is a Delaware corporation with a place of business in Boston, Massachusetts.

### JURISDICTION AND VENUE

45. DSC's Counterclaims arise under the United States Patent Act, 35 U.S.C. section 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. sections 2201 and 2202. The Court has subject matter jurisdiction over DSC's Counterclaims under 28 U.S.C. sections 1331 and 1338. This Court has personal jurisdiction over Gillette at least by virtue of Gillette's filing of the Complaint against DSC in this Court and Gillette's incorporation in Delaware. Venue is proper in this district under 28 U.S.C. sections 1391(c) and 1400(b).

### COUNT I
### DECLARATION OF NON-INFRINGEMENT

46. DSC repeats and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

47. On December 17, 2015, Gillette filed a Complaint alleging that DSC has infringed U.S. Patent No. 6,684,513 ("the '513 patent") by making, using, selling, and/or offering for sale within the United States, and/or by importing into the United States, "the Accused Products."

48. DSC has not infringed, contributed to the infringement of, or induced infringement of any valid and enforceable claim of the '513 patent. Every claim of the '513

patent requires three distinct layers. For example, Claim 1 requires: (i) "a *layer of hard coating* … being made of *amorphous material containing carbon*, [(ii)] an *overcoat layer of a chromium containing material* on said layer of hard coating, and [(iii)] an *outer layer of polytetrafluoroethylene [(PTFE)] coating* over said overcoat layer" (emphasis added). Indeed, to secure allowance of the '513 patent, the named inventors of the '513 patent argued that the prior art patents cited by the Examiner in the initial office action rejecting every claim of the '513 patent application were distinguishable: "Both references teach away from the invention in teaching that a PTFE layer should be deposited directly on the amorphous hard coat carbon layer, *which is the opposite of using a layer between them*" (emphasis added). The accused razors do not infringe any valid and enforceable claim of the '513 patent because, at minimum, the accused razors do not have an overcoat layer of chromium containing material between a layer of hard coating and an outer layer of PTFE as required by every claim of the '513 patent.

49. An actual controversy exists between DSC and Gillette regarding Gillette's allegations of infringement of the '513 patent.

50. Under 28 U.S.C. sections 2201 and 2202, DSC is entitled to a declaratory judgment that it has not infringed, contributed to the infringement of, or induced infringement of any valid and enforceable claim of the '513 patent.

## COUNT II
## DECLARATION OF INVALIDITY

51. DSC repeats and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

52. One or more of the claims of the '513 patent is invalid for failure to comply with 35 U.S.C. sections 101, 102, 103, 112, and/or 116. Razor blades with all of the elements of the

purported invention of the '513 patent were known in the art at least one year prior to February 29, 2000.

53. The named inventors, on the face of the '513 patent, acknowledge that the prior art disclosed all three of the features that Gillette now claims, in combination, are somehow novel and non-obvious: (1) a layer of hard coating made of amorphous material containing carbon ("[h]ard coatings such as diamond, amorphous diamond, diamond-like carbon (DLC) material, nitrides, carbides, oxides or ceramics are often used to improve strength, corrosion resistance and shaving ability, maintaining needed strength while permitting thinner edges with lower cutting forces to be used," '513 patent, Col. 1, ll. 9-14); (2) an interlayer of chromium containing material that improves binding between layers ("Interlayers of … chromium containing materials can aid in improving the binding between the substrate…and hard carbon coatings…." *Id.*, Col. 1, ll. 16-19); and (3) and an outer layer of polytetrafluoroethylene coating ("[p]olytetrafluoroethylene [PTFE] outer layer can be used to provide friction reduction," *id.*, Col. 1, ll. 14-15).

54. Indeed, razor blades with a steel substrate that forms and maintains a sharp cutting edge, coated with a layer of a chromium-containing material and an outer layer of polytetrafluoroethylene coating for comfort have been known since at least the 1960s. For example, U.S. Patent No. 3,402,468 (the "'468 patent"), which issued September 24, 1968, discloses an interlayer of chromium containing material between the substrate and an outer layer of polytetrafluoroethylene coating. '468 patent, Col. 1, ll. 9-26 (describing a "thin plating of chromium" applied to the base and "an adherent coating of the polytetrafluoroethylene" applied to the plating).

55.     Further, razor blades with a substrate with a cutting edge, a layer of hard coating made of amorphous material containing carbon, and an outer layer of polytetrafluoroethylene have been known since at least the 1970s.  For example, U.S. Patent No. 3,871,836 (the "'836 patent"), which issued March 18, 1975, discloses a razor blade with a substrate on which is deposited "a metal film which is at least 50% amorphous characterized in that the metal has the composition $M_aX_b$, where … X is at least one element selected from the group consisting of P, B, *C*, Si, Al, Sb, Sn, In, Ge, and Be" (Col. 6, ll. 25-41, emphasis added), as well as "thereafter coated with polytetrafluoroethylene" (Col. 5, ll. 35-38).

56.     Razor blades with a substrate with a cutting edge, a layer of hard coating made of amorphous material containing carbon, an overcoat layer of a chromium containing material on said layer of hard coating, and an outer layer of polytetrafluoroethylene – that is, the purported invention of the '513 patent – have been known since at least the 1990s.  In addition to art that anticipates the purported invention of the '513 patent, there is extensive art that, alone or in combination, renders obvious the purported invention of the '513 patent.  This art includes patents that were assigned to Gillette.  *See*, *e.g.*, U.S. Patent No. 3,638,308, U.S. Patent No. 3,652,342, U.S. Patent No. 5,048,191, and U.S. Patent No. 5,295,305**.**

57.     An actual controversy exists between DSC and Gillette regarding the validity of the '513 patent.

58.     Under 28 U.S.C. sections 2201 and 2202, DSC is entitled to a declaratory judgment that all, or at least some, of the claims of the '513 patent are invalid.

## EXCEPTIONAL CASE

59.     On information and belief, this is an exceptional case entitling DSC to an award of attorneys' fees incurred in connection with defending and prosecuting this action pursuant to 35 U.S.C. sections 285, as a result of, *inter alia*, Gillette's assertion of the '513 patent against

DSC with the knowledge that DSC does not infringe any valid or enforceable claim of the '513 patent and/or that the '513 patent is invalid or unenforceable.

## PRAYER FOR RELIEF

For these reasons, DSC respectfully prays for the following relief:

a. Declaratory judgment that DSC has not infringed, contributed to the infringement of, or induced infringement of any claim of the '513 patent;

b. Declaratory judgment that the claims of the '513 patent are invalid;

c. Judgment against Gillette dismissing the Complaint and denying with prejudice all relief requested in Gillette's Complaint and its prayer therein, such that Gillette takes nothing;

d. Judgment that this case is an exceptional case under 35 U.S.C. section 285 and/or other applicable laws;

e. Judgment awarding DSC its costs and attorneys' fees; and

f. Judgment awarding DSC such other relief the Court deems just, equitable, and proper.

\* \* \*

## JURY DEMAND

DSC demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ John W. Shaw*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE
19801 (302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
*Attorneys for Defendant*

OF COUNSEL:
Charles K. Verhoeven
Terry L. Wit
Morgan W. Tovey
James D. Judah
QUINN EMANUEL URQUHART &
 SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600

Dated: February 16, 2016