## Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347

———

(302) 658-9200
(302) 658-3989 FAX

**Rodger D. Smith II**
(302) 351-9205
(302) 498-6209 FAX
rsmith@mnat.com

Origianl Filing Date: October 19, 2016
Redacted Filing Date: October 26, 2016

The Honorable Leonard P. Stark
United States District Court
  for the District of Delaware
844 North King Street
Wilmington, DE  19801

REDACTED -
PUBLIC VERSION

Re:   *The Gillette Company* v. *Dollar Shave Club, Inc.*, C.A. No. 15-1158 (LPS) (CJB)

Dear Chief Judge Stark:

Pursuant to the Court's October 17, 2016 Order, The Gillette Company ("Gillette") hereby submits this letter regarding Dollar Shave Club, Inc.'s ("DSC") refusal to produce its core technical documents, as well as documents relating to razors that have been in development or considered for commercialization.

A.   **DSC's Failure to Disclose Core Technical Documents**

Gillette's '513 Patent is directed to a razor blade, and methods of making the same, wherein the razor blade includes a layer of hard coating on the cutting edge being made of amorphous material containing carbon, an overcoat layer of a chromium containing material on the layer of hard coating, and an outer layer of polytetrafluoroethylene coating over the overcoat layer.  Thus, the processes by which the claimed coatings are applied, and the composition of the coatings applied to the accused razor blade products at issue, are central to this case.

Under ¶ 7(b) of the Court's Scheduling Order (D.I. 20), and pursuant to Section 4(b) of Delaware's Default Standard for Discovery, DSC was required to produce by June 24, 2016 "the core technical documents related to the accused products(s)."  DSC's production should have included "operation manuals, product literature, schematics, and specifications."  *Id*.[1]

DSC produced a total of 69 pages of supposed "core technical documents." Ex. A.  However, the documents that DSC produced are insufficient to determine processes by which the coatings are applied, or the composition of the coatings applied, to the accused razor

---

[1]   Such documents are also responsive to Gillette's Requests for Production Nos. 1-17, 20 and 26, but DSC refuses to produce them.  *See* Ex. D.

The Honorable Leonard P. Stark
October 19, 2016
Page 2

blade products. For example, manufacturing process specifications and specifications showing the coatings used on DSC's blades are absent from the production.

DSC contends that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that it does not possess or control access to copies of such documents. *See* D.I. 16 at 3; Ex. D at 3, 9, and Third Supp. Resp. to RFPs 1-17, 20, 26. In this Circuit, however, "control" includes the "legal or practical ability to obtain information" from another. *See, e.g.*, *Sanofi-Aventis v. Sandoz, Inc.*, 272 F.R.D. 391, 395 (D.N.J. 2011). "Direct, legal control over the related entity is not required." *Id*. Rather, "control" is broadly defined to include instances "when the litigating corporation either can secure documents from the related entity to meet its business needs or acted with it in the transaction that gave rise to the suit." *Id*. at 394-95 (collecting authority). Here, both grounds of the control analysis apply – DSC can "secure documents from ▮▮▮▮ to meet its business needs" and DSC "acted with ▮▮▮▮ in the transaction that gave rise to the suit."



Such information is available to DSC to meet its business needs and includes the technical documentation described in the Scheduling Order and in the Default Standard as "core technical documents." ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Moreover, DSC and ▮▮▮▮ acted together "in the transaction that gave rise to the suit" – the infringement of Gillette's '513 Patent through the making, using, importing for sale, offering for sale and selling of the accused infringing razors.

Thus, DSC has "control" over the requested documents because it can both "secure documents from ▮▮▮▮ to meet its business needs" and "acted with ▮▮▮▮ in the transaction that gave rise to the suit."

**B.    DSC's Refusal to Produce Documents Related to Other Contemplated Products**

Gillette served its first set of discovery request on March 24, 2016. Ex. C. In those requests, Gillette defined the term "DSC Products" and "Accused Products" to mean "shavers, razors, shaving systems, razor blades, or tools, devices or other instruments with a sharp edge or blade or combination of sharp edges or blades used to cut, trim, shave or remove hair from the face or body of a person, components thereof and methods or processes for manufacturing thereof manufactured, used, imported, offered for sale, or sold by or on behalf of DSC including, without limitation, for example, The Humble Twin, The 4X and The Executive."

The Honorable Leonard P. Stark
October 19, 2016
Page 3

*See id.* at 6, ¶ 21. In each of its responses, DSC agreed to produce only documents related to The Humble Twin, The 4X and The Executive razors, notwithstanding that the requests were not so limited. Ex. D. DSC contends that Gillette is not entitled to discovery of such products because they were not identified in the original Complaint.[2] DSC recognized that Gillette is entitled to discovery into products that are no longer in the market, ████████████████████████ ████████████████████████████████████████ DSC has agreed to produce documents related to any past DSC products. Ex. E. But DSC is refusing to produce documents related to razor products that it has considering importing, distributing, offering to sell and selling. *Id*.

Gillette is entitled to discovery of all products that DSC is making, using, selling, offering to sell and importing that have similar structures to the accused products, and to all such products that DSC has contemplated making, using, selling, offering to sell and importing during the pendency of this litigation, even though such products were not identified in Gillette's original Complaint. Such information is relevant to Gillette's infringement claims. *See, e.g., Invensas Corp. v. Renesas Elec. Corp.*, 287 F.R.D. 273, 281-82 (D. Del. 2012); *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, 2011 WL 4738110, at *1, *5 (M.D. Pa. Oct. 6, 2011) (permitting discovery concerning "unaccused" products because plaintiff reasonably requires information that only defendant can provide to facilitate infringement analysis and to identify scope of infringement as part of damages analysis).

## CONCLUSION

Gillette respectfully requests that this Court order DSC to produce core technical documents to provide sufficient technical detail as to the manufacturing processes used and coatings applied to the cutting edges of the accused DSC Products; and documents related to any products that DSC has contemplated making, using, selling, offering to sell and/or importing during the pendency of this litigation.

Respectfully,

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)

RDS/bac
Enclosures

cc: Clerk of the Court (by hand delivery; w/enclosures)
All Counsel of Record (via email; w/enclosures)

---

[2] Gillette's original Complaint identifies DSC's Humble Twin, 4X and Executive razors as infringing because those products were the only ones in the market and available for purchase in December, 2015, when the Complaint was filed. However, Gillette's Amended Complaint accuses Defendants' two, three, four and six-bladed razor products, including but not limited to The Humble Twin, The 4X and The Executive, and cartridges thereto of infringing the '513 Patent. D.I. 98, ¶ 2.