IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE GILLETTE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-1158-LPS-CJB |
| | ) | |
| DOLLAR SHAVE CLUB, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **LETTER TO THE HONORABLE LEONARD P. STARK FROM DAVID M. FRY**

OF COUNSEL:
Charles K. Verhoeven
Terry L. Wit
Kevin A. Smith
Morgan W. Tovey
James D. Judah
John McCauley
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600

F. Christopher Mizzo
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, DC  20005
202-879-5000

Dated: October 21, 2016

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
David M. Fry (No. 5486)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
dfry@shawkeller.com
*Attorneys for Defendant Dollar Shave Club, Inc.*



David M. Fry
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0705
dfry@shawkeller.com

October 21, 2016

**BY CM/ECF AND HAND DELIVERY**
The Honorable Leonard P. Stark
U.S. District Court for the District of Delaware
844 N. King Street
Wilmington, DE 19801



Re: *The Gillette Co. v. Dollar Shave Club, Inc.*, C.A. No. 15-1158-LPS-CJB

Dear Chief Judge Stark:

I write on behalf of Defendant Dollar Shave Club, Inc. ("DSC") in response to Plaintiff The Gillette Company's ("Gillette") request to compel (1) production of technical documents ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and (2) production of documents related commercialized future products. Both of Gillette's requests should be denied.

### I. The "Core Technical Documents" Sought by Gillette Are Outside of DSC's Possession, Custody, or Control

If a party requests documents that are "in the physical possession of another corporation, the litigating corporation has no duty to produce" the documents unless the requesting party can establish that the litigating party has control over them. *Gerling Int'l Ins. Co. v. Comm'r of Internal Revenue*, 839 F.2d 131, 140 (3d Cir. 1988). "[D]ocuments are in the 'control' of a litigating party if that party has the ''legal right to obtain the documents required on demand'' from the non-party corporation." *Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*, --- F.R.D. ---, C.A. No. 12-1461-LPS-CJB, 2016 WL 4568315, at *1 (D. Del. Aug. 31, 2016) (citations omitted). "In the case of two *independent* corporate entities, . . . production of documents would only occur when the respective business operations of each independent entity are 'so intertwined as to render meaningless' their distinct corporate entities." *Inline Connection Corp. v. AOL Time Warner Inc.*, C.A. No. 02-272-MPT, 02-477-MPT, 2006 WL 3864586, at *2 (D. Del. Oct. 5, 2006) (quoting *Novartis Pharm. Corp. v. Eon Labs. Mfg., Inc.*, 206 F.R.D. 392, 395 (D. Del. 2002)) (emphasis original). "The party seeking production of documents bears the burden of establishing the opposing party's control over those documents." *Princeton Digital*, 2016 WL 4568315, at *1.

Gillette has come nowhere close to establishing that DSC has legal control over the technical documents ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ***First***, Gillette has not alleged any corporate relationship between DSC ▓▓▓▓▓▓▓ (there is none), and it has not cited a single case in which a court has ordered a party to produce technical documents from ▓▓▓▓▓▓▓▓▓▓▓▓▓. *See Sanofi-Aventis v. Sandoz, Inc.*, 272 F.R.D. 391, 394-95 (D.N.J. 2011) (Gillette's only cited case, which addresses the obligation of a defendant to investigate "knowledge from a corporate affiliate" and exclusively relies upon cases involving related corporate entities).

***Second***, Gillette misstates the law. The standard applied in the Third Circuit is whether DSC has the **legal right** to obtain the documents on demand, not whether it has the practical ability to request certain documents ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Inline*, 2006 WL 3864586, at *1-2 (rejecting the argument "that the Third Circuit has accepted the 'practical ability' approach towards document production in the context of Rule 34(a)," particularly in cases involving "two independent

corporations who conduct business at arms length") (citing *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143, 146 (D. Del. 2005)); *id.* at *4 ("a contract provision which merely authorizes the party litigant's access to information that is in the possession of a non-party, without more, is insufficient to establish legal control in the Third Circuit").

  ***Third***, even if Gillette were applying the correct legal standard, none of the cited provisions ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (D.I. 148, Ex. B) suggest that DSC has the practical ability—much less the legal right—to obtain documents ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. For example, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Similarly, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ If this were sufficient to establish "legal control" over ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ then the "possession, custody, or control" standard would be meaningless. Parties would be required to obtain and produce responsive documents from virtually any company with which they have a contractual relationship.

  Judge Burke recently rejected a nearly identical argument in *Princeton Digital Image Corp. v. Konami Digital Entertainment Inc.*[2] There, the plaintiff sought the production of "core technical documents regarding certain accused products . . . that [were] in the possession of" the defendant's Japanese sister company, which developed the accused products distributed by the defendant in the United States. 2016 WL 4568315, at *1. The plaintiff argued that the defendant had control over these documents because it "'acted with its [foreign affiliate] in effecting the transaction giving rise to suit and is litigating on its behalf.'" *Id.* at *2 (quoting *Gerling*, 839 F.2d at 141).

  In rejecting this argument, Judge Burke found that the plaintiff "pointed to very little evidence with regard to the relationship between" the defendant and its foreign affiliate. *Id.* Although the foreign company "developed the accused products[,]" the plaintiff provided no evidence that the affiliate "benefit[ed] financially from [the defendant's] U.S.-based use or sale of the accused [products]" or that the affiliate's "employees have some other role in the U.S.-based acts that give rise to the patent infringement claims" against the defendant in the United States. *Id.* at *4. Likewise, the plaintiff offered no evidence that the foreign affiliate was "directing the course of [the] litigation or making important strategic decisions in the matter for [the defendant]." *Id.* The plaintiff's only evidence of control was the fact that the defendant had "asked for and obtained source code from [its foreign affiliate] relevant to [the] litigation." *Id.* at *3.

  As in *Princeton Digital*, all Gillette has shown is that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Although Gillette argues that ▇▇▇▇▇▇ it points to no evidence of ▇▇▇▇ "employees directing the course of [the] litigation or making important strategic decisions in the matter for [DSC]." *Id.* at *4. Nor does Gillette provide any support for its allegation that DSC has selectively obtained documents ▇▇▇▇▇▇▇▇ to support its defenses. "To find sufficient control here, the Court



---

[1] Exhibit F to Gillette's letter is a prime example of this type of ▇▇▇▇▇▇▇▇▇▇▇▇▇ which says nothing about the details of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

[2] *Princeton Digital* was decided just two months ago and is directly on point (indeed, it is the only decision that addresses the meaning of "control" in the context of the Default Standard). Although this decision is not binding, Gillette's failure to address it—let alone distinguish it—is surprising.

would need to engage in a healthy amount of speculation as to ▬▬▬ relationship with [DSC] and as to its role in this case. Rule 34(a) does not sanction such a path." *Id.* at *6.

DSC has produced the core technical documents in its possession, custody, or control, and nothing precludes Gillette from seeking documents ▬▬▬ through proper channels. *See id.* at *7 n.10 (the plaintiff "could have (but did not) seek discovery from [the foreign affiliate] pursuant to the processes of the Hague Convention"). But Gillette should not be allowed to circumvent those channels by forcing DSC to obtain and produce documents that are outside of its control.[3]

## II. DSC Should Not Be Forced to Disclose Competitively Sensitive Information About Non-Commercialized Future Products to a Direct Competitor

As Gillette acknowledges, DSC has already agreed to produce documents related to any razor product it has made, used, sold, offered for sale, or imported. D.I. 148 at 3. Thus, the only issue for the Court is whether DSC should be required to produce documents related to "contemplated" future products. *Id.*

Rules 34 and 26(b) make clear that discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 34 (limiting production to "within the scope of Rule 26(b)"). Yet Gillette does not explain what bearing DSC's non-commercialized future products, if any, could have on any party's claims or defenses. Rather, Gillette merely states that "[s]uch information is relevant to Gillette's infringement claims." D.I. 148 at 3. But that cannot be because non-commercialized future products are irrelevant to Gillette's infringement claims. For this reason, courts have rejected requests such as Gillette's. *See Fenster Family Patent Holdings, Inc. v. Siemens Med. Solutions USA, Inc.*, C.A. No. 04-038-JJF, 2005 WL 2304190, at *6 (D. Del. Sept. 20, 2005) (denying request for discovery about a product that was "still in the stages of research and development"); *see also EPOS Techs., Ltd. v. Pegasus Techs., Ltd.*, 842 F. Supp. 2d 31, 34 (D.D.C. 2012) (denying request for discovery about "products in development" because Rule 26(b) "is not so broad as to require the discovery of products that do not yet exist in final form").

The two cases cited by Gillette are inapt. Both involved parties seeking discovery on *existing* products that were not identified in the complaint—not non-commercialized future products. *Invensas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273, 275 (D. Del. 2012) (requests sought information on products "made, used, sold, or offered for sale in the United States, or imported into the United States"); *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, C.A. No. 1:09-CV-1685, 2011 WL 4738110, at *1 (M.D. Pa. Oct. 6, 2011) (interrogatories sought the "identification of the raw materials used to manufacture" the defendant's products).

Given the lack of relevance, DSC respectfully requests that the Court deny Gillette's request to compel discovery on non-commercialized future products.

---

[3] Gillette is also seeking discovery that it would not be allowed to obtain ▬▬▬ ▬▬▬ *See* D.I. 35, 51. Thus, Gillette's request is premature, and it should at least be denied until the Court rules on DSC's Motion to Stay Pending Arbitration (D.I. 34).

SHAW KELLER LLP

The Honorable Leonard P. Stark
Page 4

                                                  Respectfully,

                                                  */s/ David M. Fry*

                                                  David M. Fry (No. 5486)

cc:    Clerk of the Court (by hand delivery)
        Counsel of Record (by CM/ECF)