IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE GILLETTE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DOLLAR SHAVE CLUB, INC., DORCO )<br>COMPANY LTD. and PACE SHAVE, INC., )<br>)<br>Defendants. ) | C.A. No. 15-1158 (LPS) |

**PLAINTIFF THE GILLETTE COMPANY'S SECOND NOTICE OF DEPOSITION OF DEFENDANT DOLLAR SHAVE CLUB, INC.
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)**

Please take notice that, beginning at 9:00 am on May 1, 2017, at the offices of Morris Nichols Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, Wilmington, DE 19899, and continuing day to day thereafter, the Plaintiff The Gillette Company ("Gillette"), by its counsel, will take the oral deposition of Defendant Dollar Shave Club, Inc. ("DSC") by stenographic and videotape means, pursuant to Rule 30(b)(6) and other applicable provisions of the Federal Rules of Civil Procedure, before a duly certified court reporter authorized by law to administer oaths.

Pursuant to Rule 30(b)(6), DSC is directed to designate one or more officers, directors, managing agents, or other person(s) who consent to testify upon its behalf and who have knowledge of and are adequately prepared to testify concerning the topics listed in the attached schedule designated as Exhibit A to this notice. Gillette requests that prior to the commencement of the deposition, DSC supply a written designation of the person(s) who will testify on its behalf and an indication of the topic(s) for which each such person is designated.

You are invited to attend and cross-examine.

|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|---|---|
|  | */s/ Michael J. Flynn* |
|  | _____ |
| OF COUNSEL: | Jack B. Blumenfeld (#1014) |
|  | Rodger D. Smith II (#3778) |
| Mark J. Abate | Michael J. Flynn (#5333) |
| Jeffrey A. Simes | 1201 North Market Street |
| Alexandra D. Valenti | P.O. Box 1347 |
| Steven J. Bernstein | Wilmington, DE  19899 |
| Tyler Doh | (302) 658-9200 |
| GOODWIN PROCTER LLP | jblumenfeld@mnat.com |
| The New York Times Building | rsmith@mnat.com |
| 620 Eighth Avenue | mflynn@mnat.com |
| New York, NY  10018 |  |
| (212) 813-8800 | *Attorneys for Plaintiff* |

Jennifer A. Albert
Charles T. Cox
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC  20001
(202) 346-4000

Elaine Herrmann Blais
Kevin J. DeJong
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA  02210
(617) 570-1205

April 13, 2017

## Exhibit A

## Definitions

1. The terms "you," "your," and "DSC" refers to Dollar Shave Club, Inc., and includes DSC's parents, subsidiaries, affiliates, successors and assigns, and all of their officers, directors, shareholders, employees, agents, attorneys and representatives. The group of persons falling under this definition and to which discovery requests shall apply includes those persons falling under this definition in the past, present and during and throughout this lawsuit going into the future.

2. The term "Dorco" refers to Dorco Company, Ltd., including parents, subsidiaries, affiliates, successors and assigns, and their officers, directors, shareholders, employees, agents, attorneys and representatives. The group of persons falling under this definition and to which discovery requests shall apply includes those persons falling under this definition in the past, present and during and throughout this lawsuit going into the future.

3. The term "Pace Shave" refers to Pace Shave, Inc., and includes Pace Shave's parents, subsidiaries, affiliates, successors and assigns, and all of their officers, directors, shareholders, employees, agents, attorneys and representatives. The group of persons falling under this definition and to which discovery requests shall apply includes those persons falling under this definition in the past, present and during and throughout this lawsuit going into the future.

4. The term "the '513 patent" refers to U.S. Patent No. 6,684,513, including the application from which the '513 patent issued, and its entire prosecution history.

5. The term "Accused Products" refers to the instrumentalities, products, systems, or technologies identified in Gillette's most recent initial claim charts pursuant to Paragraph 4(c) of

the Delaware Default Standard for Discovery, served on DSC in this case, incorporated by reference herein, and those having substantially similar functionalities.

6. The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun so used, and vice versa; the use of the masculine form of a pronoun shall be considered to include within its meaning the feminine form of the pronoun so used, and vice versa; and the use of any tense of any verb shall be considered to include within its meaning all other tenses of the verb so used.

7. The word "document" is used herein in its broadest sense to mean every document or other record of any kind to the broadest extent permitted under the Federal Rules of Civil Procedure, including, without limitation, any written, printed, typed, recorded, filmed, or graphic matter, however produced or reproduced, and any original, master, duplicate, paper copy or electronic copy. "Document(s)" shall further include all aural, visual records or representations (including, without limitation, photographs, negatives and prints), microfiche, microfilm, film, videotape, sound recordings, and motion pictures and computer, electronic, optical, mechanical or electric records, or representations of any kind (including, without limitation, tapes, cassettes, discs, recordings, programs, etc.). "Document(s)" shall also include, without limitation, any record of all or any portions of any discussion, communication, agreement, conversation, interview, meeting, conference, conclusion, fact, impression, occurrence, opinion, report, or other similar matter, and also shall include, without limitation, all correspondence, papers, e-mail, cablegrams, mailgrams, telegrams, notes, memoranda, summaries, abstracts, worksheets, books, manuals, publications, brochures, welcome aboard kits, web pages, card statements, card designs, engineering reports and notebooks, plats, charts, plans, diagrams, sketches or drawings, photographs, reports and/or summaries of investigations and/or

surveys, opinions and reports of appraisers or consultants, projections, corporate records, minutes of board of directors or committee meetings, desk calendars, appointment books, diaries, diary entries and notes, newspapers, magazines, periodical articles, transport documents, shipping information, bills of lading, or customs declarations and any other record of any kind.

8. The word "thing" is used herein in its broadest sense to mean each item, sample, specimen, concrete, or tangible object.

9. "Discussion" means an assembly, congregation, encounter, exchange, meeting, or conversation between or among two or more individuals for any purpose, whether or not planned, arranged, or scheduled in advance. "Discussion(s)" include, without limitation, all oral communications, whether or not in person, by telephone, email, or otherwise, between two or more individuals.

10. "Communication" means any discussion or any written or electronic correspondence, of any kind.

11. "Disclosure" means an act or instance of communicating information, including written, oral, or electronic communication. "Disclosures" include, without limitation, all oral, written, or electronic communications, whether or not in person, by telephone, computer, Internet or otherwise, between two or more individuals.

12. "Person" means any natural person, group of natural persons, a partnership of any kind, a corporation, company, or any business, legal or governmental entity or association including the parties, and the "acts" of a person shall include the acts of the natural persons or directors, officers, employees, agents, representatives, consultants, and attorneys acting on the person's behalf.

13. "Individual" means a human being unless the individual cannot be identified by name. In such case, "individual" shall mean the entity with which such individual was or is employed, engaged, or associated. "Individual" includes, without limitation, employees and representatives including but not limited to agents.

14. "Employee" means any director, trustee, officer, manager, supervisor, employee, or servant of the designated entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

15. "Representative" means any consultant, expert, attorney, contractor, agent or other individual or entity engaged by the designated entity to perform some tasks or assignment for the entity.

16. "Entity" means any corporation, company, partnership, proprietorship, joint venture, or business, as well as any governmental unit (*e.g.*, governmental unit at any level, including but not limited to city, county, state, federal, etc.).

17. "Concerning," "relate," "related," or "relating" means relevant to, relating to, connected with, commenting on, regarding, showing, constituting, comprising, evidencing, reflecting, respecting, discussing, referring, pertaining, stating, describing, recording, noting, considering, embodying, evaluating, analyzing, mentioning, containing, or studying, or any other term synonymous with or similar to the foregoing.

18. "State" and "describe" mean to set forth a complete and detailed statement of all information, circumstances, and facts that refer to, relate to, pertain, reflect, comprise, or bear upon the matter concerning which information is requested.

19. The terms "identify" and "identification," when used in reference to an individual person mean to state, in whole or in part, to the fullest extent of the knowledge of the respondent,

4

that individual's full name, residence and business telephone numbers, and present residence and business addresses, e-mail address, if known, and the present or last know title, position, and business affiliation. To the extent such specific information is not known, but other contact information, such as e-mail or post office address, is known, such information shall be provided.

20. The terms "identify" and "identification" when used in reference to a person other than a natural person mean to state the full and official name of the business entity, its principal place of business (or, if such is unknown, the address of a business office), and the main telephone number of such business entity.

21. The terms "identify" and "identification" when used in reference to a document mean to state its date, type (e.g., memo, telecopy), and its author(s), addressee(s), persons or entities who received a copy, title, if any, and, if no title, a brief description of the subject matter of the document and its present or last known location and custodian. If any document once was, but is no longer, in DSC's possession, custody, or control, state what disposition was made of it and the reasons for such disposition.

22. The terms "identify" and "identification" when used in reference to any act, activity, practice, policy, effort, event, transaction, negotiation, discussion, conversation, occasion, occurrence, meeting, representation, agreement, or communication, mean to: (a) describe the nature and substance of the act, activity, practice, policy, effort, event, transaction, negotiation, discussion, conversation, occasion, occurrence, meeting, representation, agreement, or communication; (b) state the date when and place where it occurred; (c) identify each person who was a participant therein; (d) identify each other person who was a witness thereto; and (e) state the amount of money, if any, paid to or from DSC in connection with the act, activity,

5

practice, policy, effort, event, transaction, negotiation, discussion, conversation, occasion, occurrence, meeting, representation, agreement, or communication.

23. "Prior art" encompasses by way of example, and without limitation, the subject matter described in each and every subdivision of 35 U.S.C. § 102 and 35 U.S.C. § 103, however embodied, including without limitation writings, articles, publications, patents, patent applications, knowledge, or other evidence of use, knowledge or other evidence of sale or offer for sale, and knowledge or other evidence of prior invention and reduction to practice without suppression or concealment.

24. "License" and "licensing" include any proposal, offer, terms, term sheet, counteroffer, counterproposal, acceptance, agreement, covenant, promise or settlement, or agreement with respect to any intellectual property, including but not limited to inventions, patents, trade secret, copyright, regardless of whether or not it is a covenant not to sue or a license in or under the intellectual property, and regardless of whether it is exclusive or non-exclusive or subject to other limitations or restrictions.

### Topics for 30(b)(6) Deposition of DSC

1. Any comments received by DSC from another relating to the Accused Products, including complaints, praise, or suggestions regarding the Accused Products.

2. The availability of alternatives to the Accused Products, differences between those alternatives and the Accused Products and any studies on the desirability of the alternatives.

3. For each Accused Product, the date it was developed and first implemented, and first commercially offered for sale, as well as the dates of any modifications to such Accused Product and the nature of each such modification.

6

4. For each Accused Product, any planned or contemplated changes or modifications.

5. DSC's competition with Gillette in the market for razor blades and razor blade systems.

6. Any alleged hardship to DSC should the Accused Products be found to infringe at least one claim of the '513 patent and the Court enjoin from continuing its infringing activities.

7. DSC's contacts with Gillette's customers.

8. Any analyses or comparisons between the Accused Products and Gillette's products.

9. The steps DSC undertook to locate, review and produce responsive documents which were generated or maintained as electronic data (including on backup tapes) in the usual course of business, including the steps undertaken to produce responsive email.

10. DSC's search for documents and things in response to Gillette's document requests, including the files and documents searched (including the files and documents of DSC), methods, procedures, search requests and/or document retention policies used by DSC to comply with Gillette's document request.

11. The lifecycle, retention and churn associated with memberships in the Dollar Shave Club.

12. Costs associated with the acquisition of a new member in the Dollar Shave Club.

13. The features of each DSC membership plan and the number of unique members for each membership plan type over time.

7

14. Activities by DSC directed toward raising capital, including private placement memos, pitch materials, market analyses, market studies, presentations and communications with bankers, banks, creditors, venture capitalists, angel investors and any other potential inventors.

15. DSC's seed funding, DSC's valuation capitalization, financials, shareholders, investors or equity stakeholders.

16. DSC's Series A, Series B, Series C or Series D funding.

17. Communications with Kirsten Green, Alex Farmer, Woody Marshall, Rick Prostko, Daniel Gillespe, Mike Jung, Pat Robertson, Shevin Pishevar, Dennis Phelps, David Hornig, Kleiner Perkins Caulfield & Byers, Forerunner Ventures, Venrock, Felicis Ventures, David Pakman, Andreesen Horowitz, Shasta Ventures, Comcast Ventures, New World Ventures, Battery Ventures, Technology Crossover Ventures, TCV, Pritzker Group, Cowboys Ventures, Rustic Canyon Partners, White Star Capital, Safa Partners and/or Dragoneer and relating to the manufacturing, supply, marketing, distribution, sales or importation of the Accused Products, the market for the Accused Products, DSC's competitors in the market for the Accused Products, DSC's actual or projected subscribers or members, sales, revenues, costs or margins, or DSC's valuation, capitalization, financials, investors, shareholders or equity stakeholders.

18. Communications with technology or business incubators and persons employed by or associated with technology or business incubators.

19. Communications with Science, Inc. and persons employed by or associated with Science, Inc. including Mike Jones.

20. The acquisition of DSC by Unilever.

21. Communications with Unilever relating to the manufacturing, supply, marketing, distribution or sales of the Accused Products, the quality or performance of the Accused

8

Products, the market for the Accused Products, DSC's share in the market for the Accused Products, DSC's actual or projected subscribers or members, sales, revenues, costs or margins, or DSC's valuation, capitalization, financials, investors, shareholder or equity stakeholders.

22. Negotiations with Unilever concerning its acquisition of DSC including negotiations relating to financial and operational aspects of the acquisition and market opportunities created by the acquisition of DSC.

23. DSC Operating Plans including final versions of those Operating Plans (*see* draft at DSC 050070) for all years those Operating Plans were prepared.

24. Milestones and events in DSC's corporate history (*see, e.g.*, DSC 061673).

25. Customer support services, including LiveChat and FAQs.

26. Strategies and technologies used to sell products other than the Accused Products along with Accused Products.

27. DSC's agreement and relationship with Karma Science, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 13, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on April 13, 2017, upon the following in the manner indicated:

| | |
|---|---|
| John W. Shaw, Esquire<br>Karen E. Keller, Esquire<br>Andrew E. Russell, Esquire<br>SHAW KELLER LLP<br>300 Delaware Avenue, Suite 1120<br>Wilmington, DE 19801<br>*Attorneys for Defendants* | *VIA ELECTRONIC MAIL* |
| Charles K. Verhoeven, Esquire<br>Terry L. Wit, Esquire<br>Morgan W. Tovey, Esquire<br>James D. Judah, Esquire<br>Kevin Smith, Esquire<br>John McCauley, Esquire<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>50 California Street, 22nd Floor<br>San Francisco, CA 94111<br>*Attorneys for Defendants* | *VIA ELECTRONIC MAIL* |
| F. Christopher Mizzo<br>Helena D. Kiepura, Esquire<br>KIRKLAND & ELLIS LLP<br>655 Fifteenth Street, N.W.<br>Washington, DC 20005<br>*Attorneys for Defendants* | *VIA ELECTRONIC MAIL* |
| Bao Nguyen, Esquire<br>KIRKLAND & ELLIS LLP<br>555 California Street<br>San Francisco, CA 94104<br>*Attorneys for Defendants* | *VIA ELECTRONIC MAIL* |

2

Gegory S. Arovas                                                   *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendants*

                                                          */s/ Michael J. Flynn*

                                                          Michael J. Flynn (#5333)