IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE GILLETTE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-1158 (LPS) |
| | ) | |
| DOLLAR SHAVE CLUB, INC., DORCO | ) | REDACTED - |
| COMPANY LTD. and PACE SHAVE, INC., | ) | PUBLIC VERSION |
| | ) | |
| Defendants. | ) | |

**LETTER TO THE HONORABLE LEONARD P. STARK FROM RODGER D. SMITH II
REGARDING MOTION TO COMPEL DISCOVERY FROM DORCO COMPANY LTD.
AND TO AMEND THE SCHEDULING ORDER**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)

OF COUNSEL:                           Michael J. Flynn (#5333)
                                      1201 North Market Street
Mark J. Abate                         P.O. Box 1347
Steven J. Bernstein                   Wilmington, DE  19899
Alexandra D. Valenti                  (302) 658-9200
Tyler Doh                             jblumenfeld@mnat.com
GOODWIN PROCTER LLP                   rsmith@mnat.com
The New York Times Building           mflynn@mnat.com
620 Eighth Avenue
New York, NY  10018                   *Attorneys for Plaintiff*
(212) 813-8800

Jennifer A. Albert
Charles T. Cox
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC  20001
(202) 346-4000

Elaine Herrmann Blais
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA  02210
(617) 570-1205

Original Filing Date: May 22, 2017
Redacted Filing Date: May 30, 2017

Dear Chief Judge Stark:

       The Gillette Company submits this letter regarding Dorco Company Ltd.'s core technical documents and the deposition hours limitation in the Scheduling Order.  *See* D.I. 373.

**A.**      **Dorco's Failure to Produce Core Technical Documents**

       Gillette's '513 Patent is directed to a razor blade having certain coatings and methods of making the same.  The independent claims recite a layer of hard coating on the cutting edge being made of amorphous material containing carbon, an overcoat layer of a chromium containing material on the hard coating layer, and an outer layer of PTFE over the overcoat layer.  The dependent claims specify a diamond-like carbon hard coating, thicknesses of the layers and various process conditions (*e.g.* claims 2, 10, 15-17, 25-27).  Thus, the compositions of the coatings in Defendants' razor blades, the thicknesses of those coatings and the processes by which those coatings are applied are central to this case.  Defendants, however, have utterly failed to produce product specifications detailing the compositions or thicknesses of their blade coatings and manufacturing specifications describing the processes used to apply those coatings.

       Gillette has been waiting over a year to obtain this discovery.  Defendants filed two motions to stay discovery (D.I. 16, 61) and three motions to stay the case (D.I. 34, 35, 101, 102, 279).  Those motions were denied but that has not prevented Defendants' continuing refusal to produce relevant discovery.  Dollar Shave Club (DSC) refused to produce technical information, ███████████████████████████████████████████████████████████████████████████  D.I. 148, 157.  Gillette moved to join Dorco and its U.S. subsidiary, Pace Shave, as defendants.  D.I. 98.  Dorco moved to dismiss for lack of personal jurisdiction.  D.I. 134, 135.  Pace Shave answered but it too refused to produce product specifications showing its blade coatings or manufacturing specifications.  Gillette moved to compel Pace Shave to produce technical documents available to it from Dorco, D.I. 254, and sought technical discovery from Dorco through The Hague Convention, D.I. 214-218.  Days before those motions were scheduled to be argued, Dorco withdrew its motion to dismiss and voluntarily joined the litigation.  D.I. 279-281.  Dorco expressly represented to the Court that it would provide technical discovery and Gillette withdrew its motions.  D.I. 280, 283.

       Dorco's core technical documents production was due March 31, D.I. 282, 292, and should have included "operation manuals, product literature, schematics, and specifications," Default Standard Sec. 4(b).  Instead, Dorco's core technical documents contain a hodge-podge of documents, ███████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ *See* Ex. 1 (DOR 750TR-761TR); Ex. 2 (DOR 808TR-813TR). █████████████████████████████████████████ ██████████████████████████████████████████████████████████ *See* Ex. 3 (DOR 524TR).  Although Dorco did produce ███████████████████████████████████████████ ██████████████████████████████████████████ *See* Ex. 4 (DOR 240TR) (2009); Ex. 5 (DOR 817TR) ██████████

The Honorable Judge Leonard P. Stark
May 22, 2017
Page 2

      A large-scale manufacturer such as Dorco must have official manufacturing specifications for the blades used in its commercial products detailing the specific settings, process conditions, process steps, coating compositions, and thicknesses for the manufacture of its blades.  Indeed, Gillette has produced its blade manufacturing specifications, ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████  *See, e.g.*, Ex. 6 (GILLETTE-DSC-0177271-77). Gillette's specifications also indicate ████████████████████████ ████████████████  *Id*.  Such documents are required for quality control and liability reasons.  It is difficult to believe that Dorco, a company that manufactures millions of blades a month, ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████

      Gillette respectfully submits that the only way that it will obtain relevant technical documents is if the Court orders that discovery.  Further, without an order, Defendants' continued refusal to produce technical discovery will jeopardize the case schedule.  Defendants have been avoiding technical discovery since the outset of this case and now there is less than five months left in fact discovery.  Gillette respectfully requests that Dorco be ordered to produce technical documents showing the chemical compositions of the coatings used on the accused razors, the thicknesses of those coatings, and manufacturing process specifications showing how those coatings are applied, and to identify those documents in the production (because the ██████████████████████████████ the burden of identifying technical documents in Dorco's production is unequal).

## B.      Request to Amend The Scheduling Order As to Deposition Hours

      The original Scheduling Order limited each side to 65 hours of depositions of [party] witnesses … and 35 hours of depositions for third-party witnesses."  D.I. 20, ¶ 8(e)(i).  After the joinder of Dorco and Pace, the parties could not agree on an extension to account for the additional defendants and instead provided a joint submission simply totaling the hours in the original Scheduling Order.  Thus, the current Scheduling Order provides for "100 hours of taking testimony by deposition … to be divided between party and non-party witnesses."  D.I. 282, 292.

      The case has materially changed since the parties negotiated the 100-hours limitation in the Scheduling Order.  First, at that time, Dorco and Pace had not been joined as defendants.  As Defendants have pointed out, the joinder of Dorco and Pace has resulted in "a more than fifteen-fold increase in the number of accused products."  D.I. 102 at 7.  Gillette originally accused three DSC razors, Pace accounts for another 44 razors, and Dorco manufactures a number of store brands (*e.g.*, Costco).  Moreover, Defendants employ divergent business models.  DSC sells

---

[1]     Gillette asked "if Dorco asserts that specific documents within its … production do contain the details relating to ████████████████████████████████████████████ ████████████████████████████████████ please specifically identify any such documents…."  Ex. 7.  Dorco did not respond.

The Honorable Judge Leonard P. Stark
May 22, 2017
Page 3

razors through an on-line subscription service.  Pace and Dorco sell to retailers and also sell direct to consumers on-line without a subscription.  The additional accused products and differing channels of trade require additional fact testimony going to infringement and damages. Second, although Gillette originally anticipated a modest amount of discovery needed from Dorco as a third party, that has now changed because DSC claims to have no technical information.  Discovery of Dorco has become important in a way that Gillette could not have anticipated at the outset of the case (DSC did not indicate at the Rule 26 conference that it would provide no technical discovery).  Third, Dorco recently informed Gillette that ███████████ will testify in Korean through interpreters.  Gillette did not anticipate (and there was no indication at the Rule 26 conference) that ████████████ would require an interpreter.[2] The need for interpreters increases the amount of time needed for each deposition.  Fourth, depositions of DSC and Pace pursuant to Rule 30(b)(6) notices have been scheduled and, instead of designating a few individuals and educating them as to all topics, DSC and Pace have each designated five individuals.  *See* Ex. 8.  Defendants' prolix approach to Rule 30(b)(6) depositions necessarily increases the deposition hours required to examine all the witnesses.  In view of the increased complexity of the case, Gillette requests an increase in the deposition hours in the Scheduling Order from 100 to 150 hours on the record.

Moreover, Gillette respectfully requests that depositions of foreign language witnesses using interpreters be scheduled for 14 hours in view of the additional time required for translation and exhibit handling.  Gillette may not use the entire 14 hours but it requests that those witnesses be scheduled for 14 hours in case it is needed.  *See, e.g., Teles AG v. Cisco Sys.,* C.A. 09-072-SLR-LPS, D.I. 139 (11/12/2009 Tr. at 39:12-23) ("[A]ny deposition which requires a translator can be up to 14 hours as opposed to up to seven hours.") (Ex. 9); *Procaps v. Patheon.*, 2015 WL 2090401 at *6 (S.D. Fla. May 5, 2015) ("To the extent that interpreters are used for either the 30(b)(6) deposition or the fact witness depositions, the time will be adjusted, based on the rule that the use of an interpreter doubles the deposition time.").  Further, Gillette requests that only half of the actual time on the record be counted against the total deposition hours limit.  *Id.*

Gillette respectfully requests that the Court address these issues now because Gillette needs to consider allocation of deposition hours among the witnesses for the three Defendants. Moreover, with respect to scheduling of Dorco's witnesses, there will be substantial logistics (*e.g.*, travel, translators) involved.  Bringing a witness back to the U.S. (or having attorneys make multiple trips to Korea) for a single deposition would be tremendously burdensome, would threaten the case schedule, and can be avoided by scheduling foreign language depositions for 14 hours.  Thus, it is important for planning and scheduling purposes that the parties know in advance the total number of deposition hours allowed, the number of hours permitted for foreign language depositions, and how many of the hours of foreign language depositions count against the total number of deposition hours.

---

[2]     Many Korean companies conducting business internationally use English.

The Honorable Judge Leonard P. Stark
May 22, 2017
Page 4

Respectfully,

/s/ Rodger D. Smith II

Rodger D. Smith II (#3778)

RDS/rah
Enclosures

cc:     Clerk of Court (by hand delivery)
        All Counsel of Record (by electronic mail)

# EXHIBIT 1

REDACTED
IN ITS
ENTIRETY

# EXHIBIT 2

REDACTED
IN ITS
ENTIRETY

# EXHIBIT 3

REDACTED
IN ITS
ENTIRETY

# EXHIBIT 4

REDACTED
IN ITS
ENTIRETY

# EXHIBIT 5

REDACTED
IN ITS
ENTIRETY

# EXHIBIT 6

REDACTED
IN ITS
ENTIRETY

# EXHIBIT 7

REDACTED
IN ITS
ENTIRETY

# EXHIBIT 8

REDACTED
IN ITS
ENTIRETY

# EXHIBIT 9

1

1              IN THE UNITED STATES DISTRICT COURT

2              IN AND FOR THE DISTRICT OF DELAWARE

3                          - - -

4

        TELES AG                    :    CIVIL ACTION
5       INFORMATIONSTECHNOLOGIEN,   :
                                     :
6            Plaintiff/             :
             Counterclaim-Defendant :
7                                    :
                 v.                  :    NO. 09-072 (SLR)
8                                    :
        CISCO SYSTEMS, INC.,         :    CIVIL ACTION
9                                    :
             Defendant/             :
10           Counterclaim-Plaintiff :    CIVIL ACTION
        --------------------------   :
11      CISCO SYSTEMS, INC.,         :
                                     :
12               Plaintiff          :
                                     :
13               v.                  :
                                     :
14      TELES AG                    :
        INFORMATIONSTECHNOLOGIEN,   :    NO. 09-232 SLR/LPS
15                                   :
                 Defendant          :
16

17                          - - -

18                          Wilmington, Delaware
                            Thursday, November 12, 2009
19                          3:00 o'clock, p.m.
                            ***Telephone conference
20

21                          - - -

22      BEFORE:   HONORABLE LEONARD P. STARK, U.S. MAGISTRATE JUDGE

23                          - - -

24                              Valerie J. Gunning
                                Official Court Reporter
25

2

4

APPEARANCES:

ASHBY & GEDDES
BY:  TIFFANY GEYER LYDON, ESQ.

-and-

HOWREY LLP
BY:   MONICA B. LATEEF, ESQ. and
DAVID W. LONG, ESQ.
(Washington, D.C.)

Counsel for Teles AG
Informationstechnolgoien

MORRIS, NICHOLS, ARSHT & TUNNELL
BY:  JACK B. BLUMENFELD, ESQ.

-and-

GOODWIN PROCTER LLP
BY:  LANA S. SHIFERMAN, ESQ. and
ROBERT FREDERICKSON, III, ESQ.
(Boston, Massachusetts)

Counsel for Quintum Technologies, LLC
and Cisco Systems, Inc.

- - -

And let's begin, first, with Teles' letter and Teles'
complaint regarding Cisco's invalidity contentions and
the adequacy of what Cisco has provided to Teles at this
point.

So since Teles is the moving party on that one,
let's me hear first from Teles, please.

MS. LATEEF:  Yes, your Honor.  This is Monica
Lateef, from Howrey, speaking.

Our position, as I stated in the papers, is that
Cisco's invalidity contentions are inadequate and also not
narrowly focused, as directed by Judge Robinson at the last
hearing that we had.

They provided us with 34 claim charts.  Prior to
speaking with Judge Robinson, we brought up at the time that
they had 37, and we spoke about the fact that they would be
narrowing them to the contentions that had claim charts
added to them.  They were permitted to provide further claim
charts because new claims were entered into the case, and it
looks like they added 15 new claim charts that weren't even
limited to the new claims that were added in the case, even
though they represented to the Court that that is what they
would be.

So total we're still looking at 34.  So we went
from 37 to 34.  And then just to get to the substance of the
charts, it's not clear, based on what they provided,

3

5

P R O C E E D I N G S

(REPORTER'S NOTE:  The following telephone
conference was held in chambers, beginning at 3:00 p.m.)

THE COURT:  Good afternoon, everyone.  This is
Judge Stark.  Let me know who is there, please.

MR. BLUMENFELD:  Good afternoon, your Honor.
This is Jack Blumenfeld for Cisco, along with Lana Shiferman
and Robert Frederickson.

THE COURT:  Okay.

MS. LYDON:  Good afternoon, your Honor.  On
behalf of Teles, Tiffany Lydon, from Ashby & Geddes.  On the
line with me are David Long and Monica Lateef, from the
Howrey firm.

THE COURT:  All right.  And for the record, this
is our two cases of Teles versus Cisco, which is Civil
Action No. 09-72-SLR, as well as Cisco versus Teles, which
is 09-232-SLR-LPS.

The purpose of today's call is to discuss
several discovery disputes that have arisen between the
parties.  I have, of course, reviewed the letters.  We've
got a total of four letters from the parties in preparation
for today's call and I want to go through these in order.

basically, what references are anticipated by, and to the
extent they're obvious, what combination of references are
obvious.  They will cite in their response to our
Interrogatory No. 2 that any of the charts can be combined,
but they never tell us how they can be combined.  They never
tell us if they can be combined.

So it sort of leaves us in a predicament in not
really understanding what their invalidity contentions are.

THE COURT:  Let me ask you a couple questions,
Ms. Lateef.

MS. LATEEF:  Sure.

THE COURT:  First, it sounds like you're
suggesting that Judge Robinson made a ruling that's relevant
to today's dispute and that you think Cisco is under an
obligation, or that I should be measuring these responses to
your interrogatories, I should be measuring them against
something Judge Robinson said, but you have not provided me
or clued me in to what you think Judge Robinson said that's
relevant to this.

Am I misunderstanding you?

MS. LATEEF:  I am pointing to something Judge
Robinson said and maybe I just wasn't clear what we
understand her to have said.

During that hearing, our complaint was that they
hadn't focused or narrowed their -- their prior art

6

1   references, and they had a total of 54 references and then
2   they had 19 charts on those references.
3          And our understanding was that Judge Robinson
4   said that the 54 was too much, and they needed to narrow
5   their prior art references.  She was okay with the 19,
6   because they provided charts on those, and then Ms.
7   Shiferman represented that they would be adding more prior
8   art references with charts going to the new claims that had
9   been added to the case, and so Judge Robinson said that that
10  was appropriate.
11         My point here is that those new charts now total
12  15, and they're not even limited to the new claims that were
13  introduced into the case.  So when you add the 19 and the
14  15, we're now looking at 34.
15         THE COURT:  Is there any reference in your
16  letter to what Judge Robinson ruled?  I don't see anything
17  about that.
18         MS. LATEEF:  Your Honor, I don't think we did
19  put that in our letter.
20         THE COURT:  All right.  Then answer another
21  question.  Cisco's response, at least in their letter, is
22  that you know everything that you're trying to get because
23  there is the extensive re-exam history and they've provided
24  overwhelming detail to you in that context.
25         What's your response to that?

7

1          MS. LATEEF:  Our -- your Honor, our response to
2   that, if Cisco wants to limit themselves to the prior art
3   they cited in the re-exam, we are happy with that.  The
4   prior art they cited in the re-exam is a handful of prior
5   art.  It is not close to the 34 that they've cited in
6   response to our interrogatories.  So if your Honor's ruling
7   is they're limited to that prior art, we accept that
8   wholeheartedly and are fine with that.
9          And the difference is, our problem is, it's not
10  the same.  What they said in their interrogatory and what
11  they said in their re-exam are not the same amount of
12  references.
13         THE COURT:  All right.  And what about their
14  argument that the relief you are seeking now from the Court
15  is something broader than what you even asked for in your
16  Interrogatory No. 2?
17         MS. LATEEF:  Well, we think that the relief
18  we're seeking from the Court is inherent in an obviousness
19  analysis.  We're simply going through what's required to
20  prove obviousness and asking that they prove those elements
21  of obviousness.  We're not sure how else obviousness would
22  be explained without providing that information.
23         THE COURT:  Okay.  I might have some more
24  questions for you on that, but let me turn to Cisco now, to
25  respond and tell me whatever else you want me to know.

8

1          MS. SHIFERMAN:  Thank you your Honor.  This is
2   Lana Shiferman.  I will address this point.
3          First, addressing the point that Ms.
4   Lateef called focused, the first issue is that this letter
5   is not -- this issue is not properly before the Court today.
6          My understanding was that we are -- that the
7   issue in dispute was the substance of the response on the
8   references contained in response to Interrogatory No. 2, as
9   detailed in their letter.  They have not met and conferred
10  since the September 29th hearing, and that issue was not
11  ripe for discussion today.  I am prepared, however, and will
12  address it on the substance, to the extent I can, without
13  having that material in front of me.
14         During the hearing on September 29th, Teles
15  for the first time, argued to the Court that they were
16  unable to respond to Cisco's interrogatory regarding why
17  their patents were not invalid based on the references that
18  we cited in our Interrogatory Response No. 2, and their
19  primary complaint was that there were simply too many
20  references, and we had not provided charts for some of
21  them.
22         They then attempted to have the Court preclude
23  or force us to limit those references.  The Court did not at
24  any point state that we were at this time in the middle of
25  discovery, limit or precluded from -- to a particular number

9

1   of references.  She did say 64 generally was too much for a
2   trial, and that we would never go to trial on those.  And we
3   fully agree with that.
4          Right now, in this case, Teles has asserted
5   almost 40 different claims.  Discovery is ongoing on all of
6   those claims and we have simply provided the key references
7   that we believe address those claims.  Both parties will be
8   required, as the case progresses, to limit that.
9          Teles will very likely not be going to court or
10  in front of a jury on 40 different claims.  Once Teles
11  limits its claims to the numbers that would be in front of
12  the jury, we will then be able to, through that process,
13  limit the references that we will be relying on.
14         At this point in the case, it's simply too
15  premature to force us to limit references.  Discovery is
16  ongoing and we are finding additional information as
17  we discovered and providing it to Teles in detailed form.
18         The Court did state specifically that to the
19  extent that we take the time to chart the references, which
20  we have done for all key references, which we consider our
21  primary references for this case, then Teles should address
22  and respond to those references, which Teles, in response to
23  their interrogatories, their own counteracting
24  interrogatories, have not done at this point in sufficient
25  detail.

10

1    There's nothing in the September 29th hearing
2    transcript limiting us to any particular number of
3    references at this point.  What we have done is identified
4    the primary references that we believe are -- anticipate or
5    obviate the asserted claims and provide provided detailed
6    contentions on those references in the form of charts.
7         With respect to the acceptance of the response,
8    if you look at Teles' own Exhibit 1, you will see that we
9    have provided a detailed 40-some page response explaining
10   our invalidity contentions.  That explains the fact that
11   there is a German invalidity proceeding where there has been
12   detailed briefing on certain references.  This provides
13   Teles with significant information regarding those
14   particular references, but also gives them an understanding
15   of the motivation to combine particular references and the
16   general motivation to combine references in this area.
17        As the PTO has already stated, that one of the
18   press releases provided by Cisco generally provides a motive
19   to combine, which we are relying on in this case.
20        We have then provided detailed charts going
21   claim by claim, to the extent they applied a particular
22   claim for a number, 30-some references, and we've provided
23   for you examples of those charts as exhibits to our
24   submission in response to Teles' invalidity submission.
25   We've given you three such charts to show you the detail

11

1    that we've gone to.
2         We have then, for purposes of obviousness, told
3    Teles which of those charts should be combined, to the
4    extent we believe that they, together, more than one
5    reference, make the asserted claims obvious.
6         This is well within the realm of what this
7    interrogatory seeks.  This is not a broad interrogatory that
8    generally talks about all the evidence necessary for
9    obviousness.  That comes in many different forms, and will
10   continue to come through depositions, through expert
11   discovery and the like.
12        What their interrogatory sought is what we
13   provided.  There's nothing in their interrogatory that
14   states, tell us what the level of ordinary skill in the art
15   was.  Those are different interrogatories which we have
16   not met and conferred on.  There have been no issues in
17   dispute on those interrogatories.
18        To the extent they believe they're entitled to
19   that information, then they should refer to the
20   interrogatories covering that subject matter, and if they
21   are not satisfied with that response, then we should have a
22   proper meet-and-confer to address them.  But this
23   interrogatory specifically sought claim charts and
24   information regarding the prior art references that Cisco
25   believed either anticipate or make obvious the asserted

12

1    claims.
2         THE COURT:  At what point in the case will it be
3    appropriate, Ms. Shiferman, for you to narrow the references
4    that you are referring to and sort of lay it all out on the
5    table exactly which reference, you know, invalidates, in
6    your view, which claim?
7         MS. SHIFERMAN:  Well, we certainly believe
8    that we actually have provided the information which shows
9    that -- which references anticipate and which references in
10   combination make obvious the asserted claim.  To the extent
11   we would need to narrow that down to the actual references
12   that would go to trial, I think that that would be done
13   closer to trial.
14        We still have -- the next stage of the case will
15   be expert discovery.  Cisco will be providing an expert
16   report on the references that I believe invalidate the
17   patents and Teles will be responding.  There will be
18   depositions that will put into detail and focus which of the
19   key references, what the experts believe are the relevant
20   references, and then, when Teles actually lets us know which
21   claims are going to be tried in front of a jury, we can
22   then, with that information, notify them which of our
23   references we would be pursuing at trial, but certainly, or
24   at least narrow the references to some point.  But,
25   certainly, during discovery, before depositions have been

13

1    completed, while additional references are being found while
2    there are still 40 asserted claims in the case with a
3    reservation of right by Teles to add additional claims, that
4    that time has not come.
5         THE COURT:  All right.  Ms. Lateef, anything you
6    want to respond to?
7         MS. LATEEF:  Yes, your Honor.  I apologize if
8    this isn't in the letter, but to the extent you were
9    interested, the transcript for the hearing that we had with
10   Judge Robinson was on Page 26, line 6, and it goes on
11   through Page 29, line7.
12        I just want to add that while Judge Robinson
13   didn't limit them to a number, she certainly said that the
14   amount that they had was too many, and one or two more --
15   you'll see that if you read the transcript -- they focus on
16   another one or two, that would be fine.  And she was talking
17   about one or two more from the 19.
18        So I just wanted to point that out.
19        And as far as whether or not what we're seeking
20   goes beyond the interrogatories, our interrogatory did ask
21   for the basis for claiming invalidity, and we believe the
22   information we're seeking goes to what Cisco's basis is for
23   claiming invalidity.
24        THE COURT:  All right.  I'm prepared to rule on
25   this dispute, the one raised by Teles, and I am going to

14

1   deny the relief that Teles is seeking. And the dispute, as
2   I understand it, and as it's before me and as is ripe, is a
3   dispute over substantively the sufficiency of Cisco's
4   response to the invalidity Interrogatory No. 2 of Teles.
5        And given the stage of the case, the middle of
6   discovery, that is the middle of fact discovery, with
7   depositions still ongoing, I believe that what Cisco has
8   provided to Teles is adequate at this point. Cisco is under
9   an ongoing obligation to supplement, and in this case,
10  supplement may well, it sounds like it will, mean narrow
11  over time, but for now, given the breadth of what has been
12  provided and the detail of what has been provided by Cisco,
13  including what has been provided through the re-examination
14  proceedings, to the extent those have been incorporated by
15  reference and the response to the interrogatory, I find that
16  they are adequate for this point in the case.
17       I am not making any ruling today and do not view
18  as in front of me any suggestion or argument by Teles that
19  independent of the overall substance of what is in the
20  interrogatory responses at this point, that somehow, if I
21  were to measure them against what Judge Robinson expected
22  or ordered in her September 29th conversation with the
23  parties, I'm not ruling on that.
24       There was no reference to that issue in the
25  letter to me. The September 29th transcript was not put in

15

1   front of me for purposes of today's call. I did not review
2   it for purposes of today's call. And my understanding is
3   the parties have not met and conferred on that issue. So my
4   ruling today does not reach that issue.
5        Let's move on now to the other matters that
6   are before me today, which are all complaints that Cisco
7   raises about purported deficiencies in Teles' discovery.
8   And so I will hear first from Cisco on that.
9        It seemed that there was overlap on at
10  least some of these issues. I'm not sure that you need to
11  address -- in fact, I think it's best if you don't address
12  all of them at once, but if you start with the first couple
13  that I think do overlap, and then I want to hear from Teles,
14  and then we'll come back to Cisco.
15       MS. SHIFERMAN: Yes your Honor. Lana Shiferman
16  again.
17       I think the two issues that overlap to an extent
18  are the first two that are addressed in our letter, and that
19  is Teles' refusal to produce discovery from its prosecution
20  counsel, and then also the issue with respect to note
21  related to an alleged interview that occurred with the '431
22  Patent Examiner during the prosecution of the patent.
23       First, generally, with respect to the
24  information from the prosecution counsel, we are seeking
25  discovery from Teles' prosecution counsel related to the

16

1   asserted patent. This is typical discovery that happened.
2   This discovery is relevant to the scope of the asserted
3   patents. There's potential information available related to
4   disclaimers. It goes to what Teles and its counsel
5   understood the patents to cover. And this is, as we
6   cited, cited by the cases that we provided for in our
7   letter, this is generally information that is available
8   during discovery.
9        One of the categories that we are seeking from
10  the prosecution counsel is information related to
11  inequitable conduct. That is, however, not the only
12  information that we are seeking from the prosecution
13  counsel.
14       With respect to the general information, I
15  would -- prosecution files, I would refer the Court to the
16  Microsoft case, where the Court found that this type of
17  information was discoverable.
18       Teles' only real response here is that this
19  issue is not ripe before this Court because the subpoenas
20  were issued in (inaudible). However, this issue really is
21  properly before this Court.
22       This discovery was first sought from Teles
23  itself. They have refused to provide it. We then issued
24  the subpoenas. But here, Teles has possession, custody and
25  control of these documents, and the Novak law firm is asking

17

1   under the direction of Teles and Teles' counsel in this
2   case. And, in fact, the Howrey law firm is representing
3   both Teles and the Novak firm that we have subpoenaed.
4        When the inequitable conduct issue was before
5   Judge Robinson and Teles refused to conduct any discovery on
6   that issue until their motion for judgment on the pleadings
7   was decided, which motion was denied by the Court, the Novak
8   firm listened to the instructions of Teles and Teles'
9   counsel and refused to provide any documents until that
10  issue was decided.
11       Then, last week, we were informed that the
12  documents would be coming on this past Friday, November 6th,
13  and presumably, we can only assume, because this issue on
14  the scope of discovery was raised with the Court, we have
15  not received any documents again in cooperation with Teles
16  and its positions in this case.
17       So it's clear that this issue really should be
18  before this Court on the issue of Teles' position on the
19  production of those documents since the objections are
20  really Teles' and not the Novak firm's.
21       In fact, Judge Robinson had addressed a similar
22  issue in the past, and indicated where there is a claim of
23  attorney/client privilege, and our understanding is that
24  some of these documents and some of the objections based on
25  that -- that were filed or served on us relate to the

18

1  attorney/client privilege, that that issue is before -- is
2  properly before the Court where the case is pending.
3         And we can provide citation to that issue,
4  and that is Accenture Global Services versus Guidewire
5  Software. The docket number is 07-826. And that issue is
6  addressed in footnote 1 with respect to the attorney/client
7  production of documents and the issue being before Judge
8  Robinson.
9         THE COURT: Is this discovery -- did you also
10 seek it directly from Teles?
11        MS. SHIFERMAN: Yes. We have sought all
12 documents related to the prosecutions of the patents-in-suit
13 from Teles in our document requests.
14        THE COURT: Okay. Provide an example of what
15 you have in mind that would be a nonprivileged communication
16 between prosecution counsel and Teles.
17        MS. SHIFERMAN: For example, transmittal
18 letters, which show the timing of when certain documents
19 were transmitted to the client. They would show knowledge
20 related to particular events that might go to inequitable
21 conduct. Those certainly would not be privileged.
22        Any sort of communications that are technical in
23 nature rather than strategic related to the disclosure would
24 not be privileged. Those are two examples.
25        THE COURT: And Teles says in their letter that

19

1  they -- with respect to the interview with the PTO Examiner
2  and Mr. Gendner, I think it is, Teles said they've now
3  produced all notes made during the interview.
4         Is that satisfactory on that issue?
5         MS. SHIFERMAN: No, your Honor. We -- I guess
6  we would want more -- a further representation with respect
7  to the notes during the interview, but our request is
8  actually broader than just notes during their interview.
9         Teles, for the first time in this case, just two
10 months ago, on an issue that has been pending in the case
11 since February, which is the inequitable conduct related to
12 the '431 patent, told us that there's an alleged interview
13 that took place in December 2007 with the Examiner. They
14 admit that in the prosecution history itself, there was no
15 record of this interview with the Examiner. Instead, they
16 have voluntarily provided a declaration from Mr. Gendner
17 attaching his notes from that interview and they have relied
18 on that in defense of Teles' allegation, or Cisco's
19 allegation that there was inequitable conduct.
20        By relying on these notes, again, voluntarily
21 putting them into issue in the case, notes that include his
22 impressions of what occurred at the interview, not just
23 facts -- and we have attached a copy of the note -- they
24 have waived by subject matter all communication, notes taken
25 at the interview by anybody, and there were four individuals

20

1  that I believe that were in that interview.
2         THE COURT: Let me interrupt you, Ms. Shiferman.
3         First of all, how could there be any privilege
4  attaching to communications between the Examiner and Teles?
5  And if there was no privilege there, then what could they
6  possibly have waived by disclosing a record of that?
7         MS. SHIFERMAN: We would argue that if there's
8  no privilege, then we should have all notes from that
9  communication, but we still do not understand, because there
10 has been -- there have been representations to us made
11 during other meet-and-confers that there may well be other
12 notes, and that only certain notes were provided to us. So
13 it's unclear to us exactly what the extent of all the notes
14 are.
15        But Teles' position is that to the extent that
16 there are any mental interpretations within the notes, that
17 those are privileged, and that it is only the factual notes
18 that are not privileged.
19        The notes that they provided for Mr. Gendner
20 include his mental impressions and interpretations of what
21 occurred in that interview. By providing those voluntarily,
22 they have now waived the subject matter of that interview,
23 and that includes not only the notes taken by all attendees
24 of the interview, but also any notes that concern the
25 interview, either before or after and followup. All of this

21

1  is relevant to their defense that the interview took place
2  and they took certain actions or didn't take certain actions
3  in reliance of what occurred at that interview.
4         We believe that this is classic -- the use of
5  this declaration is really a classic example of the sword
6  and shield rule, where they are selectively providing
7  information that is providing them a tactical advantage, as
8  explained by the cases cited in our letter. On the other
9  hand, potentially holding back information concerning what
10 occurred at that interview and all the followup.
11        And we do not at this point have a clear
12 understanding of whether we even have a privilege log of all
13 the communications related to this. We did receive at 12:00
14 noon today the beginning of their privilege log. That seems
15 to have some entries from around this December time period,
16 but their log is not complete. We know a substantial
17 additional amount of privileged information is still being
18 logged and will be coming in the next several days.
19        So we still do not have an understanding even
20 of, by looking at a privilege log, what else is out there.
21        THE COURT: And if you did have a complete
22 privilege log of any documents relating to this interview,
23 including a time frame before and after the interview? And
24 if you are provided with any nonprivileged such documents,
25 what else is it that you are seeking or have sought in

22

1 discovery from Teles regarding prosecution counsel and why
2 do you need anything more than that?
3          MS. SHIFERMAN: Well, that interview addresses
4 only one issue in the case, and that is Cisco's inequitable
5 conduct defense based on inequitable conduct that occurred
6 during the prosecution of the '431 patent.
7          The remainder -- there's a second inequitable
8 conduct defense related to the prosecution of the '453
9 patent, that relevant issues there are related to Teles'
10 knowledge and citation to documents from the German
11 invalidity proceedings during the prosecution of the '453
12 patent in the United States. Information from Teles'
13 prosecution counsel, there might be -- and we don't know.
14 We just don't know whether it exists or not because we don't
15 have a privilege log of those documents, but there may well
16 be documents showing whether or not Teles had knowledge, at
17 what time they had knowledge, who had knowledge. There
18 might be information regarding why particular documents were
19 submitted or not submitted.
20          Also, in addition to just generally the
21 inequitable conduct issue, the documents related that -- the
22 nonprivileged documents from the prosecuting attorneys and
23 then also a corresponding privilege log of all the withheld
24 documents will address other issues in the case relating to
25 the scope of the patent and potentially invalidity.

23

1          THE COURT: All right. Let me hear from Teles,
2 please, on these two issues.
3          MR. LONG: Thank you your Honor. This is David
4 Long with the Howrey law firm, on behalf of Teles.
5          A few things. First, as a threshold issue, it
6 was our understanding, coming into this hearing, that Cisco
7 was seeking enforcement of the subpoena served on the Novak
8 law firm and the Christie Parker Hale law firm. The
9 argument by Cisco now that they're seeking to enforce some
10 discovery as to Teles is news to us, and we're not prepared
11 to address that. They have not cited their interrogatories
12 seeking that.
13          So as a threshold matter, that is something we
14 weren't prepared to address, nor did it appear to be
15 apparent from our meet and confer, and the fact that they
16 served the subpoenas on the Novak firm and their letter to
17 your Honor.
18          Secondly, I guess to catch the low-hanging
19 fruit in a sense, as your Honor hit the nail on the head,
20 when it came to the interview with the Examiner, we have
21 produced all notes that we are aware of from anybody that
22 occurred during the course of that meeting with the
23 Examiner.
24          Ms. Shiferman, Cisco's counsel, argues that the
25 production of Mr. Gendner's notes some way waive privilege,

24

1 and we agree with your Honor, there was no privilege during
2 that interview to waive.
3          If you read the notes in Mr. Gendner's
4 declaration, it's was carefully tailored to make sure it did
5 nothing more than concern facts that were about the
6 interview and there was no legal opinion or legal impression
7 involved in any of that. And there is no waiver as far as
8 that goes. And we just don't have any other notes to
9 provide them, as far as that interview.
10          THE COURT: And that includes notes relating
11 to the interview that may have been made in anticipation of
12 the interview and looking back after the interview?
13          MR. LONG: No, your Honor. I believe there are
14 notes the day before the interview, but how that discloses
15 what was said in the interview, Ms. Shiferman has never
16 articulated to us. And, plainly, it was -- as I recall, and
17 I don't have it in front of me, there were notes made in a
18 meeting in anticipation of that interview between Teles and
19 its counsel that would be privileged and we believe work
20 product as well.
21          THE COURT: And are you logging those notes on a
22 privilege log?
23          MR. LONG: Your Honor, we have not at this
24 point, and one of the reasons is, given this hearing, I
25 think part of this dispute is the scope of the privilege log

25

1 that would be required. And here's why I say that.
2          Cisco has served a subpoena on a law firm
3 seeking the communications with its client. That, by
4 itself, tells you, there may be a lot of privileged
5 communications.
6          They've done this really on the basis of
7 inequitable conduct. They have alleged inequitable
8 conduct as to a finite number of prior art references. If
9 there is something in the files of the Novak firm that has
10 nothing to do with the references on which they allege
11 inequitable conduct, in which they allege should not have
12 been withheld, then it's really not responsive to the scope
13 of inequitable conduct that Judge Robinson has permitted in
14 this case.
15          We have cited the Union Carbide decision in
16 our papers. In that decision, Judge Robinson permitted the
17 parties to proceed on inequitable conduct as it was pled
18 and supplemented by the briefings at the time, but made
19 clear that it -- that she would not permit discovery on
20 anything that had been improperly pled. And I would say
21 that certainly then applies to anything that has not been
22 pled.
23          So if there are papers in the files of the
24 Novak firm that make no reference to any of the inequitable
25 conduct allegations by Cisco, then it's not really

26

1 responsive, I believe, or certainly not relevant to this
2 case, and a law firm should not be burdened with putting on
3 a privilege log every single communication that it has had
4 with its client for issues that are not in the case.
5        THE COURT:  What about Ms. Shiferman's
6 suggestion that these materials are also relevant to claim
7 construction, I take it, because maybe they relate to a
8 disclaimer or somehow your client or your patent prosecution
9 attorneys' views as to the scope of the claims?
10       MR. LONG:  Your Honor, I'm not aware
11 of a decision that has found that to be relevant, in all
12 candor.  I have not seen discovery, and broad discovery,
13 on a parties' law firm that prosecuted a patent to be
14 permitted because it would somehow be relevant to claim
15 construction.
16       The relevance to claim construction is
17 the patent itself and its public file history and not some
18 inarticulated statements between a client and its counsel.
19 To the extent there were any such statements, it would be
20 privileged attorney/client communication.
21       Ms. Shiferman has argued as to two things that
22 she said might be nonprivileged.  One, she said knowledge of
23 events for inequitable conduct.  I take that to mean
24 documents that refer to prior art that they say was withheld
25 or not.

27

1        Secondly, she says documents that are technical
2 in nature.  And when you look at some of the cases we've
3 cited, Courts have agreed that if the communication with a
4 client or the work of the prosecuting counsel is to
5 distinguish prior art based on an office action or other
6 things, that involves work product.
7        Keep in mind in this case, the very first patent
8 asserted was the '453 patent, in which Cisco sought a
9 declaratory judgment within a week of that issuing.
10       So anything said about the '453 patent, in fact,
11 Cisco's basis for declaratory judgment action, was that it
12 feared it would be sued under the '453 patent.  It would be
13 done in pursuit of litigation.
14       When you look at the other two patents in this
15 case, they were added during the course of litigation, and
16 Cisco has argued even that the patents were sought for the
17 purposes of asserting them against Cisco.  And so that is
18 classic work product.  And when you look at the cases we
19 have cited, and there are others, they support that in this
20 particular instance.  Not only is there attorney/client
21 communication privilege, but there is an attorney work
22 product privilege that attaches.
23       So in sum, these other bases that Ms.
24 Shiferman alleges is news to me.  I've never seen a Court
25 rely on it for purposes of claim construction, and, in any

28

1 event, it would be privileged, and we think it would be
2 unduly burdensome if it's not -- if there's not a document
3 that concerns the specific prior art that they allege has
4 been withheld, for the Novak firm to have to created a
5 privilege log for discovery seeking communication with a
6 client and working documents and prosecution.
7        Now, another issue, too, is these
8 re-examinations that are going forward with two of the
9 patents.  Cisco itself has called them litigation.
10       The '902 patent is what is called an enter
11 partes re-examination in which Cisco itself gets to
12 participate in, and it is a classic litigation.  So to have
13 us put on a privilege log documents that were done in the
14 course of that re-examination would be very invasive, and
15 not only that, at the end of the day, not really provide
16 anything that is relevant or of substantial relevance to the
17 case.
18       THE COURT:  Are you in the process of
19 completing a privilege log of some extent?  It sounded
20 like you provided something and are intending to provide
21 more?
22       MR. LONG:  From the Teles document
23 production, we have provided a privilege log of all
24 documents to date.  From the Teles e-mail search, we are
25 providing a privilege log.  We have 7,000 documents, it's my

29

1 understanding, that were labeled as potentially privileged
2 by a team of, like, six to twelve -- it fluctuates -- German
3 translators that we've had to hire to review it.  They are
4 still in the process of that, of that process.
5        From the Novak firm, we have reviewed their
6 documents, and we've found, I think it's 12 documents that
7 may not be privileged or attorney work product.  They deal
8 with things like a filing receipt, a receipt from the Patent
9 Office.  We have not created a privilege log for the rest of
10 that especially with this hearing, seeking the Court's
11 guidance, because we believe it would be unduly burdensome
12 and would not be proper for us to create a privilege log for
13 every communication in their file when the basis for the
14 discovery in the first instance, and Judge Robinson's
15 counsel in the Union Carbide case should be limited to
16 things in the file that deal only with the specific prior
17 art that they allege inequitable conduct on.
18       THE COURT:  All right.  Ms. Shiferman, respond
19 particularly to the suggestion that I really, if I'm going
20 to provide any relief here, I really should limit it to
21 documents that relate to inequitable conduct and only to the
22 references that you're relying on.
23       MS. SHIFERMAN:  Your Honor, we have cited
24 in our letter both the Microsoft case and the Ed Tobergte
25 case, the Microsoft case being a District of Delaware case,

30

1  which addressed expressly the fact that documents related to
2  the prosecution of asserted patents, including pending
3  counterparts, are relevant and discoverable under Rule 26.
4  There's nothing in this case that takes it out of the
5  general realm.
6          The discovery that we seek is not relevant to
7  only inequitable conduct. That is one defense that is
8  pending before the Court. We have other defense's related
9  on, for example, invalidity, noninfringement. Both of those
10 relate to, or rely on claim construction, and Teles'
11 documents from its prosecution counsel regarding the
12 prosecution will -- may well have relevant information. We
13 simply don't know because we don't have access to those
14 documents.
15         Most recently, the Federal Circuit has addressed
16 this issue in 2004, and the case 357 F 3d., 1340 also
17 supports discovery with respect to the prosecution files.
18 There's nothing in this case that differentiates it. And
19 one of the categories of discovery that we are looking for
20 is on the inequitable conduct, which we have fairly pled in
21 this case.
22         Federal Rule 26 provides for a broad standard of
23 relevance for anything that might lead to admissible
24 evidence, and that standard applies here as it does to all
25 the other discovery issues that are pending in this case.

31

1  And there's nothing that I'm aware of that takes it -- that
2  should change that standard with respect to this issue.
3          With respect to the jurisdiction issue not being
4  ripe, my reference to the interrogatories and document
5  requests issued to Teles was simply in response to the point
6  made in the letter submitted by Teles, that our basis on
7  moving on this issue is based on Judge Robinson's own
8  order that I cited to you earlier, which indicates that
9  discovery -- where there is an attorney/client privilege
10 issue, it is Teles in this case that is asserting that
11 privilege, and therefore that is an issue that can be
12 decided by this Court, where the case is pending.
13         With respect to the notes, again, our request
14 is not limited to only those notes, and it does appear that
15 there are now notes that go beyond just the notes that were
16 taken at that meeting, as Mr. Long has confirmed.
17         And I would point you to the notes themselves
18 that are attached as an exhibit to the Gendner declaration
19 that we have submitted to this Court. And, in particular,
20 the paragraphs there do go to more than to facts and rather
21 Mr. Gendner's impressions of what occurred, and therefore
22 those types of comments would generally be withheld. And I
23 note that these notes were not produced during discovery.
24 They were only produced in response to a disclosure when
25 we -- when this issue -- when they told us about the

32

1  disclosure, and we said that we need proof of that
2  disclosure because there's nothing in the record.
3          So these notes were not produced as
4  nonprivileged, relevant notes at all during discovery until
5  this issue came up and the briefing delayed as to the
6  motions to amend.
7          With respect to the log that Teles has
8  submitted, that certainly does not cure the prejudice that
9  we have for not having the other log cure. We have 600 of
10 7,000 entries related to the e-mails that the Court ordered
11 production of. We did finally get the e-mails.
12         With depositions already in progress, we are
13 certainly prejudiced by not having the log, you know. And
14 that is a separate issue, but I simply must address that
15 given the fact that that was raised during Mr. Long's
16 comments.
17         You know, we are proceeding with depositions
18 while we do not have relevant discovery both from the
19 prosecution files and also in the form of a privilege log
20 that explains to us the communications that Teles had with
21 its attorneys, and that includes the depositions that are
22 coming up in the next couple days, including Mr. Gendner's
23 deposition this Sunday.
24         THE COURT: Okay. I've heard enough on these
25 two issues and I am prepared to rule, and I view the issue

33

1  before me as one of Cisco seeking discovery from Teles, and
2  I do think that that issue is in front of me.
3          While I understand there are overlapping
4  third-party subpoenas that are out there and were issued
5  under the authority of another Court, I accept the
6  representation that this discovery was sought directly from
7  Teles, and I also am mindful of the case law cited by Cisco,
8  that in the end, it's really Teles that controls the
9  attorney client privilege vis-a-vis its counsel. And so,
10 potentially, I do have authority to act on Teles and direct
11 them to make certain things available in discovery that are
12 in the physical control of outside counsel, but are under
13 the effective control and possession of Teles itself as the
14 client.
15         So that I understand is my authority. And with
16 respect to the substantive dispute, I'm going to provide
17 Cisco just very limited relief. And specifically, I am
18 ordering that Teles provide any nonprivileged, which
19 includes work product, but nonprivileged, non-work product
20 protected documents, and to log any relevant and responsive
21 documents that Teles is asserting a privilege with respect
22 to, only with respect to, first, the interview with the
23 Examiner, and by that I mean to include not just documents
24 that were created during the interview, but documents
25 created before and after the interview, that relate to the

34

1    interview. And also documents that relate to specific prior
2    art references that are asserted by Cisco as a basis for its
3    inequitable conduct claims. I believe that weighing the
4    relevance as well as the burden to Teles, as well as the
5    fact that whenever you're looking for communications between
6    a clients and counsel, the likelihood is that the
7    overwhelming majority of them will turn out to be
8    privileged. And given the importance of that privilege,
9    factoring all of that in, I believe that this narrowly
10   tailored relief will provide sufficient evidence to Cisco as
11   the requesting party, and to go beyond that would be unduly
12   burdensome and not justified, particularly not justified by
13   the minimal, if any, relevance that I see here for this
14   discovery with respect to claim construction, or really any
15   issue other than inequitable conduct.
16          That's my ruling on those first two issues.
17          We do need to move more quickly through the
18   remaining issues.
19          The next one has to do with the presence
20   of German translators at the depositions of Teles witnesses.
21          And let me just ask Cisco, the prejudice that
22   you cite, would it be relieved by me providing additional
23   time to conduct any deposition that involves a translator?
24          MS. SHIFERMAN: To some extent, that would
25   be the relief, but, your Honor, the real concern here, that

35

1    Teles had taken a position that these are native speakers
2    that are not comfortable going forward with a deposition in
3    English, even with a backup translator.
4          And I would point out one thing on the case
5    that -- cited by Teles on this issue, the Nockvy (phonetic)
6    case, the LexisNexis cite is 1991 U.S. District, Lexis 502.
7          Teles has misrepresented what that case states.
8    There, a person that was able to speak English and was
9    comfortably conducting business in English proceeded with
10   the deposition in English, with a backup translator, which
11   is exactly what we were proposing here.
12          Our key issue is that beyond just the time
13   limitations that are lost and the time constraints that we
14   would suffer at the deposition, there is just -- any
15   deposition that the logistics and just kind of going forward
16   with that deposition using a translator are very difficult.
17   And where that witness would ultimately testify at trial in
18   English, there's just an inequity and prejudice to Cisco
19   having to conduct a deposition and using translators when
20   that witness is then going to go forward and testify in
21   front of a jury in English.
22          And Teles argues that that issue is premature at
23   this point, but we believe that the time to make that
24   decision is now, so that we don't get an argument, you know,
25   down the line that says, well, had we known that this was

36

1    going to be the situation, we would have made a different
2    decision with respect to the deposition.
3          So the time to make that decision is now. And
4    Mr. Blumenfeld, Cisco's local counsel, is on the line. And
5    he may speak to another case where Judge Robinson has
6    addressed this very issue.
7          THE COURT: Let me interrupt you, and it may be
8    Mr. Blumenfeld wants to speak to this, but I am mindful of
9    Teles' point, that the case is only referred to me for
10   purposes of discovery. So even if I agree with you, do you
11   read me as having the authority to dictate how witnesses
12   will testify at a trial in front of Judge Robinson?
13          MS. SHIFERMAN: Your Honor, we do see that you
14   would have the authority on that point. It's not how the
15   trial would be conducted, but, rather, authority over Teles
16   and their -- your discretion to require a decision on how
17   the testimony would be presented.
18          We don't believe that this would really impact
19   the substance of what the issues are to be tried and,
20   rather, this is an issue that can be decided by your Honor.
21          In particular, the two key depositions of
22   witnesses that we believe speak very good English, they
23   conduct their business in English. For Dr. Schindler,
24   we've actually heard press conferences that are all over the
25   Web where he's speaking English. We've spoken to him

37

1    ourselves.
2          This is a key witness. We are certain that he
3    will be a witness at trial. And if Teles can represent that
4    he won't, that is great, but we believe with certainty
5    that he will be a witness at trial, and to allow him to
6    testify in English at trial while forcing us to conduct his
7    deposition through the use of German translators does
8    present a prejudice to Cisco that is not fully resolved just
9    by additional time given that the -- the tight schedule that
10   we are operating on in London already.
11          THE COURT: All right. Let me turn to
12   Teles.
13          And it does seem to me that there's something
14   unfair about, in a sense, your providing a different witness
15   in a deposition than the witness you intend to present at
16   trial if you're changing the language that the witness will
17   be testifying in so speak just briefly to that and clear
18   that up, if I'm wrong about that.
19          MR. BLUMENFELD: Your Honor, it is Jack
20   Blumenfeld.
21          And Ms. Shiferman said that I had an example,
22   and before Mr. Long goes, if I could just fill you in on
23   that?
24          THE COURT: Very quickly, please.
25          MR. BLUMENFELD: We had this issue, I

38

1   think it was back in 1996 or 1997, with Judge Robinson, with
2   a French witness, exactly the same thing, and her ruling was
3   that if they were going to testify in French at their
4   deposition, they were not going to testify in English at
5   trial, for exactly the reason that your Honor was asking
6   about.
7           I wish I could find the transcript, but it's old
8   enough that I can't.  But I know that that happened and did
9   want to bring that to your Honor's attention.
10          With that, I will --
11          THE COURT:  Thank you.  Yes.  Let's turn it over
12  to Teles at this point.
13          MR. LONG:  Thank you, your Honor.  This is David
14  Long, for Teles.
15          Mr. Blumenfeld wishes he had the transcript.  I
16  wish they just cite the case to us, provided earlier.
17          I can tell you, I talked with our local counsel.
18  They didn't believe it would be an issue.  That's the bridge
19  to cross when you get to it.
20          The nature of depositions are very different.
21  It's very premature.  There's a lot of uncertainty.  They're
22  very long and they're not focused.  There are often
23  discovery questions, questions that aren't focused because
24  it is discovery, and so it's just a different context.
25          And I believe it would be improper to tie the

39

1   Court's hands now, or attempt to, from what the parties may
2   or may not do at trial.
3           I think Cisco can raise this argument if it
4   wants to at trial and let Judge Robinson deal with it
5   accordingly.  I can say the only prejudice they argue in
6   their brief and that they ever talked to us about was the
7   prejudice about the time.  So let's talk about that.
8           The very first deposition they raised, they
9   told us the wrong place for the deposition, so we were late.
10          THE COURT:  All right.  Mr. Long, I don't need
11  to hear that.
12          I'm prepared to rule on this one at this point,
13  which is, while I'm very sympathetic with the position that
14  Cisco is articulating, and I think I know what I would do if
15  the trial was in front of me, I don't think that I have the
16  authority at this point to determine what language witnesses
17  will testify in at trial.  What I will say for discovery
18  purposes is that any deposition which requires a translator
19  can be up to 14 hours as opposed to up to seven hours
20  translator and if additional time is necessary and the
21  parties can't work that out, then they can come to me.  I do
22  think that's fully within the scope of my authority to
23  handle discovery disputes.
24          If Cisco or either side wants to in the future
25  articulate a basis for bringing this dispute in front of me

40

1   again and explaining why it's within my authority to
2   determine how witnesses will testify at trial, or any other
3   feature of trial, I will certainly hear that.  But that's my
4   ruling for today.
5           Let's try to move through the rest of the
6   disputes here.
7           I think the next one is Cisco's complaint
8   regarding Teles' compliance with Judge Robinson's order
9   regarding the infringement contentions.  We've kind of
10  addressed this issue, at least some of the background of it,
11  so just very briefly.
12          Whoever is going to speak for Cisco, tell me why
13  my ruling should be different here than it was with respect
14  to Teles' complaint.
15          MS. SHIFERMAN:  Your Honor, as we cited in our
16  letter, Judge Robinson expressly addressed the infringement
17  contention issue during the September 29th hearing, and at
18  that time, and I will refer you to the transcript at,
19  beginning at pages Page 20, she expressly indicated that
20  Teles was to explain its infringement theory based on the
21  evidentiary record to date.
22          In response to that order, Teles has provided us
23  with a supplementation.  The only thing that was
24  supplemented was the addition of nine documents citations.
25  We have produced over nine million pages in this case.  We

41

1   have depositions of Cisco witnesses coming up, and it
2   continues to be unclear to us what and why Teles contends
3   that we infringe these patents.
4           For example, critical issues related to their
5   allegations for -- for the call forwarding or call transfer
6   features and the SAA phone features, there's no citation for
7   support for any of the documents produced in this case in
8   response to those features.  Simply, we've provided you an
9   example to two limitations on our letter at Page 3.  They
10  are just mimicking the claim language that -- the claim
11  language itself rather than actually explaining how the
12  products infringe.
13          And by just adding just bare citations to nine
14  documents, we do not believe that that has complied with
15  Judge Robinson's instruction that they supplement their
16  infringement contentions to explain their infringement and
17  based on the evidentiary record to date.  And that is quoted
18  at Page 20 of her transcript, at lines 9 through 13.
19          Waiting until the end of discovery, as Teles
20  suggests, is insufficient.  Yes, we don't doubt that there's
21  ongoing supplementation that might supplement again after
22  the Cisco deposition, but what they've done to date based on
23  the evidentiary record is not sufficient.  They should
24  supplement now, so that we have a full understanding of what
25  the infringement theories are as we go into the depositions,

42

1   and then continue with their ongoing obligations to
2   supplement throughout discovery, as we had the expert
3   report.
4           THE COURT:  All right.  Let me hear from Teles.
5   And first let us know, are there more than nine documents
6   that you've received to date that support your contentions,
7   or are you only relying on those nine?
8           MS. LATEEF:  Your Honor, this is Monica Lateef,
9   from Howrey.
10          At the moment, we are relying on our nine best
11  documents and we will probably intend to supplement.  We
12  just got the most recent version of their source code at the
13  beginning of October and we're going through it with our
14  experts.
15          Cisco says that, and in their papers that they
16  provided you, that we didn't give any explanation, for
17  example, of the SAA probe, and then they cut an insert for
18  you of what we responded.
19          And the first document we cite, if you look at
20  that page, is Cisco 00434265.  And if your Honor were to
21  look at that document, on the first page, it talks about
22  P.S. fallback being a mechanism to re-route a call
23  automatically to PSTN through PBX.  And then you turn in
24  that very document to Page 265, and that page will say --
25  I'm sorry.  You turn to Page 271, and that page says that

43

1   Operata depends on RTR projects.  Then, if you go to Cisco's
2   website, there is a note that says, SAA was called, the
3   response time reporter RTR.
4           So Teles has done what it intends to do, which
5   is cite Cisco's documents, part of the evidentiary record,
6   to explain how it believes the accused products work.
7   Unlike Cisco, we are only providing our most relevant
8   references.  We don't see a need to bury them in paper.  We
9   are prioritizing, and these are the nine best documents that
10  we have right now, and as we discover more information, we
11  will clearly supplement at the end, possibly, of Cisco
12  depositions, just like we expect that they will supplement
13  at the end of Teles depositions.
14          THE COURT:  All right.  That's fine.
15          With respect to this request, I'm going to deny
16  Cisco's request for further responses to the infringement --
17  further infringement contentions at this point.
18          It's always difficult for the Court to evaluate
19  the sufficiency of contention, responses to contention
20  interrogatories, and to measure precisely at each point in
21  the litigation whether a party should do more or in some
22  instances should do less.  We've heard a lot on today's call
23  about two different types of approaches to interrogatories
24  and interrogatory responses, and everybody is aware of their
25  obligation to supplement.

44

1           I understand that Teles has supplemented in
2   response to Judge Robinson's September 29th order.  They
3   have incorporated the nine documents, and while maybe that's
4   not the best or ideal approach, it is at this point, given
5   everything else going on in the case, sufficient.
6           So let's move on to, finally, Cisco's complaints
7   regarding certain topics on the 30(b)(6) depositions, and
8   let's go through them very quickly.
9           And let me ask Cisco, first, on Topic No. 30
10  regarding information about marketing or publicizing the
11  patents-in-suit, Teles says that there have not been any
12  efforts, and that you can confirm that through Professor
13  Schindler's deposition.
14          Is that adequate?  And if not, briefly, tell me
15  why not.
16          MS. SHIFERMAN:  I guess if they are designating
17  Mr. Schindler, or Dr. Schindler on this category, then that
18  is adequate.
19          THE COURT:  All right.  Let's just find out.
20          That was my question for Teles.  Will you
21  designate Professor Schindler as your 30(b)(6) witness on
22  this topic?
23          MR. LONG:  Your Honor, I think we can -- we can
24  safely do that.  It's a confusing topic, but he's the CEO
25  and whatever he says would be binding anyhow.

45

1           THE COURT:  Okay.
2           MR. LONG:  So I think that's --
3           THE COURT:  That takes care of Topic 30.
4           Now, Topic 40, about valuation of the
5   patents-in-suit.
6           It does seem to me, Ms. Shiferman, if it's going
7   to be you, that when a bifurcated case for damages discovery
8   is, for the most part, going to be after liability is
9   determined, that what you are asking for here is more than
10  necessary, but take a shot at telling me why I'm wrong.
11          MS. SHIFERMAN:  Your Honor, any valuation
12  of the patent necessarily includes a substance of analysis
13  regarding the patent.  It might entail information regarding
14  consideration of the merits of the patent, the scope, the
15  coverage, Teles' ability to enforce the patent.
16          We're not looking at this to establish the
17  actual numerical value associated with the patent.  That, I
18  agree, would be related to damages.  We are looking at this
19  on the substantive merits of what would go in to creating
20  that valuation and when that is a -- that may lead to
21  information, and I think likely will lead to information
22  that goes well beyond damages.
23          THE COURT:  And have you gotten any documents on
24  this topic?
25          MS. SHIFERMAN:  We have no valuation documents

46

1  that we've located to date, but we have received over
2  800,000 pages of e-mails as recently as Saturday and we are
3  still reviewing them.
4          THE COURT:  All right.  Does Teles want to speak
5  to Topic 40?
6          MR. LONG:  Yes, your Honor.  We -- our
7  understanding is they want valuation of the patents.  The
8  way it has been conducted in the meet and confer and the
9  correspondence with your Honor is purely the value of the
10  patents.
11          In all candor, I don't understand what else
12  Ms. Shiferman is saying this would relate to, but it's
13  plainly saying the valuation of the patents, which seeks
14  damages.  I don't know what else I would look for, if their
15  topic was more specific or otherwise.  But I just -- it
16  really seems pure damages to me.
17          THE COURT:  Okay.  I'm going to deny this
18  request.  While I understand the theory to be if there's --
19  I suppose, if Teles went out and hired an outside person to
20  say our patent is worth X number of millions of dollars, and
21  in the course of that analysis, the expert opined as to, you
22  know, how strong the patent is and how likely it is to
23  survive challenges to its validity, that, strictly speaking,
24  those types of analyses may go to a non-damages issue.
25  Since the request is encompassed within a request for

47

1  testimony about valuation, overwhelmingly, it has to do with
2  valuation and damages issues, and in a bifurcated case, I
3  think that is just asking for too much.
4          So I'm going to deny the request to require
5  Teles to put up a witness on Topic 40.
6          And then, finally, Topic 60, I think I need help
7  from Cisco.
8          Give me an idea or tell me what exactly you're
9  looking for.  Is it as broad as seeking salary information
10  for every employee of the holder of the patents?
11          MS. SHIFERMAN:  Absolutely not, your Honor.  We
12  are seeking information regarding the financial interest of
13  any person or entity that has something to do with the
14  outcome of this case.
15          For example, Teles has now assigned the patents
16  of the -- the patents-in-suit to SSGB, which is owned by Mr.
17  Schindler.  Teles remains a party in this case.  We would
18  inquire regarding any financial interest that Teles might
19  have in the outcome of this litigation.
20          For example, the inventors.  They might have an
21  interest in the outcome of this litigation.  We should
22  certainly inquire about that.  Rather, you know, Teles says
23  we can ask individual witnesses, but we are not deposing --
24  you know, we're deposing a limited number of witnesses and
25  the best information for this is from the company itself as

48

1  a 30(b)(6), to indicate to us who or what entity is going to
2  have a financial interest once this case is resolved, should
3  there be any monetary outcome.
4          THE COURT:  Okay.  And let me hear from Teles on
5  this.
6          MR. LONG:  Thank you, your Honor.
7          A key concern we have, in all candor, when I
8  conferred with Cisco, I asked were they seeking salary
9  information, and they said yes and anything else.  That's at
10  least where we are now.
11          The problem we have, you know the e-mail
12  discovery issue that you ruled on, Germany, like most
13  European countries, has a lot of things with privacy
14  protection, and we don't feel like Teles should be in a
15  position to disclose personal financial information of
16  individuals.
17          When it comes to the inventor, Cisco has
18  deposed, for example, Mr. Pesh (phonetic) and didn't ask any
19  of these questions of him.  I would certainly not expect
20  them to ask, what do you make.  I've never asked that in a
21  deposition, never heard it.
22          If they want to ask if he had any particular
23  interest beyond his normal salary or such, I think that's a
24  question they could ask them, but I don't want to put Teles
25  as a European country in a position where they are revealing

49

1  financial information of other people.  When it comes to
2  also Teles' interest in the patents and now the new patent's
3  owner, SSGB, it's kind of self-evident.  If they want to ask
4  Professor Schindler, who owns a control in all the shares of
5  SSGB, what his interest is in the patents, I think they can
6  say that.  Beyond that, the people who may be witnesses at
7  trial, I'm just afraid it's unduly burdensome, private
8  disclosure.
9          Lastly, Cisco has asked a lot of discovery about
10  how Teles can afford to litigate against it, so we're very
11  cautious that the discovery Cisco is seeking is not really
12  for any real relevance, but just to see what kind of
13  leveraging point it has as far as finances.  I would like to
14  say that's not the case, but I think that the information
15  they seek is subject to abuse.
16          THE COURT:  If I were to limit their ability to
17  get this discovery to financial interests of witnesses,
18  either at trial or at depositions -- I'm asking this
19  question of you, Mr. Long -- is that a workable limitation?
20  That is, are you prepared, or have you already told them who
21  those witnesses are?
22          MR. LONG:  Yes, your Honor.  That's what we
23  suggest to do.  We don't think it should go into regular
24  employment information.  That seems personal.  But we're
25  prepared to do that.  I believe we have identified all

50

1  witnesses we're aware of.  There may be third-party
2  witnesses that we're not aware of, we don't know who they
3  are.
4        For example -- well, I guess, I can't think of
5  an example.  Right now, I'm not aware of any, but discovery
6  is still going.  I know Cisco has some third-party subpoenas
7  out to third parties.  We might get some.  But I think we've
8  identified everyone we know so far and are willing to do
9  that for anyone else that we identify.
10       THE COURT:  All right.  Ms. Shiferman, anything
11 further?
12       MS. SHIFERMAN:  Yes your Honor.  Just briefly,
13 at this point, we do not know who the witnesses at trial
14 will be.  The only way to get a complete list of who has a
15 financial interest -- and, again, we are not seeking general
16 salary information, we are seeking information regarding the
17 entity that either people will get some sort of financial
18 payment or interest once this case is resolved rather
19 than general salary information.  The only way to get a
20 complete list is from the plaintiff in this case, which is
21 Teles.  We don't have information on who the parties will be
22 at trial.  That's ever-changing and those disclosures are
23 not due yet.
24       THE COURT:  All right.  On this one, on Topic
25 60, I am going to provide some relief to Cisco and I am

51

1  ordering that the plaintiff put up a witness, a 30(b)(6)
2  witness who can identify the individuals that will have a
3  financial interest in the outcome of the litigation.  By
4  that, I do not mean to include salary information or
5  just general benefits that come with employment, but an
6  actual financial stake that would be triggered, depending
7  on the -- directly triggered depending on the outcome of the
8  case.
9        At this point, I'm only ordering that the
10 30(b)(6) witness be someone who can identify who those
11 individuals are.  It's not necessary to get into even the
12 details of what that financial interest is.  And if it turns
13 out that Teles needs a further order from the Court in order
14 to comply with any laws that its subject to in other
15 countries in order to comply with this, then certainly I
16 will hear that request, if and when it is made.
17       I believe that exhausts all of the issues that
18 are before me.
19       Is that correct, Mr. Long?
20       MR. LONG:  Your Honor, if I can, I hesitate
21 asking, but I seek guidance from the Court on one issue
22 related to your ruling, and that is trying to confirm the
23 time of deposition for individuals.  The reason I say that
24 is we've offered individuals for two days and they declined.
25 They've ended early with the other depositions they've had

52

1  so far.
2        We are in London right now, after forming a
3  very complex schedule of who can do what when, and so the
4  parties might have a dispute if Cisco comes back and now
5  decide they want two days, for example, for people they've
6  declined, or they want more time with people they've already
7  finished with more time left under the current agreement.
8        So I think your guidance in the best way to deal
9  with that to keep the costs low, knowing that we're coming
10 to the end of discovery.
11       THE COURT:  I don't understand what the question
12 is.  Is it because I've given them more time with the
13 translator?
14       MR. LONG:  Yes, your Honor.  At the very outset,
15 when we do the schedule, we made clear all along that these
16 witnesses would need translators.  We offered two days for
17 several witnesses.  They declined.  The witnesses we did
18 offer, one, they started late and ended early.  The other
19 one, they ended an hour early.  So they have not used that
20 time.
21       I don't think time is a real issue your Honor
22 but if Cisco is going to seek more time under your order, I
23 think we'd like guidance as to maybe we work out a schedule
24 with Cisco and come back to your Honor or something, because
25 we're in London right now, right in the middle of

53

1  depositions.
2        THE COURT:  All right.
3        MR. LONG:  We have agreed to do them in London
4  because Cisco could not depose some people in Germany given
5  German law, but to save the travel time.  So we're in London
6  right now.  After very complex negotiation of what we would
7  do when, even us offering more time, I hate to upset that
8  apple cart could not and I hate, after this call, for Cisco
9  to suddenly ask for a change in time or to ask for more time
10 of witnesses that they were already denied having more time
11 for.
12       MS. SHIFERMAN:  Your Honor, if I may address
13 that point?
14       THE COURT:  Please do, yes.
15       MS. SHIFERMAN:  The two witnesses, you know,
16 two depositions of the inventors have already taken place.
17 And the dates were offered based on Judge Robinson's ruling
18 in this case, that any inventor can be deposed for 14 hours
19 instead of seven.  For those inventors that had taken place,
20 we determined that we did not need the additional time and
21 that would not change.
22       Mr. Long has not addressed the key depositions
23 that we were talking about, and, in particular, the
24 deposition of Mr. Gendner, who Teles is seeking to limit to
25 only four translated hours based -- and, you know, he's a

54

1  critical witness on inequitable conduct, and on his
2  declaration and with the translation taking into account
3  breaks, we effectively have maybe, you know, well under two
4  hours to actually -- actual effective deposition time.
5          That would certainly be one deposition that we
6  have raised with Teles and one of the things that really
7  pushed forward on -- made this issue important.
8          THE COURT:  All right.
9          MR. LONG:  Your Honor --
10         THE COURT:  Yes.  Go ahead.
11         MR. LONG:  I'm sorry.  I need to clarify,
12 particularly with Mr. Gendner, because there's a lot of
13 underlying facts you don't know.
14         Mr. Gendner is former in-house counsel for
15 Teles.  He was present at that interview and it was his
16 notes we provided.  He is no longer at Teles.  He's a
17 nonparty in Germany, in which we've asked him how much time
18 he would agree to be deposed.
19         We have no control over him.  He has agreed to
20 come to London, but he has only agreed for a few hours.  If
21 Cisco wants to -- we cannot make him -- to be clear, if Cisco
22 cannot make him do more hours than he wants.  If Cisco wants
23 to depose him more, then they need to go to the Hague
24 Convention, and we've sought to avoid that cost and begged
25 Mr. Gendner to come here.

55

1          That's all he would agree to.  He agreed to do a
2  declaration in this case, because he could do that without
3  much time and without travel.  He has been very reluctant to
4  do more.  So we could not provide more time with him if we
5  wanted to.
6          THE COURT:  All right.
7          MR. LONG:  If you ordered us to provide more
8  time, we couldn't do it.
9          THE COURT:  Mr. Long, are you planning to call
10 Mr. Gendner at trial?
11         MR. LONG:  At this instance, no, your Honor.
12 This deposition on this narrow topic should be all there is
13 for Mr. Gendner.
14         THE COURT:  All right.
15         MR. SHIFERMAN:  They are voluntarily relying on
16 this declaration.
17         THE COURT:  Right.  Look, my view and my ruling
18 earlier, which I'm happy to clarify now, is that whatever
19 the agreement was with respect to Mr. Gendner prior to
20 today's call has now been transformed into an agreement that
21 he is subject to deposition for twice as long as what was
22 agreed.  So if the agreement was four hours, it's now eight
23 hours if he's going to testify with the use of a translator
24 if he's not going to testify with the use of a translator,
25 then it remains what it was, which I'm advised is four

56

1  hours.
2          That's my order.  I will leave it to the parties
3  to do whatever they can or might with it.
4          Any other specifics that we need to get into
5  urgently right now, given where you all are?
6          Mr. Long?
7          MR. LONG:  No, thank you, your Honor.  I think
8  we'll be trying to deal with what you've done now.
9          THE COURT:  All right.
10         MS. SHIFERMAN:  If I may clarify also one of
11 your rulings, with respect to the timing of the privilege
12 log or production of documents related to the '431 patents,
13 I mean, Mr. Gendner is scheduled to be deposed on Sunday.  I
14 just wanted to specify a time, if you could, your Honor,
15 when that information would be provided, as it would be
16 critical to that deposition.
17         THE COURT:  Mr. Long, I understood that there
18 were only very few documents, maybe just one other set of
19 notes, so my understanding was that you could complete that
20 log very quickly.  But is that incorrect, Mr. Long?
21         MR. LONG:  Your Honor, my understanding is, for
22 Mr. Gendner's notebook, we can complete that as to that
23 interview fairly quickly.  I think given the time here, it
24 may not be tomorrow, but it may be Saturday.
25         THE COURT:  Okay.

57

1          MR. LONG:  That we can provide that to him.  And
2  his deposition is scheduled for Sunday.
3          THE COURT:  All right.  My order, then, is
4  modified to require that that privilege log be produced by
5  5:00 p.m. Saturday, London time.
6          Anything further, Ms. Shiferman?
7          MS. SHIFERMAN:  No, your Honor.
8          THE COURT:  And Mr. Long?
9          MR. LONG:  No, your Honor.
10         THE COURT:  Okay.  Thank you, counsel.  Bye-bye.
11         MR. LONG:  Thank you.
12         (Telephone conference concluded at 4:20 p.m.)
13              - - -
14
15
16
17
18
19
20
21
22
23
24
25

'
'431 [4] - 15:21, 19:12, 22:6, 56:12
'453 [5] - 22:8, 22:11, 27:8, 27:10, 27:12
'902 [1] - 28:10

**0**

00434265 [1] - 42:20
07-826 [1] - 18:5
09-072 [1] - 1:7
09-232 [1] - 1:14
09-232-SLR-LPS [1] - 3:20
09-72-SLR [1] - 3:19

**1**

1 [2] - 10:8, 18:6
12 [2] - 1:18, 29:6
12:00 [1] - 21:13
13 [1] - 41:18
1340 [1] - 30:16
14 [2] - 39:19, 53:18
15 [3] - 4:19, 6:12, 6:14
19 [4] - 6:2, 6:5, 6:13, 13:17
1991 [1] - 35:6
1996 [1] - 38:1
1997 [1] - 38:1

**2**

2 [5] - 5:4, 7:16, 8:8, 8:18, 14:4
20 [2] - 40:19, 41:18
2004 [1] - 30:16
2007 [1] - 19:13
2009 [1] - 1:18
26 [3] - 13:10, 30:3, 30:22
265 [1] - 42:24
271 [1] - 42:25
29 [1] - 13:11
29th [7] - 8:10, 8:14, 10:1, 14:22, 14:25, 40:17, 44:2

**3**

3 [1] - 41:9
30 [2] - 44:9, 45:3
30(b)(6 [5] - 44:7,

44:21, 48:1, 51:1, 51:10
30-some [1] - 10:22
34 [5] - 4:13, 4:23, 4:24, 6:14, 7:5
357 [1] - 30:16
37 [2] - 4:15, 4:24
3:00 [2] - 1:19, 3:5
3d [1] - 30:16

**4**

40 [6] - 9:5, 9:10, 13:2, 45:4, 46:5, 47:5
40-some [1] - 10:9
4:20 [1] - 57:12

**5**

502 [1] - 35:6
54 [2] - 6:1, 6:4
5:00 [1] - 57:5

**6**

6 [1] - 13:10
60 [2] - 47:6, 50:25
600 [1] - 32:9
64 [1] - 9:1
6th [1] - 17:12

**7**

7,000 [2] - 28:25, 32:10

**8**

800,000 [1] - 46:2

**9**

9 [1] - 41:18

**A**

ability [2] - 45:15, 49:16
able [2] - 9:12, 35:8
absolutely [1] - 47:11
abuse [1] - 49:15
Accenture [1] - 18:4
accept [2] - 7:7, 33:5
acceptance [1] - 10:7
access [1] - 30:13

accordingly [1] - 39:5
account [1] - 54:2
accused [1] - 43:6
act [1] - 33:10
ACTION [3] - 1:4, 1:8, 1:10
action [2] - 27:5, 27:11
Action [1] - 3:19
actions [2] - 21:2
actual [4] - 12:11, 45:17, 51:6, 54:4
add [3] - 6:13, 13:3, 13:12
added [5] - 4:17, 4:19, 4:20, 6:9, 27:15
adding [2] - 6:7, 41:13
addition [2] - 22:20, 40:24
additional [8] - 9:16, 13:1, 13:3, 21:17, 34:22, 37:9, 39:20, 53:20
address [12] - 8:2, 8:12, 9:7, 9:21, 11:22, 15:11, 22:24, 23:11, 23:14, 32:14, 53:12
addressed [9] - 15:18, 17:21, 18:6, 30:1, 30:15, 36:6, 40:10, 40:16, 53:22
addresses [1] - 22:3
addressing [1] - 8:3
adequacy [1] - 4:3
adequate [4] - 14:8, 14:16, 44:14, 44:18
admissible [1] - 30:23
admit [1] - 19:14
advantage [1] - 21:7
advised [1] - 55:25
afford [1] - 49:10
afraid [1] - 49:7
afternoon [3] - 3:7, 3:9, 3:13
AG [3] - 1:4, 1:14, 2:7
ago [1] - 19:10
agree [6] - 9:3, 24:1, 36:10, 45:18, 54:18, 55:1
agreed [6] - 27:3, 53:3, 54:19, 54:20, 55:1, 55:22
agreement [4] - 52:7, 55:19, 55:20, 55:22
ahead [1] - 54:10
allegation [2] - 19:18, 19:19
allegations [2] - 25:25, 41:5

allege [4] - 25:10, 25:11, 28:3, 29:17
alleged [3] - 15:21, 19:12, 25:7
alleges [1] - 27:24
allow [1] - 37:5
almost [1] - 9:5
amend [1] - 32:6
amount [3] - 7:11, 13:14, 21:17
analyses [1] - 46:24
analysis [3] - 7:19, 45:12, 46:21
AND [1] - 1:2
answer [1] - 6:20
anticipate [3] - 10:4, 11:25, 12:9
anticipated [1] - 5:1
anticipation [2] - 24:11, 24:18
anyhow [1] - 44:25
apologize [1] - 13:7
apparent [1] - 23:15
appear [2] - 23:14, 31:14
APPEARANCES [1] - 2:1
apple [1] - 53:8
applied [1] - 10:21
applies [2] - 25:21, 30:24
approach [1] - 44:4
approaches [1] - 43:23
appropriate [2] - 6:10, 12:3
area [1] - 10:16
argue [2] - 20:7, 39:5
argued [3] - 8:15, 26:21, 27:16
argues [2] - 23:24, 35:22
argument [5] - 7:14, 14:18, 23:9, 35:24, 39:3
arisen [1] - 3:22
ARSHT [1] - 2:10
art [15] - 5:25, 6:5, 6:8, 7:2, 7:4, 7:5, 7:7, 11:14, 11:24, 25:8, 26:24, 27:5, 28:3, 29:17, 34:2
articulate [1] - 39:25
articulated [1] - 24:16
articulating [1] - 39:14
ASHBY [1] - 2:2
Ashby [1] - 3:14
asserted [11] - 9:4, 10:5, 11:5, 11:25, 12:10, 13:2, 16:1,

16:2, 27:8, 30:2, 34:2
asserting [3] - 27:17, 31:10, 33:21
assigned [1] - 47:15
associated [1] - 45:17
assume [1] - 17:13
attached [2] - 19:23, 31:18
attaches [1] - 27:22
attaching [2] - 19:17, 20:4
attempt [1] - 39:1
attempted [1] - 8:22
attendees [1] - 20:23
attention [1] - 38:9
attorney [3] - 27:21, 29:7, 33:9
attorney/client [6] - 17:23, 18:1, 18:6, 26:20, 27:20, 31:9
attorneys [2] - 22:22, 32:21
attorneys' [1] - 26:9
authority [9] - 33:5, 33:10, 33:15, 36:11, 36:14, 36:15, 39:16, 39:22, 40:1
automatically [1] - 42:23
available [3] - 16:3, 16:7, 33:11
avoid [1] - 54:24
aware [7] - 23:21, 26:10, 31:1, 43:24, 50:1, 50:2, 50:5

**B**

background [1] - 40:10
backup [2] - 35:3, 35:10
bare [1] - 41:13
based [11] - 4:25, 8:17, 17:24, 22:5, 27:5, 31:7, 40:20, 41:17, 41:22, 53:17, 53:25
bases [1] - 27:23
basis [8] - 13:21, 13:22, 25:6, 27:11, 29:13, 31:6, 34:2, 39:25
BEFORE [1] - 1:22
begged [1] - 54:24
begin [1] - 4:1
beginning [4] - 3:5, 21:14, 40:19, 42:13

behalf [2] - 3:14, 23:4
believes [1] - 43:6
benefits [1] - 51:5
best [6] - 15:11, 42:10,
  43:9, 44:4, 47:25,
  52:8
between [6] - 3:22,
  18:16, 20:4, 24:18,
  26:18, 34:5
beyond [7] - 13:20,
  31:15, 34:11, 35:12,
  45:22, 48:23, 49:6
bifurcated [2] - 45:7,
  47:2
binding [1] - 44:25
BLUMENFELD [4] -
  2:11, 3:9, 37:19,
  37:25
Blumenfeld [5] - 3:10,
  36:4, 36:8, 37:20,
  38:15
Boston [1] - 2:15
breadth [1] - 14:11
breaks [1] - 54:3
bridge [1] - 38:18
brief [1] - 39:6
briefing [2] - 10:12,
  32:5
briefings [1] - 25:18
briefly [4] - 37:17,
  40:11, 44:14, 50:12
bring [1] - 38:9
bringing [1] - 39:25
broad [4] - 11:7,
  26:12, 30:22, 47:9
broader [2] - 7:15,
  19:8
brought [1] - 4:14
burden [1] - 34:4
burdened [1] - 26:2
burdensome [4] -
  28:2, 29:11, 34:12,
  49:7
bury [1] - 43:8
business [2] - 35:9,
  36:23
BY [4] - 2:2, 2:5, 2:11,
  2:14
bye [2] - 57:10
bye-bye [1] - 57:10

**C**

candor [3] - 26:12,
  46:11, 48:7
cannot [2] - 54:21,
  54:22
Carbide [2] - 25:15,
  29:15

care [1] - 45:3
carefully [1] - 24:4
cart [1] - 53:8
case [63] - 4:18, 4:20,
  6:9, 6:13, 9:4, 9:8,
  9:14, 9:21, 10:19,
  12:2, 12:14, 13:2,
  14:5, 14:9, 14:16,
  16:16, 17:2, 17:16,
  18:2, 19:9, 19:10,
  19:21, 22:4, 22:24,
  25:14, 26:2, 26:4,
  27:7, 27:15, 28:17,
  29:15, 29:24, 29:25,
  30:4, 30:16, 30:18,
  30:21, 30:25, 31:10,
  31:12, 33:7, 35:4,
  35:6, 35:7, 36:5,
  36:9, 38:16, 40:25,
  41:7, 44:5, 45:7,
  47:2, 47:14, 47:17,
  48:2, 49:14, 50:18,
  50:20, 51:8, 53:18,
  55:2
cases [5] - 3:18, 16:6,
  21:8, 27:2, 27:18
catch [1] - 23:18
categories [2] - 16:9,
  30:19
category [1] - 44:17
cautious [1] - 49:11
CEO [1] - 44:24
certain [8] - 10:12,
  18:18, 20:12, 21:2,
  33:11, 37:2, 44:7
certainly [14] - 12:7,
  12:23, 12:25, 13:13,
  18:21, 25:21, 26:1,
  32:8, 32:13, 40:3,
  47:22, 48:19, 51:15,
  54:5
certainty [1] - 37:4
challenges [1] - 46:23
chambers [1] - 3:5
change [3] - 31:2,
  53:9, 53:21
changing [2] - 37:16,
  50:22
chart [1] - 9:19
charts [17] - 4:13,
  4:16, 4:18, 4:19,
  4:25, 5:4, 6:2, 6:6,
  6:8, 6:11, 8:20, 10:6,
  10:20, 10:23, 10:25,
  11:3, 11:23
Christie [1] - 23:8
Circuit [1] - 30:15
cISCO [1] - 1:8
Cisco [59] - 2:17, 3:10,
  3:18, 3:19, 4:3, 5:14,

7:2, 7:24, 10:18,
  11:24, 12:15, 14:7,
  14:8, 14:12, 15:6,
  15:8, 15:14, 23:6,
  23:9, 25:2, 25:25,
  27:8, 27:16, 27:17,
  28:9, 28:11, 33:1,
  33:7, 33:17, 34:2,
  34:10, 34:21, 35:18,
  37:8, 39:3, 39:14,
  39:24, 40:12, 41:1,
  41:22, 42:15, 42:20,
  43:7, 43:11, 44:9,
  47:7, 48:8, 48:17,
  49:9, 49:11, 50:6,
  50:25, 52:4, 52:22,
  52:24, 53:4, 53:8,
  54:21, 54:22
CISCO [1] - 1:11
Cisco's [16] - 4:2,
  4:10, 6:21, 8:16,
  13:22, 14:3, 19:18,
  22:4, 23:24, 27:11,
  36:4, 40:7, 43:1,
  43:5, 43:16, 44:6
citation [3] - 18:3,
  22:10, 41:6
citations [2] - 40:24,
  41:13
cite [6] - 5:3, 34:22,
  35:6, 38:16, 42:19,
  43:5
cited [16] - 7:3, 7:4,
  7:5, 8:18, 16:6, 21:8,
  23:11, 25:15, 27:3,
  27:19, 29:23, 31:8,
  33:7, 35:5, 40:15
Civil [1] - 3:18
CIVIL [2] - 1:4, 1:8
clVIL [1] - 1:10
claim [19] - 4:13, 4:16,
  4:17, 4:19, 10:21,
  10:22, 11:23, 12:6,
  12:10, 17:22, 26:6,
  26:14, 26:16, 27:25,
  30:10, 34:14, 41:10
claiming [2] - 13:21,
  13:23
claims [17] - 4:18,
  4:20, 6:8, 6:12, 9:5,
  9:6, 9:7, 9:10, 9:11,
  10:5, 11:5, 12:1,
  12:21, 13:2, 13:3,
  26:9, 34:3
clarify [3] - 54:11,
  55:18, 56:10
classic [4] - 21:4,
  21:5, 27:18, 28:12
clear [8] - 4:25, 5:22,
  17:17, 21:11, 25:19,

37:17, 52:15, 54:21
clearly [1] - 43:11
client [9] - 18:19, 25:3,
  26:4, 26:8, 26:18,
  27:4, 28:6, 33:9,
  33:14
clients [1] - 34:6
close [1] - 7:5
closer [1] - 12:13
clued [1] - 5:18
code [1] - 42:12
combination [2] - 5:2,
  12:10
combine [3] - 10:15,
  10:16, 10:19
combined [4] - 5:4,
  5:5, 5:6, 11:3
comfortable [1] - 35:2
comfortably [1] - 35:9
coming [6] - 17:12,
  21:18, 23:6, 32:22,
  41:1, 52:9
comments [2] - 31:22,
  32:16
communication [9] -
  18:15, 19:24, 20:9,
  26:3, 26:20, 27:3,
  27:21, 28:5, 29:13
communications [7] -
  18:22, 20:4, 21:13,
  25:3, 25:5, 32:20,
  34:5
company [1] - 47:25
complaint [5] - 4:2,
  5:24, 8:19, 40:7,
  40:14
complaints [2] - 15:6,
  44:6
complete [6] - 21:16,
  21:21, 50:14, 50:20,
  56:19, 56:22
completed [1] - 13:1
completing [1] - 28:19
complex [2] - 52:3,
  53:6
compliance [1] - 40:8
complied [1] - 41:14
comply [2] - 51:14,
  51:15
concern [4] - 20:24,
  24:5, 34:25, 48:7
concerning [1] - 21:9
concerns [1] - 28:3
concluded [1] - 57:12
conduct [28] - 16:11,
  17:4, 17:5, 18:21,
  19:11, 19:19, 22:5,
  22:8, 22:21, 25:7,
  25:8, 25:11, 25:13,
  25:17, 25:25, 26:23,

29:17, 29:21, 30:7,
  30:20, 34:3, 34:15,
  34:23, 35:19, 36:23,
  37:6, 54:1
conducted [2] - 36:15,
  46:8
conducting [1] - 35:9
confer [3] - 11:22,
  23:15, 46:8
conference [3] - 1:19,
  3:5, 57:12
conferences [1] -
  36:24
conferred [4] - 8:9,
  11:16, 15:3, 48:8
confers [1] - 20:11
confirm [2] - 44:12,
  51:22
confirmed [1] - 31:16
confusing [1] - 44:24
consider [1] - 9:20
consideration [1] -
  45:14
constraints [1] - 35:13
construction [6] -
  26:7, 26:15, 26:16,
  27:25, 30:10, 34:14
contained [1] - 8:8
contends [1] - 41:2
contention [3] - 40:17,
  43:19
contentions [10] - 4:2,
  4:10, 4:16, 5:8, 10:6,
  10:10, 40:9, 41:16,
  42:6, 43:17
context [2] - 6:24,
  38:24
continue [2] - 11:10,
  42:1
continues [1] - 41:2
control [5] - 16:25,
  33:12, 33:13, 49:4,
  54:19
controls [1] - 33:8
Convention [1] -
  54:24
conversation [1] -
  14:22
cooperation [1] -
  17:15
copy [1] - 19:23
correct [1] - 51:19
correspondence [1] -
  46:9
corresponding [1] -
  22:23
cost [1] - 54:24
costs [1] - 52:9
counsel [25] - 2:7,
  15:20, 15:24, 48:7,

16:4, 16:10, 16:13, 17:1, 17:9, 18:16, 22:1, 22:13, 23:24, 24:19, 26:18, 27:4, 29:15, 30:11, 33:9, 33:12, 34:6, 36:4, 38:17, 54:14, 57:10
**Counsel** [1] - 2:16
**counteracting** [1] - 9:23
**Counterclaim** [2] - 1:6, 1:10
**Counterclaim-Defendant** [1] - 1:6
**Counterclaim-Plaintiff** [1] - 1:10
**counterparts** [1] - 30:3
**countries** [2] - 48:13, 51:15
**country** [1] - 48:25
**couple** [3] - 5:9, 15:12, 32:22
**course** [5] - 3:23, 23:22, 27:15, 28:14, 46:21
**court** [1] - 9:9
**COURT** [57] - 1:1, 3:7, 3:12, 3:17, 5:9, 5:12, 6:15, 6:20, 7:13, 7:23, 12:2, 13:5, 13:24, 18:9, 18:14, 18:25, 20:2, 21:21, 23:1, 24:10, 24:21, 26:5, 28:18, 29:18, 32:24, 36:7, 37:11, 37:24, 38:11, 39:10, 42:4, 43:14, 44:19, 45:1, 45:3, 45:23, 46:4, 46:17, 48:4, 49:16, 50:10, 50:24, 52:11, 53:2, 53:14, 54:8, 54:10, 55:6, 55:9, 55:14, 55:17, 56:9, 56:17, 56:25, 57:3, 57:8, 57:10
**Court** [26] - 1:24, 4:21, 7:14, 7:18, 8:5, 8:15, 8:22, 8:23, 9:18, 16:15, 16:16, 16:19, 16:21, 17:7, 17:14, 17:18, 18:2, 27:24, 30:8, 31:12, 31:19, 32:10, 33:5, 43:18, 51:13, 51:21
**Court's** [2] - 29:10, 39:1
**Courts** [1] - 27:3
**cover** [1] - 16:5
**coverage** [1] - 45:15
**covering** [1] - 11:20
**create** [1] - 29:12
**created** [4] - 28:4, 29:9, 33:24, 33:25
**creating** [1] - 45:19
**critical** [3] - 41:4, 54:1, 56:16
**cross** [1] - 38:19
**cure** [2] - 32:8, 32:9
**current** [1] - 52:7
**custody** [1] - 16:24
**cut** [1] - 42:17

**D**

**D.C** [1] - 2:6
**damages** [7] - 45:7, 45:18, 45:22, 46:14, 46:16, 46:24, 47:2
**date** [6] - 28:24, 40:21, 41:17, 41:22, 42:6, 46:1
**dates** [1] - 53:17
**DAVID** [1] - 2:5
**David** [3] - 3:15, 23:3, 38:13
**days** [5] - 21:18, 32:22, 51:24, 52:5, 52:16
**deal** [5] - 29:7, 29:16, 39:4, 52:8, 56:8
**December** [2] - 19:13, 21:15
**decide** [1] - 52:5
**decided** [4] - 17:7, 17:10, 31:12, 36:20
**decision** [7] - 25:15, 25:16, 26:11, 35:24, 36:2, 36:3, 36:16
**declaration** [7] - 19:16, 21:5, 24:4, 31:18, 54:2, 55:2, 55:16
**declaratory** [2] - 27:9, 27:11
**declined** [3] - 51:24, 52:6, 52:17
**Defendant** [2] - 1:6, 1:9
**defendant** [1] - 1:15
**defense** [5] - 19:18, 21:1, 22:5, 22:8, 30:7
**defense's** [1] - 30:8
**deficiencies** [1] - 15:7
**DELAWARE** [1] - 1:2
**Delaware** [2] - 1:18, 29:25
**delayed** [1] - 32:5
**denied** [2] - 17:7, 53:10
**deny** [4] - 14:1, 43:15, 46:17, 47:4
**depose** [2] - 53:4, 54:23
**deposed** [4] - 48:18, 53:18, 54:18, 56:13
**deposing** [2] - 47:23, 47:24
**deposition** [26] - 32:23, 34:23, 35:2, 35:10, 35:14, 35:15, 35:16, 35:19, 36:2, 37:7, 37:15, 38:4, 39:8, 39:9, 39:18, 41:22, 44:13, 48:21, 51:23, 53:24, 54:4, 54:5, 55:12, 55:21, 56:16, 57:2
**depositions** [20] - 11:10, 12:18, 12:25, 14:7, 32:12, 32:17, 32:21, 34:20, 36:21, 38:20, 41:1, 41:25, 43:12, 43:13, 44:7, 49:18, 51:25, 53:1, 53:16, 53:22
**designate** [1] - 44:21
**designating** [1] - 44:16
**detail** [5] - 6:24, 9:25, 10:25, 12:18, 14:12
**detailed** [6] - 8:9, 9:17, 10:5, 10:9, 10:12, 10:20
**details** [1] - 51:12
**determine** [2] - 39:16, 40:2
**determined** [2] - 45:9, 53:20
**dictate** [1] - 36:11
**difference** [1] - 7:9
**different** [10] - 9:5, 9:10, 11:9, 11:15, 36:1, 37:14, 38:20, 38:24, 40:13, 43:23
**differentiates** [1] - 30:18
**difficult** [2] - 35:16, 43:18
**direct** [1] - 33:10
**directed** [1] - 4:11
**direction** [1] - 17:1
**directly** [3] - 18:10, 33:6, 51:7
**disclaimer** [1] - 26:8
**disclaimers** [1] - 16:4
**disclose** [1] - 48:15
**discloses** [1] - 24:14
**disclosing** [1] - 20:6
**disclosure** [5] - 18:23, 31:24, 32:1, 32:2, 49:8
**disclosures** [1] - 50:22
**discover** [1] - 43:10
**discoverable** [2] - 16:17, 30:3
**discovered** [1] - 9:17
**discovery** [52] - 3:22, 8:25, 9:5, 9:15, 11:11, 12:15, 12:25, 14:6, 15:7, 15:19, 15:25, 16:1, 16:2, 16:8, 16:22, 17:5, 17:14, 18:9, 22:1, 23:10, 25:19, 26:12, 28:5, 29:14, 30:6, 30:17, 30:19, 30:25, 31:9, 31:23, 32:4, 32:18, 33:1, 33:6, 33:11, 34:14, 36:10, 38:23, 38:24, 39:17, 39:23, 41:19, 42:2, 45:7, 48:12, 49:9, 49:11, 49:17, 50:5, 52:10
**discretion** [1] - 36:16
**discuss** [1] - 3:21
**discussion** [1] - 8:11
**dispute** [10] - 5:14, 8:7, 11:17, 13:25, 14:1, 14:3, 24:25, 33:16, 39:25, 52:4
**disputes** [3] - 3:22, 39:23, 40:6
**distinguish** [1] - 27:5
**DISTRICT** [2] - 1:1, 1:2
**District** [2] - 29:25, 35:6
**docket** [1] - 18:5
**document** [7] - 18:13, 28:2, 28:22, 31:4, 42:19, 42:21, 42:24
**documents** [47] - 16:25, 17:9, 17:12, 17:15, 17:19, 17:24, 18:7, 18:12, 18:18, 21:22, 21:24, 22:10, 22:15, 22:16, 22:18, 22:21, 22:22, 22:24, 26:24, 27:1, 28:6, 28:13, 28:24, 28:25, 29:6, 29:21, 30:1, 30:11, 30:14, 33:20, 33:21, 33:23, 33:24, 34:1, 40:24, 41:7, 41:14, 42:5, 42:11, 43:5, 43:9, 44:3,
45:23, 45:25, 56:12, 56:18
**dollars** [1] - 46:20
**done** [10] - 9:20, 9:24, 10:3, 12:12, 25:6, 27:13, 28:13, 41:22, 43:4, 56:8
**doubt** [1] - 41:20
**down** [2] - 12:11, 35:25
**Dr** [2] - 36:23, 44:17
**due** [1] - 50:23
**during** [19] - 5:24, 8:14, 12:25, 15:22, 16:8, 19:3, 19:7, 19:8, 20:11, 22:6, 22:11, 23:22, 24:1, 27:15, 31:23, 32:4, 32:15, 33:24, 40:17

**E**

**e-mail** [2] - 28:24, 48:11
**e-mails** [3] - 32:10, 32:11, 46:2
**early** [3] - 51:25, 52:18, 52:19
**Ed** [1] - 29:24
**effective** [2] - 33:13, 54:4
**effectively** [1] - 54:3
**efforts** [1] - 44:12
**eight** [1] - 55:22
**either** [5] - 11:25, 20:25, 39:24, 49:18, 50:17
**elements** [1] - 7:20
**employee** [1] - 47:10
**employment** [2] - 49:24, 51:5
**encompassed** [1] - 46:25
**end** [6] - 28:15, 33:8, 41:19, 43:11, 43:13, 52:10
**ended** [3] - 51:25, 52:18, 52:19
**enforce** [2] - 23:9, 45:15
**enforcement** [1] - 23:7
**English** [11] - 35:3, 35:8, 35:9, 35:10, 35:18, 35:21, 36:22, 36:23, 36:25, 37:6, 38:4
**entail** [1] - 45:13
**enter** [1] - 28:10
**entered** [1] - 4:18

entitled [1] - 11:18
entity [3] - 47:13, 48:1, 50:17
entries [2] - 21:15, 32:10
especially [1] - 29:10
ESQ [6] - 2:2, 2:5, 2:5, 2:11, 2:14, 2:14
establish [1] - 45:16
European [2] - 48:13, 48:25
evaluate [1] - 43:18
event [1] - 28:1
events [2] - 18:20, 26:23
ever-changing [1] - 50:22
evidence [3] - 11:8, 30:24, 34:10
evident [1] - 49:3
evidentiary [4] - 40:21, 41:17, 41:23, 43:5
exactly [6] - 12:5, 20:13, 35:11, 38:2, 38:5, 47:8
exam [4] - 6:23, 7:3, 7:4, 7:11
examination [3] - 14:13, 28:11, 28:14
examinations [1] - 28:8
Examiner [8] - 15:22, 19:1, 19:13, 19:15, 20:4, 23:20, 23:23, 33:23
example [14] - 18:14, 18:17, 21:5, 30:9, 37:21, 41:4, 41:9, 42:17, 47:15, 47:20, 48:18, 50:4, 50:5, 52:5
examples [2] - 10:23, 18:24
exhausts [1] - 51:17
exhibit [1] - 31:18
Exhibit [1] - 10:8
exhibits [1] - 10:23
exists [1] - 22:14
expect [2] - 43:12, 48:19
expected [1] - 14:21
expert [5] - 11:10, 12:15, 42:2, 46:21
experts [2] - 12:19, 42:14
explain [3] - 40:20, 41:16, 43:6
explained [2] - 7:22, 21:8

explaining [3] - 10:9, 40:1, 41:11
explains [2] - 10:10, 32:20
explanation [1] - 42:16
expressly [3] - 30:1, 40:16, 40:19
extensive [1] - 6:23
extent [15] - 5:2, 8:12, 9:19, 10:21, 11:4, 11:18, 12:10, 13:8, 14:14, 15:17, 20:13, 20:15, 26:19, 28:19, 34:24

# F

fact [5] - 4:15, 10:10, 14:6, 15:11, 17:2, 17:21, 23:15, 27:10, 30:1, 32:15, 34:5
factoring [1] - 34:9
facts [4] - 19:23, 24:5, 31:20, 54:13
factual [1] - 20:17
fairly [2] - 30:20, 56:23
fallback [1] - 42:22
far [6] - 13:19, 24:7, 24:9, 49:13, 50:8, 52:1
feared [1] - 27:12
feature [1] - 40:3
features [3] - 41:6, 41:8
February [1] - 19:11
Federal [1] - 30:15
federal [1] - 30:22
few [3] - 23:5, 54:20, 56:18
file [3] - 26:17, 29:13, 29:16
filed [1] - 17:25
files [5] - 16:15, 25:9, 25:23, 30:17, 32:19
filing [1] - 29:8
fill [1] - 37:22
finally [3] - 32:11, 44:6, 47:6
finances [1] - 49:13
financial [11] - 47:12, 47:18, 48:2, 48:15, 49:1, 49:17, 50:15, 50:17, 51:3, 51:6, 51:12
fine [3] - 7:8, 13:16, 43:14
finished [1] - 52:7
finite [1] - 25:8

firm [16] - 3:16, 16:25, 17:2, 17:3, 17:8, 23:4, 23:8, 23:16, 25:2, 25:9, 25:24, 26:2, 26:13, 28:4, 29:5
firm's [1] - 17:20
first [23] - 4:1, 4:6, 5:12, 8:3, 8:4, 8:15, 15:8, 15:12, 15:18, 15:23, 16:22, 19:9, 20:3, 23:5, 27:7, 29:14, 33:22, 34:16, 39:8, 42:5, 42:19, 42:21, 44:9
fluctuates [1] - 29:2
focus [2] - 12:18, 13:15
focused [5] - 4:11, 5:25, 8:4, 38:22, 38:23
following [1] - 3:4
followup [2] - 20:25, 21:10
footnote [1] - 18:6
FOR [1] - 1:2
force [2] - 8:23, 9:15
forcing [1] - 37:6
form [3] - 9:17, 10:6, 32:19
former [1] - 54:14
forming [1] - 52:2
forms [1] - 11:9
forward [5] - 28:8, 35:2, 35:15, 35:20, 54:7
forwarding [1] - 41:5
four [5] - 3:24, 19:25, 53:25, 55:22, 55:25
frame [1] - 21:23
FREDERICKSON [1] - 2:14
Frederickson [1] - 3:11
French [2] - 38:2, 38:3
Friday [1] - 17:12
front [12] - 8:13, 9:10, 9:11, 12:21, 14:18, 15:1, 24:17, 33:2, 35:21, 36:12, 39:15, 39:25
fruit [1] - 23:19
full [1] - 41:24
fully [3] - 9:3, 37:8, 39:22
future [1] - 39:24

# G

Geddes [1] - 3:14
GEDDES [1] - 2:2
Gendner [12] - 19:2, 19:16, 20:19, 31:18, 53:24, 54:12, 54:14, 54:25, 55:10, 55:13, 55:19, 56:13
Gendner's [5] - 23:25, 24:3, 31:21, 32:22, 56:22
general [6] - 10:16, 16:14, 30:5, 50:15, 50:19, 51:5
generally [7] - 9:1, 10:18, 11:8, 15:23, 16:7, 22:20, 31:22
German [6] - 10:11, 22:10, 29:2, 34:20, 37:7, 53:5
Germany [3] - 48:12, 53:4, 54:17
GEYER [1] - 2:2
given [12] - 10:25, 14:5, 14:11, 24:24, 32:15, 34:8, 37:9, 44:4, 52:12, 53:4, 56:5, 56:23
Global [1] - 18:4
GOODWIN [1] - 2:13
great [1] - 37:4
guess [4] - 19:5, 23:18, 44:16, 50:4
guidance [4] - 29:11, 51:21, 52:8, 52:23
Guidewire [1] - 18:4
Gunning [1] - 1:24

# H

Hague [1] - 54:23
Hale [1] - 23:8
hand [1] - 21:9
handful [1] - 7:4
handle [1] - 39:23
hands [1] - 39:1
hanging [1] - 23:18
happy [2] - 7:3, 55:18
hate [2] - 53:7, 53:8
head [1] - 23:19
hear [9] - 4:6, 15:8, 15:13, 23:1, 39:11, 40:3, 42:4, 48:4, 51:16
heard [4] - 32:24, 36:24, 43:22, 48:21
hearing [10] - 4:12,

5:24, 8:10, 8:14, 10:1, 13:9, 23:6, 24:24, 29:10, 40:17
held [1] - 3:5
help [1] - 47:6
hesitate [1] - 51:20
hire [1] - 29:3
hired [1] - 46:19
history [3] - 6:23, 19:14, 26:17
hit [1] - 23:19
holder [1] - 47:10
holding [1] - 21:9
Honor [46] - 3:9, 3:13, 4:7, 6:18, 7:1, 8:1, 13:7, 15:15, 19:5, 23:3, 23:17, 23:19, 24:1, 24:13, 24:23, 26:10, 29:23, 34:25, 36:13, 36:20, 37:19, 38:5, 38:13, 40:15, 42:8, 42:20, 44:23, 45:11, 46:6, 46:9, 47:11, 48:6, 49:22, 50:12, 51:20, 52:14, 52:21, 52:24, 53:12, 54:9, 55:11, 56:7, 56:14, 56:21, 57:7, 57:9
Honor's [2] - 7:6, 38:9
HONORABLE [1] - 1:22
hour [1] - 52:19
hours [10] - 39:19, 53:18, 53:25, 54:4, 54:20, 54:22, 55:22, 55:23, 56:1
house [1] - 54:14
HOWREY [1] - 2:4
Howrey [5] - 3:16, 4:8, 17:2, 23:4, 42:9

# I

idea [1] - 47:8
ideal [1] - 44:4
identified [3] - 10:3, 49:25, 50:8
identify [3] - 50:9, 51:2, 51:10
III [1] - 2:14
impact [1] - 36:18
importance [1] - 34:8
important [1] - 54:7
impression [1] - 24:6
impressions [3] - 19:22, 20:20, 31:21
improper [1] - 38:25
improperly [1] - 25:20

**IN** [2] - 1:1, 1:2
**in-house** [1] - 54:14
**inadequate** [1] - 4:10
**inarticulated** [1] - 26:18
**inaudible)** [1] - 16:20
**Inc** [1] - 2:17
**INC** [2] - 1:8, 1:11
**include** [4] - 19:21, 20:20, 33:23, 51:4
**includes** [5] - 20:23, 24:10, 32:21, 33:19, 45:12
**including** [4] - 14:13, 21:23, 30:2, 32:22
**incorporated** [2] - 14:14, 44:3
**incorrect** [1] - 56:20
**independent** [1] - 14:19
**indicate** [1] - 48:1
**indicated** [2] - 17:22, 40:19
**indicates** [1] - 31:8
**individual** [1] - 47:23
**individuals** [6] - 19:25, 48:16, 51:2, 51:11, 51:23, 51:24
**inequitable** [23] - 16:11, 17:4, 18:20, 19:11, 19:19, 22:4, 22:5, 22:7, 22:21, 25:7, 25:11, 25:13, 25:17, 25:24, 26:23, 29:17, 29:21, 30:7, 30:20, 34:3, 34:15, 54:1
**inequity** [1] - 35:18
**information** [40] - 7:22, 9:16, 10:13, 11:19, 11:24, 12:8, 12:22, 13:22, 15:24, 16:3, 16:7, 16:10, 16:12, 16:14, 16:17, 21:7, 21:9, 21:17, 22:12, 22:18, 30:12, 43:10, 44:10, 45:13, 47:25, 48:9, 48:15, 49:1, 49:14, 49:24, 50:16, 50:19, 50:21, 51:4, 56:15
**Informationstechnol goien** [1] - 2:8
**INFORMATIONSTEC HNOLOGIEN** [2] - 1:5, 1:14
**informed** [1] - 17:11
**infringe** [2] - 41:3, 41:12

**infringement** [8] - 40:9, 40:16, 40:20, 41:16, 41:25, 43:16, 43:17
**inherent** [1] - 7:18
**inquire** [2] - 47:18, 47:22
**insert** [1] - 42:17
**instance** [3] - 27:20, 29:14, 55:11
**instances** [1] - 43:22
**instead** [2] - 19:15, 53:19
**instruction** [1] - 41:15
**instructions** [1] - 17:8
**insufficient** [1] - 41:20
**intend** [2] - 37:15, 42:11
**intending** [1] - 28:20
**intends** [1] - 43:4
**interest** [11] - 47:12, 47:18, 47:21, 48:2, 48:23, 49:2, 49:5, 50:15, 50:18, 51:3, 51:12
**interested** [1] - 13:9
**interests** [1] - 49:17
**interpretations** [2] - 20:16, 20:20
**interrogatories** [12] - 5:16, 7:6, 9:23, 9:24, 11:15, 11:17, 11:20, 13:20, 23:11, 31:4, 43:20, 43:23
**interrogatory** [11] - 7:10, 8:16, 11:7, 11:12, 11:13, 11:23, 13:20, 14:15, 14:20, 43:24
**Interrogatory** [5] - 5:4, 7:16, 8:8, 8:18, 14:4
**interrupt** [2] - 20:2, 36:7
**interview** [37] - 15:21, 19:1, 19:3, 19:7, 19:8, 19:12, 19:15, 19:17, 19:22, 19:25, 20:1, 20:21, 20:22, 20:24, 20:25, 21:1, 21:3, 21:10, 21:22, 21:23, 22:3, 23:20, 24:2, 24:6, 24:9, 24:11, 24:12, 24:14, 24:15, 24:18, 33:22, 33:24, 33:25, 34:1, 54:15, 56:23
**introduced** [1] - 6:13
**invalid** [1] - 8:17
**invalidate** [1] - 12:16
**invalidates** [1] - 12:5

**invalidity** [12] - 4:2, 4:10, 5:8, 10:10, 10:11, 10:24, 13:21, 13:23, 14:4, 22:11, 22:25, 30:9
**invasive** [1] - 28:14
**inventor** [2] - 48:17, 53:18
**inventors** [3] - 47:20, 53:16, 53:19
**involved** [1] - 24:7
**involves** [2] - 27:6, 34:23
**issue** [54] - 8:4, 8:5, 8:7, 8:10, 14:24, 15:3, 15:4, 15:20, 16:19, 16:20, 17:4, 17:6, 17:10, 17:13, 17:17, 17:18, 17:22, 18:1, 18:3, 18:5, 18:7, 19:4, 19:10, 19:21, 22:4, 22:21, 23:5, 28:7, 30:16, 31:2, 31:3, 31:7, 31:10, 31:11, 31:25, 32:5, 32:14, 32:25, 33:2, 34:15, 35:5, 35:12, 35:22, 36:6, 36:20, 37:25, 38:18, 40:10, 40:17, 46:24, 48:12, 51:21, 52:21, 54:7
**issued** [4] - 16:20, 16:23, 31:5, 33:4
**issues** [15] - 11:16, 15:10, 15:17, 22:9, 22:24, 23:2, 26:4, 30:25, 32:25, 34:16, 34:18, 36:19, 41:4, 47:2, 51:17
**issuing** [1] - 27:9
**itself** [9] - 16:23, 19:14, 25:4, 26:17, 28:9, 28:11, 33:13, 41:11, 47:25

**J**

**JACK** [1] - 2:11
**Jack** [2] - 3:10, 37:19
**JUDGE** [1] - 1:22
**Judge** [29] - 3:8, 4:11, 4:14, 5:13, 5:17, 5:18, 5:21, 6:3, 6:9, 6:16, 13:10, 13:12, 14:21, 17:5, 17:21, 18:7, 25:13, 25:16, 29:14, 31:7, 36:5, 36:12, 38:1, 39:4, 40:8, 40:16, 41:15,

44:2, 53:17
**judgment** [3] - 17:6, 27:9, 27:11
**jurisdiction** [1] - 31:3
**jury** [4] - 9:10, 9:12, 12:21, 35:21
**justified** [2] - 34:12

**K**

**keep** [2] - 27:7, 52:9
**key** [8] - 9:6, 9:20, 12:19, 35:12, 36:21, 37:2, 48:7, 53:22
**kind** [4] - 35:15, 40:9, 49:3, 49:12
**knowing** [1] - 52:9
**knowledge** [6] - 18:19, 22:10, 22:16, 22:17, 26:22
**known** [1] - 35:25

**L**

**labeled** [1] - 29:1
**LANA** [1] - 2:14
**Lana** [3] - 3:10, 8:2, 15:15
**language** [4] - 37:16, 39:16, 41:10, 41:11
**last** [2] - 4:11, 17:11
**lastly** [1] - 49:9
**late** [2] - 39:9, 52:18
**LATEEF** [9] - 2:5, 4:7, 5:11, 5:21, 6:18, 7:1, 7:17, 13:7, 42:8
**Lateef** [6] - 3:15, 4:8, 5:10, 8:4, 13:5, 42:8
**law** [10] - 16:25, 17:2, 23:4, 23:8, 25:2, 26:2, 26:13, 33:7, 53:5
**laws** [1] - 51:14
**lay** [1] - 12:4
**lead** [3] - 30:23, 45:20, 45:21
**least** [5] - 6:21, 12:24, 15:10, 40:10, 48:10
**leave** [1] - 56:2
**leaves** [1] - 5:7
**left** [1] - 52:7
**legal** [2] - 24:6
**LEONARD** [1] - 1:22
**less** [1] - 43:22
**letter** [17] - 4:1, 6:16, 6:19, 6:21, 8:4, 8:9, 13:8, 14:25, 15:18, 16:7, 18:25, 21:8,

23:16, 29:24, 31:6, 40:16, 41:9
**letters** [3] - 3:23, 3:24, 18:18
**level** [1] - 11:14
**leveraging** [1] - 49:13
**Lexis** [1] - 35:6
**LexisNexis** [1] - 35:6
**liability** [1] - 45:8
**likelihood** [1] - 34:6
**likely** [3] - 9:9, 45:21, 46:22
**limit** [10] - 7:2, 8:23, 8:25, 9:8, 9:13, 9:15, 13:13, 19:20, 49:16, 53:24
**limitation** [1] - 49:19
**limitations** [2] - 35:13, 41:9
**limited** [4] - 4:20, 6:12, 7:7, 29:15, 31:14, 33:17, 47:24
**limiting** [1] - 10:2
**limits** [1] - 9:11
**line** [4] - 3:15, 13:10, 35:25, 36:4
**line7** [1] - 13:11
**lines** [1] - 41:18
**list** [2] - 50:14, 50:20
**listened** [1] - 17:8
**litigate** [1] - 49:10
**litigation** [8] - 27:13, 27:15, 28:9, 28:12, 43:21, 47:19, 47:21, 51:3
**LLC** [1] - 2:16
**LLP** [2] - 2:4, 2:13
**local** [2] - 36:4, 38:17
**located** [1] - 46:1
**log** [25] - 21:12, 21:14, 21:16, 21:20, 21:22, 22:15, 22:23, 24:22, 24:25, 26:3, 28:5, 28:13, 28:19, 28:23, 28:25, 29:9, 29:12, 32:7, 32:9, 32:13, 32:19, 33:20, 56:12, 56:20, 57:4
**logged** [1] - 21:18
**logging** [1] - 24:21
**logistics** [1] - 35:15
**London** [7] - 37:10, 52:2, 52:25, 53:3, 53:5, 54:20, 57:5
**LONG** [24] - 2:5, 23:3, 24:13, 24:23, 26:10, 28:22, 38:13, 44:23, 45:2, 46:6, 48:6, 49:22, 51:20, 52:14, 53:3, 54:9, 54:11,

55:7, 55:11, 56:7,
56:21, 57:1, 57:9,
57:11
**Long's** [1] - 32:15
**look** [8] - 10:8, 27:2,
27:14, 27:18, 42:19,
42:21, 46:14, 55:17
**looking** [9] - 4:23,
6:14, 21:20, 24:12,
30:19, 34:5, 45:16,
45:18, 47:9
**looks** [1] - 4:19
**lost** [1] - 35:13
**low** [2] - 23:18, 52:9
**low-hanging** [1] -
23:18
**LYDON** [2] - 2:2, 3:13
**Lydon** [1] - 3:14

## M

**MAGISTRATE** [1] -
1:22
**mail** [1] - 28:24, 48:11
**mails** [3] - 32:10,
32:11, 46:2
**majority** [1] - 34:7
**marketing** [1] - 44:10
**Massachusetts** [1] -
2:15
**material** [1] - 8:13
**materials** [1] - 26:6
**matter** [4] - 11:20,
19:24, 20:22, 23:13
**matters** [1] - 15:5
**mean** [5] - 14:10,
26:23, 33:23, 51:4,
56:13
**measure** [2] - 14:21,
43:20
**measuring** [2] - 5:15,
5:16
**mechanism** [1] -
42:22
**meet** [4] - 11:22,
20:11, 23:15, 46:8
**meet-and-confer** [1] -
11:22
**meet-and-confers** [1]
- 20:11
**meeting** [3] - 23:22,
24:18, 31:16
**mental** [2] - 20:16,
20:20
**merits** [2] - 45:14,
45:19
**met** [3] - 8:9, 11:16,
15:3
**Microsoft** [3] - 16:16,

29:24, 29:25
**middle** [4] - 8:24,
14:5, 14:6, 52:25
**might** [13] - 7:23,
18:20, 22:13, 22:18,
26:22, 30:23, 41:21,
45:13, 47:18, 47:20,
50:7, 52:4, 56:3
**million** [1] - 40:25
**millions** [1] - 46:20
**mimicking** [1] - 41:10
**mind** [2] - 18:15, 27:7
**mindful** [2] - 33:7,
36:8
**minimal** [1] - 34:13
**misrepresented** [1] -
35:7
**misunderstanding** [1]
- 5:20
**modified** [1] - 57:4
**moment** [1] - 42:10
**monetary** [1] - 48:3
**MONICA** [1] - 2:5
**Monica** [3] - 3:15, 4:7,
42:8
**months** [1] - 19:10
**MORRIS** [1] - 2:10
**most** [5] - 30:15,
42:12, 43:7, 45:8,
48:12
**motion** [2] - 17:6, 17:7
**motions** [1] - 32:6
**motivation** [2] - 10:15,
10:16
**motive** [1] - 10:18
**move** [4] - 15:5, 34:17,
40:5, 44:6
**moving** [2] - 4:5, 31:7
**MR** [27] - 3:9, 23:3,
24:13, 24:23, 26:10,
28:22, 37:19, 37:25,
38:13, 44:23, 45:2,
46:6, 48:6, 49:22,
51:20, 52:14, 53:3,
54:9, 54:11, 55:7,
55:11, 55:15, 56:7,
56:21, 57:1, 57:9,
57:11
**MS** [30] - 3:13, 4:7,
5:11, 5:21, 6:18, 7:1,
7:17, 8:1, 12:7, 13:7,
15:15, 18:11, 18:17,
19:5, 20:7, 22:3,
29:23, 34:24, 36:13,
40:15, 42:8, 44:16,
45:11, 45:25, 47:11,
50:12, 53:12, 53:15,
56:10, 57:7
**must** [1] - 32:14

## N

**nail** [1] - 23:19
**narrow** [6] - 6:4, 12:3,
12:11, 12:24, 14:10,
55:12
**narrowed** [1] - 5:25
**narrowing** [1] - 4:16
**narrowly** [2] - 4:11,
34:9
**native** [1] - 35:1
**nature** [3] - 18:23,
27:2, 38:20
**necessarily** [1] - 45:12
**necessary** [4] - 11:8,
39:20, 45:10, 51:11
**need** [13] - 12:11,
15:10, 22:2, 32:1,
34:17, 39:10, 43:8,
47:6, 52:16, 53:20,
54:11, 54:23, 56:4
**needed** [1] - 6:4
**needs** [1] - 51:13
**negotiation** [1] - 53:6
**never** [7] - 5:5, 9:2,
24:15, 27:24, 48:20,
48:21
**new** [7] - 4:18, 4:19,
4:20, 6:8, 6:11, 6:12,
49:2
**news** [2] - 23:10,
27:24
**next** [5] - 12:14, 21:18,
32:22, 34:19, 40:7
**NICHOLS** [1] - 2:10
**nine** [8] - 40:24, 40:25,
41:13, 42:5, 42:7,
42:10, 43:9, 44:3
**NO** [2] - 1:7, 1:14
**Nockvy** [1] - 35:5
**non** [2] - 33:19, 46:24
**non-damages** [1] -
46:24
**non-work** [1] - 33:19
**noninfringement** [1] -
30:9
**nonparty** [1] - 54:17
**nonprivileged** [7] -
18:15, 21:24, 22:22,
26:22, 32:4, 33:18,
33:19
**noon** [1] - 21:14
**normal** [1] - 48:23
**note** [4] - 15:20,
19:23, 31:23, 43:2
**NOTE** [1] - 3:4
**notebook** [1] - 56:22
**notes** [34] - 19:3, 19:7,
19:8, 19:17, 19:20,

19:21, 19:24, 20:8,
20:12, 20:13, 20:16,
20:17, 20:19, 20:23,
20:24, 23:21, 23:25,
24:3, 24:8, 24:10,
24:14, 24:17, 24:21,
31:13, 31:14, 31:15,
31:17, 31:23, 32:3,
32:4, 54:16, 56:19
**nothing** [8] - 10:1,
11:13, 24:5, 25:10,
30:4, 30:18, 31:1,
32:2
**notify** [1] - 12:22
**Novak** [10] - 16:25,
17:3, 17:7, 17:20,
23:7, 23:16, 25:9,
25:24, 28:4, 29:5
**November** [2] - 1:18,
17:12
**number** [8] - 8:25,
10:2, 10:22, 13:13,
18:5, 25:8, 46:20,
47:24
**numbers** [1] - 9:11
**numerical** [1] - 45:17

## O

**o'clock** [1] - 1:19
**objections** [2] - 17:19,
17:24
**obligation** [3] - 5:15,
14:9, 43:25
**obligations** [1] - 42:1
**obviate** [1] - 10:5
**obvious** [5] - 5:2, 5:3,
11:5, 11:25, 12:10
**obviousness** [6] -
7:18, 7:20, 7:21,
11:2, 11:9
**occurred** [8] - 15:21,
19:22, 20:21, 21:3,
21:10, 22:5, 23:22,
31:21
**October** [1] - 42:13
**OF** [1] - 1:2
**offer** [1] - 52:18
**offered** [3] - 51:24,
52:16, 53:17
**offering** [1] - 53:7
**Office** [1] - 29:9
**office** [1] - 27:5
**Official** [1] - 1:24
**often** [1] - 38:22
**old** [1] - 38:7
**once** [4] - 9:10, 15:12,
48:2, 50:18
**one** [26] - 4:5, 10:17,

11:4, 13:14, 13:16,
13:17, 13:25, 16:9,
22:4, 24:24, 26:22,
30:7, 30:19, 33:1,
34:19, 35:4, 39:12,
40:7, 50:24, 51:21,
52:18, 52:19, 54:5,
54:6, 56:10, 56:18
**ongoing** [6] - 9:5,
9:16, 14:7, 14:9,
41:21, 42:1
**Operata** [1] - 43:1
**operating** [1] - 37:10
**opined** [1] - 46:21
**opinion** [1] - 24:6
**opposed** [1] - 39:19
**order** [11] - 3:25, 31:8,
40:8, 40:22, 44:2,
51:13, 51:15, 52:22,
56:2, 57:3
**ordered** [3] - 14:22,
32:10, 55:7
**ordering** [3] - 33:18,
51:1, 51:9
**ordinary** [1] - 11:14
**otherwise** [1] - 46:15
**ourselves** [1] - 37:1
**outcome** [6] - 47:14,
47:19, 47:21, 48:3,
51:3, 51:7
**outset** [1] - 52:14
**outside** [2] - 33:12,
46:19
**overall** [1] - 14:19
**overlap** [2] - 15:9,
15:13, 15:17
**overlapping** [1] - 33:3
**overwhelming** [2] -
6:24, 34:7
**overwhelmingly** [1] -
47:1
**own** [3] - 9:23, 10:8,
31:7
**owned** [1] - 47:16
**owner** [1] - 49:3
**owns** [1] - 49:4

## P

**p.m** [4] - 1:19, 3:5,
57:5, 57:12
**P.S** [1] - 42:22
**Page** [7] - 13:10,
13:11, 40:19, 41:9,
41:18, 42:24, 42:25
**page** [5] - 10:9, 42:20,
42:21, 42:24, 42:25
**pages** [3] - 40:19,
40:25, 46:2

**paper** [1] - 43:8
**papers** [4] - 4:9, 25:16, 25:23, 42:15
**paragraphs** [1] - 31:20
**Parker** [1] - 23:8
**part** [3] - 24:25, 43:5, 45:8
**partes** - 28:11
**participate** [1] - 28:12
**particular** [12] - 8:25, 10:2, 10:14, 10:15, 10:21, 18:20, 22:18, 27:20, 31:19, 36:21, 48:22, 53:23
**particularly** [3] - 29:19, 34:12, 54:12
**parties** [12] - 3:23, 3:24, 9:7, 14:23, 15:3, 25:17, 39:1, 39:21, 50:7, 50:21, 52:4, 56:2
**parties'** [1] - 26:13
**party** [7] - 4:5, 33:4, 34:11, 43:21, 47:17, 50:1, 50:6
**past** [2] - 17:12, 17:22
**Patent** [2] - 15:22, 29:8
**patent** [22] - 15:22, 16:1, 19:12, 22:6, 22:9, 22:12, 22:25, 26:8, 26:13, 26:17, 27:7, 27:8, 27:10, 27:12, 28:10, 45:12, 45:13, 45:14, 45:15, 45:17, 46:20, 46:22
**patent's** [1] - 49:2
**patents** [21] - 8:17, 12:17, 16:3, 16:5, 18:12, 27:14, 27:16, 28:9, 30:2, 41:3, 44:11, 45:5, 46:7, 46:10, 46:13, 47:10, 47:15, 47:16, 49:2, 49:5, 56:12
**patents-in-suit** [4] - 18:12, 44:11, 45:5, 47:16
**payment** [1] - 50:18
**PBX** [1] - 42:23
**pending** [6] - 18:2, 19:10, 30:2, 30:8, 30:25, 31:12
**people** [6] - 49:1, 49:6, 50:17, 52:5, 52:6, 53:4
**period** [1] - 21:15
**permit** [1] - 25:19
**permitted** [4] - 4:17, 25:13, 25:16, 26:14

**person** [3] - 35:8, 46:19, 47:13
**personal** [2] - 48:15, 49:24
**Pesh** [1] - 48:18
**phone** [1] - 41:6
**phonetic** [2] - 35:5, 48:18
**physical** [1] - 33:12
**place** [5] - 19:13, 21:1, 39:9, 53:16, 53:19
**plainly** [2] - 24:16, 46:13
**Plaintiff** [2] - 1:6, 1:10
**plaintiff** [3] - 1:12, 50:20, 51:1
**planning** [1] - 55:9
**pleadings** [1] - 17:6
**pled** [4] - 25:17, 25:20, 25:22, 30:20
**point** [32] - 4:4, 6:11, 8:2, 8:3, 8:24, 9:14, 9:24, 10:3, 12:2, 12:24, 13:18, 14:8, 14:16, 14:20, 21:11, 24:24, 31:5, 31:17, 35:4, 35:23, 36:9, 36:14, 38:12, 39:12, 39:16, 43:17, 43:20, 44:4, 49:13, 50:13, 51:9, 53:13
**pointing** [1] - 5:21
**position** [7] - 4:9, 17:18, 20:15, 35:1, 39:13, 48:15, 48:25
**positions** [1] - 17:16
**possession** [2] - 16:24, 33:13
**possibly** [2] - 20:6, 43:11
**potential** [1] - 16:3
**potentially** [4] - 21:9, 22:25, 29:1, 33:10
**precisely** [1] - 43:20
**preclude** [1] - 8:22
**precluded** [1] - 8:25
**predicament** [1] - 5:7
**prejudice** [6] - 32:8, 34:21, 35:18, 37:8, 39:5, 39:7
**prejudiced** [1] - 32:13
**premature** [3] - 9:15, 35:22, 38:21
**preparation** [1] - 3:24
**prepared** [8] - 8:11, 13:24, 23:10, 23:14, 32:25, 39:12, 49:20, 49:25
**presence** [1] - 34:19
**present** [3] - 37:8,

37:15, 54:15
**presented** [1] - 36:17
**press** [2] - 10:18, 36:24
**presumably** [1] - 17:13
**primary** [3] - 8:19, 9:21, 10:4
**prioritizing** [1] - 43:9
**privacy** [1] - 48:13
**private** [1] - 49:7
**privilege** [33] - 17:23, 18:1, 20:3, 20:5, 20:8, 21:12, 21:14, 21:20, 21:22, 22:15, 22:23, 23:25, 24:1, 24:22, 24:25, 26:3, 27:21, 27:22, 28:5, 28:13, 28:19, 28:23, 28:25, 29:9, 29:12, 31:9, 31:11, 32:19, 33:9, 33:21, 34:8, 56:11, 57:4
**privileged** [12] - 18:21, 18:24, 20:17, 20:18, 21:17, 24:19, 25:4, 26:20, 28:1, 29:1, 29:7, 34:8
**probe** [1] - 42:17
**problem** [2] - 7:9, 48:11
**proceed** [1] - 25:17
**proceeded** [1] - 35:9
**proceeding** [2] - 10:11, 32:17
**proceedings** [2] - 14:14, 22:11
**process** [4] - 9:12, 28:18, 29:4
**PROCTER** [1] - 2:13
**produce** [1] - 15:19
**produced** [8] - 19:3, 23:21, 31:23, 31:24, 32:3, 40:25, 41:7, 57:4
**product** [7] - 24:20, 27:6, 27:18, 27:22, 29:7, 33:19
**production** [6] - 17:19, 18:7, 23:25, 28:23, 32:11, 56:12
**products** [2] - 41:12, 43:6
**Professor** [3] - 44:12, 44:21, 49:4
**progress** [1] - 32:12
**progresses** [1] - 9:8
**projects** [1] - 43:1
**proof** [1] - 32:1
**proper** [2] - 11:22,

29:12
**properly** [3] - 8:5, 16:21, 18:2
**proposing** [1] - 35:11
**prosecuted** [1] - 26:13
**prosecuting** [2] - 22:22, 27:4
**prosecution** [21] - 15:19, 15:22, 15:24, 15:25, 16:10, 16:12, 16:15, 18:16, 19:14, 22:1, 22:6, 22:8, 22:11, 22:13, 26:8, 28:6, 30:2, 30:11, 30:12, 30:17, 32:19
**prosecutions** [1] - 18:12
**protected** [1] - 33:20
**protection** [1] - 48:14
**prove** [2] - 7:20
**provide** [17] - 4:17, 10:5, 16:23, 17:9, 18:3, 18:14, 24:9, 28:15, 28:20, 29:20, 33:16, 33:18, 34:10, 50:25, 55:4, 55:7, 57:1
**provided** [32] - 4:3, 4:13, 4:25, 5:17, 6:6, 6:23, 8:20, 9:6, 10:5, 10:9, 10:18, 10:20, 10:22, 11:13, 12:8, 14:8, 14:12, 14:13, 16:6, 19:16, 20:12, 20:19, 21:24, 28:20, 28:23, 38:16, 40:22, 41:8, 42:16, 54:16, 56:15
**provides** [3] - 10:12, 10:18, 30:22
**providing** [10] - 7:22, 9:17, 12:15, 20:21, 21:6, 21:7, 28:25, 34:22, 37:14, 43:7
**PSTN** [1] - 42:23
**PTO** [2] - 10:17, 19:1
**public** [1] - 26:17
**publicizing** [1] - 44:10
**pure** [1] - 46:16
**purely** [1] - 46:9
**purported** [1] - 15:7
**purpose** [1] - 3:21
**purposes** [7] - 11:2, 15:1, 15:2, 27:17, 27:25, 36:10, 39:18
**pursuing** [1] - 12:23
**pursuit** [1] - 27:13
**pushed** [1] - 54:7
**put** [7] - 6:19, 12:18, 14:25, 28:13, 47:5,

48:24, 51:1
**putting** [2] - 19:21, 26:2

## Q

**questions** [5] - 5:9, 7:24, 38:23, 48:19
**quickly** [5] - 34:17, 37:24, 44:8, 56:20, 56:23
**Quintum** [1] - 2:16
**quoted** [1] - 41:17

## R

**raise** [1] - 39:3
**raised** [5] - 13:25, 17:14, 32:15, 39:8, 54:6
**raises** [1] - 15:7
**rather** [7] - 18:23, 31:20, 36:15, 36:20, 41:11, 47:22, 50:18
**re** [9] - 6:23, 7:3, 7:4, 7:11, 14:13, 28:8, 28:11, 28:14, 42:22
**re-exam** [4] - 6:23, 7:3, 7:4, 7:11
**re-examination** [3] - 14:13, 28:11, 28:14
**re-examinations** [1] - 28:8
**re-route** [1] - 42:22
**reach** [1] - 15:4
**read** [3] - 13:15, 24:3, 36:11
**real** [4] - 16:18, 34:25, 49:12, 52:21
**really** [17] - 5:8, 16:20, 17:17, 17:20, 21:5, 25:6, 25:12, 25:25, 28:15, 29:19, 29:20, 33:8, 34:14, 36:18, 46:16, 49:11, 54:6
**realm** [2] - 11:6, 30:5
**reason** [2] - 38:5, 51:23
**reasons** [1] - 24:24
**receipt** [2] - 29:8
**receive** [1] - 21:13
**received** [3] - 17:15, 42:6, 46:1
**recent** [1] - 42:12
**recently** [2] - 30:15, 46:2
**record** [8] - 3:17, 19:15, 20:6, 32:2, 40:21, 41:17, 41:23,

43:5
**refer** [4] - 11:19, 16:15, 26:24, 40:18
**reference** [7] - 6:15, 11:5, 12:5, 14:15, 14:24, 25:24, 31:4
**references** [44] - 5:1, 5:2, 6:1, 6:2, 6:5, 6:8, 7:12, 8:8, 8:17, 8:20, 8:23, 9:1, 9:6, 9:13, 9:15, 9:19, 9:20, 9:21, 9:22, 10:3, 10:4, 10:6, 10:12, 10:14, 10:15, 10:16, 10:22, 11:24, 12:3, 12:9, 12:11, 12:16, 12:19, 12:20, 12:23, 12:24, 13:1, 25:8, 25:10, 29:22, 34:2, 43:8
**referred** [1] - 36:9
**referring** [1] - 12:4
**refusal** [1] - 15:19
**refused** [3] - 16:23, 17:5, 17:9
**regarding** [16] - 4:2, 8:16, 10:13, 11:24, 22:1, 22:18, 30:11, 40:8, 40:9, 44:7, 44:10, 45:13, 47:12, 47:18, 50:16
**regular** [1] - 49:23
**relate** [7] - 17:25, 26:7, 29:21, 30:10, 33:25, 34:1, 46:12
**related** [19] - 15:21, 15:25, 16:3, 16:10, 18:12, 18:20, 18:23, 19:11, 21:13, 22:8, 22:9, 22:21, 30:1, 30:8, 32:10, 41:4, 45:18, 51:22, 56:12
**relating** [3] - 21:22, 22:24, 24:10
**releases** [1] - 10:18
**relevance** [6] - 26:16, 28:16, 30:23, 34:4, 34:13, 49:12
**relevant** [18] - 5:13, 5:19, 12:19, 16:2, 21:1, 22:9, 26:1, 26:6, 26:11, 26:14, 28:16, 30:3, 30:6, 30:12, 32:4, 32:18, 33:20, 43:7
**reliance** [1] - 21:3
**relied** [1] - 19:17
**relief** [8] - 7:14, 7:17, 14:1, 19:20, 33:17, 34:10, 34:25, 50:25

**relieved** [1] - 34:22
**reluctant** [1] - 55:3
**rely** [2] - 27:25, 30:10
**relying** [7] - 9:13, 10:19, 19:20, 29:22, 42:7, 42:10, 55:15
**remainder** [1] - 22:7
**remaining** [1] - 34:18
**remains** [2] - 47:17, 55:25
**report** [2] - 12:16, 42:3
**Reporter** [1] - 1:24
**reporter** [1] - 43:3
**REPORTER'S** [1] - 3:4
**represent** [1] - 37:3
**representation** [2] - 19:6, 33:6
**representations** [1] - 20:10
**represented** [2] - 4:21, 6:7
**representing** [1] - 17:2
**request** [9] - 19:7, 31:13, 43:15, 43:16, 46:18, 46:25, 47:4, 51:16
**requesting** [1] - 34:11
**requests** [2] - 18:13, 31:5
**require** [3] - 36:16, 47:4, 57:4
**required** [3] - 7:19, 9:8, 25:1
**requires** [1] - 39:18
**reservation** [1] - 13:3
**resolved** [3] - 37:8, 48:2, 50:18
**respect** [21] - 10:7, 15:20, 15:23, 16:14, 18:6, 19:1, 19:6, 30:17, 31:2, 31:3, 31:13, 32:7, 33:16, 33:21, 33:22, 34:14, 36:2, 40:13, 43:15, 55:19, 56:11
**respond** [5] - 7:25, 8:16, 9:22, 13:6, 29:18
**responded** [1] - 42:18
**responding** [1] - 12:17
**response** [21] - 5:3, 6:21, 6:25, 7:1, 7:6, 8:7, 8:8, 9:22, 10:7, 10:9, 10:24, 11:21, 14:4, 14:15, 16:18, 31:5, 31:24, 40:22, 41:8, 43:3, 44:2
**Response** [1] - 8:18

**responses** [5] - 5:15, 14:20, 43:16, 43:19, 43:24
**responsive** [3] - 25:12, 26:1, 33:20
**rest** [2] - 29:9, 40:5
**revealing** [1] - 48:25
**review** [2] - 15:1, 29:3
**reviewed** [2] - 3:23, 29:5
**reviewing** [1] - 46:3
**ripe** [4] - 8:11, 14:2, 16:19, 31:4
**ROBERT** [1] - 2:14
**Robert** [1] - 3:11
**Robinson** [22] - 4:11, 4:14, 5:13, 5:17, 5:18, 5:22, 6:3, 6:9, 6:16, 13:10, 13:12, 14:21, 17:5, 17:21, 18:8, 25:13, 25:16, 36:5, 36:12, 38:1, 39:4, 40:16
**Robinson's** [6] - 29:14, 31:7, 40:8, 41:15, 44:2, 53:17
**route** [1] - 42:22
**RTR** [2] - 43:1, 43:3
**Rule** [2] - 30:3, 30:22
**rule** [4] - 13:24, 21:6, 32:25, 39:12
**ruled** [2] - 6:16, 48:12
**ruling** [12] - 5:13, 7:6, 14:17, 14:23, 15:4, 34:16, 38:2, 40:4, 40:13, 51:22, 53:17, 55:17
**rulings** [1] - 56:11

# S

**SAA** [3] - 41:6, 42:17, 43:2
**safely** [1] - 44:24
**salary** [6] - 47:9, 48:8, 48:23, 50:16, 50:19, 51:4
**satisfactory** [1] - 19:4
**satisfied** [1] - 11:21
**Saturday** [3] - 46:2, 56:24, 57:5
**save** [1] - 53:5
**schedule** [4] - 37:9, 52:3, 52:15, 52:23
**scheduled** [2] - 56:13, 57:2
**Schindler** [6] - 36:23, 44:17, 44:21, 47:17, 49:4

**Schindler's** [1] - 44:13
**scope** [8] - 16:2, 17:14, 22:25, 24:25, 25:12, 26:9, 39:22, 45:14
**search** [1] - 28:24
**second** [1] - 22:7
**secondly** [2] - 23:18, 27:1
**see** [7] - 6:16, 10:8, 13:15, 34:13, 36:13, 43:8, 49:12
**seek** [5] - 18:10, 30:6, 49:15, 51:21, 52:22
**seeking** [9] - 7:14, 7:18, 13:19, 13:22, 14:1, 15:24, 16:9, 16:12, 21:25, 23:7, 23:9, 23:12, 25:3, 28:5, 29:10, 33:1, 47:9, 47:12, 48:8, 49:11, 50:15, 50:16, 53:24
**seeks** [2] - 11:7, 46:13
**seem** [2] - 37:13, 45:6
**selectively** [1] - 21:6
**self** [1] - 49:3
**self-evident** [1] - 49:3
**sense** [2] - 23:19, 37:14
**separate** [1] - 32:14
**September** [7] - 8:10, 8:14, 10:1, 14:22, 14:25, 40:17, 44:2
**served** [4] - 17:25, 23:7, 23:16, 25:2
**Services** [1] - 18:4
**set** [1] - 56:18
**seven** [2] - 39:19, 53:19
**several** [3] - 3:22, 21:18, 52:17
**shares** [1] - 49:4
**shield** [1] - 21:6
**SHIFERMAN** [23] - 2:14, 8:1, 12:7, 15:15, 18:11, 18:17, 19:5, 20:7, 22:3, 29:23, 34:24, 36:13, 40:15, 44:16, 45:11, 45:25, 47:11, 50:12, 53:12, 53:15, 55:15, 56:10, 57:7
**Shiferman** [16] - 3:10, 6:7, 8:2, 12:3, 15:15, 20:2, 23:24, 24:15, 26:21, 27:24, 29:18, 37:21, 45:6, 46:12, 50:10, 57:6
**shiferman's** [1] - 26:5

**shot** [1] - 45:10
**show** [3] - 10:25, 18:18, 18:19
**showing** [1] - 22:16
**shows** [1] - 12:8
**side** [1] - 39:24
**significant** [1] - 10:13
**similar** [1] - 17:21
**simply** [8] - 7:19, 8:19, 9:6, 9:14, 30:13, 31:5, 32:14, 41:8
**single** [1] - 26:3
**situation** [1] - 36:1
**six** [1] - 29:2
**skill** [1] - 11:14
**SLR** [1] - 1:7
**SLR/LPS** [1] - 1:14
**Software** [1] - 18:5
**someone** [1] - 51:10
**sorry** [2] - 42:25, 54:11
**sort** [4] - 5:7, 12:4, 18:22, 50:17
**sought** [9] - 11:12, 11:23, 16:22, 18:11, 21:25, 27:8, 27:16, 33:6, 54:24
**sounded** [1] - 28:19
**sounds** [2] - 5:12, 14:10
**source** [1] - 42:12
**speakers** [1] - 35:1
**speaking** [4] - 4:8, 4:14, 36:25, 46:23
**specific** [4] - 28:3, 29:16, 34:1, 46:15
**specifically** [3] - 9:18, 11:23, 33:17
**specifics** [1] - 56:4
**specify** [1] - 56:14
**spoken** [1] - 36:25
**SSGB** [3] - 47:16, 49:3, 49:5
**stage** [2] - 12:14, 14:5
**stake** [1] - 51:6
**standard** [3] - 30:22, 30:24, 31:2
**Stark** [1] - 3:8
**STARK** [1] - 1:22
**start** [1] - 15:12
**started** [1] - 52:18
**state** [2] - 8:24, 9:18
**statements** [2] - 26:18, 26:19
**states** [2] - 11:14, 35:7
**States** [1] - 22:12
**STATES** [1] - 1:1
**still** [10] - 4:23, 12:14, 13:2, 14:7, 20:9,

21:17, 21:19, 29:4,
46:3, 50:6
**strategic** [1] - 18:23
**strictly** [1] - 46:23
**strong** [1] - 46:22
**subject** [6] - 11:20,
19:24, 20:22, 49:15,
51:14, 55:21
**submission** [2] -
10:24
**submitted** [5] - 22:19,
31:6, 31:19, 32:8
**subpoena** [2] - 23:7,
25:2
**subpoenaed** [1] - 17:3
**subpoenas** [5] -
16:19, 16:24, 23:16,
33:4, 50:6
**substance** [6] - 4:24,
8:7, 8:12, 14:19,
36:19, 45:12
**substantial** [2] -
21:16, 28:16
**substantive** [2] -
33:16, 45:19
**substantively** [1] -
14:3
**suddenly** [1] - 53:9
**sued** [1] - 27:12
**suffer** [1] - 35:14
**sufficiency** [2] - 14:3,
43:19
**sufficient** [4] - 9:24,
34:10, 41:23, 44:5
**suggest** [1] - 49:23
**suggesting** [1] - 5:13
**suggestion** [3] -
14:18, 26:6, 29:19
**suggests** [1] - 41:20
**suit** [4] - 18:12, 44:11,
45:5, 47:16
**sum** [1] - 27:23
**Sunday** [3] - 32:23,
56:13, 57:2
**supplement** [10] -
14:9, 14:10, 41:15,
41:21, 41:24, 42:2,
42:11, 43:11, 43:12,
43:25
**supplementation** [2] -
40:23, 41:21
**supplemented** [3] -
25:18, 40:24, 44:1
**support** [3] - 27:19,
41:7, 42:6
**supports** [1] - 30:17
**suppose** [1] - 46:19
**survive** [1] - 46:23
**sword** [1] - 21:5
**sympathetic** [1] -

39:13
**Systems** [1] - 2:17
**SYSTEMS** [2] - 1:8,
1:11

# T

**table** [1] - 12:5
**tactical** [1] - 21:7
**tailored** [2] - 24:4,
34:10
**talks** [2] - 11:8, 42:21
**team** [1] - 29:2
**technical** [2] - 18:22,
27:1
**Technologies** [1] -
2:16
**Telephone** [1] - 1:19
**telephone** [2] - 3:4,
57:12
**TELES** [1] - 1:4
**Teles** [98] - 2:7, 3:14,
3:18, 3:19, 4:3, 4:5,
4:6, 8:14, 9:4, 9:9,
9:10, 9:17, 9:21,
9:22, 10:13, 11:3,
12:17, 12:20, 13:3,
13:25, 14:1, 14:4,
14:8, 14:18, 15:13,
16:4, 16:22, 16:24,
17:1, 17:3, 17:5,
17:8, 17:15, 18:10,
18:13, 18:16, 18:25,
19:2, 19:9, 20:4,
22:1, 22:16, 23:1,
23:4, 23:10, 24:18,
28:22, 28:24, 31:5,
31:6, 31:10, 32:7,
32:20, 33:1, 33:7,
33:8, 33:10, 33:13,
33:18, 33:21, 34:4,
34:20, 35:1, 35:5,
35:7, 35:22, 36:15,
37:3, 37:12, 38:12,
38:14, 40:20, 40:22,
41:2, 41:19, 42:4,
43:4, 43:13, 44:1,
44:11, 44:20, 46:4,
46:19, 47:5, 47:15,
47:17, 47:18, 47:22,
48:4, 48:14, 48:24,
49:10, 50:21, 51:13,
53:24, 54:6, 54:15,
54:16
**tELES** [1] - 1:14
**Teles'** [22] - 4:1, 10:8,
10:24, 15:7, 15:19,
15:25, 16:18, 17:1,
17:8, 17:18, 17:20,
19:18, 20:15, 22:9,

22:12, 30:10, 36:9,
40:8, 40:14, 45:15,
49:2
**testify** [10] - 35:17,
35:20, 36:12, 37:6,
38:3, 38:4, 39:17,
40:2, 55:23, 55:24
**testifying** [1] - 37:17
**testimony** [2] - 36:17,
47:1
**THE** [58] - 1:1, 1:2,
3:7, 3:12, 3:17, 5:9,
5:12, 6:15, 6:20,
7:13, 7:23, 12:2,
13:5, 13:24, 18:9,
18:14, 18:25, 20:2,
21:21, 23:1, 24:10,
24:21, 26:5, 28:18,
29:18, 32:24, 36:7,
37:11, 37:24, 38:11,
39:10, 42:4, 43:14,
44:19, 45:1, 45:3,
45:23, 46:4, 46:17,
48:4, 49:16, 50:10,
50:24, 52:11, 53:2,
53:14, 54:8, 54:10,
55:6, 55:9, 55:14,
55:17, 56:9, 56:17,
56:25, 57:3, 57:8,
57:10
**themselves** [2] - 7:2,
31:17
**theories** [1] - 41:25
**theory** [2] - 40:20,
46:18
**therefore** [2] - 31:11,
31:21
**they've** [9] - 6:23, 7:5,
19:2, 25:6, 41:22,
51:25, 52:5, 52:6
**third** [4] - 33:4, 50:1,
50:6, 50:7
**third-party** [3] - 33:4,
50:1, 50:6
**three** [1] - 10:25
**threshold** [2] - 23:5,
23:13
**throughout** [1] - 42:2
**Thursday** [1] - 1:18
**tie** [1] - 38:25
**Tiffany** [1] - 3:14
**TIFFANY** [1] - 2:2
**tight** [1] - 37:9
**timing** [2] - 18:18,
56:11
**Tobergte** [1] - 29:24
**today** [7] - 8:5, 8:11,
14:17, 15:4, 15:6,
21:14, 40:4
**today's** [7] - 3:21,

3:25, 5:14, 15:1,
15:2, 43:22, 55:20
**together** [1] - 11:4
**tomorrow** [1] - 56:24
**took** [3] - 19:13, 21:1,
21:2
**Topic** [7] - 44:9, 45:3,
45:4, 46:5, 47:5,
47:6, 50:24
**topic** [5] - 44:22,
44:24, 45:24, 46:15,
55:12
**topics** [1] - 44:7
**total** [4] - 3:24, 4:23,
6:1, 6:11
**transcript** [8] - 10:2,
13:9, 13:15, 14:25,
38:7, 38:15, 40:18,
41:18
**transfer** [1] - 41:5
**transformed** [1] -
55:20
**translated** [1] - 53:25
**translation** [1] - 54:2
**translator** [9] - 34:23,
35:3, 35:10, 35:16,
39:18, 39:20, 52:13,
55:23, 55:24
**translators** [5] - 29:3,
34:20, 35:19, 37:7,
52:16
**transmittal** [1] - 18:17
**transmitted** [1] - 18:19
**travel** [2] - 53:5, 55:3
**trial** [24] - 9:2, 12:12,
12:13, 12:23, 35:17,
36:12, 36:15, 37:3,
37:5, 37:6, 37:16,
38:5, 39:2, 39:4,
39:15, 39:17, 40:2,
40:3, 49:7, 49:18,
50:13, 50:22, 55:10
**tried** [2] - 12:21, 36:19
**triggered** [2] - 51:6,
51:7
**try** [1] - 40:5
**trying** [3] - 6:22,
51:22, 56:8
**TUNNELL** [1] - 2:10
**turn** [6] - 7:24, 34:7,
37:11, 38:11, 42:23,
42:25
**turns** [1] - 51:12
**twelve** [1] - 29:2
**twice** [1] - 55:21
**two** [23] - 3:18, 13:14,
13:16, 13:17, 15:17,
15:18, 18:24, 19:9,
23:2, 26:21, 27:14,
28:8, 32:25, 34:16,

36:21, 41:9, 43:23,
51:24, 52:5, 52:16,
53:15, 53:16, 54:3
**type** [1] - 16:16
**types** [3] - 31:22,
43:23, 46:24
**typical** [1] - 16:1

# U

**U.S** [2] - 1:22, 35:6
**ultimately** [1] - 35:17
**unable** [1] - 8:16
**uncertainty** [1] - 38:21
**unclear** [2] - 20:13,
41:2
**under** [10] - 5:14, 14:8,
17:1, 27:12, 30:3,
33:5, 33:12, 52:7,
52:22, 54:3
**underlying** [1] - 54:13
**understood** [2] - 16:5,
56:17
**unduly** [4] - 28:2,
29:11, 34:11, 49:7
**unfair** [1] - 37:14
**Union** [2] - 25:15,
29:15
**United** [1] - 22:12
**UNITED** [1] - 1:1
**unlike** [1] - 43:7
**up** [9] - 4:14, 32:5,
32:22, 37:18, 39:19,
41:1, 47:5, 51:1
**upset** [1] - 53:7
**urgently** [1] - 56:5

# V

**Valerie** [1] - 1:24
**validity** [1] - 46:23
**valuation** [8] - 45:4,
45:11, 45:20, 45:25,
46:7, 46:13, 47:1,
47:2
**value** [2] - 45:17, 46:9
**version** [1] - 42:12
**versus** [3] - 3:18, 3:19,
18:4
**view** [4] - 12:6, 14:17,
32:25, 55:17
**views** [1] - 26:9
**vis** [2] - 33:9
**vis-a-vis** [1] - 33:9
**voluntarily** [4] - 19:16,
19:20, 20:21, 55:15

## W

**waiting** [1] - 41:19
**waive** [2] - 23:25, 24:2
**waived** [3] - 19:24,
   20:6, 20:22
**waiver** [1] - 24:7
**wants** [7] - 7:2, 36:8,
   39:4, 39:24, 54:21,
   54:22
**washington** [1] - 2:6
**Web** [1] - 36:25
**website** [1] - 43:2
**week** [2] - 17:11, 27:9
**weighing** [1] - 34:3
**wholeheartedly** [1] -
   7:8
**willing** [1] - 50:8
**Wilmington** [1] - 1:18
**wish** [2] - 38:7, 38:16
**wishes** [1] - 38:15
**withheld** [5] - 22:23,
   25:12, 26:24, 28:4,
   31:22
**witness** [15] - 35:17,
   35:20, 37:2, 37:3,
   37:5, 37:14, 37:15,
   37:16, 38:2, 44:21,
   47:5, 51:1, 51:2,
   51:10, 54:1
**witnesses** [19] -
   34:20, 36:11, 36:22,
   39:16, 40:2, 41:1,
   47:23, 47:24, 49:6,
   49:17, 49:21, 50:1,
   50:2, 50:13, 52:16,
   52:17, 53:10, 53:15
**workable** [1] - 49:19
**worth** [1] - 46:20