# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE GILLETTE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-1158-LPS-CJB |
| | ) | |
| DOLLAR SHAVE CLUB, INC., *et al.*, | ) | **REDACTED - PUBLIC VERSION** |
| | ) | |
| Defendants. | ) | |

## LETTER TO THE HONORABLE LEONARD P. STARK FROM JOHN W. SHAW

OF COUNSEL:
Gregory S. Arovas, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4766

F. Christopher Mizzo, P.C.
Helena D. Kiepura
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, DC 20005
(202) 879-5000

Bao Nguyen
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1425

Charles K. Verhoeven
Terry L. Wit
Morgan W. Tovey
James D. Judah
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
dfry@shawkeller.com
*Attorneys for Defendants*

Dated: May 24, 2017

**BY CM/ECF AND HAND DELIVERY**

The Honorable Leonard P. Stark
U.S. District Court for the District of Delaware
844 N. King Street
Wilmington, DE 19801

Re:   *The Gillette Co. v. Dollar Shave Club, Inc., et al.*, C.A. No. 15-1158-LPS-CJB

Dear Chief Judge Stark:

I write on behalf of Defendants in opposition to Gillette's discovery motion.

## I.   Dorco Has Produced Its Relevant Core Technical Documents

Gillette's motion argues that Dorco has failed to and refuses to produce core technical documents. Those arguments misrepresent Dorco's position and the documents Dorco has produced to date.[1]

Gillette's motion is meritless and should be denied. As Dorco has explained to Gillette multiple times, Dorco produced the relevant core technical documents that it has ███████████ ██████████████████████████████████ Dorco has produced the ███████████. Ex. A, Decl. of Byung Sun (Archie) Ahn at ¶ 4. Specifically, Dorco has produced the following categories of documents, which collectively lay out the information Gillette wrongly argues is missing from Dorco's production:

- ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

Indeed, Gillette does not—and could not—argue that Dorco has not produced the types of

---

[1]   Gillette also argues that Dollar Shave Club, Inc. ("DSC") "refused to produce technical information." Gillette is wrong. From the start, DSC made clear that it had produced the technical information in its possession███████████████████████████████████████████. D.I. 157; *see also* D.I. 182 at 46:15-47:14.

[2]   Ex. A cites and discusses exemplary exhibits that show the types of core technical information produced by Dorco. *See* Ex. A, Exs. 1-14. Most of these documents were included in Dorco's core technical production on March 31, 2017, but Dorco has since produced over 20,000 documents, including additional documents that include technical information sought by Gillette in its motion.

SHAW KELLER LLP

The Honorable Leonard P. Stark
Page 2

documents called for by the Default Standard. Dorco in fact exceeded its discovery obligations and provided Gillette with a detailed response that matched Dorco documents by bates number with categories of core technical documents required under the rules. Ex. B, 4/21/2017 Ltr. to Gillette. Gillette's complaint that Dorco refused to identify these documents is wrong.

At bottom, Gillette's complaint appears to be that Dorco does not have the types of technical documents kept by Gillette, including, by way of example,  D.I. 377 at 1, 2. But aside from its unsupported assertion that "such documents are required for quality control and liability reasons," Gillette does not and cannot point to anything that would require Dorco to (or even suggest that Dorco does) maintain the same types of document as Gillette. *See* D.I. 377 at 2.

Gillette's complaints that Dorco's documents are "a hodge-podge," are similarly unfounded and focus on a handful of documents that relate to the development of the accused products (*e.g.* Pl. Ex. 5 , instead of the documents identified by Dorco in the above categories. In addition, Gillette's argument that

Different companies keep different documents. Gillette's motion is without merit and should be denied.

## II.     Gillette's Request to Increase the Deposition Hours Limit Is Unwarranted

Despite knowing since before September 2016 that it would seek discovery, including depositions, from Dorco and Pace, and despite agreeing to a total of 100 hours of deposition time as recently as February 28, 2017, Gillette argues that the "case has materially changed" and requests a 50% increase in hours and a further 100% increase in time to depose Dorco. Gillette must show good cause to change a Scheduling Order limit that Gillette itself proposed. Fed. R. Civ. P. 16(b)(4). Moreover, having induced defendants to compromise at a higher deposition hour limit (100 hours) than is warranted in a one patent case, Gillette should face a higher burden to secure a change now.

The 100-hour limit resulted from a compromise between the parties after Gillette added Dorco and Pace as parties to the case. At that time, *Gillette* acknowledged that "Dorco and Pace were third parties at the time we agreed to the [65 party/35 non-party] limits" and *Gillette* proposed that the 35 non-party hours (which it had planned for Dorco and Pace) be rolled into a 100-hour deposition limit for party witnesses. Ex. C, 12/5/2016 Email from Gillette. Gillette was also well aware at this time that Dorco depositions would require translation because in October 2016, in support of its motion to dismiss, Dorco submitted a declaration, stating that D.I. 137 at ¶ 5. When Dorco withdrew its motion to dismiss in February 2017, Gillette sought an increase to just 120 hours "to account for depositions requiring translation from Korean to English," a tacit acknowledgment that translated deposition required less than a 2 for 1 adjustment, as Gillette now seeks. Ex. D, 2/24/2017 Email from Gillette. Defendants rejected

SHAW KELLER LLP

The Honorable Leonard P. Stark
Page 3

that request on the basis that 100 hours was already too burdensome, and Gillette agreed to 100 hours total, including translation time. D.I. 282 at ¶ 4. Importantly, at no point did Gillette mention any need to increase the total deposition time to 150 hours, let alone to allow double time for translated depositions. Seemingly recognizing this fact, Gillette tries to justify its incredible request by arguing that there have been recent material changes in the case when, in fact, there are none.

*First*, Gillette argues that the case has expanded because the addition of Dorco and Pace puts at issue more accused products and "divergent business models." But Gillette was aware of and indeed listed the accused products in September 2016, when it amended its complaint. D.I. 98 at ¶ 2. It was also aware of the difference in the Defendants' business models, as those models have not changed since before this lawsuit.

*Second*, Gillette argues that it only previously sought "modest" discovery from Dorco, but suddenly determined Dorco discovery is "important." But nothing has changed. Gillette knew or should have known all along that Dorco ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

*Third*, Gillette claims it has "recently" learned that Dorco witnesses will testify in Korean. This is not true as explained above.

*Fourth*, Gillette complains that DSC and Pace designated too many witnesses in response to Gillette's 30(b)(6) 108 topics. But this is a problem of Gillette's own making, as Gillette is the one that seeks extensive discovery on a diverse number of issues. Gillette could easily focus on the core issues, cut topics, and allow Defendants to designate fewer witnesses, but has not. It is therefore unfair to fault Defendants for designating an appropriate number of witnesses.

*Finally*, Gillette provides no basis for its request that all Dorco depositions be scheduled for 14 hours and count for half time, regardless of whether Gillette actually needs that time. Gillette's cited authority of a 2009 Delaware case and a Florida case for converting translated deposition time are inapt because Gillette agreed to a 100-hour deposition limit knowing that it would take translated Dorco depositions. Gillette had taken only a single deposition at the time it filed this motion and has made no attempt to demonstrate whether a 2:1, 1.5:1, or smaller conversion ratio is warranted. In fact, conversion ratios, when granted, vary. *See, e.g.*, Ex. E at 11:2-10 [Delaware Display transcript] (Judge Andrews ordering that each hour of a translated deposition will count as 40 minutes of deposition time—a ratio of 1.5:1—rather than the 30 minutes requested by plaintiffs or 45 minutes requested by defendants)]. With no actual evidence of a problem, and in light of Gillette's prior agreements about translated depositions, Gillette has failed to meet its burden of showing good cause.

One hundred hours of deposition time per side is more than enough in a one-patent case, even with translations. Defendants respectfully request that the Court not alter the agreed-upon deposition limit, let alone grant Gillette a conversion ratio for Dorco depositions.

SHAW KELLER LLP

The Honorable Leonard P. Stark
Page 4

Respectfully submitted,

*/s/ John W. Shaw*

John W. Shaw (No. 3362)

Attachments
cc:     Clerk of the Court (by hand delivery)
         All counsel of record (by e-mail)

# Exhibit A

미국 지방법원

델라웨어 주 지방법원

| | | |
|---|---|---|
| GILLETTE COMPANY | ) | |
| | ) | |
| 원고 | ) | |
| | ) | |
| 대 | ) | C.A. No. 15-1158-LPS |
| | ) | |
| DOLLAR SHAVE CLUB, INC., DORCO | ) | ██████████████ |
| COMPANY LTD., 및 PACE SHAVE, INC. | ) | |
| | ) | |
| 피고들. | | |

<u>안병선 (ARCHIE)의 진술서</u>

엄격한 비공개 자료 - 외부 변호인만 열람 가능

본인 안병선 (ARCHIE)은 이 문서를 통해 아래와 같이 진술합니다.

1.    저는 Dorco Company Ltd. ("Dorco") 연구개발부서의 차장입니다. 저는 1999 년 3 월 8 일부터 도루코에서 근무해 왔습니다. 저는, 질레트의 강제신청에 대한 도루코의 반대 의견을 지지하여 이 진술서를 제출하며, 이 진술서 내에서 기재된 사실관계에 대해 개인적으로 알고 있음을 밝힙니다. 저는 증인으로서 소환되어 선서를 요청받게 되면, 그에 대해 충분히 증언할 것입니다.

2.    저는 제 업무의 일환으로, 도루코 면도날의 매개변수 및 생산 공정과 관련하여 도루코가 생성하는 문서들의 유형 등 도루코의 기술문서에 익숙합니다.



4.    민감한 부분은 편집된, 질레트의 강제 신청서를 제가 검토해 봤을 때, 질레트는 "피혐의 면도날에 사용된 코팅의 화학적 구성, 그러한 코팅의 두께, 그러한 코팅이 적용되는 방법을 나타내는 제조공정 상세설명을 나타내는 기술문서들"을 도루코가 제출해 온 것은 아니라는 입장을 취하고 있는 것으로 이해가 됩니다. 저는 질레트의 입장에 동의하지 않습니다. 저는 도루코의 기술문서에 익숙하며, 그러한 기술문서들을 "DOR" 제출번호를 붙여서 질레트에게 제출했으며, 그러한 기술문서들은 질레트가 요청한 정보 등 도루코의 면도날과 관련하여 도루코가 가지고 있는 기술정보를 담고 있는 것으로 이해하고 있습니다.

5.    예를 들어, ████████████████ 많은 제품 명세서를 제출해 왔습니다. ████

1

엄격한 비공개 자료 - 외부 변호인만 열람 가능



6.     도루코는 또한, 피협의 면도날을 만드는 데 사용되는, ████████

██공정에 대한 매개변수와 작동 조건을 나타내는, '개정 상황이 관리되는' 문서들을

제출해 오고 있습니다. ████████████████████

엄격한 비공개 자료 - 외부 변호인만 열람 가능



엄격한 비공개 자료 - 외부 변호인만 열람 가능

8.    또한 도루코는, ███████████████████████

████████████████████████████████ 등 도루코가 제조한 날의 품질과

성능을 평가하는 데 있어서 중점을 두고 있는 매개변수에 대해 설명하는 문서들도

제출한 바 있습니다.  ████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

저는 미국법의 위증죄를 무릅쓰고 전술한 내용이 사실이고 옳다는 것을

선언합니다.  2017 년 5 월 24 일 뉴욕주 뉴욕시에서 서명.

안병선 (Archie)

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE GILLETTE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-1158-LPS |
| | ) | |
| DOLLAR SHAVE CLUB, INC., DORCO | ) | |
| COMPANY LTD., and PACE SHAVE, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF BYUNG SUN (ARCHIE) AHN

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY**

I, Byung Sun (Archie) Ahn, do hereby declare as follows:

1.      I am the Deputy Chief of Research and Development at Dorco Company Ltd. ("Dorco").  I have worked at Dorco since March 8, 1999.  I submit this declaration in support of Dorco's Opposition to Gillette's Motion to Compel and have personal knowledge of the facts stated herein.  If called and sworn as a witness, I could and would testify competently thereto.

2.      As part of my job, I am familiar with Dorco's technical documents, including the types of documents it generates regarding Dorco's razor blade parameters and production processes.

3.      

4.      Based on my review of the redacted version of Gillette's motion to compel, I understand that Gillette has taken the position that Dorco has not produced "technical documents showing the chemical compositions of the coatings used on the accused razors, the thicknesses of those coatings, and manufacturing process specifications showing how those coatings are applied."  I disagree with Gillette's position.  I am familiar with Dorco's technical documents, which I understand have been produced to Gillette as documents bearing "DOR" production numbers, and those documents contain the technical information that Dorco has regarding its razor blades, including the information requested by Gillette.

1

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY**

5.      For example, Dorco has produced a number of product specifications that identify, ███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████

6.      Further, Dorco has produced revision-controlled documents showing the parameters and operating conditions for the process, ████████████ used to make the accused razor blades. ████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY**



**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY**

8.    Further, Dorco has produced documents that detail the parameters it focuses on in assessing the quality and performance of its manufactured blades,

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 24, 2017, at New York City, New York.

_____
Byung Sun (Archie) Ahn

4



# TRANSLATION CERTIFICATION

450 7th Avenue
10th Floor
New York, NY  10123
Tel 212.643.8800
Fax 212.643.0005
www.morningtrans.com

**County of New York**
**State of New York**

Date: May 24, 2017

To whom it may concern:

This is to certify that the attached translation from Korean into English is an accurate representation of the documents received by this office.

The documents are designated as:

- 2017.05.24 Byung Sun (Archie) Ahn Declaration re Dorco Doc Product_(47167149_1)

Eugene Li, Project Manager in this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

_____

Signature of Eugene Li

Accurate Translation Services 24/7

# Exhibit 1

# REDACTED IN ITS ENTIRETY

# Exhibit 2

# REDACTED IN ITS ENTIRETY

# Exhibit 3

# REDACTED IN ITS ENTIRETY

# Exhibit 4

# REDACTED IN ITS ENTIRETY

# Exhibit 5

# REDACTED IN ITS ENTIRETY

# Exhibit 6

# REDACTED IN ITS ENTIRETY

# Exhibit 7

# REDACTED IN ITS ENTIRETY

# Exhibit 8

# REDACTED IN ITS ENTIRETY

# Exhibit 9

# REDACTED IN ITS ENTIRETY

# Exhibit 10

# REDACTED IN ITS ENTIRETY

# Exhibit 11

# REDACTED IN ITS ENTIRETY

# Exhibit 12

# REDACTED IN ITS ENTIRETY

# Exhibit 13

# REDACTED IN ITS ENTIRETY

# Exhibit 14

# REDACTED IN ITS ENTIRETY

# Exhibit B

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Helena D. Kiepura
To Call Writer Directly:
(202) 879-5264
helena.kiepura@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

April 21, 2017

**By E-mail**

Jennifer A. Albert
Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY  10018

Email:  JAlbert@goodwinlaw.com

Re:   *The Gillette Company v. Dollar Shave Club, Inc.*, C.A. No. 15-1158 (LPS)

Dear Jennifer:

I write in response to your April 12, 2017 letter regarding Dorco's core technical document production.

As Dorco has previously confirmed, its core technical document production fully complies with the Delaware default rules, and Gillette's complaints are inaccurate and unfounded.  In short, Dorco's core technical document production includes the documents that Dorco creates and maintains in the ordinary course of its business relating to the ████████████████████ ████████████        Accordingly, as I previously noted, Gillette's requests are of the type better answered through service of specific discovery requests seeking that information.  However, as a courtesy and in the interest of avoiding burdening the court with an unnecessary dispute, and without prejudice to its rights under the Delaware Local Rules and Federal Rules of Civil Procedure, Dorco provides the following additional information regarding its core technical document production.

Contrary to Gillette's assertion during the meet and confer and in the follow-up letter, Dorco's core technical document production includes the documents that describe ████████████ █████████████████████████████████████████████████████████████          s an example, the document████████████████████████████████████████ reflects the current process conditions for the manufacture of the accused products.  The steps of the production process are also identified in █████████████████████████

Beijing    Chicago    Hong Kong    Houston    London    Los Angeles    Munich    New York    Palo Alto    San Francisco    Shanghai

## KIRKLAND & ELLIS LLP

Jennifer A. Albert
Goodwin Procter LLP
April 21, 2017
Page 2

████████████████.  Other examples of documents that describe current processes and
conditions for making the accused blades include: ████████████████████████
███████████████████████████
███████████████████.  Additionally, contrary to Gillette's assertion, the production
includes documents that describe the compositions of the razor blade coatings that are currently
used in connection with the commercial manufacture of the Accused Products, including, for
example: █████████████████████████████████████
█████████████████████████.  As a further example, the product
specifications for the accused razors can be found at ████████████████████████

Dorco provides this information without waiver of its right to require Gillette to seek this
information through written discovery requests (as Gillette has required of Defendants).  We
expect, however, Gillette will extend similar courtesies to Dorco (and the other Defendants) in
the future.

Sincerely,

*Helena D. Kiepura*

Helena D. Kiepura

Exhibit C

| | |
|---|---|
| **From:** | Albert, Jennifer A |
| **To:** | Terry Wit; Cox, Charles T.; DG-Gillette Goodwin; "Smith, Rodger (RSmith@MNAT.com)" |
| **Cc:** | jshaw@shawkeller.com; *kkeller@shawkeller.com; *dfry@shawkeller.com; Morgan Tovey; #DollarShave_Gillette; James Judah; Bendix, Kevin; Mizzo, F. Christopher; Jonathan Tse; John McCauley |
| **Subject:** | RE: Gillette v. DSC - Proposed Schedule |
| **Date:** | Monday, December 05, 2016 10:40:44 AM |

Terry,

The addition of new parties to the case justifies reconsideration of the discovery limits set forth in the Scheduling Order. With respect to the limits on deposition hours, for example, the Scheduling Order provides for 65 hours of party witnesses and 35 hours of non-party witnesses. Dorco and Pace were third parties at the time we agreed to those limits. Now, they are parties to the case, so the deposition hours allotted to third party witnesses should be rolled over into the deposition hours allotted to party witnesses. We suggested an additional 10 hours to account for any additional third party witnesses, such as nonparty distributors or resellers and nonparty inventors or prior art witnesses.

Please let us know if Defendants will agree to Gillette's proposed modifications of the discovery limits and, if not, provide a time you are available for a meet and confer before Friday at 1 pm ET this week.

Jennifer A. Albert



901 New York Avenue NW
Washington, D.C. 20001
202-346-4322 (direct phone)
202-346-4000 (general phone)
202-346-4444 (fax)
JAlbert@goodwinlaw.com



**From:** Terry Wit [mailto:terrywit@quinnemanuel.com]

**Sent:** Friday, December 02, 2016 1:12 PM
**To:** Albert, Jennifer A; Cox, Charles T.; DG-Gillette Goodwin; 'Smith, Rodger (RSmith@MNAT.com)'
**Cc:** jshaw@shawkeller.com; kkeller@shawkeller.com; dfry@shawkeller.com; Morgan Tovey; dollarshave_gillette@kirkland.com; James Judah; Bendix, Kevin; Mizzo, F. Christopher; Jonathan Tse; John McCauley
**Subject:** Re: Gillette v. DSC - Proposed Schedule

Jennifer,

Regarding the new discovery limits you proposed on Monday, we do not understand what the basis would be for these requested changes now, given that Gillette was well aware of Pace Shave and Dorco Company and whatever discovery it might want to seek from them long before it agreed to the limitations included in the existing case management order.  (Even if Gillette could somehow argue that it was unaware of Pace and Dorco prior to filing the complaint, which is untenable, it was undisputedly aware of them by March 3, 2016 when Gillette received the demand letter regarding ███████████████ – well prior to the parties' early meeting of counsel and the Court's initial case management conference where Gillette agreed to those limits.)  Can you please provide Gillette's basis for seeking to modify the limits now in light of that history?  We can then make a timely decision about whether, in light of your position, it makes sense to modify any of those existing limits.

Thank you.

**Terry L. Wit**
**Quinn Emanuel Urquhart & Sullivan, LLP**
50 California Street, 22nd Floor | San Francisco, CA  94111
415.875.6331 (direct) | 415.875.6700 (fax) | www.quinnemanuel.com

This message and any attachments may contain attorney-client privileged and/or confidential material.  If you are not the intended recipient(s) or responsible for delivering this message to them, please delete this immediately and notify us you have done so.  Any review, distribution or copying is prohibited.  Thank you.

**From:** "Albert, Jennifer A" <JAlbert@goodwinlaw.com>
**Date:** Wednesday, November 30, 2016 at 8:43 AM
**To:** Terry Wit <terrywit@quinnemanuel.com>, "Cox, Charles T." <CCox@goodwinlaw.com>, DG-Gillette Goodwin <DG-GilletteGoodwin@goodwinlaw.com>, "'Smith, Rodger (RSmith@MNAT.com)'" <RSmith@MNAT.com>
**Cc:** John Shaw <jshaw@shawkeller.com>, Karen Keller <kkeller@shawkeller.com>, "dfry@shawkeller.com" <dfry@shawkeller.com>, Morgan Tovey <morgantovey@quinnemanuel.com>, Kirkland List <DollarShave_Gillette@kirkland.com>, James Judah <jamesjudah@quinnemanuel.com>, "Bendix, Kevin" <kevin.bendix@kirkland.com>, "Mizzo, F. Christopher" <chris.mizzo@kirkland.com>, Jonathan Tse <jonathantse@quinnemanuel.com>, John McCauley <johnmccauley@quinnemanuel.com>
**Subject:** RE: Gillette v. DSC - Proposed Schedule

Terry,

Gillette will agree to your compromise date of February 20, 2017 for substantial completion of Pace's document production.  I believe the parties have reached agreement on the other proposed dates for the Schedule.

Gillette would like to include a footnote in the filing today indicating that the parties will be separately discussing adjustments to the discovery limits set forth in Paragraph 7(c), (d) and (e) of the Scheduling Order (D.I. 20) given the additional parties now in the case.

Please let us review the draft filing before submission to the Court.

Additionally, please let us know today some dates and times when you are available to meet and confer on the discovery limits amendments within the next week.

Thank you.

Jennifer A. Albert



901 New York Avenue NW
Washington, D.C. 20001
202-346-4322 (direct phone)
202-346-4000 (general phone)
202-346-4444 (fax)
JAlbert@goodwinlaw.com





---

**From:** Terry Wit [mailto:terrywit@quinnemanuel.com]
**Sent:** Tuesday, November 29, 2016 6:44 PM
**To:** Albert, Jennifer A; Cox, Charles T.; DG-Gillette Goodwin; 'Smith, Rodger (RSmith@MNAT.com)'
**Cc:** jshaw@shawkeller.com; kkeller@shawkeller.com; dfry@shawkeller.com; Morgan Tovey;

dollarshave_gillette@kirkland.com; James Judah; Bendix, Kevin; Mizzo, F. Christopher; Jonathan Tse; John McCauley
**Subject:** Re: Gillette v. DSC - Proposed Schedule

Jennifer,

Pace can accept your proposed change of the core technical documents date from December 23 to December 21.  With respect to the deadline for Pace's substantial completion of document production, my understanding from the November 22 hearing is that the Court wished to adopt Pace's original scheduling proposal(s), aside from the parties needing to adjust certain of the claim construction dates in light of the April 3 Markman date.  Nonetheless, I don't think this is something that either side should bother the Court regarding (particularly given that Judge Burke stated he did not want to see "new disputes"), so I would ask that we simply split the difference between your proposal and Pace's, and set it as February 20, 2017.  These changes are reflected in the attached draft.  Please let us know if you agree so we can finalize the submission.

With respect to your new request regarding various discovery limits, as I noted below, I will discuss those with my team (many of whom are traveling or otherwise not available today), and I will get back to you, but that cannot be a basis for holding up the submission due tomorrow.  Judge Burke ordered the parties to confer regarding *scheduling* issues and submit a proposed order tomorrow — none of the proposed new discovery limits you raised yesterday for the first time were subject to any prior request to any of the defendants or the Court, or otherwise discussed at the November 22 hearing, nor have the parties had the required meet and confer teleconference with local counsel regarding them.

In any case, we are happy to consider Gillette's new requests and we will get back to you later this week regarding same.  In the meantime, please confirm we can submit the attached revised joint schedule, as ordered, tomorrow.

Regards,
Terry

**Terry L. Wit**
**Quinn Emanuel Urquhart & Sullivan, LLP**
50 California Street, 22nd Floor | San Francisco, CA  94111
415.875.6331 (direct) | 415.875.6700 (fax) | www.quinnemanuel.com

This message and any attachments may contain attorney-client privileged and/or confidential material.  If you are not the intended recipient(s) or responsible for delivering this message to them, please delete this immediately and notify us you have done so.  Any review, distribution or copying is prohibited.  Thank you.

**From:** "Albert, Jennifer A" <JAlbert@goodwinlaw.com>
**Date:** Tuesday, November 29, 2016 at 11:29 AM
**To:** Terry Wit <terrywit@quinnemanuel.com>, "Cox, Charles T." <CCox@goodwinlaw.com>, DG-Gillette Goodwin <DG-GilletteGoodwin@goodwinlaw.com>, "'Smith, Rodger (RSmith@MNAT.com)'" <RSmith@MNAT.com>
**Cc:** John Shaw <jshaw@shawkeller.com>, Karen Keller <kkeller@shawkeller.com>,

"dfry@shawkeller.com" <dfry@shawkeller.com>, Morgan Tovey
<morgantovey@quinnemanuel.com>, Kirkland List <DollarShave_Gillette@kirkland.com>, James
Judah <jamesjudah@quinnemanuel.com>, "Bendix, Kevin" <kevin.bendix@kirkland.com>, "Mizzo, F.
Christopher" <chris.mizzo@kirkland.com>, Jonathan Tse <jonathantse@quinnemanuel.com>, John
McCauley <johnmccauley@quinnemanuel.com>
**Subject:** RE: Gillette v. DSC - Proposed Schedule

Terry,

We have reviewed your edits to the proposed schedule.

We have two comments in response to your edits.  First, we propose a
compromise that Pace's production of core technical documents and samples
be completed by no later than December 21 rather than December 23 to
accommodate holiday schedules.

Second, we had proposed the date for Pace's substantial completion of
document production of no later than February 1, 2017 given that Pace has
already been involved in the case for a month and a half.  We are willing to
agree to a compromise date of February 15, 2017, but we do not agree to
March 8.  If you do not agree to our February 15 proposal, we suggest filing
the schedule indicating the two different date proposals to the Court (Gillette:
February 1, 2017, and Pace:  March 8, 2017).

In addition, we would like your position concerning the proposed amendments
to the discovery limits before we file this with the Court tomorrow so that the
Court can consider those proposed amendments to its scheduling order at the
same time.

Thank you.


Jennifer A. Albert



901 New York Avenue NW
Washington, D.C. 20001
202-346-4322 (direct phone)
202-346-4000 (general phone)
202-346-4444 (fax)

JAlbert@goodwinlaw.com





**From:** Terry Wit [mailto:terrywit@quinnemanuel.com]
**Sent:** Tuesday, November 29, 2016 11:19 AM
**To:** Albert, Jennifer A; Cox, Charles T.; DG-Gillette Goodwin; 'Smith, Rodger (RSmith@MNAT.com)'
**Cc:** jshaw@shawkeller.com; kkeller@shawkeller.com; dfry@shawkeller.com; Morgan Tovey; dollarshave_gillette@kirkland.com; James Judah; Bendix, Kevin; Mizzo, F. Christopher; Jonathan Tse; John McCauley
**Subject:** Re: Gillette v. DSC - Proposed Schedule

Jennifer,

Attached are our further revisions to the proposed schedule in response to your edits (the vast majority of which were accepted). Please let us know if you have any further comments or if we can go ahead and submit this in final form tomorrow. I will discuss your other requests below with my team and get back to you.

Regards,
Terry

**Terry L. Wit**
**Quinn Emanuel Urquhart & Sullivan, LLP**
50 California Street, 22nd Floor | San Francisco, CA 94111
415.875.6331 (direct) | 415.875.6700 (fax) | www.quinnemanuel.com

This message and any attachments may contain attorney-client privileged and/or confidential material. If you are not the intended recipient(s) or responsible for delivering this message to them, please delete this immediately and notify us you have done so. Any review, distribution or copying is prohibited. Thank you.

**From:** "Albert, Jennifer A" <JAlbert@goodwinlaw.com>
**Date:** Monday, November 28, 2016 at 11:42 AM
**To:** Terry Wit <terrywit@quinnemanuel.com>, "Cox, Charles T." <CCox@goodwinlaw.com>, DG-Gillette Goodwin <DG-GilletteGoodwin@goodwinlaw.com>, "'Smith, Rodger (RSmith@MNAT.com)'" <RSmith@MNAT.com>
**Cc:** John Shaw <jshaw@shawkeller.com>, Karen Keller <kkeller@shawkeller.com>, "dfry@shawkeller.com" <dfry@shawkeller.com>, Morgan Tovey <morgantovey@quinnemanuel.com>, Kirkland List <DollarShave_Gillette@kirkland.com>, James Judah <jamesjudah@quinnemanuel.com>, "Bendix, Kevin" <kevin.bendix@kirkland.com>, "Mizzo, F. Christopher" <chris.mizzo@kirkland.com>, Jonathan Tse <jonathantse@quinnemanuel.com>
**Subject:** RE: Gillette v. DSC - Proposed Schedule

Terry,

Attached are Gillette's suggested revisions to the schedule you proposed.  We are available to discuss our edits if you want clarification for the changes.

In addition, due to the additional parties now in the case, we believe the parties should discuss some amendments to the discovery limits.  In this regard, Gillette proposes increasing the number of interrogatories to 40 per side, changing the number of deposition hours to 110 hours per side (which can be divided between party depositions and third party depositions) and increasing the number of requests for admission to 100 per side.  Please let us know when you are available to discuss these issues.

Jennifer A. Albert



901 New York Avenue NW
Washington, D.C. 20001
202-346-4322 (direct phone)
202-346-4000 (general phone)
202-346-4444 (fax)
JAlbert@goodwinlaw.com





---

**From:** Terry Wit [mailto:terrywit@quinnemanuel.com]
**Sent:** Friday, November 25, 2016 6:17 PM
**To:** Cox, Charles T.; DG-Gillette Goodwin; 'Smith, Rodger (RSmith@MNAT.com)'
**Cc:** jshaw@shawkeller.com; kkeller@shawkeller.com; dfry@shawkeller.com; Morgan Tovey; dollarshave_gillette@kirkland.com; James Judah; Bendix, Kevin; Mizzo, F. Christopher; Jonathan Tse
**Subject:** Gillette v. DSC - Proposed Schedule

Counsel,

Pursuant to Judge Burke's Order, please see the attached proposed revised schedule given the new Markman date of April 3, 2017.  This is due November 30.  Please let us know if you have any

comments.

Regards,
Terry

**Terry L. Wit**
**Quinn Emanuel Urquhart & Sullivan, LLP**
50 California Street, 22nd Floor | San Francisco, CA  94111
415.875.6331 (direct) | 415.875.6700 (fax) | www.quinnemanuel.com

This message and any attachments may contain attorney-client privileged and/or confidential material.  If you are not the intended recipient(s) or responsible for delivering this message to them, please delete this immediately and notify us you have done so.  Any review, distribution or copying is prohibited.  Thank you.

*******************************************************************
This message was sent from Goodwin Procter LLP and is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.
*******************************************************************

# Exhibit D

## Mizzo, F. Christopher

| | |
|---|---|
| **From:** | Abate, Mark <MAbate@goodwinlaw.com> |
| **Sent:** | Friday, February 24, 2017 3:31 PM |
| **To:** | Mizzo, F. Christopher |
| **Subject:** | Gillette v. DSC--joint letter and case schedule |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Chris,

Thank you for speaking informally this morning concerning the joint letter due on Feb. 28 and the case schedule.  As we discussed, in view of Dorco's withdrawal of its motion to dismiss and commitment to answer the complaint, Gillette will withdraw its motion for letters rogatory.  However, Gillette believes that Dorco's answering the complaint does not obviate Gillette's discovery motions concerning ███████████████████████████████████████████████████████████████, Nonetheless, Gillette with withdraw its discovery motions without prejudice provided Dorco agrees to an expedited schedule for Dorco's discovery and modifications to the case schedule to accommodate that discovery.

Attached is Gillette proposal in that regard.  Generally we moved all deadlines after the claim construction hearing back by approximately two months.  For Dorco's core technical document production and substantial completion of document production, Gillette proposes a compromise—selecting dates in between the dates Gillette proposed (March 8 and April 7) and those Dorco proposed (April 7 and May 19) on our call.

While we have the court's attention, Gillette would also like to finalize and file the stipulation on discovery limits with the joint letter.  Gillette's proposal is attached showing redlining from the last proposal which was attached to Terry Wit's Dec. 19, 2016 email.  Note that we increased the deposition time to 120 hours to account for depositions requiring translation from Korean to English. If Dorco's witnesses would be willing to testify in English, Gillette would agree to reduction of the deposition time to 100 hours.

With respect to Dorco's core technical documents, Gillette expects documents showing the coatings on Dorco's blades and method of applying those coatings for each accused product and for all years (Jan. 2010-present). ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████  *See, e.g.,* Pace 396-399.  Also, to expedite discovery, as we discussed, we expect that Dorco will produce ████████████████ of its documents to the extent they exist.  *See, e.g.,* Pace 396-399, Pace 1272-1277, Pace 1289-93.

While not in the attached schedule for submission to the Court, we would like Dorco's commitment to provide written responses to Gillette's outstanding documents requests by March 22, 2017.   Those requests were served on Dorco on Oct. 5, 2016.

We believe the Gillette's proposal is reasonable in that: ███████████████████ ████████████████████████████████████████████████ Dorco's now withdrawn motion to dismiss resulted in a five month extension of its time to answer, and having document discovery completed by May 5 and extending the schedule as proposed will allow time for translation of documents as necessary, follow up document and written discovery and depositions of Dorco in advance of the date for Gillette to provide its final infringement contentions.  Please let me know if Dorco would be willing to submit the above schedule to the court with the joint letter to obviate Gillette discovery motions.  I am available this weekend or on Monday if you would like to have another call. Thank you.

Regards,

Mark

**Mark J. Abate**

Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
o  +1 212 459 7031
m +1 973 525 4222
f   +1 646 558 4048
MAbate@goodwinlaw.com | goodwinlaw.com

**********************************************************************

This message was sent from Goodwin Procter LLP and is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.

***************************************

Attachments:
    image001.png (2162 Bytes)
    85869256_4.docx (19243 Bytes)
    8708041_1_Stipulation and Proposed Order to Modify The Scheduling Order (....doc (37440 Bytes)

# Exhibit E

```
 1            IN THE UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF DELAWARE

 3   DELAWARE DISPLAY GROUP LLC, :  No.: 13-2106-RGA
     et al.,                     :  No.: 13-2107-RGA
 4             Plaintiffs,       :  No.: 13-2108-RGA
      v.                         :  No.: 13-2109-RGA
 5                               :  No.: 13-2110-RGA
     AMAZON.COM INC., et al.,    :  No.: 13-2111-RGA
 6                               :  No.: 13-2112-RGA
               Defendants.       :

 7

 8                  Friday, August 22, 2014
                    3:00 p.m.
 9

10                  Rule 16 Conference
                    Courtroom of Judge Richard G. Andrews
11
                    844 King Street
12                  Wilmington, Delaware

13

        BEFORE:     THE HONORABLE Richard G. Andrews,
14                  United States District Court Judge

15

        APPEARANCES:
16

17                  FARNAN LLP
                    BY:  MICHAEL FARNAN, ESQ.
18
                                 -and-
19
                    BRAGALONE CONROY PC
20                  BY:  PATRICK CONROY, ESQ.

21                     On behalf of Plaintiffs

22

23

24
```

```
 1        APPEARANCES CONTINUED:

 2
                    SEITZ, ROSS, ARONSTAM & MORITZ LLP
 3                  BY:  BEN SCHLADWEILER, ESQ.

 4                              -and-

 5                  MAYER BROWN
                    BY:  JAMIE BEABER, ESQ.
 6                  BY:  ROB PLUTA, ESQ.

 7                      On behalf of LG Defendants

 8

 9                  SHAW KELLER LLP
                    BY:  JEFFREY CASTELLANO, ESQ.
10
                                -and-
11
                    K&L GATES LLP
12                  BY:  MICHAEL BETTINGER, ESQ.

13                      On behalf of HTC

14
                    MORRIS, NICHOLS, ARSHT & TUNNELL LLP
15                  BY:  MEGAN DILLENGER, ESQ.

16                              -and-

17                  K&L GATES LLP
                    BY:  MICHAEL BETTINGER, ESQ.
18
                        On behalf of Amazon.com
19

20                  POTTER, ANDERSON & CORROON LLP
                    BY:  BINDU PALAPURA, ESQ.
21                              -and-

22                  AKIN GUMP STRAUSS HAUER & FELD LLP
                    BY:  FRED WILLIAMS, ESQ.
23
                        On behalf of Lenovo
24
```

Case 1:15-cv-01158-RGA Document 384 Filed 05/03/17 Page 65 of 87 PageID #: 12455
Case 1:13-cv-02109-RGA Document 26 Filed 09/29/14 Page 3 of 25 PageID #: 309

3

```
 1        APPEARANCES CONTINUED:

 2

 3                  MORRIS JAMES LLP
                    BY:  KENNETH DORSNEY, ESQ.

 4                              -and-

 5                  LERNER DAVID LITTENBERG KRUMHOLZ &
                    MENTLIK LLP
 6                  BY:  GREG GEWIRTZ, ESQ.

 7                      On behalf of Sony

 8
                    YOUNG, CONAWAY, STARGATT & TAYLOR LLP
 9                  BY:  PILAR KRAMAN, ESQ.

10                      On behalf of Vizio

11

12                  RATNERPRESTIA
                    BY:  REX DONNELLY, ESQ.
13
                        On behalf of Pantech
14

15

16

17

18

19

20

21

22

23

24
```

Case 1:15-cv-01158-PBS Document 384 Filed 05/31/17 Page 66 of 87 PageID #: 12456
Case 1:13-cv-02109-RGA Document 26 Filed 09/29/14 Page 4 of 25 PageID #: 316

4

```
 1                  THE COURT:  Good afternoon,

 2    everyone.  Please be seated.  The first order of

 3    business is to find out who's here.  Mr. Farnan,

 4    how are you today?

 5                  MR. FARNAN:  I'm great, Your

 6    Honor.  How are you doing?

 7                  THE COURT:  I'm good.  The last

 8    set of lawyers was a bit too much, but hopefully

 9    this will be better.

10                  MR. FARNAN:  I'm sure, Your Honor.

11    Your Honor, Michael Farnan for the record and

12    with me today is Patrick Conroy of Bragalone

13    Conroy in Texas.

14                  THE COURT:  All right.  Good

15    afternoon, Mr. Conroy.

16                  MR. CONROY:  Good afternoon, Your

17    Honor.

18                  THE COURT:  Who is here for the

19    Defendants?

20                  MR. SCHLADWEILER:  Good afternoon,

21    Your Honor.  Ben Schladweiler from Seitz Ross on

22    behalf of the LG and LG Display Defendants.  And

23    with me today is Jamie Beaber.

24                  MR. BEABER:  Good afternoon, Your
```

Case 1:15-cv-01158-RGA Document 384 Filed 05/03/17 Page 67 of 87 PageID #: 12457
Case 1:13-cv-02109-RGA Document 26 Filed 09/29/14 Page 5 of 25 PageID #: 3445

5

```
 1        Honor.

 2                    MR. SCHLADWEILER:  And Rob Pluta

 3        from Mayer Brown.

 4                    MR. PLUTA:  Good afternoon, Your

 5        Honor.

 6                    MR. SCHLADWEILER:  We also have

 7        several client representatives from LG Display

 8        that came here from Korea.  Thank you, Your

 9        Honor.

10                    THE COURT:  All right.

11        Mr. Castellano?

12                    MR. CASTELLANO:  Jeff Castellano

13        from Shaw Keller for the HTC Defendants and also

14        here is Mike Bettinger from K&L Gates.

15                    THE COURT:  Good afternoon,

16        Mr. Bettinger.

17                    MR. BETTINGER:  Good afternoon,

18        Your Honor.

19                    MS. DELLINGER:  Good afternoon,

20        Your Honor.  Megan Dellinger of Morris, Nichols,

21        Arsht & Tunnell on behalf of Defendant

22        Amazon.com and with me today is my co-counsel

23        from K&L Gates, Michael Bettinger.

24                    THE COURT:  Rather ubiquitous,
```

Case 1:15-cv-01158-RGA Document 384 Filed 05/31/17 Page 68 of 87 PageID #: 12458
Case 1:13-cv-02109-RGA Document 26 Filed 09/29/14 Page 6 of 25 PageID #: 312

6

```
 1    Mr. Bettinger.

 2                  MR. BETTINGER:  Thank you, Your

 3    Honor.

 4                  THE COURT:  Ms. Palapura?

 5                  MR. PALAPURA:  Good afternoon,

 6    Your Honor.  Bindu Palapura from Potter Anderson

 7    on behalf of the Lenovo Defendants.  With me

 8    today is Fred Williams from Aken Gump.

 9                  THE COURT:  Good afternoon.

10                  MR. DORSNEY:  Good afternoon, Your

11    Honor.  On behalf of Sony, Ken Dorsney from

12    Morris James, and with me my co-counsel Greg

13    Gewirtz from Lerner David.

14                  MR. GEWIRTZ:  Good afternoon, Your

15    Honor.

16                  THE COURT:  Ms. Kraman?

17                  MS. KRAMAN:  Good afternoon, Your

18    Honor.  Pilar Kraman on behalf of Vizio and it's

19    just me today.

20                  THE COURT:  All right.  Thank you.

21    So there are a lot of people here considering

22    that it appeared as though there were almost no

23    disputes.  I can only imagine how many of you

24    will be here if there were.  I'm sorry.  Did I
```

1    not get everyone?

2              MR. DONNELLY:  You did.  Rex

3    Donnelly from RatnerPrestia for the Pantech

4    Defendants and on the telephone is my

5    co-counsel --

6              THE COURT:  No, I don't think so.

7    No one is on the telephone.  I'm pretty sure

8    it's not working.  Sorry, Mr. Donnelly.  So

9    anyway, can anybody tell me why there's so many

10   people here for this conference?  I'm assuming

11   that that's not Plaintiff's knowledge.

12              Is there anybody from the

13   Defendants that can tell me what is at stake or

14   did you all just want to go some place nice on a

15   Friday afternoon in August?

16              MR. BEABER:  On behalf of LG

17   Display and LG Electronics, I think our clients

18   are taking this case very seriously.  IDT, EBG

19   have filed cases against approximately 23

20   different entities between the Eastern District

21   of Texas cases and the cases pending before Your

22   Honor in Delaware.

23              THE COURT:  So I saw when I looked

24   at the docket there are eight cases in the

Case 1:15-cv-01158-RGA Document 384-6 Filed 05/03/17 Page 70 of 87 PageID #: 12460
Case 1:13-cv-02109-RGA Document 26 Filed 09/29/14 Page 8 of 25 PageID #: 314

8

```
 1        Eastern District of Texas at least listed and
 2        there is about six here.  But you say the total
 3        is how many?
 4                      MR. BEABER:  Number of parties,
 5        number of entities.
 6                      THE COURT:  So I've got the number
 7        of cases right, but some of them have more than
 8        one Defendant?
 9                      MR. BEABER:  I believe that's
10        correct, Your Honor.
11                      THE COURT:  There's no reason
12        obviously cases shouldn't be taken seriously.
13        So I take it the parties have been unable to
14        agree in the interim as to what the formula for
15        counting translated depositions should be?
16                      MR. CONROY:  Your Honor, Patrick
17        Conroy for the Plaintiff --
18                      THE COURT:  First off, is there
19        likely -- I guess HTC is the Chinese
20        corporation, right?  Lenovo is Singapore maybe?
21                      MR. CONROY:  Sony is one.
22                      THE COURT:  Yes, I guess I'm
23        familiar.  They're Japanese.  I understand why
24        there's an issue.
```

Case 1:13-cv-01158-RGA Document 384-6 Filed 05/31/17 Page 71 of 87 PageID #: 12461
Case 1:13-cv-02109-RGA Document 26 Filed 09/29/14 Page 9 of 25 PageID #: 315

9

```
 1              MR. CONROY:  Your Honor, we

 2      apologize.  We tried to compromise.  The parties

 3      met several times.  We just can't come to an

 4      agreement.  In our practice it's not a rule, but

 5      we've seen the Plaintiff's position pretty

 6      uniformly applied in these types of things.

 7      Sony is the main objector, I think.  They have

 8      their view about that, but it's not a minor

 9      issue.

10              THE COURT:  All right.  Does Sony

11      want to be heard on this?

12              MR. GEWIRTZ:  Sure, Your Honor.

13      It's a minor issue I guess in the overall scheme

14      of things as Mr. Conroy said and he and I have

15      talked about it a bit.  From Sony's

16      perspective -- and by the way not only Sony,

17      but I know there's some other foreign Defendants

18      who join in this.

19              THE COURT:  I take it that he was

20      saying that you were taking the lead on it.

21              MR. GEWIRTZ:  Yes.  So what we

22      discussed is we're fine with giving a little bit

23      of extra time.  I've been doing this also for a

24      long time.  Typically, there's very few disputes
```

Case 1:15-cv-01591-RGA Document 394 Filed 05/31/17 Page 72 of 87 PageID #: 13462
Case 1:13-cv-02109-RGA Document 26 Filed 09/29/14 Page 10 of 25 PageID #: 316

10

1     overseas.  I know Mr. Conroy has a different

2     experience, but we're saying the way the

3     depositions actually work when an interpreter is

4     involved, the question is asked in English and

5     it's interpreted and translated to their native

6     language, the witness answers and then it's

7     interpreted back.  And it does have a little bit

8     of an extra time.  But the ones I've been

9     involved with typically they're done early and

10    if there's any extra time, it's a small amount.

11               We were willing to resolve it and

12    say, look, if it's every hour, you can treat it

13    as 45 minutes and if it's an hour-and-a half, it

14    will be two hours but it's certainly not double

15    because that takes into account attorneys'

16    thinking, pausing, marking exhibits.  It does

17    add a little bit.  So we want to try to resolve

18    it and we had hoped that if there's a dispute or

19    for whatever reason a witness is uncooperative,

20    of course the Court gets involved.  None of us

21    anticipate that here.

22               And we just try to say you

23    basically get 50 percent extra time but not 100

24    percent extra time.  We thought it was

Case 1:15-cv-01580-RGA Document 3846 Filed 05/21/17 Page 73 of 87 PageID #: 12463
Case 1:13-cv-02109-RGA Document 26 Filed 09/29/14 Page 11 of 25 PageID #: 317

11

```
 1       reasonable and this --

 2                   THE COURT:  All right.  Well, I

 3       have no experience in actually counting or

 4       analyzing depositions that are done through

 5       translator so I have absolutely no relevant

 6       experiential basis to decide this.  So I'm going

 7       to exercise Solomon -- I can't even pronounce

 8       it.  I will exercise some serious judgment here

 9       and make it two-thirds of an hour.  Right,

10       that's in between three-quarters and one-half?

11                   MR. GEWIRTZ:  Thank you, Your

12       Honor.  I appreciate the Solomon-like judgment.

13                   THE COURT:  Well, thank you for

14       pronouncing it correctly.  Not particularly to

15       the party representatives who are here, but

16       sometimes you have things where you just have to

17       make a choice and that's what I've done there.

18       All right.  So the other thing which seemed to

19       be perhaps a slightly more consequential issue

20       was in Paragraph 17 talking about trial.

21                   And it says, Plaintiffs would

22       prefer the order of trial to be set by the Court

23       at the scheduling conference.  I take it that

24       means today.  It says the Defendants would
```

Case 1:15-cv-01504-RGA Document 384 Filed 05/31/17 Page 74 of 87 PageID #: 13464
Case 1:13-cv-02109-RGA Document 26 Filed 09/29/14 Page 12 of 25 PageID #: 318

12

```
 1      prefer that the order of trial be set at a trial

 2      setting conference closer to trial which means

 3      some day after today; is that right?  Is that

 4      what the dispute is?

 5                  MR. CONROY:  That's about right,

 6      Your Honor.

 7                  THE COURT:  Not right?

 8                  MR. CONROY:  I said that's about

 9      right, Your Honor.

10                  THE COURT:  Here is what I was

11      thinking, sometimes I have set trials for one

12      reason or another when there are multiple

13      Defendants against the same Plaintiff and other

14      times I've said here's a date and the first

15      trial will be then and we will decide much

16      closer in time.  And I think that in a way

17      something actually in between those two is

18      better because one of the problems of setting

19      trials now is typically some of the Defendants

20      settle and then you get to schedule that maybe

21      people will do differently if they've done it

22      with the knowledge of who is going to settle.

23                  So what I would like to do is

24      suggest that when we have the Markman hearing,
```

```
 1          which I think is scheduled for at least a year

 2          from now, that we recaucus on this issue at that

 3          time and we will see who's left at the time and

 4          maybe everyone will be left.  I do think there's

 5          a point in time and I'm thinking maybe at least

 6          four months before the scheduled first trial

 7          date where it makes sense to actually pick the

 8          Defendant who's going to go first.

 9                    Because for the most part,

10          Plaintiff is getting ready for most of his work

11          to work against anybody and as a realistic

12          matter depending on exactly how the thing is

13          scheduled, the Defendants may not be

14          incentivized to actually really get ready for

15          trial unless they're sure they're the ones on

16          the spot.

17                    So why don't whomever's

18          responsible, I guess Mr. Farnan, for this, why

19          don't you put it on that the parties will meet

20          and confer before the Markman, see what they can

21          come up with as a proposal going forward then.

22          We will schedule a first trial date so somebody

23          in this group can be on that date, but I'm going

24          to put that off.  So in terms of the actual
```

1    dates, I'm not sure who's responsible for

2    picking the dates.

3              I'm thinking maybe they've got

4    their calendars mixed up because they put the

5    first day of the first trial as a Friday.  I

6    don't know whether that was intentional.  I

7    prefer to start on Mondays myself.

8              Why don't we say October 24, 2016

9    as the first trial of this group.  All right?

10             MR. CONROY:  Thank you, Your

11   Honor.

12             THE COURT:  All right.  So the

13   pretrial conference is October 14, 2016 at

14   8:30 a.m., that's fine.  The hearing on claim

15   construction, does anybody have a calendar to

16   tell me what day of the week is October 23,

17   2015?  All of these technological Defendants

18   here and nobody can answer this question?

19             MR. BEABER:  It's a Friday.

20             THE COURT:  You guys love Fridays,

21   but not so much me.  So why don't we have

22   October 27, 2015 which I assume will be the

23   following Tuesday.  And whoever is in charge of

24   the Defendants for suggesting Friday, I suggest

1    that that person be replaced.

2              There's one other thought that I

3    have.  Before I bring that up, I do see the

4    footnote here about inter partes review that LG

5    is going to request.  I looked at the case.  How

6    many patents are there, four or five?

7              MR. CONROY:  I believe there's

8    nine, Your Honor.

9              THE COURT:  Once you get past two,

10   it's all the same to me.  Has LG filed for

11   inter partes review on all nine?

12             MR. BEABER:  The LG Electronics

13   and LG Display Defendants only have eight

14   patents asserted against us and we have now

15   filed on all eight of those patents.

16             THE COURT:  Okay.  When did you

17   make that filing?

18             MR. BEABER:  Five of them were

19   filed approximately a month and a half ago and

20   the last three were filed over the course of the

21   last two days.

22             THE COURT:  All right.  I take it

23   that it is your plan to move for a stay at

24   whatever you consider to be the appropriate

Case 1:15-cv-01580-RGA Document 384 Filed 05/31/17 Page 78 of 87 PageID #: 13468
Case 1:13-cv-02109-RGA Document 26 Filed 09/29/14 Page 16 of 25 PageID #: 322

16

```
 1          point; is that right?

 2                      MR. BEABER:  That's correct, Your

 3          Honor.

 4                      THE COURT:  Why don't we just

 5          consider orally without any commitment that you

 6          move for a stay today.  So then the question

 7          will be when is the best time to brief this

 8          based on what you all can discern about what I'm

 9          likely to think is the best time to be deciding

10          this, which I don't think is immediately.

11                      I'd like to see something that

12          resembles a little traction.  Or put it like

13          this, the chances of granting it may go up if I

14          see traction.  So the consequence of that is

15          there's a period of time where the -- if I'm not

16          confusing this with something else where the PTO

17          or whomever is in charge of this will either

18          grant or deny your request for the review,

19          right?

20                      MR. BEABER:  Correct.

21                      THE COURT:  And that means you

22          will go forward and this is now an expedited

23          trial scheduled within a year, right?

24                      MR. BEABER:  Correct.  And it's
```

```
1        generally a six-month time period between the

2        filing and the institution of the --

3                      THE COURT:  Is that right?

4        Because my impression, and I could be wrong, is

5        that at least on that part usually the full six

6        months is not being taken.

7                      MR. BEABER:  That's correct, Your

8        Honor.  That would be the longest period of time

9        that could lapse prior to a decision by the PTO.

10                     THE COURT:  So do you have a

11       thought as to when you would like to get serious

12       about this motion?

13                     MR. BEABER:  I would say the

14       beginning of next year, Your Honor.

15                     THE COURT:  Okay.  That makes

16       sense because that would be roughly around the

17       time frame that it's likely you will know at

18       least which, if any, of the requests have been

19       granted.  In any event, that's fine by me.

20                     Mr. Conroy, do you object or have

21       a different idea as to what this schedule should

22       be?

23                     MR. CONROY:  No, Your Honor.  We

24       will oppose a stay.  I'm not sure you find that
```

Case 1:15-cv-01584-RS Document 394 Filed 05/31/17 Page 80 of 87 PageID #:12470
Case 1:13-cv-02109-RGA Document 26 Filed 09/29/14 Page 18 of 25 PageID #:324

18

1    surrounding.  But the timing, we don't have an

2    objection to that.

3                    THE COURT:  Okay.

4                    MR. BEABER:  And we would welcome,

5    Your Honor, if you want us to brief it in

6    advance of the decision by the PTO.

7                    THE COURT:  Well, I think it's a

8    responsible thing to do, which you've done,

9    which is to say we've filed the motions, we'd

10   like to bring it up at an appropriate time.  In

11   the first instance, it's up to you to decide

12   what the appropriate time is.  And you will

13   trigger that by filing a formal motion.  And you

14   may or may not want to discuss with Mr. Conroy

15   the timing, the briefing schedule.

16                   But to some extent, if you brief

17   it before -- is this the PTO or the PTAB that

18   actually responds to this?

19                   MR. BEABER:  PTAB.

20                   THE COURT:  I guess I thought

21   that.  If you start briefing it before the PTAB

22   acts, my general reaction is that I have to read

23   stuff that's going to be outdated by the time

24   that I actually have to decide the thing which I

```
 1      prefer to avoid.  So my general thinking -- but
 2      again, you know your case.  It's your
 3      professional judgment as to when's the best
 4      time.
 5              But from my point of view, is
 6      there a reason why you can't have the brief
 7      ready to go?  PTAB makes its decision and it is
 8      what you expected to be or it's close and you
 9      change things modestly and file it the next day
10      and typically I tend to schedule arguments on
11      motions to stay fairly promptly after the
12      briefing is in.  That's one thing I tend to do
13      pretty promptly.
14              So I prefer not to get a brief
15      where I'm going to be having to read another
16      brief to find out what actually happened, but
17      it's up to you.
18              MR. BEABER:  Understood, Your
19      Honor.  We will proceed as you recommend.
20              THE COURT:  Don't commit yourself.
21      Well, put it like this:  I will not be offended
22      if you do something different.  Do what you
23      think is best for your client.  One other thing,
24      to some extent one of the things you sometimes
```

```
 1         get from the sense when you have a dispute about

 2         whether translated depositions should be counted

 3         as a half hour or three-quarters of an hour is

 4         what the likelihood of there being lots of

 5         discovery disputes as we go forward in this

 6         case.  If anybody cares to say anything about

 7         that?

 8                    MR. CONROY:  Patrick Conroy.  I

 9         don't know that there will be a ton of discovery

10         disputes in this case.  I think that the accused

11         technology, I think, everyone knows what it is.

12         I think some of the Defendants in this case as

13         well as in Texas are customers of Display

14         manufacturers and they kind of put the display

15         on their device and sell it.  So I don't know

16         that there will be a lot of discovery disputes.

17                    THE COURT:  Okay.  Are these

18         assigned to Judge Gilstrap in Texas?

19                    MR. CONROY:  Yes, they are, Your

20         Honor.  And Judge Payne, his magistrate judge,

21         is handling discovery.

22                    THE COURT:  And I saw they've got

23         the significant headstart on us, right?

24                    MR. CONROY:  That's right, Your
```

1  Honor.  Claim construction hearing was July 30th

2  of --

3              THE COURT:  They've already had

4  it?

5              MR. CONROY:  Correct.  They issued

6  a preliminary claim construction and a final

7  order is imminent any day.  The first jury trial

8  is March 9th of 2015.

9              THE COURT:  Okay.  Well, I'm not

10  going to refer anything in particular for the

11  discovery disputes in this case right now.  If

12  it turns out that there's a lot of them, I don't

13  mind doing a few.  But once it gets beyond a

14  few, I have to find somebody else to do them

15  because I have a lot of different things I have

16  to do.  So if you start calling me every month

17  for problems, your problems will become someone

18  else's problem, but maybe that won't happen.

19              Is there anything else we should

20  talk about today?

21              MR. CONROY:  Your Honor, not from

22  the Plaintiff's side.

23              THE COURT:  Anything from the

24  various Defendants?

```
 1              MR. DONNELLY:  Yes, on behalf of

 2     Pantech, Your Honor, I want to let the Court

 3     know the Pantech Company, the parent company,

 4     has filed for receivership in Korea.  I have no

 5     information on what the U.S. entity which is

 6     also a party of this suit is doing.  But I

 7     wanted to alert the Court there is likely a

 8     motion to stay coming on that basis.

 9              THE COURT:  All right.  I assume

10     because I've had some other companies who are

11     not U.S., basically there's the Chapter 15 that

12     sort of somehow syncs up with foreign bankruptcy

13     so that essentially if the parent company were

14     filing bankruptcy in the U.S., they get the

15     automatic stay and pretty much it will flow

16     through.

17              MR. DONNELLY:  I don't have any

18     details, Your Honor.  That's my guess that

19     something like that will happen at the

20     appropriate time.

21              THE COURT:  If you file something

22     that is equivalent to what will normally happen

23     in a bankruptcy case will suggest an automatic

24     stay I'm going to assume, unless Mr. Conroy
```

Case 1:15-cv-01580-RGA Document 3246 Filed 05/31/17 Page 85 of 87 PageID #: 13475
Case 1:13-cv-02109-RGA Document 26 Filed 09/29/14 Page 23 of 25 PageID #: 329

23

```
1      responds disputing that in fact it is an

2      automatic stay, and I'm not even sure that I

3      will do anything other than I will

4      administratively close the case which will tell

5      you I'm recognizing it as being stayed.  But I

6      appreciate you mentioning it.

7                   Is there anything else?

8                   MR. BEABER:  No, Your Honor.

9                   THE COURT:  All right.  It's nice

10     to see all of you.  Have a nice weekend.  And I

11     guess, Mr. Farnan, if you don't mind by next

12     week submitting a revised order and I will sign

13     it.  Thank you.

14                  MR. FARNAN:  No problem, Your

15     Honor.

16                  THE COURT:  All right.  Thank you.

17                  MR. BEABER:  Thank you, Your

18     Honor.

19                  MR. GEWIRTZ:  Thank you, Your

20     Honor.

21                  MR. CONROY:  Thank you, Your

22     Honor.

23                  MR. FARNAN:  Thank you, Your

24     Honor.
```

Case 1:15-cv-01580-RGA Document 384 Filed 05/21/17 Page 86 of 87 PageID #: 12476
Case 1:13-cv-02109-RGA Document 26 Filed 09/29/14 Page 24 of 25 PageID #: 330

24

1            (The proceedings ended at

2        3:40 p.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1                    C E R T I F I C A T I O N

2

3              I, Taneha Carroll, Professional

Court Reporter, certify that the foregoing is a

4

true and accurate transcript of the foregoing

5

proceeding.

6

7              I further certify that I am neither

8    attorney nor counsel for, nor related to nor

9    employed by any of the parties to the action in

10   which this proceeding was taken; further, that I am

11   not a relative or employee of any attorney or

12   counsel employed in this case, nor am I financially

13   interested in this action.

14

15

16          /s/Taneha Carroll
            Taneha Carroll

17
            Professional Reporter and Notary Public
18

19

20

21

22

23

24