IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE GILLETTE COMPANY,<br><br>  Plaintiff<br><br>v.<br><br>DOLLAR SHAVE CLUB, INC., DORCO<br>COMPANY LTD. and PACE SHAVE, INC.,<br><br>  Defendants. | REDACTED - PUBLIC VERSION<br>C.A. No. 15-1158-LPS-CJB |

## MEMORANDUM ORDER

WHEREAS, Magistrate Judge Burke issued a Memorandum Order (D.I. 293) ("Order") on March 7, 2017, denying Defendant Dollar Shave Club, Inc.'s ("DSC") motion to stay the action pending arbitration (D.I. 34) and Defendants Pace Shave, Inc ("Pace") and Dorco Company Ltd.'s ("Dorco," and collectively with DSC and Pace, "Defendants") motion to stay pending arbitration (D.I. 101);

WHEREAS, on March 21, 2017, Defendants objected to the Order (D.I. 315), specifically to the determinations that this Court, not the Arbitral Tribunal, should decide the threshold issue of arbitrability and that there is a genuine dispute of material fact as to whether a valid arbitration agreement exists;

WHEREAS, on March 21, 2017, Gillette also objected to the Order (D.I. 316), specifically to the determination that, assuming there is a valid arbitration agreement, the present disputes would arguably fall within the scope of that arbitration agreement;

WHEREAS, on April 4, 2017, Gillette responded to Defendants' objections (D.I. 333)

1

and Defendants responded to Gillette's objections (D.I. 334);

WHEREAS, the Court has reviewed the motions to stay *de novo*, as the parties' objections go only to the Order's legal conclusions, *see* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) ("[T]he phrase 'contrary to law' indicates plenary review as to matters of law."), notwithstanding the fact that motions to stay are non-dispositive motions, *see V.I. Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 F. App'x 131, 134 (3d Cir. 2014);

NOW THEREFORE, IT IS HEREBY ORDERED that:

1. Defendants' objections (D.I. 315) are OVERRULED, Gillette's objections (D.I. 316) are OVERRULED, Judge Burke's Order (D.I. 293) is ADOPTED, and Defendants' motions to stay pending arbitration (D.I. 34, 101) are DENIED.

2. Section 3 of the Federal Arbitration Act instructs that the Court, "upon being satisfied that the issue involved in [a] suit or proceeding is referable to arbitration under [] an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986), before granting a stay, the Court must consider (1) whether there is a valid arbitration agreement and (2) whether the merits-based dispute in question falls within the scope of that agreement.[1] *See generally Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir.

---

[1] Although these factors are generally considered in the context of a motion to compel arbitration under 9 U.S.C. § 4, the parties do not object to consideration of the same factors in connection with the motions to stay.

2

2014); *Creative Sec. Corp. v. Bear Stearns & Co.*, 671 F. Supp. 961, 965 (S.D.N.Y. 1987).

3. Defendants first object to Judge Burke's determination that the threshold question of arbitrability is for the Court to decide. "[T]he question of arbitrability – whether a [contract] creates a duty for the parties to arbitrate the particular grievance – is undeniably an issue for judicial determination. Unless the parties ***clearly and unmistakably*** provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T*, 475 U.S. at 649 (emphasis added). Defendants contend that the 2008 Agreement between Gillette and Defendants is a valid agreement to arbitrate that clearly and unmistakably assigns to the arbitrators the issue of arbitrability, by "explicitly provid[ing] that ▮▮▮▮▮▮▮▮▮▮" (D.I. 315 at 5) However, as Judge Burke discussed, the interplay between the 2008 Agreement and the later 2014 Agreement ▮▮▮▮▮▮▮▮▮▮ (*See* D.I. 293 at 14-18) Instead, the 2014 Agreement "raises legitimate questions as to the continuing existence and scope of the arbitration clause in the [2008] Agreement," leaving "the question of whether an agreement to arbitrate continues to exist . . . for the courts." *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 781 (10th Cir. 1998).[2]

---

[2] In a decision dated July 19, 2017, the Arbitral Tribunal determined, among other things, that ▮▮▮▮▮▮▮▮▮▮ (D.I. 433 Ex. A at 20) Defendants consider this decision to be "subsequent authority that militates in favor of sustaining [their] objections" (D.I. 433), while Gillette contends that the "decision was in direct contravention of established Third Circuit precedent as well as the March 7, 2017 ruling of Judge Burke that this Court must decide whether an agreement to arbitrate exists between the parties before an arbitration may proceed" (D.I. 435 at 1). The Arbitral Tribunal's analysis – which appears to be based on both the 2008

4.      Defendants also object to Judge Burke's determination "that there is a genuine issue of material fact as to whether ███████████████████████ ███████████" (D.I. 293 at 32) Defendants contend that, in analyzing whether a valid arbitration agreement exists, Judge Burke applied the wrong legal standard. (D.I. 315 at 7) Defendants contend that Gillette bears the burden of showing that ███████████ ████████████████████████████████████████████████████████████ ████████████████████████ Defendants further suggest that New York law requires *any* ambiguity to be resolved in favor of arbitration. (*See id.* at 8-9) Accordingly, Defendants contend that, rather than finding a material dispute, Judge Burke should have resolved the ambiguity in favor of arbitration.

5.      The Court disagrees with Defendants. While Gillette bears the burden (under New York law) of proving that ██████████████████████████████████████ ██████████████████████████ the presumption of arbitrability does not apply to this dispute. The parties' dispute is whether a valid arbitration agreement between them continues to exist. "Although a presumption in favor of arbitration exists, that presumption applies only when interpreting the scope of an arbitration agreement, and not when deciding whether a valid agreement exists." *Flintkote*, 769 F.3d at 220 n.3; *see also Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011). Hence, the Court must

---

and 2014 Agreements themselves, as well as at least some of the extrinsic evidence that this Court's adoption of the Judge Burke's Order will require it to consider – appears to be well-reasoned, and the Court may ultimately agree with it. However, none of that persuades the Court that it should grant the motions to stay. Still, for reasons including those identified in Defendants' letter (D.I. 433), the Court will solicit the parties' input as to how it may most expeditiously resolve whether the parties' disputes should be solely before the Arbitral Tribunal.

"apply the relevant state contract law to questions of arbitrability, which may be decided as a matter of law only if there is no genuine issue of material fact when viewing the facts in the light most favorable to the nonmoving party." *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 288-89 (3d Cir. 2017). This is the mode of analysis that Judge Burke undertook, and the Court sees no error in it.

6. Gillette's objections concern Judge Burke's analysis of whether the parties' dispute falls within the scope of a valid arbitration agreement. Having found there to be genuine disputes of material fact as to whether the parties continue to have a valid arbitration agreement, Judge Burke addressed this second question by assuming, for the sake of argument, that the 2008 Agreement is valid; he then analyzed whether it covers the parties' current dispute.[3] (*See* D.I. 293 at 32) In doing so, Judge Burke concluded that Gillette's arguments as to why the present dispute does not fall within the parties' 2008 Agreement to arbitrate were unpersuasive. (*See id.* at 33)

7. In its objections, Gillette contends that this question – whether the arbitration clause applies to the present dispute – "should have been determined without a presumption in favor of arbitration." (D.I. 316 at 3) The Court disagrees. "In determining whether the particular dispute falls within a valid arbitration agreement's scope, 'there is a presumption of arbitrability[;] an order to arbitrate the particular grievance should not be denied unless it may be

---

[3]Given that the Court is overruling Defendants' objections and has determined that Judge Burke correctly denied the motions to stay – because there is a genuine issue of material fact regarding the validity of the arbitration agreement – the Court addresses Gillette's objections (which "constitute alternative grounds to deny DSC's and Pace's motions to stay the action" (D.I. 316 at 1)) for the sake of completeness. The Court's resolution of all issues the parties have placed before it might have legal or at least practical implications for how, if at all, this case should now proceed in this Court.

said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 524 (3d Cir. 2009) (quoting *AT & T*, 475 U.S. at 650). This presumption works within the "'settled framework' of using principles of contract interpretation to determine the scope of an arbitration clause." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014) (quoting *Granite Rock Co. v. Int'l Bhd. Teamsters*, 561 U.S. 287, 302 (2010)). Accordingly, "the presumption of arbitrability applies only where an arbitration agreement is ambiguous about whether it covers the dispute at hand." *Id.* at 173.

8. The Court is persuaded, contrary to Gillette's objections, that Judge Burke correctly analyzed the 2008 Agreement and appropriately applied the presumption in favor of arbitration. The 2008 Agreement states that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (D.I. 37 Ex. 2 at § 10.C.1.(e)) The 2008 Agreement further provides that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (*Id.*) This litigation involves patent infringement claims, an action which Defendants contend is barred by ▬▬▬▬▬▬▬ in the 2008 Settlement agreement. The Court perceives no error in Judge Burke's conclusion that under the parties' agreements, the arbitrable portion of the present dispute ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ – is a threshold issue that may be resolved by the arbitrators, notwithstanding its relationship to the non-arbitrable ▬▬▬▬▬▬▬

6

███ (*See* D.I. 293 at 34)

9. Nor is the Court persuaded that a different result is compelled by *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 830 F.3d 1335 (Fed. Cir. 2016). Gillette contends that *Verinata* stands for the proposition that "when an arbitration clause has an exclusion for patent infringement, any license, exhaustion or contract defenses to patent infringement are also excluded from arbitration." (D.I. 316 at 4) Gillette overstates the holding of *Verinata*. The arbitration agreement involved there explicitly carved out "disputes relating to issues of scope, infringement, validity and/or enforceability of *any* Intellectual Property Rights." 830 F.3d at 1337 (emphasis added). The Federal Circuit then found that the claims at issue were not arbitrable because they "centered on whether Ariosa is licensed to use, and thus is immunized from infringement of, the asserted claims of the '794 patent." *Id.* at 1340. By contrast, the 2008 arbitration agreement here expressly makes arbitrable ███████████████████ ███████████████████ ███████████████████ (D.I. 37 Ex. 2 at § 10.C.1.(e)) That the 2008 Agreement otherwise ███████████████████ ███████████████████

10. Gillette contends that it is for the Court to determine issues surrounding the ███████ asserting, among other things, that arbitrators cannot determine issues relating to ███████████████████ ███ (*See* D.I. 316 at 6) The Court disagrees. While the 2008 Agreement indicates that ███████████████████ ███████████████████ (D.I. 37 Ex. 2 at

7

§ 10.C.1.(e)), there are subsidiary questions that may fall within the scope of that overarching question, such as ███████████████████████████████ Defendants read the provision as including those subsidiary questions, while Gillette argues that only the ultimate question is arbitrable. Because there is ambiguity as to the scope of the arbitration provision and Defendants' reading of the provision is at least plausible, Judge Burke properly resolved all doubts about the scope of the agreement in favor of arbitration. (*See* D.I. 293 at 26) Accordingly, the Court agrees with Judge Burke that ███████████████████████████████ ███████████████████████ (*Id.* at 37 n.25)

11. Finally, Gillette contends that ███████████████████████████████ as defined in the 2008 Agreement and, therefore, is not subject to ███████████████ (*See* D.I. 316 at 7) As discussed above, the Court agrees with Judge Burke that this is a question for the Arbitral Tribunal, making it unnecessary to resolve. The Court further agrees with Judge Burke's assessment that Defendants "have a (more than) plausible rejoinder" that ███████████ ███████████████████████ (D.I. 293 at 37-38; *see also* D.I. 334 at 7-10)

12. Given the detailed reasoning provided in the Order, the Court finds it unnecessary to address the parties' objections any further.

IT IS FURTHER ORDERED THAT:

A. The Order (D.I. 142) referring Gillette's motion to enjoin arbitration (D.I. 139) to Judge Burke is WITHDRAWN.

B. Gillette's motion to enjoin arbitration (D.I. 139) is DENIED. Gillette has failed to meet its burden to show that it should obtain the injunctive relief it seeks. *See Am. Life Ins. Co. v. Parra*, 25 F. Supp. 2d 467, 473 (D. Del. 1998). First, Gillette has failed to show it is likely to

succeed on the merits of demonstrating that the parties' present dispute is not arbitrable. Despite the genuine dispute of material fact that precludes resolution of the validity issue at this time (*see* ¶¶ 3-5), it appears to the Court more likely than not that the 2014 Agreement does not fully supersede the 2008 Agreement's arbitration provision and that at least portions of the claims Gillette has raised in this litigation are within the scope of the 2008 Agreement's arbitration provision.[4] (*See* D.I. 170 at 16-18) Thus, Gillette cannot show that it is reasonably likely to succeed on the merits.

It follows that Gillette has likewise failed to demonstrate that it is irreparably harmed from the ongoing arbitration, particularly as this litigation (including claim construction and discovery) has been proceeding in parallel to the arbitration. By contrast, Defendants would be unfairly prejudiced were the Court to order the Arbitral Tribunal to cease its work, as it is likely the Court will conclude that the parties contractually agreed that the Arbitral Tribunal should be doing as it is doing, and delaying arbitration could lead to greater, unwarranted litigation expenses for Defendants. *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 558 (1964) ("[D]elay may entirely eliminate the prospect of a speedy arbitrated settlement of the dispute, to the disadvantage of the parties (who, in addition, will have to bear increased costs) and contrary to the aims of [public] policy."). Thus, Gillette has failed to show that the balance of harms favors a preliminary injunction.

Finally, the public interest favors permitting the arbitration to proceed, especially given

---

[4]The Court's determination on this point is consistent with its comments in the earlier footnote that the recent decision of the Arbitral Tribunal is well-reasoned. (*See also* D.I. 437 at 2-3) All of this further suggests that Gillette is unlikely to prevail on the "merits" of whether the arbitration should be enjoined.

the likelihood that the Court will ultimately conclude that the parties contracted to resolve at least portions of their present dispute outside of the federal courts. (*See* D.I. 170 at 19-20) Thus, all of the applicable factors weigh against granting the extraordinary relief sought by Gillette, so the Court will not be enjoining the arbitration.

        C.      The Court wishes to make a final determination as to whether any portion of the parties' disputes are subject to arbitration. Hence, the Court will hold the "trial" referred to above (*see* ¶¶ 4-5) as soon as possible. The parties SHALL meet and confer and, no later than August 11, advise the Court of: (i) how soon they can be available for such a trial; and (ii) the amount of time they request for their trial presentations.

        D.      Because this Order has been filed under seal, as it may contain confidential information of a nature that may warrant protection from public access, the parties SHALL meet and confer and, no later than August 9, 2017, submit a proposed redacted version. Thereafter, the Court will issue a public version of its Order.

August 7, 2017  
Wilmington, Delaware

HON. LEONARD P. STARK  
UNITED STATES DISTRICT JUDGE