# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE GILLETTE COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DOLLAR SHAVE CLUB, INC., et al., ) <br> ) <br> Defendants. ) | Civil Action No. 15-1158-LPS-CJB |

## MEMORANDUM ORDER

In this patent infringement action, the parties have submitted a "Joint Motion to Redact Memorandum Order" (D.I. 459) (the "Redaction Motion"). (D.I. 481) For the reasons set out below, the Court orders that the Redaction Motion be GRANTED-IN-PART and DENIED-IN-PART.

## I. BACKGROUND

On August 7, 2017, the District Court issued a Memorandum Order (the "August 7 Memorandum Order") in which it: (1) overruled the parties' objections to the Court's March 7, 2017 Memorandum Order, (D.I. 293) (the "March 7 Memorandum Order"), which denied Defendant Dollar Shave Club, Inc.'s ("DSC") motion to stay the action pending arbitration and Defendants Pace Shave, Inc. ("Pace") and Dorco Company Ltd.'s ("Dorco," and collectively with DSC and Pace, "Defendants") motion to stay the pending arbitration; and (2) adopted the March 7 Memorandum Order. (D.I. 459) The District Court issued the August 7 Memorandum Order under seal, recognizing that "it may contain confidential information of a nature that may warrant protection from public access," and ordered the parties to meet and confer and submit a proposed redacted version by August 9, 2017. (*Id.* at 10) Upon receipt of those proposed redactions, the

District Court entered an oral order on August 10, 2017, advising that it would issue a public version of the Order consistent with the parties' requested redactions. (D.I. 465) However, the District Court further indicated that it was "concerned . . . that the parties' redactions are overbroad" and required the parties to file a joint submission "explaining with sufficient detail and legal support the grounds for the redactions [sought]." (*Id.*) Pursuant to the District Court's oral order, on August 14, 2017, the parties filed the Redaction Motion, (D.I. 481), which has subsequently been referred to the Court for resolution, (D.I. 508).

## II. DISCUSSION

### A. Legal Standard

It is well-settled that the public has a common law right of access to judicial proceedings and records. *See Littlejohn v. BIC Corp.*, 851 F.2d 673, 677-78 (3d Cir. 1988) (noting that the public's right to such access is "beyond dispute") (internal quotation marks and citation omitted); *accord United States v. Martin*, 746 F.2d 964, 968 (3d Cir. 1984). The public's right of access extends beyond the ability to attend court proceedings, and includes the right to inspect and copy public records, including judicial records (i.e., those documents filed with the court, or documents otherwise incorporated into a court's adjudicatory proceedings). *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001). The United States Court of Appeals for the Third Circuit has explained that this common law right of access, which carries with it a "strong presumption" in favor of public access to judicial records, applies to pretrial motions of a nondiscovery nature and the material filed therewith. *Id.* at 192-93; *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 165 (3d Cir. 1993).

A party seeking to seal court documents from public access must demonstrate "good

2

cause" for protecting such material from disclosure. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). To establish good cause, the moving party bears the burden of showing that "disclosure will work a clearly defined and serious injury[.]" *Id.* (internal quotation marks and citations omitted).[1] "The injury must be shown with specificity. . . . Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *Id.* (internal quotation marks and citations omitted); *see also Joint Stock Soc'y v. UDV N. Am., Inc.*, 104 F. Supp. 2d 390, 395 (D. Del. 2000) (noting that the "good cause standard" requires an "exacting type of analysis").

Assessing whether good cause exists to seal portions of a judicial opinion generally involves a balancing process, in which courts weigh the harm of disclosing information against the importance of disclosure to the public. *See Pansy*, 23 F.3d at 787. To that end, in *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994), the Third Circuit outlined a series of factors that may be considered in evaluating whether "good cause" exists, including whether disclosure will violate any privacy interests and whether the case involves issues important to the public. *Id.* at 787-91.[2] These factors are neither mandatory nor exhaustive. *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).

---

[1] The party seeking to seal documents must demonstrate such good cause regardless of whether the documents at issue are of the type that implicate the "strong presumption" in favor of public access (as does the judicial opinion at issue here). *United States v. Wecht*, 484 F.3d 194, 212 & n.22 (3d Cir. 2007).

[2] The remaining factors outlined in *Pansy* are whether the information is being sought for a legitimate purpose, whether disclosure will cause serious embarrassment to a party, whether the information to be disclosed is important to public health and safety, whether sharing the information among litigants will promote fairness and efficiency and whether the party benefitting from the order is a public entity or official. *Pansy*, 23 F.3d at 787-91. The parties assert that these remaining factors "have no bearing" on their motion. (D.I. 481 at 2 n.2)

### B. Applying the "Good Cause" Standard to the Parties' Proposed Redactions

The parties assert that their proposed redactions relate to two categories of information: (1) the state of a confidential commercial arbitration; and (2) the specific terms of the parties' 2008 and 2014 Settlement Agreements. (D.I. 481 at 3) The Court will take these up in turn.

#### 1. Redactions Relating to the State of the Arbitration

The parties' proposed redactions to the August 7 Memorandum Order would allow for disclosure of the fact that they are involved in an arbitration (and, relatedly, that an Arbitral Tribunal exists), but would redact further details with respect to that arbitration (such as the identity of the institution that is conducting the arbitration and the content of certain determinations that the Arbitral Tribunal has made thus far). (*See id.*, ex. A at 3 & n.2) In support of these redactions, the parties assert that the pending arbitration proceedings between Dorco, Pace and Plaintiff The Gillette Company ("Plaintiff" or "Gillette") are "private" and "subject to confidentiality provisions." (D.I. 481 at 1) In that vein, they assert that they are "forbidden to disclose" to the public details regarding the arbitration. (*Id.* at 2) Disclosure of this information would cause the parties "clearly defined and serious injuries[,]" they argue, because a third party that learns the details of the pending arbitration proceedings "might use that information to force concessions in later settlements with the parties[.]" (*Id.*) The parties also argue that the public has no interest in the status of their confidential commercial arbitration, and that the public will be able to understand the District Court's ruling without the need to know the details relating to the arbitration. (*Id.* at 3)

The Court finds that the parties have established good cause to redact portions of the Order relating to the state of the pending arbitration proceedings. The parties' proposed

4

redactions in this category are very limited in scope, amounting to less than 4 lines of the 10-page August 7 Memorandum Order. Relatedly, the Court agrees with the parties that the redactions at issue in this category would still allow the public to understand the District Court's ruling, as that ruling relates not to the state of the arbitration proceedings, but instead to the threshold issue in this action of whether the parties should be litigating their disputes here in federal court in the first place. Furthermore, as a general matter, courts tend to keep information relating to arbitration proceedings confidential, "particularly because: (1) parties often enter into [arbitration proceedings] to maintain confidentiality; and (2) it promotes the voluntary execution of private arbitration agreements—a sound public policy objective." *Barkley v. Pizza Hut of Am., Inc.*, Case No. 6:14-cv-376-Orl-37DAB, 2015 WL 5915817, at *2 (M.D. Fl. Oct. 8, 2015) (collecting cases); *see also, e.g., Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 512 (D. Del. 2012) ("There are other forums—such as arbitration—available if parties wish to protect all of this type of information [relating to the terms of contracts and agreements between the parties] from public view."); *Global Reinsurance Corp.-U.S. Branch v. Argonaut Ins. Co.*, Nos. 07 Civ. 8196(PKC), 07 Civ. 8350(PKC), 2008 WL 1805459, at *1 (S.D.N.Y. Apr. 24, 2008) ("[O]ne of the princip[al] advantages of arbitration [is] confidentiality[.]").

Therefore, with respect to the parties' proposed redactions relating to state of the pending arbitration, (*see* D.I. 481, ex. A at 3 & n.2), the Court finds that the parties' privacy interests in this information outweigh the importance of disclosure to the public.

### 2. Redactions Relating to Settlement Agreements

The Court cannot reach the same conclusion with respect to information related to the parties' 2008 and 2014 Settlement Agreements. These redactions are broader in scope, spanning

(if they were all combined together) roughly one page of the District Court's 10-page August 7 Memorandum Order. They cover three different subcategories of information.

The first two subcategories are similar, in the sense that, as to both, the parties are seeking to redact information that elsewhere in their submission they propose to leave unredacted.

First, the parties seek to redact statements relating to the District Court's conclusion that the interplay between the two settlement agreements "makes the purported delegation Defendants find in the 2008 Agreement neither clear nor unmistakable." (*Id.* at 3; *see also id.* at 4 (seeking to redact statements relating to Defendants' argument that Gillette bears the burden of showing that "the 2014 Agreement resulted in revocation of the 2008 Agreement, and that without clear and unambiguous proof, the 2008 Agreement to arbitrate remains in effect" and Plaintiff's argument that "the 2014 Agreement clearly indicated the parties' intent to revoke the arbitration provision in the 2008 Agreement")) But elsewhere, the parties do not redact information disclosing that there is indeed a delegation to arbitration in the 2008 Agreement, and that the issue before the District Court was whether the 2014 Agreement somehow wiped out that delegation. (*See, e.g., id.* at 3 ("Instead, the 2014 Agreement raises legitimate questions as to the continuing existence and scope of the arbitration clause in the 2008 Agreement, leaving the question of whether an agreement to arbitration continues to exist . . . for the courts.") (internal quotation marks, citation and brackets omitted); *id.* at 9 ("it appears to the Court more likely than not that the 2014 Agreement does not fully supersede the 2008 Agreement's arbitration provision"))

Second, the parties seek to redact phraseology relating to the District Court's determination that there is a genuine issue of material fact as to whether "the parties entered into

6

an arbitration agreement with regard to the instant disputes." (*Id.* at 4 (internal quotation marks and citation omitted)) Yet they do not seek to redact other statements in the August 7 Memorandum Order conveying this same information. (*See, e.g., id.* at 2 (indicating that "the [District] Court must consider (1) whether there is a valid arbitration agreement and (2) whether the merits-based dispute in question falls within the scope of that agreement"); *id.* at 9 ("[I]t appears to the Court more likely than not that . . . at least portions of the claims Gillette has raised in this litigation are within the scope of the 2008 Agreement's arbitration provision."))

As for these two subcategories of information, it is clear to the Court that there is not good cause for redaction. This is not only because the parties do not seek redaction of similar information elsewhere in the August 7 Memorandum Order, but, even more importantly, because these categories of information reflect the very crux of the parties' legal dispute. That is, these proposed redactions relate to the key legal questions that led to the Court's August 7 Memorandum Order: did the 2014 Agreement revoke the arbitration provision in the 2008 Agreement, and if not, do the parties' disputes (at issue in the instant litigation) fall within the scope of what should be arbitrated? With information like this redacted, it would be difficult for the public to understand the District Court's decision, because the very issues that were before the Court would be obscured. *See, e.g., Del. Display Grp. LLC v. LG Elecs. Inc.*, 221 F. Supp. 3d 495, 497 (D. Del. 2016) (noting that where "[i]nformation . . . was relevant to the judicial proceeding[,]" that weighs against the necessity of sealing); *Newman v. Gen. Motors Corp.*, Civil Action No. 02-135 (KSH), 2008 WL 5451019, at *3, *8 (D.N.J. Dec. 31, 2008) (upholding a Magistrate Judge's decision that certain documents should not be sealed, and noting the judge's explanation that the "public has a right to know what evidence and arguments were presented to

7

the Court that led to its decision") (internal quotation marks and citation omitted).

Additionally, the parties also seek to redact a third subcategory of information—that relating to the specific provisions of the 2008 Settlement Agreement that are pertinent to the question of whether the parties' disputes fall within the scope of their agreement to arbitrate. (*See* D.I. 481, ex. A at 6-8)[3] The Court is not persuaded that good cause has been shown to redact this information, either.

For one thing, the District Court's resolution of the key legal questions at issue obviously depends heavily on the actual wording of the 2008 Settlement Agreement (i.e., what types of disputes does it state are arbitrable, and what types of disputes does it state are not?). Although the parties make the claim that the "public will be able to understand the Court's rulings without the need to review the parties' confidential information[,]" (D.I. 481 at 3), there is simply no way that this could be true if this information is redacted. Instead, one could not even know what is and is not arbitrable under the agreement, let alone whether the parties' disputes in this lawsuit are encompassed by arbitration or not.

Moreover, the parties articulate just one specific example of the harm they "might" face from disclosure of this information—that someone learning the details of the settlement agreement "might use that information to force concessions in later settlements[.]" (*Id.* at 2) However, in the Court's view, the vaguely-stated possibility that unsealing will result in the parties being "force[d]" to do things in future settlement negotiations does not outweigh the

---

[3] The Court notes that the information at issue in this subcategory does not disclose trade secrets, pricing terms or other financial information that might more obviously "cause real and serious harm to the parties' future negotiations if disclosed to competitors." *Mosaid*, 878 F. Supp. 2d at 510; *see also Del. Display Grp. LLC*, 221 F. Supp. 3d at 497.

8

importance of disclosure of this information to the public. This is especially so where such information forms the very core of the parties' dispute, and therefore is central to the reasoning of the District Court's judicial opinion regarding that dispute.[4] As the Court has explained in the past:

> [C]ivil judicial proceedings cannot effectively operate if huge swaths of judicial opinions and hearing transcripts are subject to redaction. . . . In order for courts to "talk" to litigants and for the public to fully understand a court's precedent, how prior decisions were arrived at, and the similarities among cases, courts need to disclose at least some of the terms of the agreements—even confidential ones—that are the subject of the adjudication. Otherwise, our opinions and transcripts would become useless and devoid of context, such that even the basic nature of disputes would be indiscernible. Indeed, courts have recognized that even terms of highly confidential agreements—such as settlement agreements—may need to be disclosed, such as when the parties seek interpretative assistance from the court or otherwise move to enforce a provision [of that agreement].

*Mosaid*, 878 F. Supp. 2d at 513 (certain quotation marks, footnotes and citations omitted).[5] The

---

[4] Though the parties cite to *LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216 (3d Cir. 2011) in support of their argument that "the public has no interest whatsoever in the specific terms of the settlement agreements[,]" (D.I. 481 at 3), the facts of that case are distinguishable. In *LEAP*, the Third Circuit affirmed the district court's order denying a motion to unseal portions of a judicial record that contained the terms of a confidential settlement agreement. 638 F.3d at 217-18. There, the district court had conducted a settlement conference at the conclusion of which the terms of the resultant settlement agreement were read into the record. *Id.* at 218. The district court assured the parties that the contents of the transcript that was ultimately docketed on the record would remain confidential. *Id.* at 219, 222. And so *LEAP* did not involve the issue of whether content from a *judicial opinion* should be sealed. Here, on the other hand, the parties raised a dispute to the District Court implicating certain provisions of their settlement agreements, and the District Court then had to assess the content of those agreements in reaching a decision on the issue. Those facts are very different than the facts at issue in *LEAP*.

[5] This important need for transparency is underscored by the fact that Gillette pointed to *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 830 F.3d 1335 (Fed. Cir. 2016) in support of its argument that the parties' disputes are not covered by the arbitration provision in the 2008 Agreement. (*See* D.I. 481, ex. A at 7) In *Verinata*, the United States Court of Appeals

9

Court thus also denies the parties' request to seal references to the relevant terms of the 2008 Settlement Agreement.[6]

## III. CONCLUSION

For the reasons set forth above, the Court GRANTS-IN-PART the Redaction Motion. On **September 12, 2017,** the Court will proceed with publicly issuing a version of the District Court's August 7, 2017 Memorandum Order, and will redact only those portions of the decision that relate to the state of the ongoing arbitration proceeding.

There are three other joint motions to redact presently pending before the Court: (1) a motion to redact certain portions of the Court's September 19, 2016 Order, (D.I. 116); (2) a motion to redact certain portions of the transcript from the November 22, 2016 motions hearing, (D.I. 229); and (3) a motion to redact certain portions of the Court's March 7 Memorandum Order, (D.I. 300). With respect to the judicial opinions and transcript at issue in these motions, the parties shall submit single, jointly proposed, redacted versions of the Court's September 19, 2016 Order and March 7 Memorandum Order, as well as the November 22, 2016 transcript, in accordance with the guidelines set out in this Memorandum Order, **by no later than September 19, 2017,** for review by the Court. To the extent the parties believe that certain material in the

---

for the Federal Circuit explicitly set out the pertinent terms of a supply agreement that included an arbitration provision. 830 F.3d at 1337. This disclosure, in turn, helpfully enabled this Court to compare the provision at issue here with that at issue in *Verinata*. (D.I. 481, ex. A at 7; *see also* D.I. 293 at 36 n.25)

[6] While it is true that this category of information can be said to relate to the arbitration proceeding—in that it conveys what is and is not arbitrable under the agreement (and therefore would disclose the general *topic* that will be before the arbitrators)—it does not really convey the specific *details* of what the arbitrators are going to be considering, the evidence that they will consider, or the decisions that they have reached or will reach.

opinions/transcript should be redacted and that such material is not addressed by this Memorandum Order, then the parties should submit a letter explaining why good cause exists to believe that disclosure of that particular material would work a "clearly defined and serious injury" to them. *Pansy*, 23 F.3d at 786. The Court will subsequently issue publicly-available versions of the judicial opinions and transcript.

Because this Memorandum Order itself may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Memorandum Order. Any such redacted version shall be submitted no later than **September 12, 2017** for review by the Court, along with a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *Pansy*, 23 F.3d at 786 (internal quotation marks and citation omitted). The Court will then also subsequently issue a publicly-available version of this Memorandum Order.

Dated: September 6, 2017

_____
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE