IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE GILLETTE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | REDACTED - PUBLIC VERSION |
| | ) | |
| v. | ) | C.A. No. 15-1158-LPS |
| | ) | |
| DOLLAR SHAVE CLUB, INC., *et al.*, | ) | █████████████████████ |
| | ) | |
| Defendants. | ) | |

## LETTER TO THE HONORABLE LEONARD P. STARK FROM KAREN E. KELLER

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
dfry@shawkeller.com
*Attorneys for Defendants*

OF COUNSEL:
Gregory S. Arovas, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4766

F. Christopher Mizzo, P.C.
Helena D. Kiepura
Craig T. Murray
Nichole Brittany DeJulio
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, DC 20005
(202) 879-5000

Bao Nguyen
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1425

Charles K. Verhoeven
Terry L. Wit
Morgan W. Tovey
James D. Judah
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600

William C. Price
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

Dated: October 6, 2017

# SHAW KELLER
## LLP

Karen E. Keller
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0702 - Direct
kkeller@shawkeller.com

October 6, 2017

**BY CM/ECF AND HAND DELIVERY**

The Honorable Leonard P. Stark
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

Re:    *The Gillette Co. v. Dollar Shave Club, Inc.*, et al, C.A. No. 15-1158-LPS-CJB

Dear Chief Judge Stark:

I write on behalf of Defendants regarding Gillette's refusal to provide relevant discovery and Gillette's unfounded objections to Defendants' disclosed expert. Defendants respectfully request that the Court compel Gillette to produce the relevant discovery and overrule Gillette's objection.

*1.   Documents that Form the Basis of Gillette's Infringement Contentions*: Gillette's infringement contentions rely on select images and results from tests of Defendants' products. *See, e.g.*, Ex. 1, 1/11/17, 2nd Amended Initial Claim Charts, Att. A at 1-6; *id*. Atts. B, C, D, E, F, and G at 1-6; Ex. 2, 9/11/17 Final Infr. Cont. ("FIC") at Apps. 1 & 2. Yet, Gillette refuses to produce documents regarding those tests, such as those regarding the testing conditions and protocols, the underlying data, other images, or test reports. Gillette does not dispute that these documents exist but instead claims they are work product and non-testifying expert work. Ex. 3, 8/7/17 Albert Ltr. Gillette bears the burden of proving the applicability of either protection, which it cannot do.

Even if the requested documents were work product, Gillette's purposeful disclosure of the test results waived any protection. *See Princeton Digital Image Corp. v. Office Depot Inc.*, 2017 WL 3264068, *2 (D. Del. Aug. 1, 2017) (Stark, J.). The same is true for FRCP 26(b)(4)(D)'s non-testifying expert protection. *In re Intel Corp.*, 2008 WL 11233766, *7 (D. Del. Mar. 6, 2008); *Vasudevan Software, Inc. v. IBM*, 09-cv-05897, 2011 WL 13153991, *3 (N.D. Cal. June 15, 2011) (26(b)(4)(D) did not prevent production of information on testing cited in infringement contentions). Gillette argues that preliminary infringement contentions are not evidence and do not waive 26(b)(4)(D). Ex. 3, 8/7/17 Albert Ltr. But even were that true in this district, the parties are well past preliminary contentions—fact discovery closes in two weeks, and Gillette incorporated its contentions into its interrogatory response. Ex. 4, Gillette's 3rd Supp. Resp. to Interrog. No. 4.

The requested information is critical to understanding the basis for Gillette's infringement contentions. Despite the late stage of the litigation, Defendants still do not know how Gillette performed the testing that it alleges shows infringement—prejudicing Defendants' ability to defend against Gillette's baseless claims that the accused blades have three coating layers when, in fact, they have only two. Gillette cannot withhold these facts given its purposeful disclosure of test results.

*2. Gillette's Deficient Infringement Contentions*: Despite having received extensive technical discovery, Gillette's infringement contentions fail to give adequate notice of how the products allegedly practice the claims. *See Intellectual Ventures I LLC v. AT&T Mobility LLC*, 2017 WL 658469, at *1 (D. Del. Feb. 14, 2017) (Stark, J.). Yet Gillette refuses to supplement or withdraw its



deficient contentions, prejudicing Defendants' ability to respond and warranting an order to either compel more detailed contentions or strike the deficient contentions. *See id.* at *2-3.

*Dorco's* ██████ *Products*: For all asserted claims, Gillette contends Dorco's "process conditions" create *two* separate layers from ███████████████████. Ex. 2, FIC, Att. B at 11; Ex. 5, 9/13/2017 Murray Ltr. But Gillette does not explain *how* any process condition creates two layers or identify the basis for its "process conditions" allegations.

*Doctrine of Equivalents*: Despite having represented to this Court that it has "never taken the position that a two layer blade coating can satisfy the claim," 4/3/2017 Hr'g Tr. at 7:22-25, Gillette now alleges that two layers infringe under the doctrine of equivalents. Ex. 2, FIC, Att. A at 32 (contending single layer is two layers because of different "morphology and/or structure"). But, Gillette cites no evidence beyond a reference to its claim chart for literal infringement, fails to identify the alleged "morphology" and "structure[s]," and fails to consider this Court's construction requiring "a chromium containing layer *between* a [hard coating (for claims 1, 20, 24)/hard carbon containing material (for claims 28, 35)] and a PTFE layer." *See* D.I. 380 at 8.

*"Doped"*: This Court construed the "doped" limitation as "another element is introduced into the material in small amounts to modify certain properties of the material." D.I. 380 at 10. Gillette relies on ████████████████████████████████████████████████████████ ██████████████████████████████████████ *See, e.g.*, Ex. 2, FIC, App. 2 at 7. Gillette fails to explain how ███████████████ meets the Court's claim construction beyond a conclusory assertion. *See Intellectual Ventures I LLC,* 2017 WL 658469, at *2-3.

      <u>*3. Discovery Regarding Gillette's Manufacturing*</u>: Despite having demanded (and received) detailed and fulsome discovery regarding Dorco's manufacturing—including documents, a facility inspection, and Rule 30(b)(6) deposition—Gillette refuses to provide similar discovery regarding its own manufacturing process. Ex. 6, 9/7/2016 DSC's Request for Production ("RFP") No. 45-47, 49; Ex. 7 Resp. to Interrog. No. 21; Ex. 8, 10/14/2016 Smith Ltr. at 5-6; Ex. 9, 7/27/2017 Kiepura Ltr.; Ex. 10, 8/7/2017 Kiepura Ltr. Gillette initially agreed to produce such information, Ex. 11, Resp. to RFP 47, but now asserts that it is irrelevant. Gillette is incorrect—its manufacturing processes will show whether its products practice the asserted claims, which is relevant to at least non-infringement, secondary considerations, and Gillette's demand for lost profits and an injunction. *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 305 n.42 (Fed. Cir. 1985) (products "not covered" by the asserted patent do "not have any relevance" to secondary considerations); *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1293 (Fed. Cir. 2007) (to receive lost profits, the "burden on a patentee who has not begun to manufacture the patented product is commensurately heavy"); *Ricoh Co., Ltd. v. Quanta Comp., Inc.*, 06-cv-462, 2010 WL 1607908, *1 (E.D. Wis. 2010) (denying injunction and finding plaintiff's failure to practice patent mitigated any irreparable harm). Indeed, as just one example, Gillette incorrectly alleges that Dorco's products have two metal coating layers because █████████████████████████████████ ████; yet Gillette itself ███████████████████████████████████████. Notably, Gillette won a motion to compel Dorco to produce the *very same information* Gillette refuses to produce. D.I. 382.

      Gillette appears to contend that its manufacturing documents are not relevant to the apparatus

claims, and that it might, at some point, withdraw assertion of the method-of-manufacturing claims. Ex. 12, 8/23/2017 Abate to Kiepura. But those method claims are *still* a part of this case; indeed, in its FICs, Gillette added two more. Ex. 2, FIC at 6 (adding method claims 25 & 26). And, in any event, Gillette itself cites ███████

███████ *See, e.g.* Ex. 2, FICs, Att. A at 30-31; *id.* at FIC, Att. B at 11 (contending ███ create an infringing apparatus). In fact, for the method claims, Gillette's contentions cite to *the same evidence* as for its apparatus contentions. *Compare id.* at 25-26, *with id.* at 5-6. In short, Gillette's manufacturing processes is highly relevant to *all* asserted claims. *Alloc, Inc. v. Unilin Beheer B.V.*, 03-cv-1266, 2006 WL 757871, *3 (E.D. Wis. Mar. 24, 2006)) (granting motion to compel manufacturing documents as relevant to apparatus claims as they "may lead to the discovery of admissible evidence since product features are defined during the manufacturing process").

Further, Gillette cannot dispute that this discovery is "proportional to the needs of the case," given that the scope of Defendants' requests are commensurate with Gillette's. *Compare, e.g.*, Ex. 13, Request for Dorco Inspection, *with* Ex. 14, Request for Gillette Inspection. Gillette should be compelled to produce the requested documents, respond to Defendants' manufacturing interrogatories, provide a corporate witness, and permit the inspection of its manufacturing facilities.

*4. Interrogatory No. 16*: Gillette refuses to provide its validity contentions, even though its response addresses only a few prior art references and fails to address non-prior art invalidity. Ex. 15, Resp. to Interrog. No 16. Gillette's refusal is baseless—Defendants' contentions do not cite "over 60 allegedly anticipatory references." D.I. 525 at 3-4; Ex. 16, Defs. Invalid. Cont. Defendants' citation of 18 anticipatory references is reasonable, given the breadth of the asserted claims and of Gillette's (deficient) infringement contentions. Nor does that excuse Gillette's refusal to address other invalidity arguments. Gillette cannot sandbag until expert discovery; it must provide fair notice of its validity contentions at the fact discovery stage.

*5. Interrogatory Nos. 20, 22*: Gillette refuses to provide fulsome information about its manufacture and testing of its own razors, ███████

███████ Ex. 7, Resp. to Interrog. Nos. 20, 22. Instead of providing a proper narrative response, Gillette cites hundreds of pages of documents under Rule 33(d). But here, the burden of deriving the answer is not substantially the same for either party—instead, Gillette is the one with full knowledge and control of information about its own manufacturing and testing of razor blades. Fed. R. Civ. P. 33(d); *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2005 WL 8136574, at *1 (D. Del. Oct. 11, 2005). For example, none of the documents ███████

███████ (No. 22). Gillette must be compelled to properly disclose this information.

*6. Attachments to responsive emails*: Gillette has withheld allegedly "non-responsive" attachments to responsive emails. Ex. 17, 9/21/17 DeJong Ltr. Gillette's practice runs afoul of the requirement that parties "must produce documents as they are kept in the usual course of business," Fed. R. Civ. P. 34(b)(2)(E)(i)—which, for emails, means producing with their attachments. *See*

*Consolidated Rail Corp. v. Grand Trunk Western Railroad Co.*, 2009 WL 5151745, at *3 (E.D. Mich. Dec. 18, 2009); *U & I Corp. v. Advanced Med. Design, Inc.*, 251 F.R.D. 667, 675 n.14 (M.D. Fla. 2008). In addition, by withholding attachments, Gillette has not "preserve[d] the integrity of the underlying ESI, i.e., the original formatting [and] the metadata" as required by the Delaware Default Standard for Discovery. Gillette's practice is also inconsistent with this Court's order that Gillette could not redact its documents for alleged non-responsiveness. D.I. 419. Gillette must produce the attachments to its already-produced responsive emails.

   *7.  Gillette's Objection to Defendants' Expert*: Gillette has improperly objected to the disclosure under the protective order ("PO") of Highly Confidential information to Defendants' invalidity expert, David Tressel. Mr. Tressel has signed the PO and agreed to its stringent terms, including its prosecution bar. Gillette thus must show "good cause" to prevent disclosure to Mr. Tressel, D.I. 27 ¶ 9, such as a real risk of inadvertent disclosure. *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 250 F.R.D 426, 430 (D. Neb. 2008); *see Xerox Corp. v. Google, Inc.*, 270 F.R.D. 182, 183 n.4 (D. Del. 2010). Gillette cannot do so.

   Courts must balance Defendants' "interest in electing the experts most beneficial to [their] case with [Gillette's] interest in protecting its trade secrets from disclosure to competitors." *Advanced Semiconductor Materials Am. Inc. v. Applied Materials Inc.*, 95-cv-20169, 1996 WL 908654, *3 (N.D. Cal. Oct. 28, 1996). In doing so, courts look to see if the expert has an *on-going* relationship with a competitor—a *former* relationship is insufficient, as that would prevent a party from using any expert with industry experience. *Id.* A "party is owed some degree of deference in retaining and preparing an expert with the relevant industry experience and availability." *GPNE Corp. v. Apple Inc.*, 5:12-cv-2885, 2014 WL 1027948, *2 (N.D. Cal. Mar. 13, 2014).

   Mr. Tressel has *no on-going relationship* with any competitor of Gillette, including his *former* employer Schick, from whom he retired over a year ago. Ex. 18, Decl. ¶ 2. The sole basis for Gillette's objection is that Mr. Tressel is an inventor on patent applications from his time at Schick, and Gillette speculates he might assist in prosecuting those applications. *See* Ex. 19, 9/29/17 Email from J. Albert. But Mr. Tressel has *agreed to* the Protective Order's prosecution bar (Decl. ¶ 5; D.I. 27 ¶ 21)[1], thus preventing any possibility of inadvertent disclosure during prosecution. *GPNE*, 2014 WL 1027948, *2. And he already assigned all rights to the applications to Schick, has not participated in prosecution, and is not aware of any obligation to do so. Ex. 18, Decl. ¶¶ 3-4.

   Gillette's illusory worries cannot outweigh the substantial harm to Defendants should they be deprived the expert of their choice. Mr. Tressel has significant and unique industry experience in the subject matter of the asserted patent. Ex. 18, Decl. ¶ 1. His industry experience is unmatched, including by other retained experts. And, as an invalidity expert, Defendants expect Mr. Tressel will require access to little confidential information—namely, documents from 1997-2000 concerning Gillette's assertion of an earlier invention date, inventor testimony, and confidential documents Gillette cites for secondary considerations. The competitive importance of such stale information is questionable at best, *Procter & Gamble Co. v. Nabisco Brands, Inc.*, 111 F.R.D. 326, 331 (D. Del. 1986), and in any event is not at risk of inadvertent disclosure.

---

[1] While the prosecution bar does not otherwise apply to Schick, Mr. Tressel has stated he is willing to abide by its terms with respect to Schick. Ex. 18, Decl. ¶ 5.

SHAW KELLER LLP
Page 5

Respectfully submitted,

*/s/ Karen E. Keller*

Karen E. Keller (No. 4489)

cc:    Clerk of the Court (via hand delivery)
        All Counsel of Record (via CM/ECF and e-mail)

# Exhibit 1-5

REDACTED

# Exhibit 6

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE GILLETTE COMPANY, | ) | |
| | ) | |
| | ) | C.A. No. 15-1158 (LPS) |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| DOLLAR SHAVE CLUB, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT DOLLAR SHAVE CLUB, INC.'S
## SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFF THE GILLETTE COMPANY

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Dollar Shave Club, Inc. hereby requests that Plaintiff The Gillette Company serve written responses to these Requests and produce the requested documents and items within thirty days after the service hereof, at the offices of Shaw Keller LLP, 300 Delaware Avenue, Suite 1120, Wilmington, DE 19801, and permit the inspection and copying of the following documents and other tangible items that are in Defendant's possession, custody, or control. These Requests are continuing in nature and require supplemental production under the Federal Rules of Civil Procedure.

## DEFINITIONS

1.    "DSC" means Dollar Shave Club, Inc.

2.    "GILLETTE," "PLAINTIFF," "YOU," and "YOUR" mean The Gillette Company, its parents, subsidiaries, divisions, branches, affiliates, predecessors or successors in business, and wholly owned or partially owned entities acting or purporting to act for or on behalf of the foregoing or who are subject to the direction or control of the foregoing, including, without limitation, any agents, employees, officers, directors, attorneys, investigators, and consultants of any of the foregoing.

3.      "P&G" means Procter & Gamble Co., its parents, subsidiaries, divisions, branches, affiliates, predecessors or successors in business, and wholly owned or partially owned entities acting or purporting to act for or on behalf of the foregoing or who are subject to the direction or control of the foregoing, including, without limitation, any agents, employees, officers, directors, attorneys, investigators, and consultants of any of the foregoing.

4.      "THIRD PARTY" or "THIRD PARTIES" means any person or entity other than DSC or GILLETTE.

5.      "PATENT-IN-SUIT" means United States Patent No. 6,684,513, entitled "Razor Blade Technology," and any other United States patent that is hereafter asserted in THIS ACTION.

6.      "PATENT FAMILY" means the "PATENT-IN-SUIT" and all underlying patents and patent applications, INCLUDING published and unpublished applications, abandoned applications and patents, parents, continuations, continuations-in-part, divisionals, reissues, foreign counterparts, and any other patents or patent applications claiming priority to the PATENT-IN-SUIT or to which the PATENT-IN-SUIT claims priority, whether directly or indirectly.

7.      "ACCUSED PRODUCTS" means the products identified in GILLETTE's Initial Identification of Accused Products and Damages Model, and any supplementation or amendment of that disclosure or any additional products that GILLETTE contends infringe(s) any claim of the PATENT-IN-SUIT.

8.      "TECHNOLOGY-IN-SUIT" means the PATENT-IN-SUIT, references in the PATENT-IN-SUIT, and any technology GILLETTE contends or believes is covered by or the subject of the PATENT-IN-SUIT.

9.      "THIS ACTION" means *The Gillette Company v. Dollar Shave Club, Inc.*, C.A. No. 15-1158 (LPS) (CJB) filed in the United States District Court for the District of Delaware.

10.     "COMPLAINT" means the Complaint by PLAINTIFF in THIS ACTION.

11.     "DORCO" means Dorco Company Ltd.

12.     "PACE SHAVE" means Pace Shave, Inc.

13.     "SCHICK" means Schick Manufacturing, Inc., Eveready Battery Company, Inc., Energizer Battery, Inc., Energizer Holdings, Inc., Edgewell Personal Care Company, Edgewell Personal Care Brands, LLC, Pfizer Inc., and Warner-Lambert Co., as well as their parents, subsidiaries, divisions, branches, affiliates, predecessors or successors in business, and wholly owned or partially owned entities acting or purporting to act for or on behalf of the foregoing or who are subject to the direction or control of the foregoing, including, without limitation, any agents, employees, officers, directors, attorneys, investigators, and consultants of any of the foregoing.

14.     "DOCUMENT" shall INCLUDE, without limitation, all written, graphic or otherwise, recorded material, INCLUDING, without limitation, electronically stored information regardless of the form of storage medium, microfilms or other film records or impressions, tape recordings or computer cards, floppy disks or printouts, any and all papers, photographs, films, recordings, memoranda, books, records, accounts, COMMUNICATIONS, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office memoranda or written COMMUNICATIONS of any nature, recordings of conversations either in writings or upon any mechanical or electrical recording devices, INCLUDING e-mail, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal, or otherwise, as well as copies of the foregoing which differ in any way, INCLUDING by the addition of handwritten notations or other written or printed matter of any nature, from the original.  The foregoing specifically INCLUDES information stored in a computer database and capable of being generated in documentary form, such as electronic mail.

15.     "THING" as used herein means any physical object other than a "DOCUMENT."

16.     "COMMUNICATION" shall mean, without limitation, any transmission, conveyance, or exchange of a word, statement, fact, THING, idea, DOCUMENT, instruction, information, demand, or question by any medium, whether by written, oral, or other means, INCLUDING, but not limited to, electronic communications and electronic mail.

17.     The term "PERSON" shall refer to any individual, corporation, proprietorship, association, joint venture, company, partnership, or other business or legal entity, INCLUDING governmental bodies and agencies.

18.     "PRIOR ART" shall mean the subject matter described in 35 U.S.C. §§ 102 and 103, INCLUDING, but not limited to, publications, patents, physical devices, prototypes, uses, sales, and offers for sale, and any DOCUMENTS or other items evidencing any of the foregoing.

19.     "REFLECT," "REFLECTING," "REFER TO," and "REFERRING TO" shall mean referring to, concerning, mentioning, reflecting, pertaining to, evidencing, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

20.     "INCLUDE," "INCLUDES," and "INCLUDING" shall mean including without limitation.

21.     Use of the singular also INCLUDES the plural and vice-versa.

22.     The words "or" and "and" shall be read in the conjunctive and in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these Requests for Production.

23.     The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

## <u>INSTRUCTIONS</u>

The following instructions shall apply to each of the Requests herein:

1.     In answering the following Requests, furnish all available information, INCLUDING information in the possession, custody, or control of GILLETTE or any of GILLETTE's attorneys, directors, officers, agents, employees, representatives, associates,

investigators or division affiliates, partnerships, parents or subsidiaries, and persons under GILLETTE's control, who have the best knowledge, not merely information known to GILLETTE based on GILLETTE's own personal knowledge.  If YOU cannot fully respond to the following Requests after exercising due diligence to secure the information requested thereby, so state, and specify the portion of each Request that cannot be responded to fully and completely.  In the latter event, state what efforts were made to obtain the requested information and the facts relied upon that support the contention that the Request cannot be answered fully and completely; and state what knowledge, information, or belief GILLETTE has concerning the unanswered portion of any such Request.

2.      Electronic records and computerized information must be produced in an intelligible format.

3.      Selection of DOCUMENTS from the files and other sources and the numbering of such DOCUMENTS shall be performed in such a manner as to ensure that the source of each DOCUMENT may be determined, if necessary.

4.      File folders with tabs or labels or directories of files identifying DOCUMENTS must be produced intact with such DOCUMENTS.

5.      DOCUMENTS attached to each other shall not be separated.

6.      If any information requested is claimed to be privileged or otherwise immune from discovery, please provide all information falling within the scope of the Request which is not privileged, and for each item of information contained in a DOCUMENT to which a claim of privilege is made, identify such DOCUMENT with sufficient particularity for purposes of a motion to compel, such identification to INCLUDE at least the following:

(a)      the basis on which the privilege is claimed;

(b)      the name(s) of the author(s) of the DOCUMENT;

(c)      the name of each individual or other person to whom the DOCUMENT, or a copy thereof, was sent; and

(d)      the date of the DOCUMENT.

7.     If GILLETTE's response to a particular Request is a statement that GILLETTE lacks the ability to comply with that Request, GILLETTE must specify whether the inability to comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in GILLETTE's possession, custody, or control, in which case the name and address of any person or entity known or believed by YOU to have possession, custody, or control of that information or category of information must be identified.

8.     GILLETTE's obligation to respond to these Requests is continuing and its responses are to be supplemented to INCLUDE subsequently acquired information in accordance with the requirements of Rule 26(e) of the Federal Rules of Civil Procedure.

## DOCUMENTS TO BE PRODUCED

### DOCUMENT REQUEST NO. 11:

All DOCUMENTS that REFLECT or REFER TO GILLETTE's understanding or awareness of the identity of the manufacturer of any DSC ACCUSED PRODUCTS.

### DOCUMENT REQUEST NO. 12:

All DOCUMENTS and COMMUNICATIONS that REFLECT or REFER TO the PATENT-IN-SUIT or any patents or applications in the PATENT FAMILY.

### DOCUMENT REQUEST NO. 13:

All DOCUMENTS that REFLECT or REFER TO efforts to obtain patent protection on any invention related to the subject matter shown, described, or claimed in the PATENT FAMILY.

### DOCUMENT REQUEST NO. 14:

All invention disclosures REFLECTING or REFERRING TO the subject matter shown, described, or claimed in the PATENT FAMILY, and all DOCUMENTS attached to, REFLECTING or REFERRING TO any such invention disclosure.

### DOCUMENT REQUEST NO. 15:

The prosecution history of any patents and applications in the PATENT FAMILY.

**DOCUMENT REQUEST NO. 16**:

All correspondence REFLECTING or REFERRING TO the prosecution history of any patents and applications in the PATENT FAMILY.

**DOCUMENT REQUEST NO. 17**:

All DOCUMENTS consulted or reviewed by the applicants, patentees, or prosecuting attorneys during the preparation and prosecution of any patents and applications in the PATENT FAMILY, INCLUDING, but not limited to, PRIOR ART references or potential PRIOR ART references.

**DOCUMENT REQUEST NO. 18**:

All drafts of patent applications that REFLECT or REFER TO the subject matter shown, described, or claimed in the PATENT FAMILY.

**DOCUMENT REQUEST NO. 19**:

All correspondence REFLECTING or REFERRING TO drafts of patent applications that REFLECT or REFER TO the subject matter shown, described, or claimed in the PATENT FAMILY.

**DOCUMENT REQUEST NO. 20**:

All DOCUMENTS consulted or reviewed by the applicants, patentees, or prosecuting attorneys during the preparation and prosecution of any drafts of patent applications that REFLECT or REFER TO the subject matter shown, described, or claimed in the PATENT FAMILY, INCLUDING, but not limited to, PRIOR ART references or potential PRIOR ART references.

**DOCUMENT REQUEST NO. 21**:

The prosecution history of each application on which any one or more of the inventors of the PATENT-IN-SUIT is a named inventor, INCLUDING all issued, pending, or abandoned applications.

**DOCUMENT REQUEST NO. 22:**

All correspondence REFLECTING or REFERRING TO the prosecution history of each application on which any one or more of the inventors of the PATENT-IN-SUIT is a named inventor, INCLUDING all issued, pending, or abandoned applications.

**DOCUMENT REQUEST NO. 23:**

All DOCUMENTS consulted or reviewed by the applicants, patentees, or prosecuting attorneys during the preparation and prosecution of each application on which any one or more of the inventors of the PATENT-IN-SUIT is a named inventor, INCLUDING all issued, pending or abandoned applications, INCLUDING, but not limited to, PRIOR ART references or potential PRIOR ART references.

**DOCUMENT REQUEST NO. 24:**

All U.S. and foreign patents and patent applications, and corresponding prosecuting histories, INCLUDING those of unpublished, pending, or abandoned applications, that are in whole or in part owned, licensed, or expected to be owned or licensed, by GILLETTE that are directed to the subject-matter disclosed in the patents and applications in the PATENT FAMILY.

**DOCUMENT REQUEST NO. 25:**

All correspondence REFLECTING or REFERRING TO any U.S. and foreign patents and patent applications, INCLUDING those of unpublished, pending, or abandoned applications, that are in whole or in part owned, licensed, or expected to be owned or licensed, by GILLETTE that are directed to the subject-matter disclosed in the patents and applications in the PATENT FAMILY.

**DOCUMENT REQUEST NO. 26:**

All DOCUMENTS consulted or reviewed by the applicants, patentees, or prosecuting attorneys during the preparation and prosecution of any U.S. and foreign patents and patent applications, INCLUDING those of unpublished, pending, or abandoned applications, that are in whole or in part owned, licensed, or expected to be owned or licensed, by GILLETTE that are

directed to the subject-matter disclosed in the patents and applications in the PATENT FAMILY, INCLUDING, but not limited to, PRIOR ART references or potential PRIOR ART references.

**DOCUMENT REQUEST NO. 27:**

All DOCUMENTS that REFLECT or REFER TO:  (i) YOUR knowledge of PRIOR ART relating to the patents and applications in the PATENT FAMILY; and (ii) the date and circumstances pursuant to which GILLETTE first learned of each piece of PRIOR ART.

**DOCUMENT REQUEST NO. 28:**

All DOCUMENTS known or considered by GILLETTE as PRIOR ART or potential PRIOR ART or claimed by others to be PRIOR ART, or which show the state of the art, of the subject matter shown, described, or claimed in the patents and applications in the PATENT FAMILY, INCLUDING, but not limited to, patents, publications, books, magazines, course materials, or any DOCUMENT that REFLECTS or REFERS TO prior knowledge, public uses, public sales, or offers for sale, which have a publication date before the issuance of the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 29:**

All DOCUMENTS that REFLECT or REFER TO the conception, reduction to practice, research, design, development, or testing of the subject matter shown, described, and claimed in the PATENT-IN-SUIT, INCLUDING, but not limited to, laboratory notebooks, inventor notebooks, and computer data, as well as the first written description or disclosure (INCLUDING drawings) and the first prototype of such subject matter.

**DOCUMENT REQUEST NO. 30:**

All DOCUMENTS that REFLECT or REFER TO any embodiment, INCLUDING commercial embodiments, GILLETTE contends or believes is an embodiment of any invention claimed in the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 31:**

DOCUMENTS sufficient to show the identity of all persons contributing to the development, testing, and/or design of any embodiment, INCLUDING commercial

embodiments, GILLETTE contends or believes is an embodiment of any invention claimed in the PATENT-IN-SUIT, from 1998 to the present.

**DOCUMENT REQUEST NO. 32:**

All DOCUMENTS that REFLECT or REFER TO any product, prototype, development version, demonstration version, or test version of any invention claimed in the PATENT-IN-SUIT or related to the subject matter of the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 33:**

DOCUMENTS sufficient to show the identity of all persons contributing to the development of any product, embodiment, prototype, development version, demonstration version, or test version of any invention claimed in the PATENT-IN-SUIT or related to the subject matter of the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 34:**

All DOCUMENTS that REFLECT or REFER TO the inventorship of any invention described, disclosed, or claimed in one or more of the patents and applications in the PATENT FAMILY, INCLUDING DOCUMENTS that REFLECT or REFER TO any person considered for inclusion as an inventor, and the contribution of each person involved in the conception, development, and reduction to practice of the subject matter claimed as an invention in any of the patents or applications in the PATENT FAMILY.

**DOCUMENT REQUEST NO. 35:**

All U.S. and foreign patents, printed publications, systems, products, or physical devices, provided to, received from, or identified to or by prosecution counsel for or during the preparation and prosecution of the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 36:**

All DOCUMENTS that REFLECT or REFER TO any foreign patent application or foreign patent that corresponds, in whole or in part, to the subject matter described or claimed in the PATENT-IN-SUIT, INCLUDING any and all foreign counterparts to, and foreign

applications that claim priority to, the PATENT-IN-SUIT, and all PRIOR ART cited in each such foreign patent application or patent.

**DOCUMENT REQUEST NO. 37:**

All DOCUMENTS that REFLECT or REFER TO ownership of the patents or applications in the PATENT FAMILY, INCLUDING, but not limited to, any proposed, requested, or executed assignment, conveyance, or grant of any right, title, or interest in or to any of the patents or applications in the PATENT FAMILY and all DOCUMENTS that REFLECT or REFER TO any such assignment, conveyance, or grant.

**DOCUMENT REQUEST NO. 38:**

All PRIOR ART and DOCUMENTS concerning PRIOR ART relating to the subject matter disclosed or claimed in any of the patents or applications in the PATENT FAMILY.

**DOCUMENT REQUEST NO. 39:**

All DOCUMENTS that REFLECT or REFER TO any investigations, analyses, or searches conducted by or for GILLETTE or disclosed to GILLETTE concerning PRIOR ART related to any of the patents or applications in the PATENT FAMILY.

**DOCUMENT REQUEST NO. 40:**

All PRIOR ART references, publications, patents, and events discussed, REFERRED TO, or learned about during or in connection with any negotiations or COMMUNICATIONS that REFLECT or REFER TO any actual or proposed license or assignment of, or concerning, any of the patents or applications in the PATENT FAMILY.

**DOCUMENT REQUEST NO. 41:**

All DOCUMENTS that REFLECT or REFER TO differences (or similarities) between, on the one hand, any patents, printed publications, references, or other PRIOR ART, and on the other hand, any invention disclosed or claimed in any application or patent in the PATENT FAMILY.

**DOCUMENT REQUEST NO. 42:**

All DOCUMENTS that REFLECT or REFER TO the manners or techniques by which the PATENT-IN-SUIT allegedly improved upon the PRIOR ART, added functionality that did not exist in the PRIOR ART, or provided a variation on or upgrade of the PRIOR ART and whether each such alleged improvement, added functionality, variation or upgrade, was non-obvious or unpredictable.

**DOCUMENT REQUEST NO. 43:**

All DOCUMENTS that REFLECT or REFER TO any of the secondary considerations of nonobviousness of the PATENT-IN-SUIT, INCLUDING, but not limited to, commercial success, long-felt need, attempts by others, failure of others, commercial acquiescence, licensing, professional approval, copying, or laudatory statements by others regarding the invention claimed in the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 44:**

All DOCUMENTS that REFLECT or REFER TO any service offerings, beta tests, or trials of the subject matter of the PATENT-IN-SUIT or related technology prior to the filing date of the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 45:**

All DOCUMENTS that REFLECT or REFER TO any manufacture, use, sale, or offer for sale, by or on behalf of GILLETTE, of any product, prototype, development version, commercial embodiment, or commercialization of any invention disclosed, described, or claimed in the PATENT-IN-SUIT, related to the subject matter of the PATENT-IN-SUIT, or any GILLETTE product or service related to the TECHNOLOGY-IN-SUIT.

**DOCUMENT REQUEST NO. 46:**

All DOCUMENTS that REFLECT or REFER TO the design, structure, or composition of any product, prototype, development version, commercial embodiment, or commercialization of any invention disclosed, described, or claimed in the PATENT-IN-SUIT, related to the subject

matter of the PATENT-IN-SUIT, or any GILLETTE product or service related to the TECHNOLOGY-IN-SUIT.

**DOCUMENT REQUEST NO. 47:**

DOCUMENTS sufficient to identify the manufacturing process used to apply coatings to razor blades sold by GILLETTE from 1998 to the present.

**DOCUMENT REQUEST NO. 48:**

DOCUMENTS sufficient to identify the structure and composition of the coatings on razor blades sold by GILLETTE from 1998 to the present.

**DOCUMENT REQUEST NO. 49:**

All DOCUMENTS that REFLECT or REFER TO any manufacture, use, sale, or offer for sale, by or on behalf of GILLETTE, or any other company controlled in whole or in part by or affiliated with any of the inventors of the PATENT-IN-SUIT, of any product, prototype, development version, system, or method that is:  (i) disclosed, described, or claimed in the PATENT-IN-SUIT; (ii) related to the subject matter of the PATENT-IN-SUIT; or (iii) related to any product or service related to the TECHNOLOGY-IN-SUIT.

**DOCUMENT REQUEST NO. 50:**

All DOCUMENTS that REFLECT or REFER TO any analyses or investigations conducted by or for GILLETTE or disclosed to GILLETTE REFLECTING or REFERRING TO any valuations of the PATENT-IN-SUIT, INCLUDING evaluations of the monetary value, strengths, or weaknesses of the PATENT-IN-SUIT, any licenses under the PATENT-IN-SUIT, or any intellectual property portfolio or segment thereof INCLUDING the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 51:**

All DOCUMENTS that REFLECT or REFER TO any license of, offer to license, effort to license, or grant of any rights under the PATENT-IN-SUIT, the subject matter described or claimed in the PATENT-IN-SUIT, or any intellectual property portfolio INCLUDING the PATENT-IN-SUIT, to any person or entity, INCLUDING all DOCUMENTS that REFLECT or

REFER TO any licensing negotiations, notice letters, claim charts, claim construction, infringement, draft licenses, agreements, exhibits, demand letters, and cease and desist letters.

**DOCUMENT REQUEST NO. 52:**

All licenses, covenants not to sue, and general releases that have at any time encompassed the PATENT-IN-SUIT or infringement of the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 53:**

All DOCUMENTS that REFLECT or REFER TO the value to consumers of any features, functionalities, or any other technological components of any GILLETTE products or services relating to the TECHNOLOGY-IN-SUIT.

**DOCUMENT REQUEST NO. 54:**

All DOCUMENTS identified, mentioned, referenced, reviewed, or relied upon in the preparation of GILLETTE's answers to any of DSC's interrogatories served on GILLETTE in THIS ACTION.

**DOCUMENT REQUEST NO. 55:**

All DOCUMENTS that REFLECT or REFER TO each of the legal and factual allegations and requests for relief in GILLETTE's claims, as well as in any subsequently added or supplemental pleading in THIS ACTION or in any infringement action asserting the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 56:**

All DOCUMENTS identified, described or referred to in GILLETTE's disclosures under Federal Rule of Civil Procedure 26.

**DOCUMENT REQUEST NO. 57:**

All DOCUMENTS that REFLECT or REFER TO any interrogatories or requests for admission propounded by DSC in THIS ACTION, INCLUDING DOCUMENTS relied upon or considered in response to DSC's interrogatories or requests for admission.

**DOCUMENT REQUEST NO. 58:**

All COMMUNICATIONS between or among GILLETTE, any of the inventors of the PATENT-IN-SUIT, or any of the attorneys that prosecuted any of the applications or patents in the PATENT FAMILY that REFLECT or REFER TO any of the patents or applications in the PATENT FAMILY or THIS ACTION.

**DOCUMENT REQUEST NO. 59:**

All DOCUMENTS that REFLECT or REFER TO patents, publications, abstracts, papers, articles, presentations or speeches invented, authored, or given, in whole or in part, by any of the inventors of the PATENT-IN-SUIT concerning the subject matter of the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 60:**

All DOCUMENTS that REFLECT or REFER TO prior testimony of any of the inventors of the PATENT-IN-SUIT in the context of any adversarial or other legal or administrative proceeding in the U.S. or abroad.

**DOCUMENT REQUEST NO. 61:**

All DOCUMENTS that REFLECT or REFER TO any agreement between GILLETTE and any of the named inventors of the PATENT-IN-SUIT, including any assignment, contract, employment agreement, consulting agreement, or license.

**DOCUMENT REQUEST NO. 62:**

All DOCUMENTS which support or refute GILLETTE's assertion that any of DSC's products infringe any of the claims of the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 63:**

All DOCUMENTS which support or refute GILLETTE's assertion that the PATENT-IN-SUIT is valid and enforceable.

**DOCUMENT REQUEST NO. 64:**

All DOCUMENTS that REFLECT or REFER TO GILLETTE's first awareness that DSC's activities would form the basis of an accusation that DSC's products infringe the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 65:**

All DOCUMENTS that REFLECT or REFER TO GILLETTE's first awareness that any THIRD PARTY's activities would form the basis of an accusation that DSC's products infringe the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 66:**

All DOCUMENTS that REFLECT or REFER TO any steps GILLETTE took to enforce the PATENT-IN-SUIT against DSC or any THIRD PARTY.

**DOCUMENT REQUEST NO. 67:**

All DOCUMENTS that REFLECT or REFER TO any actual or threatened litigation, administrative action, arbitration, mediation, reexamination, interference, or any other legal or administrative proceeding involving any of the patents or applications in the PATENT FAMILY, INCLUDING all documents produced prior to or in connection with any such proceeding.

**DOCUMENT REQUEST NO. 68:**

All DOCUMENTS and testimony that REFLECT or REFER TO any legal or administrative proceedings to which GILLETTE was a party that concerned the PATENT-IN-SUIT or the TECHNOLOGY-IN-SUIT, other than the present matter.  This includes, without limitation, all pleadings, court filings, correspondence, expert reports, discovery responses, court orders, special master reports, transcripts (whether trial, hearing, or deposition), and exhibits (whether trial, hearing, filing, or deposition).

**DOCUMENT REQUEST NO. 69:**

All GILLETTE or P&G shareholder or board of director meeting minutes concerning DSC, DSC's ACCUSED PRODUCTS, or THIS ACTION.

**DOCUMENT REQUEST NO. 70:**

All DOCUMENTS that REFLECT or REFER TO DSC.

**DOCUMENT REQUEST NO. 71:**

All DOCUMENTS that REFLECT or REFER TO any damage or harm GILLETTE allegedly suffered as a result of the sale, offer for sale, use, or importation of any of DSC's products GILLETTE contends or believes is covered by any claims of the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 72:**

All DOCUMENTS that REFLECT or REFER TO sales, licensing, sales forecasts, budgets, expenses, costs, and profitability of any GILLETTE products that you contend embody any claim of the PATENT-IN-SUIT or the TECHNOLOGY-IN-SUIT.

**DOCUMENT REQUEST NO. 73:**

DOCUMENTS sufficient to explain how GILLETTE calculates revenue, costs, and profits associated with sales of any GILLETTE products that YOU contend embody any claim of the PATENT-IN-SUIT or the TECHNOLOGY-IN-SUIT.

**DOCUMENT REQUEST NO. 74:**

Ten samples of each GILLETTE product that embodies any claim of the PATENT-IN-SUIT from each year that GILLETTE contends the product embodies any claim of the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 75:**

DOCUMENTS sufficient to show all dates on which GILLETTE ordered or obtained any U.S. or foreign prosecution history REFLECTING or REFERRING TO the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 76:**

All DOCUMENTS that REFLECT or REFER TO sales, licensing, sales forecasts, budgets, expenses, costs, and profitability of any products that relate to the TECHNOLOGY-IN-SUIT that were sold, offered for sale, licensed, or in any way commercialized by GILLETTE, or any other company controlled by or affiliated with any of the inventors of the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 77:**

All DOCUMENTS that REFLECT or REFER TO the labeling and marking with patent information of any GILLETTE products, systems, or methods that you contend embody any claim of the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 78:**

All DOCUMENTS that REFLECT or REFER TO the labeling and marking with patent information of any products sold, marketed, or commercialized by any company controlled by, licensed by, or affiliated with GILLETTE or any of the inventors of the PATENT-IN-SUIT that you contend embody any claim of the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 79:**

All DOCUMENTS that REFLECT or REFER TO any computation, calculation or estimation of damages, lost profits, or reasonable royalties claimed in THIS ACTION or any infringement actions asserting the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 80:**

All DOCUMENTS that REFLECT or REFER TO any royalty rates for any patents or applications in the PATENT FAMILY and any patents relating to the TECHNOLOGY-IN-SUIT.

**DOCUMENT REQUEST NO. 81:**

All DOCUMENTS that REFLECT or REFER TO any licenses or licensing policies, including patent licenses, related to razor blades.

**DOCUMENT REQUEST NO. 82:**

All DOCUMENTS that REFLECT or REFER TO the commercial success or failure of any GILLETTE, DSC, or THIRD PARTY product that you contend embodies any claim of the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 83:**

All DOCUMENTS that REFLECT or REFER TO GILLETTE's patent licensing policies.

**DOCUMENT REQUEST NO. 84:**

All DOCUMENTS that REFLECT or REFER TO policies or procedures at GILLETTE related to pursuing patents, INCLUDING policies or procedures related to when to pursue patents, invention disclosures, patent prosecution, or the citation of PRIOR ART.

**DOCUMENT REQUEST NO. 85:**

All DOCUMENTS that REFLECT or REFER TO any public use in the United States, offer for sale or first sale in the United States, or public disclosure of any of the subject matter described or claimed in the PATENT-IN-SUIT more than one year prior to the date of the application for patent in the United States.

**DOCUMENT REQUEST NO. 86:**

DOCUMENTS, INCLUDING organization chart(s), sufficient to show the organizational structure of GILLETTE and the personnel in the areas responsible for the management, licensing, marketing, manufacturing, engineering, testing, patent clearance, and research and development leading to the alleged invention of the PATENT-IN-SUIT and the TECHNOLOGY-IN-SUIT from 1998 to the present.

**DOCUMENT REQUEST NO. 87:**

DOCUMENTS, INCLUDING organization chart(s), sufficient to show the organizational structure of GILLETTE and the personnel in the areas responsible for the testing or analysis of DSC's or other companies' products and features that compete with any GILLETTE products that you contend embody any claim of the PATENT-IN-SUIT or the TECHNOLOGY-IN-SUIT from 2003 to the present.

**DOCUMENT REQUEST NO. 88:**

All DOCUMENTS that REFLECT or REFER TO the market share of GILLETTE relating to the market for the accused DSC products and/or GILLETTE products that you contend embody any claim of the PATENT-IN-SUIT.

-19-

**DOCUMENT REQUEST NO. 89:**

All DOCUMENTS that REFLECT or REFER TO the retention of documents, whether formal or informal, by GILLETTE.

**DOCUMENT REQUEST NO. 90:**

All DOCUMENTS that REFLECT or REFER TO COMMUNICATIONS between GILLETTE and DSC prior to initiation of THIS ACTION or any infringement actions asserting the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 91:**

All DOCUMENTS that REFLECT or REFER TO COMMUNICATIONS between GILLETTE and any THIRD PARTY regarding the PATENT FAMILY prior to initiation of THIS ACTION or any infringement actions asserting the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 92:**

All DOCUMENTS that REFLECT or REFER TO COMMUNICATIONS between GILLETTE and DSC regarding the PATENT FAMILY prior to initiation of THIS ACTION.

**DOCUMENT REQUEST NO. 93:**

All DOCUMENTS that GILLETTE claims will have any bearing whatsoever on the scope, interpretation, or construction of any asserted claim or claim limitation of the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 94:**

All DOCUMENTS that REFLECT or REFER TO the level of ordinary skill in the art for the subject matter of the PATENT-IN-SUIT, including all documents concerning your contention as to what constituted the level of skill of a person of ordinary skill in the art to which the subject matter of each of the Asserted Patents pertains at the time of filing of the original patent application with the U.S. Patent and Trademark Office.

**DOCUMENT REQUEST NO. 95:**

All DOCUMENTS which support or refute GILLETTE's assertion in Paragraph 19 of the COMPLAINT that "Gillette's Mach3®, Venus® and Fusion® razor products, among others, practice one or more claims of the '513 Patent."

**DOCUMENT REQUEST NO. 96:**

All DOCUMENTS which support or refute GILLETTE's assertion in Paragraph 20 of the COMPLAINT that "Gillette provides virtual marking on its website identifying its products that practice the '513 Patent and thereby provides constructive notice to the world of its patent rights."

**DOCUMENT REQUEST NO. 97:**

All DOCUMENTS served by any party in *Collins v. The Gillette Company*, No. 2:04-cv-00038-TJW (E.D. Tex. 2004), including, without limitation, any and all expert reports, correspondence, mediation briefs, privilege logs, infringement contentions, invalidity contentions, responses to interrogatories, and responses to requests for admission.

**DOCUMENT REQUEST NO. 98:**

All DOCUMENTS filed under seal by any party in *Collins v. The Gillette Company*, No. 2:04-cv-00038-TJW (E.D. Tex. 2004), including, without limitation, all briefs, letter briefs, opposition briefs, reply briefs, sur-reply briefs, mediation briefs, stipulations, supporting declarations, and exhibits to supporting declarations filed in connection with dispositive motions, discovery motions, *Daubert* motions, motions *in limine*, motions to strike, and post-trial motions.

**DOCUMENT REQUEST NO. 99:**

All DOCUMENTS prepared by any expert, including any technical, economic, marketing, licensing, or damages expert, in connection with *Collins v. The Gillette Company*, No. 2:04-cv-00038-TJW (E.D. Tex. 2004), including, without limitation, any "independent laboratory" testing referenced in docket entry number 34.

**DOCUMENT REQUEST NO. 100:**

All DOCUMENTS produced by GILLETTE to plaintiffs in *Collins v. The Gillette Company*, No. 2:04-cv-00038-TJW (E.D. Tex. 2004) that REFLECT or REFER TO GILLETTE's blade coating process, GILLETTE's blade coatings, thin film coating, DLC film, GILLETTE's Mach3® products, or GILLETTE's Venus® products.

**DOCUMENT REQUEST NO. 101:**

All agreements between Carl B. Collins or Farzin Davanloo, on the one hand, and GILLETTE, on the other, including, without limitation, the settlement agreement reached in connection with *Collins v. The Gillette Company*, No. 2:04-cv-00038-TJW (E.D. Tex. 2004).

**DOCUMENT REQUEST NO. 102:**

All DOCUMENTS served by any party in *Syndia Corp. v. The Gillette Company*, No. 1:01-cv-02485 (N.D. Ill. 2001), including, without limitation, any and all expert reports, correspondence, mediation briefs, privilege logs, infringement contentions, invalidity contentions, responses to interrogatories, and responses to requests for admission.

**DOCUMENT REQUEST NO. 103:**

All DOCUMENTS filed under seal by any party in *Syndia Corp. v. The Gillette Company*, No. 1:01-cv-02485 (N.D. Ill. 2001), including, without limitation, all briefs, letter briefs, opposition briefs, reply briefs, sur-reply briefs, mediation briefs, stipulations, supporting declarations, and exhibits to supporting declarations filed in connection with dispositive motions, discovery motions, *Daubert* motions, motions *in limine*, motions to strike, and post-trial motions.

**DOCUMENT REQUEST NO. 104:**

All DOCUMENTS prepared by any expert, including any technical, economic, marketing, licensing, or damages expert, in connection with *Syndia Corp. v. The Gillette Company*, No. 1:01-cv-02485 (N.D. Ill. 2001), including, without limitation, any "independent laboratory" testing referenced in docket entry number 34.

**DOCUMENT REQUEST NO. 105:**

All DOCUMENTS produced by GILLETTE to the plaintiff in *Syndia Corp. v. The Gillette Company*, No. 1:01-cv-02485 (N.D. Ill. 2001) that REFLECT or REFER TO GILLETTE's blade coating process, GILLETTE's blade coatings, thin film coating, DLC film, GILLETTE's Mach3® products, or GILLETTE's Venus® products.

**DOCUMENT REQUEST NO. 106:**

All trial exhibits and trial demonstratives used by any party in *Syndia Corp. v. The Gillette Company*, No. 1:01-cv-02485 (N.D. Ill. 2001).

**DOCUMENT REQUEST NO. 107:**

All agreements between Syndia Corporation and GILLETTE, including, without limitation, the settlement agreement reached in connection with *Syndia Corp. v. The Gillette Company*, No. 1:01-cv-02485 (N.D. Ill. 2001).

**DOCUMENT REQUEST NO. 108:**

All DOCUMENTS served by any party in *Schick Mfg., Inc. v. The Gillette Company*, No. 3:04-cv-00954 (D. Conn. 2004), including, without limitation, any and all expert reports, correspondence, mediation briefs, privilege logs, infringement contentions, invalidity contentions, responses to interrogatories, and responses to requests for admission.

**DOCUMENT REQUEST NO. 109:**

All DOCUMENTS filed under seal by any party in *Schick Mfg., Inc. v. The Gillette Company*, No. 3:04-cv-00954 (D. Conn. 2004), including, without limitation, all briefs, letter briefs, opposition briefs, reply briefs, sur-reply briefs, mediation briefs, stipulations, supporting declarations, and exhibits to supporting declarations filed in connection with dispositive motions, discovery motions, *Daubert* motions, motions *in limine*, motions to strike, and post-trial motions.

**DOCUMENT REQUEST NO. 110:**

All DOCUMENTS prepared by any expert, including any technical, economic, marketing, licensing or damages expert, in connection with *Schick Mfg., Inc. v. The Gillette*

*Company*, No. 3:04-cv-00954 (D. Conn. 2004), including, without limitation, any "independent laboratory" testing referenced in docket entry number 34.

**DOCUMENT REQUEST NO. 111:**

All DOCUMENTS produced by GILLETTE to plaintiffs in *Schick Mfg., Inc. v. The Gillette Company*, No. 3:04-cv-00954 (D. Conn. 2004) that REFLECT or REFER TO GILLETTE's blade coating process, GILLETTE's blade coatings, thin film coating, or DLC film.

**DOCUMENT REQUEST NO. 112:**

All agreements between Schick Manufacturing, Inc., Eveready Battery Company, Inc., or Energizer Battery Inc., on the one hand, and GILLETTE, on the other, including, without limitation, the settlement agreements reached in connection with *Schick Mfg., Inc. v. The Gillette Company*, No. 3:04-cv-00954 (D. Conn. 2004), *The Gillette Company v. Energizer Holdings, Inc.*, No. 1:03-cv-12455 (D. Mass. 2003), and *The Gillette Company v. Energizer Holdings, Inc.*, No. 1:03-cv-11514 (D. Mass. 2003).

**DOCUMENT REQUEST NO. 113:**

All DOCUMENTS that REFLECT or REFER TO the letter sent by GILLETTE on or around December 17, 2003, referenced in *Schick Mfg., Inc. v. The Gillette Company*, No. 3:04-cv-00954 (D. Conn. 2004), docket entry no. 1, ¶¶ 13, 21.

**DOCUMENT REQUEST NO. 114:**

All DOCUMENTS served by any party in *The Gillette Company v. Energizer Holdings, Inc.*, No. 1:03-cv-12455 (D. Mass. 2003), including, without limitation, any and all expert reports, correspondence, mediation briefs, privilege logs, infringement contentions, invalidity contentions, responses to interrogatories, and responses to requests for admission.

**DOCUMENT REQUEST NO. 115:**

All DOCUMENTS filed under seal by any party in *The Gillette Company v. Energizer Holdings, Inc.*, No. 1:03-cv-12455 (D. Mass. 2003), including, without limitation, all briefs, letter briefs, opposition briefs, reply briefs, sur-reply briefs, mediation briefs, stipulations,

supporting declarations, and exhibits to supporting declarations filed in connection with dispositive motions, discovery motions, *Daubert* motions, motions *in limine*, motions to strike, and post-trial motions.

**DOCUMENT REQUEST NO. 116:**

All DOCUMENTS prepared by any expert, including any technical, economic, marketing, licensing, or damages experts, in connection with *The Gillette Company v. Engergizer Holdings, Inc.*, No. 1:03-cv-12455 (D. Mass. 2003), including, without limitation, any "independent laboratory" testing referenced in docket entry number 34.

**DOCUMENT REQUEST NO. 117:**

All DOCUMENTS produced by GILLETTE to defendants in *The Gillette Company v. Energizer Holdings, Inc.*, No. 1:03-cv-12455 DPW (D. Mass.) that REFLECT or REFER TO GILLETTE's blade coating process, GILLETTE's blade coatings, thin film coating, or DLC film.

**DOCUMENT REQUEST NO. 118:**

All DOCUMENTS that REFLECT or REFER to Auger electron spectroscopy (AES), X-ray photoelectron spectroscopy (XPS), Scanning Transmission Electron Microscopy (STEM), or any other analysis of any DORCO and/or PACE SHAVE product from January 1, 2007 to the present.

**DOCUMENT REQUEST NO. 119:**

All DOCUMENTS that REFLECT or REFER to Auger electron spectroscopy (AES), X-ray photoelectron spectroscopy (XPS), Scanning Transmission Electron Microscopy (STEM), or any other analysis of any SCHICK product from January 1, 1990 to the present.

**DOCUMENT REQUEST NO. 120:**

DOCUMENTS sufficient to identify all persons involved in GILLETTE's testing or evaluation of competitor's razor products, including, but not limited to, Auger electron spectroscopy (AES), X-ray photoelectron spectroscopy (XPS), or Scanning Transmission Electron Microscopy (STEM) test, from January 1, 2007 to the present.

*     *     *

Dated: September 7, 2016

OF COUNSEL:

Charles K. Verhoeven
Terry L. Wit
Morgan W. Tovey
James D. Judah
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
charlesverhoeven@quinnemanuel.com
terrywit@quinnemanuel.com
morgantovey@quinnemanuel.com
jamesjudah@quinnemanuel.com

F. Christopher Mizzo
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, DC  20005
Tel: 202-879-5000
chris.mizzo@kirkland.com

Respectfully submitted,

By: /s/ John W. Shaw
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE
19801 (302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I, James D. Judah, hereby certify that on September 7, 2016 this document was served on

the persons listed below in the manner indicated:

**<u>BY E-MAIL AND FEDERAL EXPRESS</u>**

| | |
|---|---|
| Jack B. Blumenfeld | Mark Abate |
| Rodger D. Smith II | Alexandra Valenti |
| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | Stephen J. Bernstein |
| 1201 North Market Street | GOODWIN PROCTER LLP |
| P.O. Box 1347 | The New York Times Building |
| Wilmington, DE 19899 | 620 Eighth Avenue |
| (302) 658-9200 | New York, NY 10018 |
| jblumenfeld@mnat.com | (212) 813-8800 |
| rsmith@mnat.com | mabate@goodwinprocter.com |
| | avalenti@goodwinprocter.com |
| | sbernstein@goodwinprocter.com |
| Elaine Herrmann Blais | |
| GOODWIN PROCTER LLP | |
| 100 Northern Avenue | Jennifer A. Albert |
| Boston, MA 02210 | Charles T. Cox |
| (617) 570-1000 | GOODWIN PROCTER LLP |
| eblais@goodwinprocter.com | 901 New York Avenue, N.W. |
| | Washington, DC 20001 |
| | (202) 346-4000 |
| | jalbert@goodwinprocter.com |
| | ccox@goodwinprocter.com |

*/s/ James D. Judah*
Charles K. Verhoeven
Terry L. Wit
Morgan W. Tovey
James D. Judah
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
charlesverhoeven@quinnemanuel.com
terrywit@quinnemanuel.com
morgantovey@quinnemanuel.com
jamesjudah@quinnemanuel.com
*Attorneys for Defendant*

# Exhibit 7-19

REDACTED