IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE GILLETTE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 15-1158 (LPS) |
| ) | |
| DOLLAR SHAVE CLUB, INC., DORCO ) | **REDACTED – PUBLIC VERSION** |
| COMPANY LTD. and PACE SHAVE, INC., ) | |
| ) | |
| Defendants. ) | |

**LETTER TO THE HONORABLE LEONARD P. STARK FROM
<u>MICHAEL J. FLYNN RESPONDING TO DEFENDANTS' OCTOBER 6, 2017 LETTER</u>**

OF COUNSEL:

Mark J. Abate
Steven J. Bernstein Alexandra
D. Valenti
Tyler Doh
GOODWIN PROCTER LLP The
New York Times Building 620
Eighth Avenue
New York, NY  10018
(212) 813-8800

Jennifer A. Albert
Charles T. Cox
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC  20001 (202)
346-4000

Elaine Herrmann Blais
GOODWIN PROCTER LLP
100 Northern Avenue Boston,
MA  02210
(617) 570-1205

Redacted Filing Date:  October 17, 2017
Original Filing Date:  October 10, 2017

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com
mflynn@mnat.com

*Attorneys for Plaintiff*

**HIGHLY CONFIDENTIAL – FILED UNDER SEAL**

Dear Chief Judge Stark:

Plaintiff responds to the issues raised in Defendants' October 6 (D.I. 542) letter as set forth below.

### I. Documents Underlying Test Results in Infringement Contentions

Defendants' motion to compel the production of all data underlying test results contained in Gillette's contentions should be denied. That information constitutes attorney work product; it was prepared by a non-testifying expert at the request of counsel for purposes of this case. Rules 26(b)(4)(D) and 26(b)(3)(A) specifically shield such data from discovery. *See Plymovent Corp. v. Air Tech.*, 243 F.R.D. 139, 143-44 (D.N.J. 2007) (holding Rule 26(b)(4)(D)'s protection extends to document requests); *In re Cendant Corp.*, 343 F.3d 658, 662, 666-68 (3d Cir. 2003) ("[Work product] doctrine protect[s] materials prepared by agents of the attorney."). Moreover, the exceptions to those Rules do not apply because the contentions specifically disclose the tests that were conducted (D.I. 542, Ex. 2 at, *e.g.*, 4-5), and Defendants can certainly test their own products. *See Vanguard Sav. v. Banks*, 1995 WL 71293, at *3 (E.D. Pa. 1995) (party seeking non-testifying expert materials has heavy burden of proving "exceptional circumstances under which it is impracticable for [it] to obtain facts or opinions on the same subject by other means").

Defendants argue that Gillette, by disclosing the results and associated images in its contentions, has waived any protections. But the protection afforded by Rule 26(b)(4)(D) cannot be waived by disclosure. *Vanguard*, 1995 WL 71293, at *2; *Eidos Display v. Chunghwa Picture Tubes*, 296 F.R.D. 3, 7 (D.D.C. 2013). In any event, given that Gillette has not yet attempted to rely on the test results as trial evidence, but only for notice of its infringement theory, any suggestion that Gillette has used its testing as a "sword and shield" is wrong. In particular, "using testing data [in contentions] to put [defendants] on notice is not relying on the materials as evidence in support of [plaintiff's] infringement theories," and does not constitute a waiver of work product. *Kimberly-Clark Worldwide v. First Quality Baby Prod.*, 2010 WL 4537002, at *2 (M.D. Pa. Nov. 3, 2010); *see Fast Memory Erase v. Spansion*, 2009 WL 4884091, at *2 (N.D. Tex. Dec. 16, 2009) ("A contention, no matter how detailed, is not evidence."). Defendants' suggestion that because Gillette's contentions were cited in an interrogatory response, the underlying data is somehow discoverable, is unfounded. Moreover, Defendants cite *Vasudevan* where the Northern District of California, applying its local rules, ordered the patentee to produce data underlying screenshots in its contentions because they did not identify "specifically where each element of each asserted claim is found within each Accused Instrumentality." 2011 WL 13153991, at *3. In contrast, Gillette's infringement contentions, using the test results and other discovery, show that Defendants' blades contain the layers and other features required by the claims. Further, Defendants' other cited cases, *Princeton* and *Intel*, do not concern infringement contentions and are otherwise inapplicable. *Princeton*, 2017 WL 3264068, at *2 (ordering production of privileged communications after party selectively relied on similar communications to show good-faith basis for suit); *Intel*, 2008 WL 11233766, at *9 (ordering production of expert report after a press release summarized the report's key findings).

Defendants are not prejudiced; in fact, their discovery request is premature. They are free to perform testing of their own products at any time. Moreover, on November 7, 2017, opening reports are due, and Gillette will "disclose … the identity of any [expert] witness it may use at trial to present evidence" regarding infringement, and, as the rules require, that expert's report will include all test data considered in forming his or her opinions. *See Fast Memory*, 2009 WL

**HIGHLY CONFIDENTIAL – FILED UNDER SEAL**

The Honorable Leonard P. Stark
October 10, 2017
Page 2

4884091, at *2; Rule 26(a)(2)(B). Defendants can then analyze that information, and take depositions of Gillette's expert(s). Defendants' motion should be denied.

## II.  Defendants' Allegation That Gillette's Infringement Contentions Are Deficient

Contrary to Defendants' arguments, Gillette's infringement contentions are not deficient.

**1**.    Defendants' argument that Gillette has not explained "how Dorco's 'process conditions' create two separate layers ▌" (D.I. 542 at 2) is yet another improper attempt to read a limitation into the asserted claims. *See* D.I. 380 at 8-10; *Baldwin Graphic Sys. v. Siebert*, 512 F.3d 1338, 1344 (Fed. Cir. 2008) ("Courts must generally take care to avoid reading process limitations into an apparatus claim."). Gillette need not show *how* Dorco's process results in the claimed "hard coating layer" and "overcoat layer." *See AFG Indus. v. Cardinal IG*, 375 F.3d 1367, 1373 (Fed. Cir. 2004) ("[Defendant]'s process . . . does not provide conclusive information about whether its products contain a single layer of zinc oxide."). Gillette need only show that Defendants' razors *contain* those layers, which Gillette demonstrated in detail. D.I. 542, Ex. 2 at, *e.g.*, Att. A, 3-18. And, while not required to do so, Gillette also explained how Dorco's process resulted in layers. *Id.* at Att. A, 11.

**2**.    Defendants mischaracterized Gillette counsel's statement, which was made in the context of ***claim construction***, not an argument regarding equivalent infringement. In any event, Gillette's contentions provide the scientific basis for Gillette's DOE position, as well as supporting evidence from Defendants' documents. D.I. 542, Ex. 2 at 5-6 & Att. A, 9-11, 15-17. At this stage of the case, such disclosures are more than sufficient. Defendants' motion, veiled as a motion to compel, is an improper attempt to preview Gillette's expert opinions and/or a premature summary judgment motion. Defendants suggest that Gillette has not considered the Court's construction of the "overcoat layer," but that is wrong. Gillette's DOE analysis assumes *arguendo* that this limitation is not literally met by the accused products.

**3**.    Defendants misread Gillette's contentions. Figure 3 (D.I. 542, Ex. 2 at App'x 1, 7) does not show a composition percentage of chromium in the hard layer. Instead, Gillette contends that ▌ indicating that chromium is introduced "in small amounts," as per the Court's construction. D.I. 542, Ex. 2 at 21-22. Moreover, discovery from Dorco's own witness indicates that ▌ which is also a small amount. Ex. 1 at 140:13-24. This case is therefore distinguishable from *Intellectual Ventures*, where the patentee's infringement contentions "incorporate[d] only the first part of the Court's construction." 2017 WL 658469, at *2.

## III.  Additional Discovery of Gillette's Manufacturing Process

Defendants seek documents, deposition testimony, and inspection regarding the process Gillette uses to manufacture its commercial products. Gillette does not dispute that some discovery of its manufacturing process is needed to show that it practices the asserted process claims 24-26. But Defendants fail to mention that Gillette has already produced hundreds of documents regarding its manufacturing process (*e.g.*, Ex. 2 at 4, Sched. A; Exs. 3-6), and witnesses who testified regarding such information (*e.g.*, Ex. 7 at 153:10-157:22; Ex. 8 at 91:25-92:21). Indeed, Gillette produced authoritative product specifications demonstrating that Gillette practices the asserted claims, and Gillette witnesses further testified regarding the authoritative

**HIGHLY CONFIDENTIAL – FILED UNDER SEAL**

The Honorable Leonard P. Stark
October 10, 2017
Page 3

nature of those specifications. Ex. 3; Ex. 9 at 19:24-20:11; Ex. 8 at 101:5-103:4, 109:22-110:5, 146:19-149:14, 151:1-8; Exs. 10-12. Defendants do not explain why additional discovery is needed. In one conclusory sentence, Defendants state that this discovery is "relevant to at least non-infringement, secondary considerations, and Gillette's demand for lost profits and an injunction." D.I. 542 at 2. This falls short of satisfying Defendants' burden of establishing the relevance of the additional discovery they seek. *See Wyeth v. Impax Labs.*, 248 F.R.D. 169, 171 (D. Del. 2006) (denying motion to compel because movant "ha[d] not shown that the documents requested . . . beyond what [was] already produced" were "critical to resolving the issues before the Court"). Moreover, Gillette's manufacturing process is not relevant to infringement. *See Zenith Labs. v. Bristol-Myers Squibb*, 19 F.3d 1418, 1423 (Fed. Cir. 1994) ("[I]t is error . . . to compare in [the] infringement analysis the accused product or process with the patentee's commercial embodiment . . . ; the only proper comparison is with the claims of the patent.").

Defendants wrongly suggest that they are entitled to additional discovery regarding Gillette's manufacturing process merely because Gillette obtained such discovery from Dorco. First, Dorco did not produce authoritative product specifications like those produced by Gillette. Indeed, in response to a motion to compel, Dorco protested that it did not have such documents. D.I. 377-78. The Court, in its order regarding that motion, expressed skepticism that those documents did not exist. D.I. 382. Nonetheless, the absence of such documents in Dorco's production necessitated Gillette's discovery of Dorco's process. *See* D.I. 377 at 1-2; D.I. 382. Second, that Gillette obtained discovery from Dorco regarding Dorco's process has no bearing on whether Gillette should have to produce the same discovery in return. In that regard, Defendants' reliance on *Alloc* is misplaced; there, the court compelled discovery of the ***accused infringer's*** manufacturing process as probative of infringement. 2006 WL 757871, at *3. The case does not bear on the relevance of the ***patentee's*** process.

As Defendants note, Gillette offered to withdraw the asserted process claims to moot this dispute and streamline the case, but Defendants declined the offer. Nevertheless, Gillette remains amenable to withdrawing its process claims, in exchange for Defendants withdrawing their request for additional manufacturing discovery at this late date. Defendants' request that Gillette produce further discovery regarding its manufacturing process should be denied.

### IV.     Gillette's Interrogatory Responses

*Interrogatory No. 16*: Defendants' request is not proportional to the needs of the case. As set forth in Gillette's motion (D.I. 543), Defendants' contentions are over 3100 pages long, citing more than 40 prior art references, with 55 claim charts, and covering hundreds of obviousness combinations. Defendants should be compelled to identify no more than five alleged anticipatory and five alleged obviousness combinations. Gillette will supplement its response to Interrogatory No. 16 once Defendants reasonably focus their contentions.

*Interrogatory Nos. 20-22*: Gillette's responses pursuant to Rule 33(d) are proper in view of the breadth of DSC's requests. Interrogatory No. 20 seeks broad categories of information regarding all razor blades that Gillette is aware of having certain coatings that were made, evaluated, tested, used, or sold any time before 2000, even if not manufactured or sold by Gillette. Interrogatory No. 22 seeks information on "all outplants that occurred, in whole or in part, in the United States, before 2000, and that involved razor blades with a Cr containing overcoat." Given the breadth of those interrogatories, Gillette's reliance on Rule 33(d) to

**HIGHLY CONFIDENTIAL – FILED UNDER SEAL**

The Honorable Leonard P. Stark
October 10, 2017
Page 4

respond was entirely proper. *See Playboy Entm't v. U.S.*, 1997 WL 873550, at *5 (D. Del. Dec. 11, 1997) (response to interrogatory requesting identification of "all communications" regarding a topic proper under Rule 33(d) "[g]iven the type of information sought and the degree of research that would be required by either party to ascertain an answer"). Defendants' reliance on *Power Integrations* is likewise misplaced. There, the court found a Rule 33(d) response improper in view of the "limited nature" of the interrogatory. 2005 WL 8136574, at *2. Here, in contrast, Defendants requested information regarding extensive testing done prior to 2000, and in response, Gillette properly identified documents responsive to that request.

### V.   Attachments to Emails

Gillette is under no obligation to produce nonresponsive, irrelevant attachments to email. Nonetheless, Gillette will produce the attachments to avoid burdening the Court with this issue.

### VI.   Gillette's Objection to Defendants' Expert

To be clear, Gillette does not object to Defendants' use of Mr. Tressel as an expert on validity. As a validity expert, Mr. Tressel does not need access to Gillette confidential materials to provide his opinion as to whether, for example, the invention claimed in the patent (a public document) is taught in the prior art (other public documents). Rather, Gillette objects to the disclosure of its confidential information to Mr. Tressel. To the extent any expert must see Gillette's confidential information, Defendants are free to use one of their other two technical experts for whom Gillette has no objection. Ex. 13. Mr. Tressel has spent his career working for Gillette's competitor, Schick. Defendants' claim that Mr. Tressel has no on-going relationship with Schick is misleading. He was employed at Schick until very recently and is a named inventor on at least six pending Schick patent applications relating to razor blade coatings. If Mr. Tressel is given access to Gillette's confidential information, there would be a high risk of inadvertent disclosure to Schick, given that Mr. Tressel may need to assist with the prosecution and/or enforcement of the pending applications, and of any continuation or divisional applications. Indeed, inventors commonly agree to cooperate with a former employer in prosecuting and enforcing a patent, even after having left the company. Although Mr. Tressel states that "to the best of [his] knowledge, he has no obligation to assist Schick in patent prosecution" (D.I. 542, Ex. 18 ¶ 4), Defendants have refused to produce any employment or severance agreements that confirm that Mr. Tressel has no such obligation. Moreover, Defendants' argument that the Gillette documents they intend to show to Mr. Tressel are of "limited competitive value" is unfounded. The blade coatings Gillette developed in the late 1990s that are the subject of this suit have been embodied in all of Gillette's premium razors since 2002. Gillette and Schick are currently engaged in patent litigation and its certainly possible that Schick could assert a counterclaim based on one of Mr. Tressel's applications once granted.

**HIGHLY CONFIDENTIAL – FILED UNDER SEAL**

The Honorable Leonard P. Stark
October 10, 2017
Page 5

                                                             Respectfully,

                                                             Michael J. Flynn (#5333)

MJF/dlw
Enclosures
cc:    Clerk of Court (by hand delivery; w/ encl.)
        All Counsel of Record (by electronic mail; w/ encl.)

**HIGHLY CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBITS 1-13 REDACTED IN THEIR ENTIRETY