# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347
—
(302) 658-9200
(302) 658-3989 FAX

Rodger D. Smith II
(302) 351-9205
rsmith@mnat.com

July 30, 2018

The Honorable Leonard P. Stark                          *VIA ELECTRONIC FILING*
U.S. District Court
  for the District of Delaware
844 North King Street
Wilmington, DC  19801

Re:     *The Gillette Company v. Dollar Shave Club, Inc., et al.,*
        C.A. No. 15-1158 (LPS)

Dear Chief Judge Stark:

Pursuant to the Court's July 23, 2018 order (D.I. 564), Plaintiff The Gillette Company LLC ("Gillette") and Defendants Dollar Shave Club, Inc., Pace Shave Inc., and Dorco Co. Ltd. ("Defendants") jointly submit this letter to the Court to propose (a) a schedule for any deadlines not addressed by the Court's order, and (b) a mechanism for Gillette to reduce the number of asserted claims, and for Defendants to reduce the number of prior art references/combinations.

## I.      Proposed Schedule

The parties met and conferred regarding a proposed schedule for the deadlines not addressed by the Court's order.  The parties' respective proposed schedules, and supporting positions, are set forth below:

| Deadline | Gillette's Proposed Dates | Defendants' Proposed Dates |
| --- | --- | --- |
| Reduction of claims | August 1, 2018 | |
| Reduction of prior art | August 8, 2018 | |
| Gillette To Supplement Its Response To Interrogatory No. 16 | August 22, 2018 | |

The Honorable Leonard P. Stark
July 30, 2018
Page 2

| Deadline | Gillette's Proposed Dates | Defendants' Proposed Dates |
|---|---|---|
| Fact Discovery Cutoff<br><br>[Gillette's proposal: Limited to completing outstanding discovery; no new requests can be served]<br><br>[Defendants' proposal: Fact discovery limited to (a) updating responses to discovery requests pending before the stay; and (b) new discovery requests relating to (i) information the parties or third parties were or are compelled to produce pursuant to any motions, or (ii) information that has otherwise been untimely withheld] | August 24, 2018 | September 14, 2018 |
| Opening Expert Reports | September 14, 2018 | September 21, 2018 |
| Rebuttal Expert Reports | October 19, 2018 | October 26, 2018 |
| Reply Expert Reports | November 2, 2018 | November 9, 2018 |
| Expert Discovery Cutoff | December 4, 2018 | |
| Case Dispositive and *Daubert* Motions Deadline | December 10, 2018 | |
| Answering Briefs in opposition to Case Dispositive and *Daubert* Motions | January 9, 2019 | |
| Reply Briefs in support of Case Dispositive and *Daubert* Motions | January 18, 2019 [already set by Court] | |
| Hearing on Dispositive and *Daubert* Motions | January 29, 2019 at 3:00 p.m. [already set by Court] | |

The Honorable Leonard P. Stark
July 30, 2018
Page 3

| Deadline | Gillette's Proposed Dates | Defendants' Proposed Dates |
|---|---|---|
| Proposed Pretrial Order | March 27, 2019 [already set by Court] | |
| Pretrial Conference | April 5, 2019 at 1:30 p.m. [already set by Court] | |
| Trial | April 15-19, 2019 [already set by Court] | |

### A.      Gillette's Position

While the parties' respective proposals are close, their differences matter.  Gillette's proposal keeps what is left of the fact discovery period in check, more closely puts the case back in the position it was in before the stay, and provides for a more manageable expert discovery period.  Defendants' proposal, on the other hand, has the capability of indefinitely delaying fact discovery.  For the reasons discussed below, Gillette respectfully requests that the Court adopt Gillette's proposal.

First, the parties' differences are mainly the result of Defendants' continued efforts to needlessly extend fact discovery, in a case where, as of the date that the stay was entered, just one day of fact discovery remained.  In reaching its current proposal, Gillette has already compromised substantially, including with respect to its proposed close of fact discovery, August 24, 2018.  On June 6, a unanimous panel of three arbitrators issued their decision in Gillette's favor, and shortly thereafter, Gillette reached out to Defendants to negotiate a schedule for the remainder of the case.  Given that the stay was lifted on July 5, 2018, even with Gillette's proposal, fact discovery will be extended by about another seven weeks—which Gillette believes is excessive in-and-of itself.  By the end of this week, Gillette will have provided all discovery that was outstanding at the time of the stay, including:  document productions during the week of July 16; the only remaining, agreed-upon fact deposition on July 25; responses to pre-stay discovery requests on July 27; and agreed-upon supplementation of certain interrogatories by August 3.  Moreover, pursuant to the Court order, Gillette will also produce by August 3 documents underlying Gillette's infringement contentions, to the extent they were not already produced or available to Defendants.[1]  To be clear, Gillette's infringement contention relied on documents produced by Defendants, which Defendants already had, and test results, of which Defendants have long been aware; the only documents that Gillette did not produce were those underlying the testing.  That Gillette will produce those documents less than two weeks after the Court issued its order is hardly a delay, and does not justify further extensions of fact discovery.[2]

---

[1]      The Court also ordered Gillette to provide discovery regarding its manufacturing process if it continued to assert its process claims.  On July 24, Gillette notified Defendants that it was withdrawing its asserted process claims, and therefore would not be providing discovery regarding its manufacturing process.

[2]      Gillette also understands that by the end of this week, Defendants will also be done, or at least largely done, producing outstanding discovery, with the exception of Dorco having to

The Honorable Leonard P. Stark
July 30, 2018
Page 4

After this week, there will be little left to be done other than to address the few, trumped up issues that Defendants raise in the parties' recent letter to the Court (D.I. 566). As Gillette explained previously to this Court, those discovery disputes are all old, with the exception of Defendants' request for documents regarding Gillette3 and Gillette 5, and Defendants never sought an extension of fact discovery due to these issues before the stay. There is no reason why those same issues warrant extending fact discovery now:

- Gillette3 and Gillette5 products: Defendants' request is overbroad and unduly burdensome because those products did not launch until after the stay was entered, and Defendants have yet to identify with any particularity the documents that they seek regarding those two products.

- Manufacturing documents regarding Mach3: Gillette informed Defendants on July 24 that it withdrew its process claims. Therefore, as the Court ruled, Gillette's manufacturing documents are irrelevant. Moreover, Gillette has already produced technical (non-manufacturing) documents regarding its Mach3 products.

- Third party agreements: Gillette has already produced patent licenses and settlement agreements in response to Defendants' requests. Defendants seek the production of two irrelevant agreements: one does not even relate to a patent dispute, and the other did not resolve Gillette's patent infringement allegations.

- Discovery regarding marking: Gillette has already produced its documents on patent marking that it could locate after a reasonable search. Moreover, Gillette will not rely on patent marking, obviating Defendants' request for a corporate deposition on that topic.

- Subpoenas for testimony from Inventors Hahn and Clipstone: Defendants have no one but themselves to blame for their delay in seeking their deposition testimony. Counsel has informed Defendants all along that Messrs. Hahn and Clipstone, who fully retired from Gillette over a decade ago, objected to having their depositions taken, but Defendants did not move earlier in the case.

In short, Defendants cannot justify the need for more time beyond that already proposed by Gillette.

Moreover, it is of no coincidence that Defendants' proposal for close of fact discovery is more than 30 days from now. In yet another attempt to abuse the stay, Defendants apparently intend to serve new discovery requests on Gillette, after it has the opportunity to review the Court-ordered discovery that Gillette produces. Defendants should not be permitted to do so, as the time for serving new discovery requests elapsed before the stay was entered. Defendants recognized this. Even while their request to stay was pending, Defendants served new discovery

respond to written deposition questions, as ordered by the Court. Gillette anticipates serving those questions immediately after Dorco produces updated financial documents, which Dorco has assured will happen at the end of the week, or shortly thereafter.

The Honorable Leonard P. Stark
July 30, 2018
Page 5

requests about 30 days before the then-close of fact discovery, including 26 requests for production, 15 interrogatories, and 71 requests for admission. In fact, Defendants' interrogatories and requests for admission put them at their Court-ordered limits for such requests. Defendants clearly did not believe then that they would be entitled to new discovery requests if the stay was entered. Most of the discovery disputes outstanding today were outstanding before the stay, and Defendants never sought leave of the Court to serve new requests. Defendants have no excuse for waiting until now to ask the Court for such relief, and it is not even clear what additional discovery Defendants expect to get. For example, Defendants suggest that after reviewing the Court-ordered documents regarding Gillette's infringement contentions, Defendants may need to serve additional discovery requests relating to Gillette's testing. But Defendants have already served discovery requests relating to such testing. Moreover, to the extent Defendants wish to depose any entities that may have been involved in the testing, Defendants have been on notice of their identity since Gillette produced its contentions more than a year ago, and Defendants should have requested such discovery then.

Second, Gillette's proposal provides additional cushion in an already-tight schedule. In particular, the experts will need to analyze any discovery produced at, or shortly before, the close of fact discovery, to decide how, if at all, such discovery impacts their opening reports. Defendants' proposal provides the parties with just one week to do so. While the corresponding two-week period in Gillette's proposal is not ideal, it at least provides the experts with another week of breathing room. Defendants' proposal also leaves too little time to take and defend expert depositions after the service of reply expert reports. Gillette's proposal provides a much-needed extra week, given that the period between service of reply reports and close of expert discovery overlaps with the Thanksgiving holiday. With fact discovery nearly over before the stay, and with trial postponed to April 2019, there is no reason for the parties to have to scramble, as Defendants' propose, to get this case trial ready.

Finally, Defendants wrongly accuse Gillette of attempting to "shorten the fact discovery period." To the contrary, Gillette is trying to keep the fact discovery period in check. It bears repeating that only one day was left of fact discovery at the time of the stay. Fact discovery has already effectively been extended almost a month since the stay was lifted, and under Gillette's proposal, it will extend another three weeks. That is more than sufficient. That trial has been pushed back almost a year does not justify Defendants' request to indefinitely extend fact discovery.

In short, Gillette respectfully requests that it adopt its proposal for the remainder of the case deadlines.

## B.      Defendants' Position

Defendants proposed case schedule differs from Gillette's in two key respects: (1) it includes a reasonable amount of time for additional fact discovery and (2) it includes a reasonable proposal that permits limited new fact discovery that is necessary given Gillette's longstanding refusal to provide Defendants with discovery to which they are entitled. In short, Defendants proposal is reasonable given the outstanding discovery issues Gillette has yet to address (some of which unfortunately require the assistance of this Court to resolve), the fact that

The Honorable Leonard P. Stark
July 30, 2018
Page 6

nearly ten months have passed since the case was stayed, and the trial date set by the Court. Accordingly, Defendants respectfully request the Court adopt Defendants' proposal.

*First*, Gillette's proposal to end fact discovery less than four weeks from today and to preclude Defendants from serving any additional discovery requests fails to account for the reality that Gillette *still* has not resolved serious deficiencies in its own discovery that Defendants were diligently pursuing at the time of the stay. Most importantly, Gillette has not yet produced any documents underlying its infringement contentions, despite having been compelled to do so by order of this Court. Dkt. No. 564, ¶ 3.a. Indeed, the Court specifically contemplated that additional fact discovery may be necessary once Defendants have the wrongly-withheld documents. *See id.* ("Under the circumstances, the Court concludes that Gillette waived any protection that may have once applied to the disclosed images and that it would not further the interests of fairness or efficiency to make Defendants wait for expert discovery to learn if Gillette is relying on the images (and only thereafter be in a position to analyze and potentially take discovery of them)."). Gillette's attempt to shorten the fact discovery period and preclude Defendants from taking any new discovery on the compelled documents, coupled with its continued delay in producing these documents, contravenes the Court's order. And Gillette's arguments that Defendants "should have known" what additional discovery may be needed on documents that Defendants still do not have, and that Gillette should have produced months ago, should be rejected—as the Court recognized, it is unfair to require Defendants to have anticipated what may or may not be included in documents they have never seen.

Gillette's contention that it will produce the documents by this Friday does not address Defendants' concern; indeed, Gillette should have produced them to Defendants months ago, as they form the basis of Gillette's infringement allegations. While the additional two weeks does not erase the prejudice, Defendants' proposal permits the maximum amount of time possible for Defendants to evaluate the documents in light of the April 15 trial date.

In addition to the issue regarding the already-compelled documents, Defendants have also been forced to seek this Court's assistance in compelling Gillette to produce other relevant discovery (Dkt. No. 566); specifically:

- Documents relating to the Gillette3 and Gillette5 razors, razors Gillette began selling during the litigation stay and continues to sell today and that are relevant, at least, to Gillette's allegations that it has lost sales due to Defendants' products;
- Documents relating to manufacturing of Gillette's Mach3 razors, including documents describing how the different coatings were applied to the blades and documents describing the target values for each coating and that are relevant, at least, to invalidity even though Gillette withdrew the process claims; for example, Gillette continues to assert device claims that cover coatings of a certain thickness, and the requested documents regarding manufacturing go to the thickness of the coatings that were on the Mach3;
- Gillette's agreement with ShaveLogic and Gillette's 2017 agreement with Schick Schick and that are relevant, for example, because they are agreements that relate to

The Honorable Leonard P. Stark
July 30, 2018
Page 7

        the razor products at issue and therefore to Gillette's assertions regarding a reasonable royalty;

- Gillette's marking of patent information for its alleged commercial embodiments; and
- Gillette's designation of a corporate witness for deposition regarding Gillette's marking of patent information, which remains relevant to Gillette's lost profit claims, including to apportionment.

     These are not "trumped up" issues, as Gillette alleges; rather, they are issues that either (1) relate to relevant events that have occurred between October 2017 and the present or (2) relate to issues the parties were already negotiating at the time the stay was entered.  This withheld discovery bears on a number of important matters, including alleged priority, invalidity, and lost profit and reasonable royalty damages.  A briefing schedule has not yet been set for the Court to address these disputes.  Gillette seeks to short-circuit Defendants' proper attempt to seek this discovery by arguing in this letter why Defendants' requests are not relevant; Gillette's arguments are incorrect, and Defendants have respectfully requested the opportunity to address them fulsomely to the Court in the proper vehicle (*i.e.* a letter brief).  .  Defendants submit that their proposal is necessary in order to permit time for briefing and decision on the motion, as well as time and ability to follow up as appropriate on any discovery Gillette is compelled to produce as a result.

     Not only are there unresolved deficiencies in Gillette's discovery pending before this Court, there is also the issue that two of the named inventors of the single patent in this case, represented by Gillette's counsel, have refused to comply with duly-issued depositions subpoenas to them, forcing Defendants to seek enforcement of these subpoenas in another district court.  Defendants sought for several months to negotiate a deposition date with counsel for these individuals, but have now been forced to seek judicial assistance in compelling their appearance.  Nor have Defendants delayed in moving to enforce.  Rather, while their counsel noted that they objected Defendants' deposition notice, never once in the months-long negotiation regarding the issue did their counsel inform Defendants that they would outright refuse to appear such that judicial enforcement would be necessary, nor did they ever move to quash as they were required to do if they intended not to comply with the subpoena.  Further, one of these inventors confirmed last week he will not consent to this Court taking jurisdiction to resolve the dispute; the other has yet to respond to Defendants' request, pending now for over a week.  Defendants' proposal accounts for the time necessary for the Defendants to seek enforcement of at least one and perhaps both subpoenas in the District of Massachusetts and any limited follow-up discovery that may be necessary once the depositions have occurred.

     In addition to the above-identified issues regarding Gillette and third-party discovery, Gillette served responses on Friday evening to interrogatories, requests for production, and requests for admission which had been served by Defendants before the stay order.  Defendants are diligently evaluating these responses to identify any additional deficiencies that there may be in Gillette's discovery; however, as an example, the responses to requests for production indicate that Gillette will produce documents, but no document production has yet occurred.  Defendants' proposal permits time for Defendants to complete this evaluation; to meet and confer with Gillette to address any deficiencies; to seek, if necessary, the assistance of the Court to remedy

The Honorable Leonard P. Stark
July 30, 2018
Page 8

those deficiencies; and to provide both sides' experts time to consider and include any additional information ordered by the Court into their work.

**Second,** while the parties agree that the parties should be permitted to update discovery requests that were pending at the time of the stay, they disagree as to the amount of time necessary to complete these updates. Ten months have passed since the case was stayed and, during that time, facts have changed that require changes to discovery responses—even those responses that were nearly finalized and ready to be served on the eve of the stay. Defendants' proposal permits a reasonable amount of time for the parties to work with their clients to gather information and update outstanding discovery requests.

**Third**, Defendants proposal is reasonable given the April 15, 2019 trial date. *See* Dkt. No. 563 at 2. Gillette had originally proposed close of fact discovery on August 3 with trial in February. Even though the court set the trial date over two months later in April, Gillette only extended its fact discovery cutoff to August 24, three weeks beyond their initial proposal. Defendants' proposal, however, provides a more reasonable period for fact discovery for the reasons discussed herein while still concluding only a month and a half after Gillette's original proposed deadline.

Gillette's contention that Defendants seek to "abuse the stay" by serving new discovery requests is incorrect; rather, Defendants' proposal is reasonable and in line with both the Court's order on its motion to compel and the reality that ten months have passed since the stay was entered. Indeed, with regard to the documents underlying the infringement contentions, the issue is straightforward—the Court specifically contemplated that Defendants be put in a position to take discovery on the images *before* the expert discovery period begins. *See* Dkt. No. 564 at ¶ 3.a. Further, that the time for serving new requests had elapsed before the stay is inapposite— under either parties' proposal, additional fact discovery will occur. Given that, Defendants' proposal that some of this discovery be new requests—albeit those limited to information that was either compelled to be produced or untimely produced—is most efficient and intended to allow the parties to complete the remaining fact discovery in a way that requires as little of the Court's further assistance as possible.[3] Under Gillette's plan, however, should the need for additional discovery come to light once Gillette has finally provided the discovery it should have provided months ago, Defendants would be forced, yet again, to seek the Court's assistance in obtaining this discovery from Gillette. In short, contrary to Gillette's allegation, Defendants' additional two week fact discovery period is not "indefinite"; it includes reasonable limitations as to time and scope that are intended to increase efficiency and give the parties a fair chance to prepare the case for trial.

Additionally, while Gillette argues that its schedule provides necessary cushion, that argument is misplaced. Most of the outstanding discovery obligations relate to Gillette's

---

[3]     Further, while Gillette is correct that Defendants have exhausted their allotment of interrogatories and requests for admission, Defendants do not intend at this time to seek leave of court to serve additional such requests. However, Defendants have not, for example, exhausted their time on the record for fact depositions.

The Honorable Leonard P. Stark
July 30, 2018
Page 9

discovery, not Defendants—and while one week between the close of fact discovery and opening expert reports is not ideal, Defendants submit that it is the better proposal for allowing experts to address any yet-to-be produced discovery in their reports.  Under Gillette's proposal, it is more likely that the parties will need to seek leave of court for their experts to address discovery produced after the close of fact discovery date.   Gillette's concern regarding the expert deposition period is also not warranted—under Defendants' proposal, there are fifteen business days during which to complete expert depositions, which should be sufficient time in this one-patent case.

In short, Defendants proposal is reasonable and accounts for the reality of the circumstances that are present in this case.  Gillette's proposal, on the other hand, is not reasonable; instead, it unnecessarily compresses the amount of time for fact discovery and it makes it more likely the parties will need to seek extensions of deadlines so that, for example, the parties' experts will have sufficient time to evaluate discovery and incorporate it into their expert reports.

## II.     Reduction of Asserted Claims And Prior Art References/Combinations

The parties met and conferred regarding proposals for the reduction of claims and prior art.  The parties' respective proposals, and supporting positions, are set forth below:

| Deadline | Gillette's Proposal | Defendants' Proposal |
|---|---|---|
| Reduction of claims | For purposes of discovery, Gillette to reduce number of asserted claims to no less than **4** and to no more than **9** | Gillette to reduce the number of asserted claims to no less than **5** and no more than **7** |
| Reduction of prior art | Defendants (a) to reduce number of alleged anticipatory prior art references to **4** per claim, but no more than the number of asserted claims in total (e.g., if Gillette decides to assert only 6 claims, then Defendants are limited to 6 anticipatory references for all the asserted claims), and (b) to reduce number of prior art combinations that allegedly render each asserted claim obvious to **4** per claim, but (i) a total number of combinations for all claims no more than the number of asserted claims and (ii) a total number of prior art | Defendants (a) to reduce number of alleged anticipatory references to **5-7** references per asserted claim, with the number of references per asserted claim being equal to the number of asserted claims (e.g. if Gillette asserts only 5 claims, then Defendants may assert up to 5 anticipatory references per claim) and the number of anticipatory references total being no greater than **9**; (b) to reduce the number of alleged obviousness combinations to **5-7** combinations, with the number of combinations per asserted claim being equal to the |

The Honorable Leonard P. Stark
July 30, 2018
Page 10

| Deadline | Gillette's Proposal | Defendants' Proposal |
|---|---|---|
| | references no more than the number of asserted claims (e.g., if Gillette decides to assert only 6 claims, then Defendants are limited to 6 combinations total for all asserted claims and are limited to 6 prior art references across all combinations) | number of asserted claims (e.g. if Gillette asserts only 5 claims, then Defendants may assert up to 5 obviousness combinations per claim) |

### A.   Gillette's Position

As Gillette noted previously (D.I. 543), Defendants invalidity contentions are over 3,100 pages long and cite over 40 prior art references.  Gillette's proposal provides much needed certainty about the universe of prior art references and combinations that Defendants will rely on during expert discovery and at trial, and allows Gillette to take meaningful depositions of Defendants' expert witness(es).  While Defendants' attempt in theory to reduce the prior art at issue, their proposal does not go nearly far enough.

First, Gillette's proposal provides upper limits to the total number of references and prior art combinations on which Defendants can rely in expert discovery.  At least with respect to obviousness, Defendants' proposal does not.  That is concerning.  As stated in Gillette's letter to the Court last October, Defendants' invalidity contentions:

> include 55 claim charts identifying at least 19 references, each of which Defendants claim may be anticipatory and/or combined with numerous other references to allegedly render the asserted claims obvious, leading to potentially hundreds of prior art combinations. While those claim charts do identify 18 prior art combinations with two references each, in their cover pleading, Defendants rely on even more references in support of their obviousness allegations, making it unclear as to what their combinations actually are. Even if Defendants were limited to their exemplary combinations in their 18 charts, taking into account the 21 asserted claims, that still results in nearly 400 combinations.

D.I. 543 at 3 (citations omitted).[4]  Even with Gillette's proposal of four combinations per claim, without any upper limits on total references or combinations, Defendants could theoretically

---

[4]   Defendants argue, as it did when the parties previously addressed the issue in October, that "Gillette has failed to identify what limitations, if any, it contends are missing from nearly all of Defendants' prior art references."  As Gillette explained to the Court (D.I. 546), Defendants request that Gillette address the 40 prior art references, and the nearly infinite

The Honorable Leonard P. Stark
July 30, 2018
Page 11

identify well above 20 total combinations, which comprise collectively an even larger number of prior art references. That is unfair, and impractical, on many levels, and does little to streamline this case, as the Court had asked. When deposing Defendants' invalidity expert(s), Gillette would be forced to focus on a subset of Defendants' obviousness combinations and references, which Defendants could then abandon after the deposition in favor of combinations and references that Gillette had little to no time to address. In effect, Gillette would be robbed of opportunity to take full discovery of Defendants' expert invalidity theories. Moreover, under Defendants' proposal, it would be impossible to try the case in just five days, given the number of triable issues, including Defendants' infringement, damages, and Defendants' other invalidity defenses.

Second, for similar reasons, Defendants' proposals for (1) reducing the number of alleged anticipatory references per claim, and in total, and (2) reducing the number of obviousness combinations per claim, are insufficient. Gillette's proposals better streamline the case, and allow the parties to take more meaningful expert discovery. Moreover, Defendants' proposal attempts to tie, on the one hand, the total number of asserted claims to, on the other hand, the number of alleged anticipatory references and obviousness combinations per claim. There is no logical connection between the two. Gillette's proposal correctly recognizes that differences in claim limitations from one claim to the next may impact which prior art references or combinations Defendants may decide to use on a claim by claim basis, and it therefore ties the number of asserted claims, which will be no less than four under Gillette's proposal, to the total number of references and obviousness combinations.[5]

Third, Gillette's narrowing of asserted claims will substantially streamline the case. Gillette can agree to withdraw two independent claims, and all claims depending therefrom, provided there is a reasonable upper limit on Defendants' total number of prior art combinations and individual references for obviousness purposes. It is unclear why, in Defendants' mind, the only way in which the case could be streamlined is if Gillette limited its case to just one independent claim.

For at least the above reasons, Gillette respectfully requests that the Court adopt its proposal regarding the reduction of asserted claims and prior art.

---

combinations of prior art, in its contentions, was unduly burdensome and not proportional to the needs of the case. Rather, Gillette has told Defendants all along that it would respond to Defendants' invalidity contentions once Defendants reduced the prior art at issue.

[5]     While not reflected in their proposal above, Defendants appear to recognize the connection between the total number of asserted claims and the total number of prior art references/combinations, arguing that it would be appropriate to limit "the total number of prior art references no more than 2 times the number of asserted claims and the total number of unique obviousness combinations no more than 2 times the number of asserted claims."

The Honorable Leonard P. Stark
July 30, 2018
Page 12

### B.      **Defendants' Position**

Consistent with the Court's direction to "streamline[]" this case (D.I. 564 at at 2), Defendants propose Gillette limit its infringement case to between 5 and 7 claims.  Defendants would, in kind, limit their anticipatory references to match the number of asserted claims (with no more than a total of nine such references), as well as limit their obviousness combinations to match the number of asserted claims.  This proposal is consistent with the limits imposed by the Court in other cases and, if anything, provides Gillette with additional claims.  *See, e.g.*, *Greatbatch Ltd. v. AVX Corp.*, C.A. No. 13-723-LPS, D.I. 368 at 1-2 (D. Del. July 28, 2015) (permitting patentee to assert 15 claims across 5 patents).

Gillette's proposal, on the other hand, would allow it to assert a disproportionately large number of claims for a one-patent case, while handicapping Defendants by capping the total number of prior art references despite the fact that Gillette may select claims that do not meaningfully limit the scope of the case.  Gillette currently asserts four independent claims, for which there are multiple dependent claims, including dependents of dependents.  Gillette has not committed to limiting the number of independent claims, instead it seeks to give itself maximum flexibility with different independent claims, while shackling Defendants to limitations that impair their ability to explain why each claim group is invalid.  Further, Gillette's proposal is *more* restrictive than the limits imposed in other cases.  *See, e.g.*, *Greatbatch Ltd.*, D.I. 368 at 2 (permitting Defendants twenty total references and sixty total combinations).

Similarly, as explained in Defendants' letter (D.I. 542), Gillette has failed to identify what claim limitations, if any, it contends are missing from nearly all of Defendants' prior art references.  Conversely, Defendants have provided detailed non-infringement contentions to Gillette.  Gillette's demand that Defendants so severely restrict its invalidity case, where Defendants have provided Gillette the information it needs to limit its infringement case but the inverse is not true, is unreasonable.  *See Masimo Corp. v. Philips Electronics N.A. Corp.*, 918 F. Supp. 2d 277, 286-87 (D. Del. 2013) (justifying limiting plaintiff's asserted claims as plaintiff would "not be modifying the number of asserted claims blindly" because Defendants had provided invalidity contentions).

Gillette argues that there should be an upper limit to the total number of references and prior art combinations because Defendants' invalidity contentions are lengthy.  Gillette also argues that it may not have enough time to depose Defendants' invalidity expert if no upper limit on the number of references or combinations.  But, tellingly, Gillette did not seek an upper limit when it moved to compel Defendants to limit its invalidity contentions.  D.I. 543 at 3.  And as Defendants explained above, these issues are a direct result of Gillette's refusal to narrow the scope of the case and meaningfully reduce the number of asserted claims.  D.I. 545 at 2.  Simply put, Gillette's proposed upper limits are one-sided and too restrictive because Gillette currently asserts **four different independent claims** as well as claims depending from each.  Thus, Gillette's reduction of claims may not actually streamline this case at all in terms of infringement because it can potentially continue to assert each of the three different independent claims.  As a result, should the Court be inclined to impose an upper limit on the number of unique obviousness combinations, Defendants respectfully request that Gillette be limited to a maximum of one independent claim.  This would do the most to streamline the case.  And in that scenario,

The Honorable Leonard P. Stark
July 30, 2018
Page 13

it would be appropriate to limit Defendants to a total number of anticipatory references no more than 2 times the number of asserted claims and the total number of unique obviousness combinations to no more than 2 times the number of asserted claims. *See, e.g.*, *Greatbatch Ltd.*, D.I. 368 at 2.

Lastly, Gillette asks the Court to reject Defendants' proposal because there is supposedly "no logical connection" between the number of asserted claims and number of anticipatory references/obviousness combinations per claim. But this is incorrect, including because Gillette asserts numerous dependent claims that add limitations that must be addressed with combinations that build-off the independent claims.

Respectfully,

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)

RDS/bac

cc:    Clerk of Court (by hand delivery)
       All Counsel of Record (by electronic mail)