IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

THE GILLETTE COMPANY LLC,　　　）
　　　　　　　　　　　　　　　　　　）
　　　　　　　Plaintiff,　　　　　　　）　　REDACTED  - PUBLIC VERSION
　　　　　　　　　　　　　　　　　　）
　　　v.　　　　　　　　　　　　　　）　　C.A. No. 15-1158-LPS
　　　　　　　　　　　　　　　　　　）
DOLLAR SHAVE CLUB, INC., *et al*.,　　）
　　　　　　　　　　　　　　　　　　）
　　　　　　　Defendants.　　　　　　）

## LETTER TO THE HONORABLE LEONARD P. STARK FROM DAVID M. FRY

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
dfry@shawkeller.com
*Attorneys for Defendants*

OF COUNSEL:
Gregory S. Arovas, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4766

F. Christopher Mizzo, P.C.
Helena D. Kiepura
Craig T. Murray
Nichole Brittany DeJulio
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, DC 20005
(202) 879-5000

Bao Nguyen
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1425

Dated: August 15, 2018



David M. Fry
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0705 - Direct
dfry@shawkeller.com

August 15, 2018

**BY CM/ECF AND HAND DELIVERY**
The Honorable Leonard P. Stark
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

Re:   *The Gillette Co. v. Dollar Shave Club, Inc.*, *et al.*, C.A. No. 15-1158-LPS

Dear Chief Judge Stark:

I write on behalf of Defendants regarding Gillette's refusal to provide relevant discovery and to respectfully request that the Court overrul e Gillette's objections and compel production.

### I.  Discovery Related to Gillette's New Gillette3 and Gillette5 Products

Gillette should be compelled to provide relevant discovery regarding its Gillette3 and Gillette5 products. In January 2018, Gillette began selling the Gillette3 and Gillette5 razors and cartridges, which Gillette is marketing to compete with Defendants' products and Gillette's own razors that allegedly embody the asserted patent. Ex. 1, *Gillette Unveils New, Cheaper Razors to Keep Dollar Shave at Bay*.  Gillette, however, refuses to provide discovery into these products, including any documents or information regarding sales, projections, marketing, pricing, strategy, surveys, and blade coatings, which are responsive to at least seventeen of DSC's RFPs.  Ex. 2, 7/17/18 Cottler Ltr.; Ex. 3, DSC's 7th RFPs at Nos. 168, 169, 172, 174, 175, 176, 178; Ex. 4, DSC's 2nd RFPs at No. 43, 48; Ex. 22, DSC's 5th RFPs at 148-152, 155; Ex. 23, DSC's 6th RFPs at 165, 167.  Gillette's basis for refusing discovery appears to be that (1) the products were released during the stay and, (2) it apparently does not intend to rely on them to prove damages. Ex. 2, 7/17/18 Cottler Ltr.  Neither of these reasons is a legitimate basis for Gillette to deny discovery.

*First*, the stay provides no proper basis to withhold relevant discovery.  Fact discovery does not close until September 14, 2018 and Gillette alleges reasonable royalty and lost profits damages through the period of the stay up until the time of trial.  Indeed, Gillette has sought, and received, updated financial information from Defendants for the time period during the stay.  Given these facts, Gillette cannot properly rely on the stay as a reason to avoid relevant discovery.

*Second*, Gillette cannot shield these competing products from discovery simply by averring it will not rely on them for its own damages calculation because that information likely undermines Gillette's contentions on a number of trial issues including damages and the alleged importance of the patents. For example, if the Gillette3 and Gillette5 products practice the asserted patents ▮▮▮ ▮▮▮▮▮▮▮▮▮▮ then they may be relevant to apportionment, as they include far fewer features and are cheaper than the products on which Gillette chooses to rely for its damages claim. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  And, if they do not practice the asserted patent, then they may be an acceptable, non-infringing alternative and relevant to lost profits as well as a reasonable royalty.  *See Panduit*

*Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978). Further, regardless of whether the Gillette3 and Gillette5 practice the patent, Defendants are entitled to discover other relevant information about them, such as whether these products have cannibalized sales from the products for which Gillette seeks lost profits, as well as information regarding Gillette's market share for ***all*** of Gillette's products that practice the asserted patent—not just those products on which it intends to rely.

## II.  Documents and Deposition Testimony Regarding Patent Marking

Gillette should be compelled to provide full discovery, including a 30(b)(6) witness, related to Gillette's labeling and marking of patent information on the alleged commercial embodiments or be precluded from seeking pre-suit damages and from disputing the admissibility of pre-suit marking information marked during the Knobloch deposition. Ex. 2, 7/17/18 Cottler Ltr.; Ex. 4, DSC's RFP Nos. 77-78; Ex. 10, DSC's Interrog. No. 2; Ex. 11, DSC's 30(b)(6) Topic No. 59. Gillette's pre-suit marking—or lack thereof—is relevant to Gillette's damages claim and its assertion that the asserted patent is an important patent that drives customer demand. Gillette has stonewalled this discovery, representing that "at the present time, Gillette does not plan to seek damages for any pre-suit infringing activity," while reserving the right to change its mind in the future. Ex. 2, 7/17/18 Cottler Ltr. But Gillette cannot have it both ways. Either it must provide discovery or it should be precluded from seeking pre-suit damages.

Further, marking is relevant to Gillette's post-complaint damages claim. Based on the the limited historical "snapshots" of Gillette's website Defendants have been able to obtain, it appears that, at least as of 2014, Gillette marked its alleged commercial embodiments with more than a dozen patents, but *not* with the patent-in-suit.[1] Gillette's decision to mark with other patents, but not the asserted patent, tends to show, for example, Gillette's views regarding the value of this patent in its portfolio and is therefore relevant to a reasonable royalty. *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (noting that a reasonable royalty rate is tied to the value of the patent to the patentee). Similarly, Gillette's identification of unrelated patents is relevant to apportionment.

## III.  Mach3 Prior Art Documentation

Gillette should be compelled to provide requested discovery regarding the Mach3 razor product and the blades contained therein. Ex. 4 at DSC's RFP No. 38 (seeking documents re prior art). Gillette claims that it has produced some responsive documents, but could not confirm that its production covered the time from the Mach3's launch to filing of the asserted patent. *See* Ex. 12, 7/13/18 Murray Ltr. Additionally, Gillette has unjustifiably refused to produce documents showing the minimum, maximum, and intended thicknesses of each blade coating at the time of the Mach3's launch, despite those thicknesses being relevant to claim limitations. *See* Ex. 13, 10/12/17 Albert Ltr.

---

[1] While public websites have a handful of historical "snapshots" of Gillette's patent marking website, those snapshots are limited in time, do not cover the entire relevant period, and were objected to by Gillette during Mr. Knobloch's deposition. *See* Ex. 14, Exhibits 6, 7, and 8 to 10/13/17 Knobloch Dep. To that end, Defendants seek full discovery on marking, in part, to confirm this independent investigation.

While Defendants no longer rely on the Mach3 product by itself for purposes of invalidity, the Mach3's technical specifications remain relevant to Defendants' invalidity argument based on Gillette's prior public use.  For instance, Defendants assert that the ███████████████ razors used in a ████ Gillette study constitute an invalidating public use of the asserted claims.  *See* Ex. 15, Aug. 10, 2018 Murray Email to Gillette Counsel.  The publicly used ████████ razors had the same blade as the Mach3, except with the addition of a chromium-platinum layer.



The Mach3 blades (and therefore the ████████ blades) had a layer of diamond-like carbon ("DLC") and a layer of PTFE.  All asserted claims require (in addition to a chromium layer) a carbon-containing layer and a layer of PTFE, with the dependent claims requiring a specific thickness for the carbon and PTFE layers.  Dkt. No. 1-1 at claims 1, 15, 17.  Therefore, the coating thicknesses for the Mach3 blade are relevant to whether the ████████ blades practiced the coating thicknesses in the asserted '513 claims and, accordingly, should be produced.

### IV.  Gillette's Recent Razor-Related Settlement Agreements

Gillette should be compelled to produce two recent settlement agreements involving razor-related patent rights—one with ShaveLogic and one with Schick.  *See* Ex. 18, C. Pierce Dep. Tr. at 223:21-23; 238:25-239:5; *see also* Ex. 19 (USITC termination of investigation based on settlement agreement).  Gillette refuses to produce those agreements because *Gillette* does not intend to rely on them as comparable licenses.  *See* Ex. 20, Gillette Resp. to DSC RFP No. 170.  But again the fact that Gillette chooses not to rely on the agreements does not shield them from discovery nor does it provide a proper basis to prevent Defendants from relying on them.  Under Rule 26(b)(1), the scope of discovery includes "any nonprivileged matter that is relevant to *any party's claim or defense* and proportional to the needs of the case, . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added); *see also, e.g.*, *Sanofi-Aventis United States v. Genentech, Inc.*, C.A. No. CV 15-5685-GW (AGR), 2016 U.S. Dist. LEXIS 191640, at *6-7 (C.D. Cal. Mar. 30, 2016) ("Plaintiff's expert should have the opportunity to evaluate whether the settlement agreements are (or are not) more reliable or relevant than the other licenses to establish a relevant royalty.").

Both agreements meet the broad Rule 26 standard for discoverability.  These are licenses—entered into by Gillette—that settled patent disputes regarding razor technology.  As such, both are relevant to Gillette's claim that it is entitled to a reasonable royalty as potentially comparable licenses.  *See Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); *see also In re MTSG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012) (noting that "settlement agreements can be pertinent to the issue of reasonable royalties").

The Schick agreement settled a lawsuit regarding a patent—like the one in suit—directed to a single feature of a multi-component razor (the razor cartridge-handle connector mechanism).  The Schick agreement may also inform the experts' apportionment analysis by providing evidence of the value Gillette has placed on specific features other than blade coatings.  Likewise, the ShaveLogic agreement resolved Gillette's allegation that ShaveLogic used Gillette's confidential information to design and patent competing products.  Ex. 21, Complaint (identifying Gillette technology related to razor-handle connector and pivot mechanisms as allegedly used by ShaveLogic).  Thus, this agreement may also provide evidence of the value attributed by Gillette to patent rights on razor features and components.

Respectfully submitted,

*/s/ David M. Fry*

David M. Fry (No. 5486)

cc:    Clerk of the Court (by hand delivery)
        All counsel of record (by email)

Exhibit 1



CNN Money   Companies   Markets   Tech   Media   u.s. ▼

# Gillette unveils new, cheaper razors to keep Dollar Shave at bay

by Nathaniel Meyersohn  @CNNMoney

🕐 November 30, 2017: 3:33 PM ET

f Recommend 0       



CNN Money

▶  🔊  0:08 / 3:44                    CC  ⚙  ⛶

Here's how pricey razors led to innovation in men's grooming

Gillette is rapidly trying to transform its image from  the best a man can get  to a cheaper shave.

In a  very different approach for the brand,   Gillette said Wednesday that it's introducing lower-cost razors and beefing up its disposable shaver collection.

Gillette will start selling new three-blade and five-blade razors in January that will cost less than $10. It will also start selling disposable razors that will feature cooling technology.

The new $8 Gillette3 and $10 Gillette5 will feature a grippy handle and coated blades. The disposable Sensor3 Cool starts at $5 and includes cooling agents currently only found in Gillette's high-end razors.

It's Gillette's latest response to subscription competitors eating its lunch. Until now, Gillette had focused most of its attention on its most-expensive razors, marketing itself as a top-tier brand. That strategy hasn't been paying off.

In April, the company said it would slash price tags on razors by up to 20%. The following month, it expanded its  Gillette on Demand  home delivery service to allow customers to text when they needed new blades.

The brand is trying to fend off competition from online subscription services, including Dollar Shave Club, Harry's and ShaveLogic, which have chipped away at Gillette's stronghold on the industry. Last year, Unilever bought Dollar Shave for $1 billion.

### How pricey razors led to innovation in men's grooming

Gillette's share of the U.S. razor market has dropped 11% in the past two years, according to a September report from Macquarie Research. Gillette now controls about 56% of the market.

**Personal Finance**

**Open a New Account**



synchrony   1.85% APY
$0 To Open
Member FDIC
High-Yield Savings
Account                [Open Account]

CIT Bank.   1.85% APY
$100 To Open
Member FDIC
Money Market Account   [Open Account]

synchrony   3.00% APY
$2000 To Open
Member FDIC
5 Year CD               [Open Account]

Sponsors of  BankingRates          Advertiser Disclosure

**Paid Content**   by Outbrain

  The Incredible 2018
Trucks So Cool It's
Hard to Believe They
Faqeo

  An Unbelievable Card
Has 0% Interest Until
2020
CompareCards

  California Launches
No-Cost Solar
Program in Los
Solar Savings News

  Top Cardiologist:  This
Is Why You Have Less
Energy After 50
Health Headlines

**More from CNNMoney**

  Crisis in Turkey; Global
fallout; Bayer pain

  Could Citi's Jane
Fraser become the

Sales at Procter & Gamble's (PG) grooming unit, which includes Gillette, slumped 6% in the most recent quarter.

The flurry of changes to Gillette also comes during turmoil at P&G. Activist investor Nelson Peltz is in the middle of an expensive proxy battle to force changes at the company.

The battle for the future of Tide

When Procter & Gamble purchased Gillette for $57 billion in 2005, then the largest acquisition in the company's history, Warren Buffett called it "a dream deal."

But P&G hasn't launched a new razor line in 12 years, instead opting to keep upgrading its Fusion series and betting on brand power to lure consumers to its higher-priced blades.

"Gillette was poorly positioned to defend share as consumers shifted to cheaper razors," said CFRA Research analyst Joe Agnese.

It's "playing catch up" in the subscription service battle, Peltz's group Trian Partners said in a white paper outlining an overhaul of P&G. The "lack of innovation" and "lack of competitive response" have derailed Gillette, Trian's report claimed.

It could be difficult for Gillette to win back customers it lost to the "onslaught of competition," said Morningstar analyst Erin Lash.

"Consumers aren't willing to pay up when they don't see the added value."

CNNMoney (New York)
First published November 29, 2017: 3 22 PM ET

---

## PAID CONTENT



**A Fast Way To Pay Off $10,000 In Credit Card Debt**
Sponsored: NerdWallet



**These New Sedans Are Incredible. See What You're Missing**
Sponsored: Yahoo! Search



**8 Cars So Cool It's Hard to Believe They Cost Under $20k**
Sponsored: Faqeo



**How To Retire On A Single Stock Pick | Alex Green**
Sponsored: The Oxford Club – Home | The Oxford Club



**This Is What Vikings Were Actually Like  The Photos Are Strikingly Scary**
Sponsored: Discoverytheword

first female banking CEO on



Reporting on racists without stoking the fire



Coca Cola is fighting Gatorade by investing in BodyArmor



Two lawsuits accuse Elon Musk of false statements to boost Tesla…

More CNNMoney video                by Outbrain



Tinder co-founders and early employees sue dating app's owners for billions



Behind the scenes at Boeing's biggest factory



Turkish lira plummets again, hits record low



The evolution of the Happy Meal

CNNMoney Sponsors

SmartAsset                Paid Partner

Savings APY Keeps Climbing - Top Banks Offering 1.86%

Certificate of Deposit Rates

This Site Finds the Top 3 Financial Advisors Near You

Is a Money Market Account or CD Right for You?

NextAdvisor                Paid Partner

An Insane Card Offering 0% Interest Until Nearly 2020





Transferring Your Balance to a 14-Month 0% APR is Ingenious

The Top 7 Balance Transfer Credit Cards On The Market Today

Get $300 Back With This Outrageous New Credit Card

U.S.

**Beauty queen turns in crown after #MeToo joke at Miss…**

News

**Ford to remake Detroit's most famous ruin**







Style

**The rise of South Korea's 'loner' culture**

U.S.

**A man cheated with someone else's wife and is now paying for it…with $8.8 million**

News

**Every US-made car is an import. That's bad news for automakers**





Meal Kit Wars: 10 Tested & Ranked. See Who Won

Sponsored: www.top10bestmealdelivery.com

28 Everyday Things That Most People Do Wrong

Sponsored: Head Cramp







Los Angeles, California: This Tiny, Unknown Company Is Disrupting A $200 Billion Industry

Sponsored: EverQuote

Inappropriate Gym Fails That are Actually Hilarious

Sponsored: Offbeat

After Years of Saving, Many Boomers Hesitate to Spend

Sponsored: AARP

| Paid Content | More from CNN Money |

Tourists Aren't Even Allowed To Visit These Bizarre Landmarks @TopixPassport

Mystery solved. Family seen in old slides from Goodwill store is found

Kasich responds to Trump's Twitter attack with a laughing Putin GIF

These Savings Accounts Are Shaking Up The
Industry *MyFinance | Personal Finance for the 21st Century*

Confusion reigns over surrender of 200 ISIS fighters
in Afghanistan

Discover The Incredible New 2019 Vehicles That Are
Already Released and On Sale! *Faqeo*

Here's what Tesla would have to do to go private

California May Pay Off Your Home If You Live Near
Los Angeles *Fetcharate*

Recommended by Outbrain |▷

## Paid Links

▷

| | |
|---|---|
| **1.** NATURAL WAYS TO TIGHTEN SKIN > | **5.** SHAVING RAZORS FOR SENSITIVE SKIN > |
| **2.** BEST CURE FOR HAIR LOSS > | **6.** BEST RAZOR BRANDS > |
| **3.** BEST RETIREMENT ANNUITIES > | **7.** BEST RAZOR FOR WOMEN > |
| **4.** COST OF LASER HAIR REMOVAL > | **8.** BEST RAZORS FOR MEN > |



CNN Money

Contact Us

Closed Captioning

Site Map

Most stock quote data provided by BATS. Market indices are shown in real time, except for the DJIA, which is delayed by two minutes. All times are ET. Disclaimer. Morningstar: © 2018 Morningstar, Inc. All Rights Reserved. Factset: FactSet Research Systems Inc.2018. All rights reserved. Chicago Mercantile Association: Certain market data is the property of Chicago Mercantile Exchange Inc. and its licensors. All rights reserved. Dow Jones: The Dow Jones branded indices are proprietary to and are calculated, distributed and marketed by DJI Opco, a subsidiary of S&P Dow Jones Indices LLC and have been licensed for use to S&P Opco, LLC and CNN. Standard & Poor's and S&P are registered trademarks of Standard & Poor's Financial Services LLC and Dow Jones is a registered trademark of Dow Jones Trademark Holdings LLC. All content of the Dow Jones branded indices © S&P Dow Jones Indices LLC 2018 and/or its affiliates.

© 2018 Cable News Network. A WarnerMedia Company. All Rights Reserved.**Terms** under which this service is provided to you. **Privacy Policy.** **AdChoices**

# Exhibit 2



Michael B. Cottler
212.459.7246
mcottler@goodwinlaw.com

Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018

goodwinlaw.com
+1 212 813 8800

July 17, 2018

**HIGHLY CONFIDENTIAL –**
**OUTSIDE COUNSEL'S EYES ONLY**

Craig T. Murray
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005

**Re**:     *The Gillette Company v. Dollar Shave Club, Inc.*, C.A. No. 15-1158 (LPS)

Dear Craig:

I write regarding the parties' meet and confer held on July 12, 2018 and in response to your July 13, 2018 letter.

We confirm that, at the present time, Gillette does not plan to seek damages for any pre-suit infringing activity.  Gillette's investigation is ongoing, and Gillette reserves the right to seek pre-suit infringement damages should circumstances change or new evidence come to light.

**Agreed-Upon Discovery**

- **Responses to Discovery Requests Outstanding as of the Stay:**  Gillette proposed an exchange of these responses on July 27, 2018.  Defendants have not yet agreed upon a date, nor have they provided any justification as to why they need additional time to serve responses to these requests.  At the time the stay was imposed on October 16, 2017, there was only one day of fact discovery remaining, so Defendants should have been prepared to serve these discovery responses nine months ago.  Moreover, the Third Circuit lifted the stay more than two weeks ago, and Defendants have had ample opportunity to finalize these discovery responses since then.  Please confirm that Defendants will serve these responses by July 27.

- **Updated Financial Documents:**  As you acknowledge in your letter, the parties have agreed to produce updated financial information.  Gillette proposed July 27 for the exchange of updated financial information.  Defendants have responded that they need additional time, but have not yet provided a date certain as to when they will provide the requested discovery.  Please provide



Craig T. Murrary
July 17, 2018
Page 2

a date certain, no later than August 3, 2018, for Defendants' production of updated financial documents.

- o Gillette's request for updated financial documents from Defendants includes updated



- Gillette will produce its supplemental privilege logs by July 20, 2018.

- **Documents to be Produced Pursuant to the October 2, 2017 Agreement:** The parties agreed they will produce by July 20, 2018 any documents the parties agreed to produce in the October 6, 2017 email exchange. During the meet and confer, Defendants stated that they would need additional time to prepare the declaration regarding valuations. Please confirm that Defendants will provide the declaration by July 27, 2018.

- **Supplements to Interrogatory Responses:** To the extent a party agreed to supplement any interrogatory responses, Gillette proposed that such responses be served by July 27, 2018. Defendants stated that they believe August 3, 2018 is a more appropriate date. Although Defendants have had more than enough time to supplement their interrogatory responses, Gillette can agree to an exchange of supplemental interrogatory responses by August 3, 2018.

**Gillette's Requests**

- You represented that Dorco is searching for ████████████████████████ ██ and will provide an update when you have further information. Please confirm that Dorco will produce this document by July 20, 2018.

- Gillette requested manufacturing records that associate particular manufactured batches of razors with shipments of those razors produced using Dorco's ████████ manufacturing process. You represented that Dorco had already produced documents relating to its ████████ manufacturing process, and specifically referred to DOR00179667 that allegedly provides information through July 2017. Please let us know by July 20, 2018 whether Dorco has any updated information since July 2017. Gillette will consider DOR00179667 and, if necessary, raise any additional deficiencies in Dorco's production regarding the time period up to July 2017.



Craig T. Murray
July 17, 2018
Page 3

- DSC agreed to produce the ██████████████████████████████████████████████ ████████████ Please confirm that DSC will produce this document by July 20, 2018. DSC represented that it was not able to locate the ███████████████████ ██████████████████████████████████

- DSC agreed to produce its ██████████████████████████████████████████ ████████ Please confirm that DSC will produce this document by July 20, 2018.

**Defendants' New Requests**

- **The Gillette3 and Gillette5 Products:** Defendants have requested broad discovery on the Gillette3 and Gillette5 products that were launched after the stay was imposed. Defendants contend that documents relating to these products are relevant to damages, including Gillette's claim for lost profits and reasonable royalty. However, the requested documents are not relevant at least because Gillette does not intend to rely on these products at trial. Defendants' request is also overbroad, unduly burdensome, and not proportional to the needs of the case.

- **Documents Related to Marking:** Your July 13, 2018 letter mischaracterizes Gillette's position on these documents. Gillette did not refuse to produce documents regarding Gillette's identification of patents practiced by its products. Rather, Gillette stated that it had already produced documents relating to marking that it could locate after a reasonable search.

- **Defendants' 30(b)(6) Topic No. 59:** Defendants request that Gillette provide a corporate witness on Topic 59, related to Gillette's patent marking of its products. Gillette notified Defendants on October 2, 2017 that it does not intend to rely on patent marking. Moreover, Gillette has already produced documents regarding Gillette's identification of patents practiced by its products that it could locate after a reasonable search. As set forth in Gillette's objections, this topic seeks information that is protected from discovery by the attorney-client privilege or work-product doctrine, and is unduly burdensome and not proportional to the needs of the case.

- **Defendants' 30(b)(6) Topic No. 64:** As discussed during our meeting and confer, ██████████ ████ testified to the full scope of Topic No. 64. To the extent Defendants seek information pertaining to █████████████████████ which was outside the scope of ████████ 30(b)(6) deposition, that testimony has already been provided by other Gillette witnesses. The upcoming deposition of ████████████████ may also cover information related to such ████ Because there was no deficiency in ████████ testimony, Gillette will not offer a second witness on Topic No. 64.



Craig T. Murrary
July 17, 2018
Page 4

- **2017 Settlement Agreements:** As discussed during our meet and confer, the two settlement agreements sought by Defendants are not relevant to this case. As discussed during the meet and confer, the litigation underlying the Shavelogic agreement did not relate to patent infringement allegations, and ███████████████████████████████████████████████████ ███████████████████████████████████████████████ Accordingly, Gillette will not, and is under no obligation to, produce either document.

- **Mach 3 Documents**: Gillette's collection of documents included documents related to Mach 3 and did not exclude documents from the time period sought by Defendants. To the extent such documents exist and were responsive, they were produced to Defendants. The exception to this, as indicated previously, is that Gillette did not produce manufacturing documents, as such documents are not relevant or proportional to the needs of this case.

Sincerely,

Michael B. Cottler

Michael B. Cottler

MBC:hm

# Exhibit 3

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE GILLETTE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-1158-LPS-CJB |
| | ) | |
| DOLLAR SHAVE CLUB, INC., et al., | ) | **HIGHLY CONFIDENTIAL** |
| | ) | **OUTSIDE COUNSEL EYES ONLY** |
| Defendants. | ) | |

**DEFENDANT DOLLAR SHAVE CLUB, INC.'S SEVENTH SET OF REQUESTS
FOR PRODUCTION OF DOCUMENTS AND THINGS
TO PLAINTIFF THE GILLETTE COMPANY**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Dollar Shave Club, Inc. hereby requests that Plaintiff The Gillette Company serve written responses to these Requests and produce the requested documents and items within thirty days after the service hereof, at the offices of Shaw Keller LLP, IM Pei Building, 1105 N. Market Street, 12th Floor, Wilmington, DE 19801, and permit the inspection and copying of the following documents and other tangible items that are in Plaintiff's possession, custody, or control.  These Requests are continuing in nature and require supplemental production under the Federal Rules of Civil Procedure.

### DEFINITIONS

1.      "DSC" means Dollar Shave Club, Inc.

2.      "Gillette," "Plaintiff," "you," and "your" mean The Gillette Company, its parents, subsidiaries, divisions, branches, affiliates, predecessors or successors in business, and wholly owned or partially owned entities acting or purporting to act for or on behalf of the foregoing or who are subject to the direction or control of the foregoing, including, without limitation, any agents, employees, officers, directors, attorneys, investigators, and consultants of any of the foregoing.

7.      If Gillette's response to a particular Request is a statement that Gillette lacks the ability to comply with that Request, Gillette must specify whether the inability to comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in Gillette's possession, custody, or control, in which case the name and address of any person or entity known or believed by you to have possession, custody, or control of that information or category of information must be identified.

8.      Gillette's obligation to respond to these Requests is continuing and its responses are to be supplemented to include subsequently acquired information in accordance with the requirements of Rule 26(e) of the Federal Rules of Civil Procedure.

## DOCUMENTS TO BE PRODUCED

**DOCUMENT REQUEST NO. 168**:

All documents relating to or describing drivers of demand for any product for which Gillette claims lost profits or price erosion damages, for the Accused Products, for any other similar products, or for any other competing third-party products, including for related components, accessories, and services.

**DOCUMENT REQUEST NO. 169:**

All documents relating to comparative pricing between any product for which Gillette claims lost profits or price erosion damages, the Accused Products, any other similar products, and any other competing third-party products.

**DOCUMENT REQUEST NO. 170:**

All patent, technology, or Intellectual Property license agreements that you deem reasonably comparable (in technological subject matter, license terms, or otherwise) to a license that would have resulted from the hypothetical negotiations between Gillette and Defendants related to the Patent-In-Suit as of the time of the first alleged infringement, and all related communications and other documents.

**DOCUMENT REQUEST NO. 171:**

All documents relating to royalty rates that are customary in the industry for technology similar to the Patent-In-Suit.

**DOCUMENT REQUEST NO. 172:**

All documents relating to or bearing upon the amount, form, or royalty base of a reasonable royalty for the alleged infringement of the Patent-In-Suit.

**DOCUMENT REQUEST NO. 173:**

All documents relating to or bearing upon the smallest saleable patent practicing unit with respect to each of the Accused Products.

**DOCUMENT REQUEST NO. 174:**

All documents relating to or bearing upon the market segment for each of the Gillette products for which you will claim lost profits or price erosion damages, including all competitors in that market, competing products, and market shares by quarter (or by year, if shares by quarter are not available) for those products.

**DOCUMENT REQUEST NO. 175:**

All documents relating to or bearing upon the market segment for each of the Accused Products, including all competitors in that market, competing products, and market shares by quarter (or by year, if shares by quarter are not available) for those products.

**DOCUMENT REQUEST NO. 176:**

All documents relating to or bearing upon the general market for shaving and hair removal products (and any market sub-segments), including but not limited to the Gillette products for which you will claim lost profits or price erosion damages, the Accused Products, other shaving products (e.g., disposable razors, electric razors, cartridge razors, safety razors, straight razors, etc.), and other hair removal products (e.g., waxes, lasers, creams, etc.), including all competitors in that market, competing products, and market shares by quarter (or by year, if shares by quarter are not available) for those products.

**DOCUMENT REQUEST NO. 177:**

For all years in which you will claim any lost profits or price erosion damages, all documents relating to or bearing upon Gillette's available manufacturing, operating, marketing, and financial capacity to manufacture and sell any Gillette products of the type for which you will claim lost profits or price erosion damages, including any inability to meet demand, any need to increase capacity, and any incremental cost incurred in increasing such operating capacity.

**DOCUMENT REQUEST NO. 178:**

All documents relating to or bearing upon any erosion, degradation, or other reduction to the pricing of any services or products sold or provided by you and/or value you have received, or expect to receive, for services and products provided by you, due to the price at which Defendants market or sell any Accused Product or the price at which any third-party markets or sells any third-party product.

**DOCUMENT REQUEST NO. 179:**

All videos posted by Gillette on YouTube from 2012 until the present regarding razor blade products.

**DOCUMENT REQUEST NO. 180:**

All material posted by Gillette to the Gillette.com home page under the heading "Shaving Tips" (*see* https://gillete.com/en-us), or any prior heading used to describe the same type of material, such as "Grooming" or "Men's Style," from 2012 until the present.

**DOCUMENT REQUEST NO. 181:**

All material posted by Gillette to the Gillette.com home page under the heading "About Gillette" (see https://gillete.com/en-us), or any prior heading used to describe the same type of material, from 2012 until the present.

**DOCUMENT REQUEST NO. 182:**

All surveys and studies referenced by Gillette on Gillette.com regarding razor blade products or shave clubs, including but not limited to the study referenced by Gillette at the

# Exhibit 4

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE GILLETTE COMPANY, )<br><br>)<br><br>) C.A. No. 15-1158 (LPS)<br>Plaintiff, )<br><br>)<br>vs. )<br><br>) **JURY TRIAL DEMANDED**<br>DOLLAR SHAVE CLUB, INC., )<br><br>)<br>Defendant. )<br><br>) | |

## DEFENDANT DOLLAR SHAVE CLUB, INC.'S
## SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS
## TO PLAINTIFF THE GILLETTE COMPANY

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Dollar Shave Club, Inc. hereby requests that Plaintiff The Gillette Company serve written responses to these Requests and produce the requested documents and items within thirty days after the service hereof, at the offices of Shaw Keller LLP, 300 Delaware Avenue, Suite 1120, Wilmington, DE 19801, and permit the inspection and copying of the following documents and other tangible items that are in Defendant's possession, custody, or control.  These Requests are continuing in nature and require supplemental production under the Federal Rules of Civil Procedure.

## DEFINITIONS

1.      "DSC" means Dollar Shave Club, Inc.

2.      "GILLETTE," "PLAINTIFF," "YOU," and "YOUR" mean The Gillette Company, its parents, subsidiaries, divisions, branches, affiliates, predecessors or successors in business, and wholly owned or partially owned entities acting or purporting to act for or on behalf of the foregoing or who are subject to the direction or control of the foregoing, including, without limitation, any agents, employees, officers, directors, attorneys, investigators, and consultants of any of the foregoing.

applications that claim priority to, the PATENT-IN-SUIT, and all PRIOR ART cited in each

such foreign patent application or patent.

**DOCUMENT REQUEST NO. 37:**

All DOCUMENTS that REFLECT or REFER TO ownership of the patents or

applications in the PATENT FAMILY, INCLUDING, but not limited to, any proposed,

requested, or executed assignment, conveyance, or grant of any right, title, or interest in or to any

of the patents or applications in the PATENT FAMILY and all DOCUMENTS that REFLECT

or REFER TO any such assignment, conveyance, or grant.

**DOCUMENT REQUEST NO. 38:**

All PRIOR ART and DOCUMENTS concerning PRIOR ART relating to the subject

matter disclosed or claimed in any of the patents or applications in the PATENT FAMILY.

**DOCUMENT REQUEST NO. 39:**

All DOCUMENTS that REFLECT or REFER TO any investigations, analyses, or

searches conducted by or for GILLETTE or disclosed to GILLETTE concerning PRIOR ART

related to any of the patents or applications in the PATENT FAMILY.

**DOCUMENT REQUEST NO. 40:**

All PRIOR ART references, publications, patents, and events discussed, REFERRED

TO, or learned about during or in connection with any negotiations or COMMUNICATIONS

that REFLECT or REFER TO any actual or proposed license or assignment of, or concerning,

any of the patents or applications in the PATENT FAMILY.

**DOCUMENT REQUEST NO. 41:**

All DOCUMENTS that REFLECT or REFER TO differences (or similarities) between,

on the one hand, any patents, printed publications, references, or other PRIOR ART, and on the

other hand, any invention disclosed or claimed in any application or patent in the PATENT

FAMILY.

**DOCUMENT REQUEST NO. 42:**

All DOCUMENTS that REFLECT or REFER TO the manners or techniques by which the PATENT-IN-SUIT allegedly improved upon the PRIOR ART, added functionality that did not exist in the PRIOR ART, or provided a variation on or upgrade of the PRIOR ART and whether each such alleged improvement, added functionality, variation or upgrade, was non-obvious or unpredictable.

**DOCUMENT REQUEST NO. 43:**

All DOCUMENTS that REFLECT or REFER TO any of the secondary considerations of nonobviousness of the PATENT-IN-SUIT, INCLUDING, but not limited to, commercial success, long-felt need, attempts by others, failure of others, commercial acquiescence, licensing, professional approval, copying, or laudatory statements by others regarding the invention claimed in the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 44:**

All DOCUMENTS that REFLECT or REFER TO any service offerings, beta tests, or trials of the subject matter of the PATENT-IN-SUIT or related technology prior to the filing date of the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 45:**

All DOCUMENTS that REFLECT or REFER TO any manufacture, use, sale, or offer for sale, by or on behalf of GILLETTE, of any product, prototype, development version, commercial embodiment, or commercialization of any invention disclosed, described, or claimed in the PATENT-IN-SUIT, related to the subject matter of the PATENT-IN-SUIT, or any GILLETTE product or service related to the TECHNOLOGY-IN-SUIT.

**DOCUMENT REQUEST NO. 46:**

All DOCUMENTS that REFLECT or REFER TO the design, structure, or composition of any product, prototype, development version, commercial embodiment, or commercialization of any invention disclosed, described, or claimed in the PATENT-IN-SUIT, related to the subject

matter of the PATENT-IN-SUIT, or any GILLETTE product or service related to the
TECHNOLOGY-IN-SUIT.

**DOCUMENT REQUEST NO. 47:**

     DOCUMENTS sufficient to identify the manufacturing process used to apply coatings to
razor blades sold by GILLETTE from 1998 to the present.

**DOCUMENT REQUEST NO. 48:**

     DOCUMENTS sufficient to identify the structure and composition of the coatings on
razor blades sold by GILLETTE from 1998 to the present.

**DOCUMENT REQUEST NO. 49:**

     All DOCUMENTS that REFLECT or REFER TO any manufacture, use, sale, or offer for
sale, by or on behalf of GILLETTE, or any other company controlled in whole or in part by or
affiliated with any of the inventors of the PATENT-IN-SUIT, of any product, prototype,
development version, system, or method that is:  (i) disclosed, described, or claimed in the
PATENT-IN-SUIT; (ii) related to the subject matter of the PATENT-IN-SUIT; or (iii) related to
any product or service related to the TECHNOLOGY-IN-SUIT.

**DOCUMENT REQUEST NO. 50:**

     All DOCUMENTS that REFLECT or REFER TO any analyses or investigations
conducted by or for GILLETTE or disclosed to GILLETTE REFLECTING or REFERRING TO
any valuations of the PATENT-IN-SUIT, INCLUDING evaluations of the monetary value,
strengths, or weaknesses of the PATENT-IN-SUIT, any licenses under the PATENT-IN-SUIT,
or any intellectual property portfolio or segment thereof INCLUDING the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 51:**

     All DOCUMENTS that REFLECT or REFER TO any license of, offer to license, effort
to license, or grant of any rights under the PATENT-IN-SUIT, the subject matter described or
claimed in the PATENT-IN-SUIT, or any intellectual property portfolio INCLUDING the
PATENT-IN-SUIT, to any person or entity, INCLUDING all DOCUMENTS that REFLECT or

**DOCUMENT REQUEST NO. 71:**

All DOCUMENTS that REFLECT or REFER TO any damage or harm GILLETTE allegedly suffered as a result of the sale, offer for sale, use, or importation of any of DSC's products GILLETTE contends or believes is covered by any claims of the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 72:**

All DOCUMENTS that REFLECT or REFER TO sales, licensing, sales forecasts, budgets, expenses, costs, and profitability of any GILLETTE products that you contend embody any claim of the PATENT-IN-SUIT or the TECHNOLOGY-IN-SUIT.

**DOCUMENT REQUEST NO. 73:**

DOCUMENTS sufficient to explain how GILLETTE calculates revenue, costs, and profits associated with sales of any GILLETTE products that YOU contend embody any claim of the PATENT-IN-SUIT or the TECHNOLOGY-IN-SUIT.

**DOCUMENT REQUEST NO. 74:**

Ten samples of each GILLETTE product that embodies any claim of the PATENT-IN-SUIT from each year that GILLETTE contends the product embodies any claim of the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 75:**

DOCUMENTS sufficient to show all dates on which GILLETTE ordered or obtained any U.S. or foreign prosecution history REFLECTING or REFERRING TO the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 76:**

All DOCUMENTS that REFLECT or REFER TO sales, licensing, sales forecasts, budgets, expenses, costs, and profitability of any products that relate to the TECHNOLOGY-IN-SUIT that were sold, offered for sale, licensed, or in any way commercialized by GILLETTE, or any other company controlled by or affiliated with any of the inventors of the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 77:**

All DOCUMENTS that REFLECT or REFER TO the labeling and marking with patent information of any GILLETTE products, systems, or methods that you contend embody any claim of the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 78:**

All DOCUMENTS that REFLECT or REFER TO the labeling and marking with patent information of any products sold, marketed, or commercialized by any company controlled by, licensed by, or affiliated with GILLETTE or any of the inventors of the PATENT-IN-SUIT that you contend embody any claim of the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 79:**

All DOCUMENTS that REFLECT or REFER TO any computation, calculation or estimation of damages, lost profits, or reasonable royalties claimed in THIS ACTION or any infringement actions asserting the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 80:**

All DOCUMENTS that REFLECT or REFER TO any royalty rates for any patents or applications in the PATENT FAMILY and any patents relating to the TECHNOLOGY-IN-SUIT.

**DOCUMENT REQUEST NO. 81:**

All DOCUMENTS that REFLECT or REFER TO any licenses or licensing policies, including patent licenses, related to razor blades.

**DOCUMENT REQUEST NO. 82:**

All DOCUMENTS that REFLECT or REFER TO the commercial success or failure of any GILLETTE, DSC, or THIRD PARTY product that you contend embodies any claim of the PATENT-IN-SUIT.

**DOCUMENT REQUEST NO. 83:**

All DOCUMENTS that REFLECT or REFER TO GILLETTE's patent licensing policies.

# Exhibit 5

# REDACTED

# Exhibit 6

# REDACTED

# Exhibit 7



PART OF THE P&G FAMILY   P&G Shop   Oral-B   BRAUN   Gillette          SIGN IN TO ON DEMAND   |   REGISTER FOR ON DEMAND   UNITED STATES - ENGLISH ▼

LIVE CHAT |

CONTACT US |

THE BEST A MAN CAN GET   PRODUCTS  /   RAZORS, TRIMMERS, & BLADES  /   FUSION5™ RAZORS  /   PROGLIDE RAZORS  /

GILLETTE FUSION5™ PROGLIDE MEN'S RAZOR

SHARE








# FUSION5™ PROGLIDE® RAZOR WITH FLEXBALL™ TECHNOLOGY

★★★★☆  4 56/5   ( 2490)

★★★★☆ Read All 2490 Reviews  |  Write A Review

Gillette Fusion5™ ProGlide razors for men feature 5 anti-friction blades. With **FlexBall technology**, ProGlide responds to contours and gets virtually every hair.

The **Precision Trimmer** on the back is great for hard-to-reach areas such as under the nose and sideburns. One men's razor blade refill equals up to one month of shaves.

Fusion5 Proglide men's razor fits all **Fusion5 blade refills**. Gillette razors, formerly called Fusion ProGlide.

For our best shave, use with **Fusion5 ProShield Chill refills** and **Fusion5 shave gel**.



SHAVE ADVISOR
Get a personalized shaving consultation in seconds!
get started

Gillette ON DEMAND

START TODAY

$8.99-$14.99 MSRP

BUY ONLINE

| TECHNOLOGY INFO | FAQ | RELATED CONTENT | VIDEOS |

YOU MAY ALSO LIKE:

Fusion5™ Proglide® razor blades



# FUSION5 PROGLIDE™ RAZOR

## FLEXBALL™ TECHNOLOGY
responds to contours and gets virtually every hair

## ANTI-FRICTION BLADES

## PRECISION TRIMMER
for hard-to-reach areas & styling facial hair

## ENHANCED LUBRASTRIP
with more lubricants*

## FITS ALL
FUSION5 BLADE REFILLS

*Vs. Fusion5

Gillette Fusion5

LEARN MORE | BUY ONLINE
☆☆☆☆☆ (256)
★★★★☆

Fusion5™ Proshield® razor

LEARN MORE | BUY ONLINE
☆☆☆☆☆ (531)
★★★★☆

Proglide® Sensitive Ocean Breeze shave gel

LEARN MORE | BUY ONLINE
☆☆☆☆☆ (1053)
★★★★☆

| VIDEO REVIEWS | TEXT REVIEWS |

## RATINGS & REVIEWS

☆☆☆☆☆ 4 56/5 (2490)
★★★★☆
Value ☆☆☆☆☆ 3 33/5
Quality ★★★☆☆ 3 65/5
★★★★☆

SORT BY: Featured Reviews ▼    FILTER BY Select Is Featured ▼

WRITE A REVIEW ›

Delete My Review ❓

**ERNIEG**

Your Location: Washington

Quality ★★★★★

☆☆☆☆☆
★★★★★  03/12/18

### VERY GOOD PRODUCT

However, the price keeps me using other blades. Even Walmart sells the at retail.

Was this review helpful to you? Yes | No          9 people found this review helpful



**OLIVER**

Your Location: Seymour, TN

Value ★★★★★
Quality ★★★★★

02/19/18

★★★★★

### GREAT SHAVE - TOO EXPENSIVE.

Great product, great shave, too expensive with no available sales or discounts in any retail store.

Was this review helpful to you? Yes | No                     6 people found this review helpful

**NOVEMBER**

Your Location: La

Value ★★★★★
Quality ★★★★★

11/10/17

★★★★★

### LOVE IT

This is a great product my husband loved the ease/glide of the razor as he uses it to shave his head and the pivot ball is a big help

Was this review helpful to you? Yes | No                     7 people found this review helpful

**LOAD MORE**

## RECENTLY VIEWED



### Gillette3 Razor

LEARN MORE    BUY ONLINE

★★★★★ (116)




### Gillette5 Razor

LEARN MORE    BUY ONLINE

★★★★★ (137)


**CONNECT WITH US** f 🐦 ▶ g+

SIGN UP FOR THE GILLETTE NEWSLETTER FOR THE LATEST TIPS, NEWS, AND OFFERS

**JOIN ›**

**RAZORS, TRIMMERS, & BLADES**

Fusion5™ Razors

MACH3® Razors

Disposable Razors

**PRE- & POST-SHAVE**

Shaving Creams, Gels, & Foams

Skin Care & Aftershaves

**GILLETTE ON DEMAND**

smartlabel™

**HELP & SUPPORT**

Contact Us

FAQ

Replacement Blades

All Trimmers

All Razors

**DEODORANTS & BODY WASHES**

Deodorants & Antiperspirants

Body Washes

For ingredients and more, select a product

Our History

**Credit applies to every 4th subscription order  Credits will be awarded for each unique subscription plan and value equal to the lowest of previous 3 subscription orders (incl taxes)

TERMS & CONDITIONS   PRIVACY   ADCHOICES   UNSUBSCRIBE   BATTERY USAGE INFORMATION   SITE MAP   © 2018 Procter & Gamble

Exhibit 8



PART OF THE P&G FAMILY    P&G Shop    Oral-B    Braun    Gillette    SIGN IN TO ON DEMAND  |  REGISTER FOR ON DEMAND    UNITED STATES – ENGLISH ▼

LIVE CHAT |

CONTACT US |

## Gillette

THE BEST A MAN CAN GET    PRODUCTS  /    RAZORS, TRIMMERS, & BLADES  /    GILLETTE3 AND GILLETTE5  /

GILLETTE3 MEN'S RAZOR HANDLE

SHARE 



# GILLETTE3 MEN'S RAZOR HANDLE

★★★★★  4 4/5   ( 116 )

Read All 116 Reviews  |  Write A Review

Gillette3 men's razor features 3 blades for better comfort (vs. Sensor3), as well as a 360° Aqua Grip™ handle for total control, even when wet. The razor features a Lubrication Strip that helps your Gillette3 glide across your skin with comfort. The Gillette3 has a Front Pivot that transfers pressure of your hand away from the blades for better skin comfort. Additionally, 10 Soft **Microfins** gently stretch the skin to create a smooth, even surface for a comfortable shave.

$7.99 MSRP

**BUY ONLINE**

   



SHAVE ADVISOR
Get a personalized shaving consultation in seconds!

get started

## TECHNOLOGY INFO

### YOU MAY ALSO LIKE

Gillette3 Razor Blades

LEARN MORE    BUY ONLINE

★★★★★  (111)

★★★★

Barbershop fresh shave foam



**Gillette3** RAZOR

**3 BLADES**
for better comfort*

**AQUA GRIP™ HANDLE**
for strong grip and total control, even when wet

**LUBRICATION STRIP**
helps your Gillette3 glide comfortably across your face

**FRONT PIVOT**
pivot technology redistributes excess pressure away from the blades

**10 SOFT MICROFINS**
gently stretch the skin to create a smooth, even surface for a comfortable shave

*vs. Sensor3

LEARN MORE   BUY ONLINE
★★★★★ (54)

Gillette® Sensitive skin after shave lotion

LEARN MORE   BUY ONLINE
★★★★★ (5)

---

TEXT REVIEWS

## RATINGS & REVIEWS

★★★★★ 4 4/5 (116)

Value ★★★★★ 3/5

Quality ★★★★★ 2 75/5

SORT BY: [ Featured Reviews ▼ ]   FILTER BY [ Select Is Featured ▼ ]

WRITE A REVIEW ›

Delete My Review ⊘

---

**BIGWOLF302**

★★★★★   04/07/18

Your Location: Eagle river, Alaska

Value ★★★★★

Quality ★★★★★

### OUTSTANDING PRODUCT

Using it to shave both my head and face, I routinely find that a single blade can last up to a month of use. AMERICAN MADE PRODUCTS WORK, thanks Gillette for keeping it American

Gillette3 Men's Razor | Gillette

Was this review helpful to you? Yes | No          7 people found this review helpful

**JBARRADAS**

Your Location: San Diego, CA

★★★★★  12/20/17
★★★★★

### GILLETTE3 MEN'S RAZOR

I love this. The grip has an amazing design. Easy to use while I shower too! Great when I am in a hurry and need to get ready fast.

Was this review helpful to you? Yes | No          7 people found this review helpful

This reviewer received incentives from the product manufacturer.

**TALAIMO**

Your Location: Little Silver, NJ

★★★★★  12/20/17
★★★★★

### SMOOOOOOOOOOTH

Used for shaving my head every other day and this thing is my new favorite above the BIC hybrid and all other Gillette's. Super sharp yet smooth shave, blades last longer than other razors. Easy maneuvering around ears and tight spots. Will most definitely be buying

Was this review helpful to you? Yes | No

This reviewer received incentives from the product manufacturer.

[ LOAD MORE ]

**RECENTLY VIEWED**



Gillette5 Razor

[ LEARN MORE ]  [ BUY ONLINE ]

★★★★★ (137)
★★★★½

**CONNECT WITH US**  f  t  ▶  g+          SIGN UP FOR THE GILLETTE NEWSLETTER FOR THE LATEST TIPS, NEWS, AND OFFERS          [ JOIN ❯ ]

**RAZORS, TRIMMERS, & BLADES**  **PRE- & POST-SHAVE**          **GILLETTE ON DEMAND**          **HELP & SUPPORT**

Fusion5™ Razors

MACH3® Razors

Disposable Razors

Replacement Blades

All Trimmers

All Razors

Shaving Creams, Gels, & Foams

Skin Care & Aftershaves

**DEODORANTS & BODY WASHES**

Deodorants & Antiperspirants

Body Washes



For ingredients and more, select a product

Contact Us

FAQ

Our History

**Credit applies to every 4th subscription order  Credits will be awarded for each unique subscription plan and value equal to the lowest of previous 3 subscription orders (incl taxes)



TERMS & CONDITIONS     PRIVACY       ADCHOICES       UNSUBSCRIBE       BATTERY USAGE INFORMATION       SITE MAP       © 2018 Procter & Gamble

Exhibit 9



PART OF THE P&G FAMILY    P&G Shop    Oral-B    BRAUN    Gillette    SIGN IN TO ON DEMAND  |  REGISTER FOR ON DEMAND   UNITED STATES - ENGLISH ▼
LIVE CHAT |
CONTACT US |

# Gillette

THE BEST A MAN CAN GET  PRODUCTS  /   RAZORS, TRIMMERS, & BLADES  /   GILLETTE3 AND GILLETTE5  /
GILLETTE5 MEN'S RAZOR HANDLE

SHARE  Facebook  Twitter  Google+



      

> AQUA-GRIP™ HANDLE   5 BLADES FOR BETTER COMFORT   LUBRICATION STRIP

## GILLETTE5 MEN'S RAZOR HANDLE

★★★★★  4 55/5    ( 137)

Read All 137 Reviews  |  Write A Review

Gillette5 men's razor features 5 blades for better comfort (vs. Sensor3), as well as a 360° Aqua Grip™ handle for total control, even when wet. The razor features a Lubrication Strip that helps your Gillette5 glide across your skin with comfort. The Gillette5 has a Front Pivot that transfers pressure of your hand away from the blades for better skin comfort. Additionally, 15 Soft **Microfins** gently stretch the skin to create a smooth, even surface for a comfortable shave.

BUY DIRECT
Gillette

$7.99  MSRP

BUY ONLI

SHAVE ADVISOR
Get a personalized shaving consultation in seconds!
get started

TECHNOLOGY INFO

YOU MAY ALSO LIKE



Gillette5 Razor Blades

Gillette 5

LEARN MORE    BUY ONLINE

★★★★★   ( 110)

★★★★★

Sensitive skin gel



## Gillette5 RAZOR

**5 BLADES**
for better comfort*

**AQUA GRIP™ HANDLE**
for strong grip and total control, even when wet

**LUBRICATION STRIP**
helps your Gillette5 glide comfortably across your face

**FRONT PIVOT**
pivot technology redistributes excess pressure away from the blades

**15 SOFT MICROFINS**
gently stretch the skin to create a smooth, even surface for a comfortable shave

*vs. Sensor3

LEARN MORE   BUY ONLINE
☆☆☆☆☆ (24)
★★★★★

**Gillette® Sensitive skin after shave lotion**

LEARN MORE   BUY ONLINE
☆☆☆☆☆ (5)
★★★★★

---

TEXT REVIEWS

## RATINGS & REVIEWS

☆☆☆☆☆ 4 55/5 (137)
★★★★½

SORT BY: | Featured Reviews ▼ |     FILTER BY | Select Is Featured ▼ |     WRITE A REVIEW ›

Delete My Review ⊘

---

**RICARD0**

Your Location: Ocala, FL

☆☆☆☆☆        08/14/18
★★★★★

### BEST RAZOR I'VE USED IN A LONG TIME

The Gillette5 razor is a product I will be continuing use with for a very long time. I would like to first state that the design alone drew me into this purchase. The Gillette5 razor is equipped with 5 razors and a strip on the top to ease the movement of the razor as it is used.

This may sound rather juvenile but I also love the button mechanism that allows for the disposal of the razor cartilages because it makes changing and replacing so much easier and rather entertaining. The results from this razor were noticed the minute I finished shaving. While hand held razors usually leave me with noticeable stubble that can be felt even after freshly shaving, the Gillette5 razor created the feeling as if I had never had hair growing in the first place. This is a five star razor and Gillette now has yet another loyal customer under their belt.

Was this review helpful to you?  Yes | No
This reviewer received incentives from the product manufacturer.

JBG111

Your Location: Brooklyn, NY

★★★★★  08/13/18

## WASN'T A FAN OF 5 BLADE RAZORS…

Absolutely love this razor! I have been using the same 3 blade razors for years and always trying and hating any of the 5 blade razors that came on the market, that was until I tried the Gillette 5. In one go this razor gave me a shave so close that I would need to shave twice to get in the past. Absolutely no irritation and the substantial handle gives perfect control.The only criticism I could give is that because of the size of the head it can be a bit tricky in tighter areas of the face like under the nose but the pros DEFINITELY outweigh the negatives.

Was this review helpful to you?  Yes | No
This reviewer received incentives from the product manufacturer.

Gillette The Gillette Team 08/14/18
With no slip grip and 5 blades, your guaranteed to get the best a man can get!

BAABEARD2

Your Location: Remington, VA

★★★★★  08/09/18

## COMFORT FOR THE WIN!

The Gillette5 gives you the most comfort at a low price! The packaging for the Gillette5 is underwhelming, but don't let that fool you! At first glance, I thought this was going to be an economy grade razor, because the packaging is missing the bright colors and graphics, like most other razors. As soon as I opened the package though, I immediately knew I was wrong!After I opened the packaging, the first thing I noticed was the innovative Aqua-Grip Handle. This handle is the most comfortable I've ever used, and it gives you complete grip and control, even if your hands are soapy and wet. The handle is not the only amazing part of this razor, because the razor is even better than the handle!The razor starts with a lubrication strip, followed by five premium blades, and finishes off with 15 soft microfins. All of this is mounted on a pivoting cartridge, which gives you the closest shave possible!I would definitely recommend the Gillette5, for it premium performance at a low price! You can not get a better razor for your money!

Was this review helpful to you? Yes | No
This reviewer received incentives from the product manufacturer.

**LOAD MORE**

CONNECT WITH US  

SIGN UP FOR THE GILLETTE NEWSLETTER FOR THE LATEST TIPS, NEWS, AND OFFERS

JOIN ›

**RAZORS, TRIMMERS, & BLADES**

Fusion5™ Razors

MACH3® Razors

Disposable Razors

Replacement Blades

All Trimmers

All Razors

**PRE- & POST-SHAVE**

Shaving Creams, Gels, & Foams

Skin Care & Aftershaves

**DEODORANTS & BODY WASHES**

Deodorants & Antiperspirants

Body Washes

**GILLETTE ON DEMAND**



For ingredients and more, select a product

**HELP & SUPPORT**

Contact Us

FAQ

Our History

**Credit applies to every 4th subscription order  Credits will be awarded for each unique subscription plan and value equal to the lowest of previous 3 subscription orders (incl taxes)

TERMS & CONDITIONS    PRIVACY    ▷ ADCHOICES    UNSUBSCRIBE    BATTERY USAGE INFORMATION    SITE MAP    © 2018 Procter & Gamble

Exhibit 10

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE GILLETTE COMPANY, | ) | |
| | ) | |
| | ) | C.A. No. 15-1158 (LPS) (CJB) |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| DOLLAR SHAVE CLUB, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **DEFENDANT DOLLAR SHAVE CLUB, INC.'S FIRST SET OF INTERROGATORIES TO PLAINTIFF THE GILLETTE COMPANY**

Under Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Dollar Shave Club, Inc. requests that Plaintiff The Gillette Company serve written responses to these Interrogatories within thirty days after the service hereof, at the offices of Shaw Keller LLP, 300 Delaware Avenue, Suite 1120, Wilmington, DE 19801. These Interrogatories are continuing in nature and require supplemental responses under the Federal Rules of Civil Procedure.

### **DEFINITIONS**

1.      "DSC" means Dollar Shave Club, Inc.

2.      "GILLETTE," "PLAINTIFF," "YOU," and "YOUR" mean The Gillette Company, its parents, subsidiaries, divisions, branches, affiliates, predecessors or successors in business, and wholly owned or partially owned entities acting or purporting to act for or on behalf of the foregoing or who are subject to the direction or control of the foregoing, including without limitation, any agents, employees, officers, directors, attorneys, investigators, and consultants of any of the foregoing.

3.      "THIRD PARTY" or "THIRD PARTIES" means any person or entity other than DSC or GILLETTE.

reduction to practice and the nature of their involvement with such conception and/or reduction to practice; (v) the identity of each inventor, including, without limitation, the specific contributions of each inventor to the conception and reduction to practice of each claim (and the dates thereof); and (vi) all facts and reasons (including the identification of all DOCUMENTS and other evidence) that could corroborate and/or prove the conception and/or reduction to practice of each claim, including any corroborating evidence of any alleged diligence.

**INTERROGATORY NO. 2:**

For any product or prototype that YOU contend, for any purpose, practices or practiced any claim of the PATENT-IN-SUIT or is an embodiment of any invention claimed in the PATENT-IN-SUIT, including, without limitation, GILLETTE's Mach 3, Venus, and Fusion razor products (*see* Compl. ¶ 19) and any other products or prototypes designed, owned, marketed, or sold by GILLETTE or by any THIRD PARTY, describe in detail all facts supporting YOUR contention(s).  YOUR response should include for each product or prototype (without limitation):  (i) the claim YOU contend is practiced by the product or prototype; (ii) the date(s) that the product or prototype practiced or practices the claim; (iii) in chart format, specifically where each limitation of each claim is found within each product or prototype; (iv) to the extent the products are marked pursuant to 35 U.S.C. § 287, which products were marked with which patent number and when and where such marking occurred; and (v) an identification of all DOCUMENTS and THINGS regarding these facts and PERSONS most knowledgeable about these facts.

**INTERROGATORY NO. 3:**

State in complete detail the processes used to manufacture the razor blades used in GILLETTE's products since 1998.  YOUR response should include for each product (without limitation):  (i) a description of the process used to apply blade coatings (e.g., physical vapor deposition, chemical vapor deposition, etc.); (ii) the identity of the components or materials used in those process (e.g., carbon, chromium, niobium, polytetrafluoroethylene); (iii) the date(s) that the process was used; (iv) an identification of all DOCUMENTS relating to the process (e.g.,

Exhibit 11

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE GILLETTE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-1158-LPS-CJB |
| | ) | |
| DOLLAR SHAVE CLUB, INC., *et al*., | ) | **HIGHLY CONFIDENTIAL –** |
| | ) | **OUTSIDE ATTORNEYS'** |
| Defendants. | ) | **EYES ONLY** |

**DEFENDANTS' SECOND NOTICE OF DEPOSITION TO THE GILLETTE COMPANY
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)**

PLEASE TAKE NOTICE that Defendants Dollar Shave Club, Inc., Dorco Company Ltd., and Pace Shave, Inc. (collectively "Defendants") will take the deposition upon oral examination of the corporate defendant The Gillette Company ("Gillette") pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, before a Notary Public or other officer authorized to administer oaths.  The deposition will begin on August 2, 2017, beginning at 9:00 a.m., or other such date(s) as may be agreed upon by the parties, at the offices of Shaw Keller LLP, I.M. Pei Building, 1105 North Market Street, 12th Floor, Wilmington, DE 19801, or other such place as shall be mutually agreed.  The deposition will be recorded stenographically and may be videotaped.

Gillette shall designate one or more officers, agents, or other persons who can testify on its behalf with respect to the facts known or reasonably available to it regarding the matters listed on Attachment A hereto.  The deposition will proceed in accordance with the Federal Rules of Civil Procedure and will continue from day to day (Sundays and holidays excluded) until completed, unless otherwise agreed.

You are invited to attend and cross-examine.

OF COUNSEL:
Gregory S. Arovas, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4766

F. Christopher Mizzo, P.C.
Helena D. Kiepura
Craig T. Murray
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, DC 20005
(202) 879-5000

Bao Nguyen
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1425

Charles K. Verhoeven
Terry L. Wit
Morgan W. Tovey
James D. Judah
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600

Dated: July 13, 2017

/s/ David M. Fry
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
dfry@shawkeller.com
*Attorneys for Defendants*

## **DEFINITIONS**

1.      "DSC" means Dollar Shave Club, Inc.

2.      "Gillette," "Plaintiff," "You," and "Your" mean The Gillette Company, its parents, subsidiaries, divisions, branches, affiliates, predecessors or successors in business, and wholly owned or partially owned entities acting or purporting to act for or on behalf of the foregoing or who are subject to the direction or control of the foregoing, including, without limitation, any agents, employees, officers, directors, attorneys, investigators, and consultants of any of the foregoing.

3.      "P&G" means Procter & Gamble Co., its parents, subsidiaries, divisions, branches, affiliates, predecessors or successors in business, and wholly owned or partially owned entities acting or purporting to act for or on behalf of the foregoing or who are subject to the direction or control of the foregoing, including, without limitation, any agents, employees, officers, directors, attorneys, investigators, and consultants of any of the foregoing.

4.      "Dorco" means Dorco Company Ltd.

5.      "Pace Shave" means Pace Shave, Inc.

6.      The "Patent-in-Suit" means United States Patent No. 6,684,513, entitled "Razor Blade Technology," and any other United States patent that is hereafter asserted in This Action.

7.      "This Action" refers to *The Gillette Company v. Dollar Shave Club, Inc. et al.*, C.A. No. 15-1158 (LPS) filed in the United States District Court for the District of Delaware.

8.      "Include," "Includes," and "Including" shall mean including without limitation.

9.      Use of the singular also includes the plural and vice-versa.

10.     The words "or" and "and" shall be read in the conjunctive and in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these Requests for Production.

11.     The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

## ATTACHMENT A

## Topics for Rule 30(b)(6) Deposition of Gillette

59.    Gillette's patent marking of its products, including the patent marking of products that embody the Patent-in-Suit.

60.    Any forecasts or projections for sales, revenues, costs, profits, and/or losses from Gillette's sale of the products Gillette intends to rely on for its claim that it is entitled to damages in this case, including but not limited to products that embody the Patent-in-Suit.

61.    Any assessment by Gillette and/or on behalf of Gillette of the importance and/or value of the blade coatings, including those on the products that embody the Patent-in-Suit.

62.    Case studies; consumer, developer, partner, and/or industry surveys; and/or market research related to consumer, developer, partner, and/or industry demand and/or desire with respect to blade coatings, including those used in the products that embody the Patent-in-Suit.

63.    The market for the products that Gillette intends to rely on for its claim that it is entitled to damages in this case, including but not limited to products that embody the patent-in-suit, including the size and scope of the market, the presence of other participants and/or competitors in the market, Gillette's share of that market, and competition with the Defendants.

64.    Any market studies or analyses, market research, third-party commercial studies and/or analyses, market surveys, and/or consumer surveys related to razors, shaving, and/or the products that embody the patent-in-suit.

## CERTIFICATE OF SERVICE

I, David M. Fry, hereby certify that on July 13, 2017, this document was served on the

persons listed below in the manner indicated:

**BY E-MAIL**

Jack B. Blumenfeld
Rodger D. Smith II
MORRIS, NICHOLS, ARSHT
 & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com

Mark Abate
Alexandra Valenti
Stephen J. Bernstein
Tyler Doh
Jeffrey A. Simes
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 813-8800
mabate@goodwinprocter.com
avalenti@goodwinprocter.com
sbernstein@goodwinprocter.com
tdoh@goodwinprocter.com
jsimes@goodwinprocter.com

Elaine Herrmann Blais
Kevin J. DeJong
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
eblais@goodwinprocter.com
kdejong@goodwinprocter.com

Jennifer A. Albert
Charles T. Cox
Adeel Haroon
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC 20001
(202) 346-4000
jalbert@goodwinprocter.com
ccox@goodwinprocter.com
aharoon@goodwinlaw.com

*/s/ David M. Fry*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
dfry@shawkeller.com
*Attorneys for Defendants*

Exhibit 12

# KIRKLAND & ELLIS LLP
### AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005
United States

Craig T. Murray
To Call Writer Directly:
+1 202 879 5925
craig.murray@kirkland.com

+1 202 879 5000

Facsimile:
+1 202 879 5200

www.kirkland.com

July 13, 2018

**By E-mail**

**CONFIDENTIAL ATTORNEYS EYES
ONLY**

Michael B. Cottler
Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018

Re:   *The Gillette Co. v. Dollar Shave Club, Inc., et al.*, 1:15-cv-01158-LPS-
CJB (D. Del.)

Dear Michael:

I write to memorialize the parties' meet and confer held yesterday, July 12, concerning a new
case schedule and outstanding discovery.

First, thank you for confirming that Gillette will not seek any pre-suit damages.

Second, to date, the parties have not reached an agreement on the case schedule.  For at least the
reasons set forth below, Gillette continues to have many outstanding fact discovery deficiencies.
Further, Defendants reserve the right to identify additional deficiencies when Gillette serves
responses to the outstanding discovery requests to which it acknowledges responses are due, as
well as any supplemental document productions.  Given these issues which may require Court
intervention, and the currently pending motion to compel that seeks discovery from Gillette on a
number of topics, we request that Gillette reconsider its unnecessarily expedited case schedule.

Below, we identify various categories of discovery where the parties reached agreement, we
have reached an impasse, and other issues that remain open for discussion.

**Pending motion to compel**

The parties were not able to reach an agreement to narrow the scope of the issues that must still
be resolved in the pending motions to compel.

# KIRKLAND & ELLIS LLP

Michael B. Cottler
July 13, 2018
Page 2

**CONFIDENTIAL ATTORNEYS EYES
ONLY**

**Agreed-upon Discovery**

- The parties agreed to produce updated financial information.  As I noted on the call, your request for production of this information by July 27 is not practical.  We suspect Defendants will need an additional week, but will update you once we have confirmed this with all three Defendants.

- Gillette has agreed to provide the amended privilege log identified in my July 6 letter.

- The parties confirmed that they will provide responses to the discovery requests that were outstanding as of the stay, namely: Defendants' Fifth Set of Interrogatories to Plaintiff The Gillette Company (Nos. 25-40); Defendants' Second Set of Requests for Admission to Plaintiff The Gillette Company (Nos. 4-75); DSC's Seventh Set of RFPs to Gillette (Nos. 168-194); Gillette's Requests for Admission to Defendants.  We are discussing Gillette's request that the parties exchange these discovery responses on July 27 and will provide a response soon.

- The parties confirmed they will produce the documents in the agreement reached in the October 6, 2017 email from M. Cottler to H. Kiepura.  Gillette will produce its agreement with P&G where Gillette was acquired by P&G.  DSC will produce its agreement with Unilever where DSC was acquired by Unilever.  ██████████████████████████

    The parties agreed that they would produce these documents on July 20.  DSC also agreed that it will produce the authenticating declaration referenced in the same email at a later date, and we will provide an update regarding when this declaration can be produced.

- The parties agreed to supplement the following interrogatory responses.  Gillette will supplement interrogatories 4, 5, 7, 8, 12, 14, and 19.  DSC will supplement interrogatories 1, 6, 9, and 12.  Dorco will supplement interrogatories 10, 14, 15, and 16.  Pace will supplement interrogatories 1 and 4.  You requested that these supplementations be complete by July 27.  As I stated on the call, we believe August 3 is a more appropriate date.  Further, Defendants reserve the right to further supplement these, or other, responses depending on, among other things, other discovery owed to Defendants.

- Gillette confirmed it will produce by July 27 the attachments to previously-produced responsive emails, including the attachment to GILLETTE-DSC-0236611.

# KIRKLAND & ELLIS LLP

Michael B. Cottler                                  **CONFIDENTIAL ATTORNEYS EYES**
July 13, 2018                                                                **ONLY**
Page 3

- Gillette agreed to make Pam Zupkosky available for deposition in Wilmington, DE on July 25.  We are discussing Gillette's proposed date and will respond shortly.

- Goodwin Procter confirmed that EAG will produce documents in response to the outstanding subpoena by July 20.

- DSC will produce the attachment referenced during Mr. Weber's deposition that DSC was able to locate, and the requested operating plan.

- As I explained during the meet and confer, DSC already produced the ▮▮▮▮▮▮▮ document on October 13, 2017.

**Discovery on which the parties reached an impasse:**

- Gillette refuses to produce documents regarding its new razor products—Gillette3 and Gillette5—that Gillette launched after the stay was entered.  As I explained during the meet and confer, the documents identified in my July 6 letter on this topic are relevant to damages, including Gillette's claim for lost profits and reasonable royalty.

- Goodwin Procter now refuses to make two named inventors of the '513 Patent—Colin Clipstone and Steve Hahn—available for deposition, despite timely service of subpoenas.

- Gillette refuses to produce documents regarding Gillette's identification of patents practiced by the alleged commercial embodiments of the asserted '513 patent.  Gillette also refuses to produce a corporate witness on this topic (Topic 59).  As I explained during our call, this information is relevant to, among other things, damages and apportionment.

- Gillette refuses to produce a prepared corporate witness to testify at deposition regarding the full scope of Topic 64.

- While Gillette agreed to produce ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Gillette has refused to produce the 2017 settlement agreements with ShaveLogic and Edgewell/Schick.

- Gillette refuses to remedy its deficient production of documents[1] regarding the Mach3 prior art product, as identified in my July 6 letter and additional letters cited therein.

---

[1] Gillette did agree to confirm whether the documents it has produced on this subject covered the time between the Mach3 product launch and the issuance of the '513 Patent.

## KIRKLAND & ELLIS LLP

Michael B. Cottler
July 13, 2018
Page 4

**CONFIDENTIAL ATTORNEYS EYES
ONLY**

### Other Document Requests

- After considerable effort, DSC has not been able to locate the other document referenced during Mr. Weber's deposition and, accordingly, will not be able to produce this document.

- Gillette represented that it does not have the following information:

  o 

  o ███████████████████ regarding products Gillette contends are commercial embodiments of the asserted patent.

Please confirm in writing that Gillette has exhausted its efforts to identify and provide such information.

### Issues for Further Discussion

- Gillette represented that it has produced all document retention policies found after a reasonable search.  Defendants will provide a follow-up letter identifying the specific information referenced within the limited document retention policies Gillette did produce. Defendants expect that Gillette will search for such information.

- Gillette stated that it had already produced the results of the "additional targeted searches" identified at page 2 of my July 6 letter.  We will review Gillette's production in light of its representation and reserve the right to address this issue further.

- We will investigate your request regarding a so-called ████████████████ ████████████████████████████ referenced in the June 21 Letter from M. Cottler, and will provide an update when we have further information.

## KIRKLAND & ELLIS LLP

Michael B. Cottler
July 13, 2018
Page 5

**CONFIDENTIAL ATTORNEYS EYES
ONLY**

Sincerely,

Craig T. Murray

Exhibit 13

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Craig T Murray
To Call Writer Directly:
(202) 879-5925
craig.murray@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

October 12, 2017

**By E-mail**

**HIGHLY CONFIDENTIAL - OUTSIDE
ATTORNEYS' EYES ONLY**

Jennifer A. Albert
Goodwin Procter LLP
901 New York Avenue, NW
Washington, DC 20001

Re:   *The Gillette Company v. Dollar Shave Club, Inc.*, C.A. No. 15-1158 (LPS)

Dear Jennifer:

I write regarding Gillette's deficient production regarding the Mach3 prior art.

Defendants' Request for Production No. 38 requested documents concerning prior art that is related to the subject matter of the '513 patent. Defendants identified Gillette's Mach3 as relevant prior art in their January 18, 2017 invalidity contentions. However, Gillette has produced few documents describing the coatings used on the Mach3 blades at the time of its launch in 1998. These deficiencies are particularly problematic given Gillette's failure to locate blade samples from the 1998-99 timeframe.

These documents should have been produced long ago. Please confirm Gillette will produce the requested documents before the close of fact discovery.

Sincerely,

Craig T. Murray

Exhibit 14



## Patent Marking Search – All Brands
Click on a brand below to view products and related patent numbers.

Patent Marking Home

| Brands | | Gillette Mach3 | |
|---|---|---|---|
| Always | Natural Instincts | **Product Name** | **Patent Number** |
| Aussie | Nice 'n Easy | Mach3 | 5,761,814 |
| Braun | Nixon | | 5,782,946 |
| Clairol | Olay | | 5,784,790 |
| CoverGirl | Old Spice | | 5,787,586 |
| Crest | Oral-B | | 5,813,293 |
| DDF (Doctors | Pantene | | 5,855,071 |
| Dermatologic Formula | Pert | | 5,890,296 |
| Fekkai | Safeguard | | 5,918,369 |
| Fixodent | Scope | | 5,956,848 |
| Gillette | Sebastian | | 5,956,851 |
| Gillette Disposables | Secret | | 6,009,624 |
| Gillette Fusion | SK-II | | 6,029,354 |
| Gillette Fusion | Tampax | | 6,035,537 |
| ProGlide | Venus | | 6,041,926 |
| Head & Shoulders | Vidal Sassoon | | 6,044,542 |
| Herbal Essences | Wella | | 6,052,903 |
| Ivory Snow | | | 6,085,426 |
| Gillette Mach3 | | | 6,035,822 |
| | | | 6,192,586 |
| | | | 6,237,232 |
| | | | 6,442,839 |
| | | | 6,594,904 |
| | | | 7,069,658 |

Other brands column: Align, Ariel, Bold, Bounce, Bounty, Cascade, Charmin, Cheer, Comet, Dash, Dawn, Downy, Dreft, Duracell, Era

Eukanuba, Febreze, Gain, Iams, Joy, Luvs, Metamucil, Mr. Clean, Pampers, Pepto-Bismol, Prilosec, Puffs, Swiffer, Tide, Vicks

Notice: P&G does not mark all of its patents. Please consult the product links to the right for patent marking status. By listing various patents in the database, P&G makes no admission that other relevant patents do not exist.

BBB ACCREDITED BUSINESS
Click for Review

© 2013 Procter & Gamble. All rights reserved.

Contact Us | Privacy | Terms and Conditions | PG.com

Knobloch -6
Thorsten Knobloch
10/3/17
S. Arielle Santos, RPR, CSR
TSG Reporting



INTERNET ARCHIVE
WaybackMachine

http://www.pg.com:80/patents/brands.shtml    Go    SEP **NOV** NOV
25 captures                                        ◀ **17** ▶
13 Jan 2014 - 25 Mar 2017                          2013 **2014** 2015

About this capture

## Patent Marking Search – All Brands
Click on a brand below to view products and related patent numbers.

Patent Marking Home

| Always | Natural Instincts | Gillette Fusion | | Align | Eukanuba |
|--------|-------------------|-----------------|--|-------|----------|
| Aussie | Nice 'n Easy | | | Ariel | Febreze |
| Braun | Nioxin | **Product Name** | **Patent Number** | Bold | Gain |
| Clairol | Olay | Power Cartridges | 8,286,354 | Bounce | Ionis |
| CoverGirl | Old Spice | | D575,454 | Bounty | Joy |
| Crest | Oral-B | | D533,684 | Cascade | Luvs |
| ODF (Doctors | Pantene | | 7,617,607 | Charmin | Metamucil |
| Dermatologic Formula | Pert | | 7,669,335 | Cheer | Mr. Clean |
| Fekkai | Safeguard | | 7,690,122 | Comet | Pampers |
| Fixodent | Scope | | 7,197,825 | Dash | Pepto-Bismol |
| Gillette | Sebastian | | 7,247,249 | Dawn | Prilosec |
| Gillette Disposables | Secret | | 6,866,894 | Downy | Puffs |
| Gillette Fusion | SK-II | | | Drell | Swiffer |
| Gillette Fusion | Tampax | Power Razor | 8,286,354 | Duracell | Tide |
| ProGlide | Venus | | US 8,541,704 | Era | Vicks |
| Head & Shoulders | Vidal Sassoon | | D575,454 | | |
| Herbal Essences | Wella | | D533,684 | | |
| Ivory Snow | | | 8,037,608 | | |
| Gillette Mach3 | | | 7,617,607 | | |
| | | | 7,669,335 | | |
| | | | 7,690,122 | | |
| | | | 7,810,243 | | |
| | | | 7,804,034 | | |
| | | | 7,168,173 | | |
| | | | 7,197,825 | | |
| | | | 7,247,249 | | |
| | | | 7,866,894 6,866,894 | | |
| | | Cartridges | 8,286,354 | | |
| | | | D575,454 | | |
| | | | D533,684 | | |
| | | | 7,617,607 | | |
| | | | 7,669,335 | | |
| | | | 7,690,122 | | |
| | | | 7,197,825 | | |
| | | Razor | 8,286,354 | | |
| | | | US 8,567,068 | | |
| | | | D575,454 | | |
| | | | D533,684 | | |
| | | | 7,617,607 | | |
| | | | 7,669,335 | | |
| | | | 7,690,122 | | |
| | | | 7,168,173 | | |
| | | | 7,197,825 | | |

Notice: P&G does not mark all of its patents. P...                    ...ent marking status. By listing various patents in the
database, P...                                    ...ts do not exist.

ACCREDITED BUSINESS
Click for Review

Contact Us | Privacy | Terms and Conditions | PG.com

© 2013 Procter & Gamble. All rights reserved.

**Knobloch -7**
Thorsten Knobloch
10/3/17
S. Arielle Santos, RPR, CSR
TSG Reporting



## Patent Marking Search – All Brands

Click on a brand below to view products and related patent numbers.

Patent Marking Home

| Product Name | Patent Number |
|---|---|
| **Gillette Fusion** | |
| **ProGlide** | |
| ProGlide Power | 8,286,354 |
| Cartridges | 8,209,867 |
| | D604,904 |
| | 7,617,607 |
| | 7,669,335 |
| | 7,690,122 |
| | 7,810,240 |
| | 7,247,249 |
| | 6,866,894 |
| ProGlide Power Razor | 8,286,354 |
| | US 8,541,704 |
| | 8,209,867 |
| | 8,250,763 |
| | 7,694,419 |
| | 8,037,608 |
| | D604,905 |
| | D616,607 |
| | 7,617,607 |
| | 7,669,335 |
| | 7,690,122 |
| | 7,810,240 |
| | 7,168,173 |
| | 7,247,249 |
| | 6,866,894 |
| ProGlide Cartridges | 8,286,354 |
| | D604,904 |
| | 7,617,607 |
| | 7,669,335 |
| | 7,690,122 |
| | 7,810,240 |
| | 7,247,249 |
| | 6,866,894 |
| ProGlide Razor | 8,286,354 |
| | US 8,567,068 |
| | D604,904 |
| | D615,705 |
| | D619,302 |
| | 7,617,607 |
| | 7,669,335 |
| | 7,690,122 |
| | 7,810,240 |
| | 7,168,173 |
| | 7,247,249 |
| | 6,866,894 |
| Styler Razor | 8,286,354 |
| | 8,209,867 |
| | D604,904 |
| | 7,617,607 |

Left column brands:
Always, Aussie, Braun, Clairol, CoverGirl, Crest, DDF (Doctors Dermatologic Formula), Fekkai, Frxodent, Gillette, Gillette Disposables, Gillette Fusion, Gillette Fusion, ProGlide, Head & Shoulders, Herbal Essences, Ivory Snow, Gillette Mach3

Second column brands:
Natural Instincts, Nice 'n Easy, Nioxin, Olay, Old Spice, Oral-B, Pantene, Pert, Safeguard, Scope, Sebastian, Secret, SK-II, Tampax, Venus, Vidal Sassoon, Wella

Third column brands:
Align, Ariel, Bold, Bounce, Bounty, Cascade, Charmin, Cheer, Comet, Dash, Dawn, Downy, Dreft, Duracell, Era

Fourth column brands:
Eukanuba, Febreze, Gain, Iams, Joy, Luvs, Metamucil, Mr. Clean, Pampers, Pepto-Bismol, Prilosec, Puffs, Swiffer, Tide, Vicks

Notice: P&G does not mark all of its patents. ... ent marking status. By listing various patents in the database, P... ...ts do not exist.

Contact Us | Privacy | Terms and Conditions | PG.com

© 2013 Procter & Gamble. All rights reserved.

Knobloch -8
Thorsten Knobloch
10/3/17
S. Arielle Santos, RPR, CSR
TSG Reporting

| |
|---|
| 7,669,335 |
| 7,690,122 |
| 7,810,240 |
| 7,168,173 |
| D607,151 |
| D612,102 |
| D624,702 |
| D636,125 |
| D636,126 |
| 7,247,249 |
| 6,866,894 |

https://web.archive.org/web/20141117050926/http://www.pg.com:80/patents/brands.shtml

Exhibit 15

| | |
|---|---|
| **From:** | Murray, Craig T. |
| **To:** | DG-Gillette Goodwin |
| **Cc:** | #DollarShave_Gillette; jshaw@shawkeller.com; *kkeller@shawkeller.com; *dfry@shawkeller.com; Smith, Rodger <RSmith@MNAT.com> (RSmith@MNAT.com) (RSmith@MNAT.com) |
| **Subject:** | Gillette v. DSC - Dorco |
| **Date:** | Friday, August 10, 2018 2:33:27 PM |

Counsel,

Pursuant to the Court's July 23, 2018 Order (D.I. 564), Plaintiff's reduction of asserted claims on August 2, 2018 to claims 1-2, 8, 15-17, and 20  (D.I. 571), and the Court's August 8, 2018 Order (D.I. 574), Defendants hereby supplement their invalidity contentions by reducing the number of asserted anticipatory and obviousness references to a total of 4 anticipatory references per asserted claim, and 4 obviousness combinations per asserted claim.

In narrowing their invalidity contentions, Defendants reserve all rights.  Further, and for the sake of clarity, this supplement does not waive or otherwise alter other aspects of Defendants' invalidity contentions, including contentions regarding the level of ordinary skill in the art, the alleged priority date, the scope and content of the prior art and rationales and motivations that support the conclusion of obviousness, the state of the art, and the lack of objective indicia of non-obviousness.

**<u>Anticipatory References (all asserted claims)</u>**

1. Gillette's Prior Publicly-Used Razors ██████
2. Gillette's Prior Publicly-Used Razors ██████
3. WO 92/17323 ("Balistee")
4. U.S. Patent No. 6,468,642 ("Bray")

**<u>Obviousness Combinations (all asserted claims)</u>**

1. Gillette's Prior Publicly-Used Razors ██████ + Balistee
2. Gillette's Prior Publicly-Used Razors ██████ + Balistee
3. Bray + Balistee
4. Balistee + U.S. Patent No. 4,960,643 ("Lemelson")

**Craig T. Murray**

---------------------------------------------------
**KIRKLAND & ELLIS LLP**
655 Fifteenth Street, N.W., Washington, D.C. 20005
**T** +1 202 879 5925  **M** +1 215 208 3527
**F** +1 202 879 5200
---------------------------------------------------

craig.murray@kirkland.com

Exhibit 16

REDACTED

Exhibit 17

REDACTED

# Exhibit 18

# REDACTED

Exhibit 19

PUBLIC VERSION

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.

In the Matter of

CERTAIN SHAVING CARTRIDGES,
COMPONENTS THEREOF AND
PRODUCTS CONTAINING SAME

Inv. No. 337-TA-1079

Order No. 7:  INITIAL DETERMINATION

On January 19, 2018, complainant The Gillette Company LLC ("Gillette") and

respondents Edgewell Personal Care Company, Edgewell Personal Care Brands, LLC, Edgewell

Personal Care, LLC, Schick Manufacturing, Inc., and Schick (Guangzhou) Co., Limited

(collectively "respondents") filed a joint motion seeking to terminate the investigation based on a

settlement agreement.[1]  Motion Docket No. 1079-004.  A copy of the settlement agreement was

attached to the joint motion.[2]

Commission Rule 210.21(b)(1) provides in relevant part that "[a]n investigation before

the Commission may be terminated as to one or more respondents pursuant to section 337(c) of

the Tariff Act of 1930 on the basis of a licensing or other settlement agreement."  19 C.F.R.

§ 210.21(b)(1).  The Commission has noted that "the public interest favors settlement to avoid

needless litigation and to conserve public and private resources."  *Certain Optical Disc Drives,*

---

[1] The Commission Investigative Staff is not a party to this investigation.

[2] In satisfaction of the Commission's Rules of Practice and Procedure, the parties provided
public and confidential versions of the settlement agreement.  *See* 19 C.F.R. § 210.21(b)(1)
(public versions required for certain filings).  The parties provided a single motion, which
contains no confidential information.  Copies of the public and confidential versions of the
settlement agreement are attached to the respective public and confidential versions of this initial
determination.  *See* 19 C.F.R. § 210.21(b)(2) (certain documents must be certified with an initial
determination terminating an investigation in whole or in part).

*Components Thereof and Products Containing the Same*, Inv. No. 337-TA-897, Comm'n Notice at 2 (Sept. 2, 2014) (granting joint motion to terminate respondent on the basis of settlement).

The pending motion complies with Commission Rules. Pursuant to Commission Rule 210.21(a)(1), the parties state that "[t]here are no other agreements, written or oral, express or implied between the parties concerning the subject matter of this investigation." Mot. at 2. Furthermore, there is no evidence that termination will adversely affect the public interest. *See* 19 C.F.R. § 210.50(b)(2). The settlement also appears to resolve the parties' dispute before the Commission. *See* Mot., Ex. A at 1-2 ("the Parties desire to resolve the ITC Litigation, to avoid the costs and time associated with it[.]").[3]

Accordingly, it is the initial determination of the undersigned that Motion No. 1079-004 is granted. This investigation is terminated in its entirety.

Pursuant to 19 C.F.R. § 210.42(h), this initial determination shall become the determination of the Commission unless a party files a petition for review of the initial determination pursuant to 19 C.F.R. § 210.43(a), or the Commission, pursuant to 19 C.F.R. § 210.44, orders on its own motion a review of the initial determination or certain issues contained herein.

David P. Shaw
Administrative Law Judge

Issued: January 23, 2018

---

[3] Respondents' pending motion for summary determination, Motion Docket No. 1079-002, is denied as moot.

**CERTAIN SHAVING CARTRIDGES, COMPONENTS THEREOF AND PRODUCTS
CONTAINING SAME**

INV. NO. 337-TA-1079

## PUBLIC CERTIFICATE OF SERVICE

I, Lisa R. Barton, hereby certify that the attached **ORDER NO. 7** has been served upon the
following parties as indicated, on ___**JAN 2 3 2018**___.

Lisa R. Barton, Secretary
U.S. International Trade Commission
500 E Street SW, Room 112A
Washington, DC 20436

| **FOR COMPLAINANT THE GILLETTE COMPANY LLC:** | |
|---|---|
| Marcia H. Sundeen, Esq.<br>**GOODWIN PROCTER LLP**<br>901 New York Avenue, NW<br>Washington, DC  20001 | ( ) Via Hand Delivery<br>( ) Express Delivery<br>(✓) Via First Class Mail<br>( ) Other: _____ |
| **FOR RESPONDENTS EDGEWELL PERSONAL CARE COMPANY, EDGEWELL PERSONAL CARE BRANDS, LLC, EDGEWELL PERSONAL CARE, LLC, SCHICK MANUFACTURING, INC., AND  SCHICK (GUANGZHOU) CO., LIMITED:** | |
| Adam D. Swain, Esq.<br>**ALSTON & BIRD LLP**<br>The Atlantic Building<br>950 F Street, NW<br>Washington, DC 20004 | ( ) Via Hand Delivery<br>( ) Express Delivery<br>(✓) Via First Class Mail<br>( ) Other: _____ |

Public Version

## UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C.

### Before Honorable David P. Shaw
### Administrative Law Judge

| | |
|---|---|
| IN THE MATTER OF<br><br>CERTAIN SHAVING CARTRIDGES, COMPONENTS THEREOF AND PRODUCTS CONTAINING SAME | Investigation No. 337-TA-1079 |

## JOINT MOTION TO TERMINATE THE INVESTIGATION ON THE BASIS OF A SETTLEMENT AGREEMENT AND TO STAY THE PROCEDURAL SCHEDULE PENDING FINAL RULING ON THE MOTION TO TERMINATE

Complainant The Gillette Company LLC ("Gillette" or "Complainant") and Respondents

Edgewell Personal Care Company, Edgewell Personal Care Brands, LLC, Edgewell Personal

Care, LLC, Schick Manufacturing, Inc., and Schick (Guangzhou) Co., Limited (collectively

"Schick" or "Respondents), respectfully request that this investigation be terminated, pursuant to

19 U.S.C. § 1337(c) and Commission Rule 210.21(b) in view of a Settlement Agreement

between Gillette and Schick (the "Agreement"), and to further stay the Procedural Schedule

pending final resolution of this Motion to Terminate.

Commission Rule 210.21(a) provides, in relevant part:

> Any party may move at any time prior to the issuance of an initial
> determination on violation of section 337 of the Tariff Act of 1930
> for an order to terminate an investigation in whole or in part as to
> any or all of the respondents.

The Agreement between Gillette and Schick is signed, and in accordance with Rule

210.21(b), a full and complete copy of the Agreement is attached hereto. *See* Confidential

Exhibit A. As the Agreement contains confidential business information under the Protective

Order, Order No. 1, Gillette and Edgewell request that Confidential Exhibit A be treated as such.

There are no other agreements, written or oral, express or implied between the parties concerning the subject matter of this investigation. Settlement agreements are generally within the public interest. *See, e.g., Certain Synchronous Dynamic Random Access Memory Devices, Microprocessors, and Products Containing Same*, Inv. No. 337-TA-431, Order No. 11 at 2 (July 12, 2000). Termination based on a settlement agreement is routinely granted. *See, e.g., Certain Safety Eyewear and Components Thereof*, Inv. No. 337-TA-433, Order No. 37 at 2 (Nov. 3, 2000). The parties respectfully submit that the attached Settlement Agreement will not have any adverse effect on the public health and welfare or competitive conditions in the United States.

For the reasons set forth above, the parties respectfully request that the joint motion to terminate be granted pursuant to 19 C.F.R. 210.21(b).


Dated January 19, 2018

*/s/ Marcia H. Sundeen*

Mark J. Abate
Christopher J. Morten
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel (212) 813-8800

Marcia H. Sundeen
Adeel Haroon
GOODWIN PROCTER LLP
901 New York Avenue, NW
Washington, DC 20001
Tel (202) 346-4000

Srikanth K. Reddy
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel (617) 570-1000

*Attorneys for Complainant The Gillette Company LLC*

2

/s/ Adam D. Swain
Adam D. Swain
ALSTON & BIRD LLP
The Atlantic Building
950 F Street, NW
Washington, DC 20004
Tel (202) 239-3300

Keith E. Broyles
Joshua M. Weeks
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Suite 4900
Atlanta, GA 30309
Tel (404) 881-7000

*Counsel for Respondents Edgewell Personal Care
Company*

Public Version
## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing document,

**JOINT MOTION TO TERMINATE THE INVESTIGATION ON THE BASIS OF**

**A SETTLEMENT AGREEMENT AND TO STAY THE PROCEDURAL SCHEDULE**

**PENDING FINAL RULING ON THE MOTION TO TERMINATE,**

have been served on this 19th day of January 2018, on the following

| | |
|---|---|
| The Honorable Lisa Barton<br>**Secretary**<br>U.S. International Trade Commission<br>500 E Street, SW, Room 112-A<br>Washington, DC 20436 | ☒ Via Hand Delivery (2x copies)<br>☐ Via Overnight Mail<br>☐ Via Electronic Mail<br>☐ Via Facsimile<br>☒ Via Electronic Docket Filing |
| Honorable David P. Shaw<br>**Administrative Law Judge**<br>U.S. International Trade Commission<br>500 E Street, SW, Room 112-A<br>Washington, DC 20436<br>JohnJames.Thuermer@usitc.gov | ☒ Via Hand Delivery (1x copy)<br>☐ Via Overnight Mail<br>☐ Via Electronic Mail<br>☒ Via Electronic Docket Filing |
| Adam D. Swain<br>**Alston & Bird LLP**<br>The Atlantic Building<br>950 F Street NW<br>Washington, DC 20004<br>Tel: 202-239-3300<br>Fax: 202-239-3333<br><br>Keith E. Broyles<br>Joshua M. Weeks<br>**Alston & Bird LLP**<br>One Atlantic Center<br>1201 West Peachtree Street<br>Suite 4900<br>Atlanta, GA 30309<br>Tel: 404-881-7000<br>Fax: 404-881-7777<br>Schick-ITC@alston.com<br><br>*Counsel for Respondents Edgewell Personal Care Company* | ☐ Via Hand Delivery<br>☐ Via U.S. Mail<br>☐ Via Overnight Mail<br>☒ Via Electronic Mail |

*/s/ Russell W. Warnick*
Russell W. Warnick
*Senior Paralegal*

████████████ **SETTLEMENT AGREEMENT**

This Settlement Agreement (this "Agreement") is entered into as of the date of the last signature set forth on the signature page below (the "Effective Date"), by and between, on the one hand, The Gillette Company LLC, a Delaware limited liability company ("Gillette"), with a principal place of business at 1 Gillette Park, Boston, MA 02210 and on the other hand, Edgewell Personal Care Company, a Missouri corporation with a principal place of business at 1350 Timberlake Manor Parkway, Chesterfield, MO 63017, Edgewell Personal Care Brands, LLC, a Delaware corporation with a principal place of business at 6 Research Drive, Shelton, CT 06484, Edgewell Personal Care, LLC, a Delaware corporation with a principal place of business at 6 Research Drive, Shelton, CT 06484, Schick Manufacturing, Inc., a Delaware corporation with a principal place of business at 6 Research Drive, Shelton, CT 06484 and Schick (Guangzhou) Co., Limited, a Chinese corporation with a principal place of business at No. 3, Xia Yuan Road, Dong Ji, Industrial District, Getdd, Guangzhou 510730 (collectively "Edgewell"). The term "Parties" shall refer collectively to Gillette and Edgewell and each, individually as appropriate, a "Party."

WHEREAS, Gillette owns U.S. Patent No. 9,193,077 ("the '077 patent"), entitled "Shaving Razor Cartridge Having Connecting Member;"

WHEREAS the '077 patent issued on November 24, 2015 and is presently scheduled to expire on May 11, 2026;

WHEREAS Gillette has brought suit in the U.S. International Trade Commission, Inv. No. 1079 titled *Certain Shaving Cartridges, Components Thereof and Products Containing Same*, ("the ITC Litigation"), regarding the '077 patent;

WHEREAS Gillette alleges in the ITC Litigation that products employing a removable, pivotably connected shaving cartridge assembly that connects to a Gillette Fusion® razor handle or a component thereof, including, but not limited to the Schick Hydro Connect 5, the Schick Hydro Connect 5 Sensitive and the ████████ components thereof and products containing same, infringe one or more claims of the '077 patent;

WHEREAS Gillette alleges in the ITC Litigation that Edgewell has imported and/or is currently importing into the United States (as defined by 19 U.S.C. § 1337 and as interpreted by the International Trade Commission) shaving cartridges, components thereof and products containing same that infringe one or more claims of the '077 patent;

WHEREAS Edgewell denies that it has imported and/or is currently importing into the United States (as defined by 19 U.S.C. § 1337 and as interpreted by the International Trade Commission) shaving cartridges, components thereof or products containing same that infringe one or more claims of the '077 patent, and denies that any of Edgewell's products or components thereof or products containing same infringe any claim of the '077 patent and Edgewell asserts that all claims of the '077 patent are invalid;

WHEREAS Gillette has also brought suit in the United States District Court for the District of Connecticut in the matter of *The Gillette Company, LLC v. Edgewell Personal Care Company et al.*, Civ. Action No. 17-cv-1594 ("the Connecticut Litigation"), regarding the '077 patent;

1

WHEREAS the Parties desire to resolve the ITC Litigation, to avoid the costs and time associated with it, █████████████████████████████████████████████████████████████████ ███████████████████ and

WHEREAS █████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████ ████████████

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

**Section 1.**   **Definitions**

The terms set forth below shall have the following meanings in the Agreement:

1.1   "Affiliate" means, in relation to a Party hereto, any and all "Persons" (as hereinafter defined) now, at any time since the filing of the Pending Litigation, or in the future "Controlled" (the term "Control" and correlatives thereof shall have the meaning more particularly set forth herein) by, Controlling, or under common Control with that Party or any parent company of a Party and any subsidiary thereto. A Person shall be regarded as in control of another Person if it owns or controls, directly or indirectly, (i) in the case of corporate entities at least fifty percent (50%) (or the maximum ownership interest permitted by law) of the equity securities in the subject entity entitled to vote in the election of directors, or (ii) in the case of an entity that is not a corporation, at least fifty percent (50%) (or the maximum ownership interest permitted by law) of the equity securities or other ownership interests with the power to direct the management and policies of such subject entity or entitled to elect the corresponding management authority, or such other relationship as, in fact, constitutes actual control.

1.2   "Accused Products" means products employing a removable, pivotably connected shaving cartridge assembly that connects to a Gillette Fusion® razor handle and wherein the connector has the configuration shown in Exhibit A, components thereof and products containing same, including, but not limited to the Schick Hydro Connect 5, the Schick Hydro Connect 5 Sensitive and the ████████ cartridges, components thereof and products containing same.

1.3   "Person" shall mean a trust, corporation, partnership, joint venture, limited liability company, association, unincorporated organization or other legal or governmental entity.

2

**Section 2.**   <u>**Grants and Covenants**</u>

2.1   

2.1.1

2.2

2.3   **Consent To Jurisdiction in the Connecticut Litigation**.  Edgewell further agrees not to contest personal or subject matter jurisdiction in the Connecticut Litigation.

2.4   **No Other Rights.**  No rights are granted except as expressly provided in this Agreement, whether by implication, estoppel, or otherwise.

3

**Section 3.**     <u>**Dismissal of Litigation**</u>

    3.1     **Timing of Dismissal.**  Within three (3) business days after execution of this Agreement, the Parties shall prepare and file a joint motion to terminate the ITC Litigation.

    3.2     **Costs.**  The Parties agree that each Party shall bear its own costs and attorneys' fees relating to the ITC Litigation and to the negotiation of this Agreement.

**Section 4.**     <u>**Notices**</u>

    4.1     Notices and other communications regarding or under this Agreement shall be sent (i) by overnight courier or by registered or certified mail and (ii) if available, electronic mail to the following addresses:

        4.1.1     Notices to Edgewell shall be sent to:

            Edgewell Personal Care
            Legal Department
            6 Research Drive
            Shelton, CT
            06484

            And

            Alston & Bird LLP
            Attn: Adam D. Swain
            950 F Street NW
            Washington, DC 20004

        4.1.2     Notices to Gillette shall be sent to:

            The Gillette Company
            Legal Department
            1 Gillette Park
            Boston, MA 02127
            Attn: Kevin C. Johnson, Esq.

            And

            Goodwin Procter LLP
            The New York Times Building
            620 Eight Avenue
            New York, NY 10018
            Attn: Mark Abate, Esq.

    4.2     A Party may change its address for notices relating to this Agreement in a written notice to the other Party complying as to delivery with the terms of

Section 4.1. All such notices, requests, demands and other communications shall be effective, if by mail or overnight courier, when delivered or if not delivered due to refusal or failure to advise the other Party of a change of address, five (5) days after depositing such notice in the U.S. mail or one (1) day after depositing such notice with an overnight courier.

**Section 5.**   **Representations, Warranties and Disclaimers**

5.1   Each Party represents and warrants to the other Party as of the Effective Date that it has the full right and power to enter into this Agreement, and the person executing this Agreement has the full right and authority to enter into this Agreement on behalf of such Party and the full right and authority to bind such Party to the terms and obligations of this Agreement.

5.2   EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT, NEITHER GILLETTE NOR EDGEWELL MAKES ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED. GILLETTE DOES NOT CONVEY ANY RIGHT OR LICENSE (EXCEPT TO THE EXTENT NECESSARY TO EXERCISE THE RIGHTS EXPRESSLY GRANTED HEREIN) BY IMPLICATION, ESTOPPEL, OR OTHERWISE, EXCEPT AS EXPRESSLY GRANTED HEREIN.

**Section 6.**   **Confidentiality, Publicity Material and Marketing**

6.1   Each Party shall hold the terms of this Agreement in confidence and shall not publicize or disclose it in any manner whatsoever. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Notwithstanding the foregoing, the Parties may disclose any information that is already publicly available, as well as the mere fact of the Agreement. Furthermore, each Party may disclose the terms of this Agreement (a) to the extent disclosure is required by court or government order or otherwise required by law subject to a protective order and marked as Attorneys' Eyes Only or higher designation; (b) to the extent required to enforce its rights under this Agreement; and (c) to the extent reasonably necessary, on a confidential basis, to any Person who, directly or indirectly, is or may be required to be bound by the terms and conditions of this Agreement.

6.2   

**Section 7.**     **General Terms**

7.1     The construction, validity and performance of this Agreement shall be governed in all respects (without regard to conflicts of law provisions) by the law of the State of Delaware, United States of America, as such law applies to contracts signed and fully performed in the State of Delaware. The Parties hereby submit to the jurisdiction of, and waive any venue objections against, the State and federal courts in the State of Delaware.

7.2     Nothing in the Agreement is to be construed as requiring the commission of any act contrary to law. Wherever there is any conflict between any provision of the Agreement and any statute, law or ordinance, or a treaty and its valid regulations, the statute, law, ordinance, or treaty and its valid regulations shall prevail. In such event the provisions of the Agreement shall be curtailed and limited only to the extent necessary to bring them within the legal requirements, and such provisions, so curtailed and limited, together with all other provisions of this Agreement shall continue in full force and effect.

7.3     This Agreement will not be binding upon the Parties until it has been signed herein below by or on behalf of each Party, in which event, it shall be effective as of the Effective Date. No amendment or modification hereof shall be valid or binding upon the Parties unless made in writing and signed as aforesaid.

7.4     The failure of a Party to enforce any provision of this Agreement shall not prevent the subsequent enforcement of such provision. No waiver of any provision of this Agreement shall be deemed or shall constitute a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver unless expressly stated in writing by the party making the waiver. No waiver of any provision shall be binding in any event unless executed in writing by the party making the waiver.

7.5     This Agreement embodies the entire understanding of the Parties and supersedes all previous communications, representations or understandings, either oral or written, between the Parties relating to the subject matter hereof. The Parties expressly state that there are no other agreements, written or oral, express or implied between the parties concerning the subject matter of the ITC Litigation.

7.6     The language of this Agreement has been approved by counsel for each Party, and neither Party (nor their respective counsel) shall be deemed to be the draftsman of this Agreement. Thus, any rule of construction to the effect that ambiguities are to be resolved against the drafting Party will not be applied in the interpretation of this Agreement. The words "include" and "including" and variations thereof, will not be deemed to be terms of limitation in this Agreement, but rather will be deemed to be followed by the words "without limitation." The headings in this Agreement are for convenience and organization only, and not intended to constitute the substance of this Agreement and will not be referred to in connection with the construction or interpretation of this Agreement.

7.7   This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same instrument.  Such counterparts may be exchanged by fax, or scanned and exchanged by electronic mail, confirmed with printed copy, but shall be effective upon receipt of fax/electronic mail as applicable.  The Parties agree that facsimile or scanned copies of signatures shall be deemed originals for all purposes hereof and that either Party may produce such copies, without the need to produce original signatures, to prove the existence of this Agreement in any proceeding brought hereunder.

*     *     *     *

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed with intent to be bound as of the Effective Date.

THE GILLETTE COMPANY, LLC

Dated: 19 JAN 2018

Name: Charles Pierce

Title: President

EDGEWELL PERSONAL CARE COMPANY

Dated: 18 JAN 2018

Name: Timothy A. Johnson

Title: Deputy General Counsel

EDGEWELL PERSONAL CARE BRANDS, LLC

Dated: 18 JAN 2018

Name: Timothy A. Johnson

Title: Deputy General Counsel

EDGEWELL PERSONAL CARE, LLC

Dated: 18 JAN 2018

Name: Timothy A. Johnson

Title: Deputy General Counsel

7

SCHICK MANUFACTURING, INC.

Dated: 18 Jan 2018

Name: Timothy A. Johnson

Title: Deputy General Counsel

SCHICK (GUANGZHOU) CO., LIMITED

Dated: 18 Jan 2018

Name: Timothy A. Johnson

Title: Deputy General Counsel

8

**EXHIBIT A TO** ███████████ **SETTLEMENT AGREEMENT**

<u>Photographs of the Connector in the Accused Products</u>





**EXHIBIT A TO** ▮▮▮▮▮▮ **SETTLEMENT AGREEMENT**

Photographs of the Connector in the Accused Products





2

**EXHIBIT A TO** █████████ **SETTLEMENT AGREEMENT**

Photographs of the Connector in the Accused Products





# Exhibit 20

# REDACTED

# Exhibit 21

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT

|  |  |
|---|---|
| THE GILLETTE COMPANY, | ) |
| Plaintiff, | ) |
| v. | ) |
| CRAIG PROVOST, JOHN GRIFFIN, WILLIAM TUCKER, DOUGLAS KOHRING, | ) |
| Defendants, | ) |
| and | ) |
| SHAVELOGIC, INC., | ) |
| Trustee Defendant. | ) |

Civil Action No. _____

**15-0149** B

## COMPLAINT

Plaintiff, The Gillette Company ("Plaintiff" or "Gillette"), by its undersigned attorneys, for its complaint in this action, sets forth the following:

### PARTIES

1. Gillette is a Delaware corporation with a principal place of business at 1 Gillette Park, South Boston, MA 02127.

2. Defendant Craig Provost ("Provost") is a former Gillette employee who, upon information and belief, resides within the state of Rhode Island.

3. Defendant John Griffin ("Griffin") is a former Gillette employee who, upon information and belief, resides within the state of New Hampshire.

4.      Defendant William Tucker ("Tucker") is a former Gillette employee who, upon information and belief, resides within the Commonwealth of Massachusetts.

5.      Defendant Douglas Kohring ("Kohring") is a former Gillette employee who, upon information and belief, resides within the state of Maine.

6.      Trustee Defendant ShaveLogic, Inc. ("ShaveLogic") is a Texas corporation with a principal place of business in Dallas, Texas.

## JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction over Gillette's claims pursuant to Mass. Gen. Laws ch. 212, §§ 3 & 4 and Mass. Gen. Laws ch. 214, § 1.

8.      This Court has jurisdiction over the defendants pursuant to Mass. Gen. Laws ch. 223A, §§ 2 & 3.

9.      Venue is proper in Suffolk County, Massachusetts pursuant to Mass. Gen. Laws ch. 223, § 1.

## FACTS

10.      Gillette is in the business of, among other things, designing, manufacturing, and marketing razors and other shaving products.  As a leader in its field, Gillette is constantly researching and designing new technology and advancing current technology in the field.  It holds thousands of patents covering razors and other shaving technology.

11.      Gillette's technical and business information regarding the research and development of its new and evolving technology is highly confidential.  At all relevant times, Gillette has taken affirmative steps to protect the confidentiality of that information, including by limiting its disclosure both inside and outside of the company.

12.      ShaveLogic is a competitor of Gillette's in the wet shaving field.

2

13.     Upon information and belief, ShaveLogic has hired and/or engaged former Gillette employees and advisors, including but not limited to Provost, Griffin, Tucker, and Kohring (the "Individual Defendants") as well as past outside and in-house counsel for Gillette in the area of intellectual property, as ShaveLogic employees and/or consultants.

14.     Upon information and belief, ShaveLogic has in its hiring plans adopted the business practice of recruiting and engaging former Gillette employees and advisors with the aim of obtaining knowledge of Gillette confidential information and trade secrets.

15.     Further, upon information and belief, ShaveLogic has actively leveraged its consulting and employment relationships with former Gillette employees to raise capital for its research, development, and operational expenses.

16.     The Individual Defendants are all former Gillette employees.  While they were working at Gillette, the Individual Defendants had access to Gillette's confidential information and trade secrets.

17.     In connection with their employment at Gillette, the Individual Defendants entered into employment agreements, severance agreements, and/or stock option agreements (the "Agreements"), all of which prohibited them from disclosing or using any Gillette confidential information or trade secrets in the service of another entity.

18.     For instance, one or more of the Individual Defendants signed employment agreements, in which they agreed not to "at any time either during or subsequent to [their] employment by Gillette, disclose to anyone outside of Gillette, nor use in other than Gillette's business, any confidential information, knowledge or material relating to the business of Gillette or any subsidiary thereof...."

3

19.     Upon departure from Gillette, one or more of the Individual Defendants received a large sum of money, as well as an extension of health benefits and life insurance coverage, outplacement services for a year, reimbursement for approved retraining programs, and other benefits as part of a voluntary separation package, the terms of which again recommitted the signatory to not use or share any confidential, proprietary, or trade secret information about any aspect of Gillette's business with any non-Gillette employee or business entity at any time in the future.

20.     Several of the Individual Defendants also participated in and received stock options pursuant to Gillette's 1971 Stock Option Plan and/or its 2004 Long-Term Incentive Plan, each as amended, which specifically state that "[t]he Participant shall not disclose or use at any time any secret or confidential information or knowledge obtained or acquired by the Participant during, after, or by reason of, employment with the Company or any of its subsidiaries...."

21.     The Agreements also required the Individual Defendants to disclose and assign to Gillette any invention, idea, or improvement made or conceived during their employment at Gillette.  And the Agreements set forth a specific procedure for the Individual Defendants to follow if they chose to use an invention, idea, or improvement made or conceived during their employment at Gillette outside of Gillette, a procedure that the Individual Defendants did not follow here.

22.     During their employment at Gillette, the Individual Defendants directly participated in and/or had access to Gillette's exploration and development of new and evolving razor and shaving technology, including that relating to magnetic attachments for shaving cartridges and elastomeric pivots.  In connection therewith, they contributed to and gained knowledge of Gillette confidential information and trade secrets.

23.    Provost was in the Industrial Design group at Gillette for approximately seven years, rising to the position of Section Head.  While at Gillette, he had full access to Gillette confidential information and trade secrets relating to its new and evolving razor and shaving technology, including Gillette sketches, prototypes, and discussions respecting new razor and cartridge designs.  Indeed, upon information and belief, Provost was an integral part of exploring magnetic attachment and elastomeric pivot technology at Gillette.

24.    Griffin was at Gillette for nearly 25 years, and rose to the highest levels of research and development.  While at Gillette, he had full access to Gillette's confidential information and trade secrets, including all potential and final Gillette razor designs such as those related to magnetic attachment and elastomeric pivots.

25.    Tucker was a mechanical engineer and worked in the Product Design & Development group while at Gillette.  He was a part of the advanced concepts group, a core group dedicated to developing upstream technology.  He had access to Gillette confidential information and trade secrets, including the company's advanced razor and shaving designs such as magnetic docking and elastomeric pivots.

26.    Kohring was a Senior Mechanical Design Engineer at Gillette.  During his employment at Gillette, he had access to Gillette confidential information and trade secrets regarding its evolving razor and shaving technology such as magnetic attachment and elastomeric pivots.

27.    U.S. Patent No. 8,789,282 (the "'282 patent") was issued on July 29, 2014.  It is directed to a magnetic attachment for a shaving cartridge, technology that one or more of the Individual Defendants worked on while at Gillette.  ShaveLogic, as the assignee of the patent's putative inventors, is the current owner of the '282 patent.

28.   ShaveLogic has also filed several other patent applications relating to shaving technology that one or more of the Individual Defendants worked on while at Gillette, including but not limited to elastomeric pivots.  These applications include, but are not limited to, the following: US 13/802,546; PCT/US2013/042038; US 14/270,792; US 13/929,644; PCT/US2013/052111; US 13/869,535; PCT/US2013/065755; US 13/929,340; PCT/US2013/052095; US 13/802,614; PCT/US2013/052103; PCT/US2013/052099; and PCT/US2013/052107 (collectively, the "Patent Applications").

29.   One or more of the Individual Defendants were involved in the concepts covered by the '282 patent and Patent Applications while at Gillette.  Upon information and belief, while at Gillette, one or more of the Individual Defendants produced and/or otherwise worked on sketches and/or prototypes with respect to several magnetic attachment and elastomeric pivot concepts.

30.   One or more of the Individual Defendants used Gillette confidential information and trade secrets to design, invent, and/or otherwise contribute to the technology covered by the '282 patent and the Patent Applications, including but not limited to magnetic attachment and elastomeric pivot concepts.  Indeed, both Provost and Griffin are named as inventors on the '282 patent that is directed toward magnetic attachment.

## COUNT I
### Violation of M.G.L. ch. 93, § 42 against Individual Defendants

31.   Gillette repeats and incorporates by reference the foregoing allegations as if fully stated herein.

32.   Gillette's confidential information regarding its evolving razor and shaving technology constitutes trade secrets.

33.   Gillette has taken reasonable steps to preserve the secrecy of that information.

6

34.     As is set forth herein, the Individual Defendants improperly, in breach of the Agreements, disclosed and/or used the trade secrets as is set forth herein.

35.     By reason of the Individual Defendants' improper disclosure and/or use, Gillette has been damaged in an amount to be determined at trial.

## COUNT II
## Breach of Contract against Individual Defendants

36.     Gillette repeats and incorporates by reference the foregoing allegations as if fully stated herein.

37.     The Agreements are valid and binding contracts between Gillette and each of the Individual Defendants.

38.     Gillette fully performed all of its obligations pursuant to the Agreements.

39.     The Individual Defendants have materially breached the Agreements by using and/or disclosing Gillette confidential information and trade secrets as is set forth herein.

40.     By reason of the Individual Defendants' material breaches, Gillette has been damaged in an amount to be determined at trial.

## COUNT III
## Violation of M.G.L. ch. 93A against Individual Defendants

41.     Gillette repeats and incorporates by reference the foregoing allegations as if fully stated herein.

42.     The Individual Defendants engaged in unfair and deceptive acts and practices undertaken willfully and knowingly in violation of M.G.L. ch. 93A.

43.     More specifically, with full knowledge of their duties not to do so, one or more of the Individual Defendants used Gillette confidential information and trade secrets to design,

7

invent, and/or otherwise contribute to the technology covered by the '282 patent and the Patent Applications.

44.     As a result of the Individual Defendants' material breaches, Gillette has been damaged in an amount to be determined at trial.

**COUNT IV**
**Request for Constructive Trust against ShaveLogic**

45.     Gillette repeats and incorporates by reference the foregoing allegations as if fully stated herein.

46.     Gillette's confidential information regarding its evolving razor and shaving technology constitutes trade secrets.

47.     Gillette has taken reasonable steps to preserve the secrecy of that information.

48.     The Individual Defendants wrongfully disclosed and/or used Gillette confidential information and trade secrets for the benefit of ShaveLogic.

49.     ShaveLogic was on notice that the information was confidential and constituted trade secrets and that the Individual Defendants' use and/or disclosure of it was wrongful.

50.     As a result of the Individual Defendants' wrongful disclosure and/or use of Gillette confidential information and trade secrets, ShaveLogic has been unjustly enriched at the expense of Gillette.

51.     ShaveLogic is, therefore, liable to Gillette in the form of a constructive trust with respect to the '282 patent and the Patent Applications.

**PRAYER FOR RELIEF**

WHEREFORE, Gillette respectfully requests that the Court:

(a)     Enter judgment in Gillette's favor on all counts contained in the Complaint;

(b)     Award Gillette its damages and interest in an amount to be determined at trial;

8

(c)  Award injunctive relief pursuant to M.G.L. ch. 93, § 42A enjoining the Individual Defendants from assigning, transferring, leasing, pledging, copying, or otherwise using or disposing of Gillette confidential information and trade secrets to any person or entity other than Gillette;

(d)  Issue a declaration that the Individual Defendants' assignment of the '282 patent and Patent Applications to ShaveLogic is null and void;

(e)  Issue a constructive trust on ShaveLogic with respect to the '282 patent and the Patent Applications;

(f)  Award Gillette its costs and reasonable attorneys' fees pursuant to any applicable statute or authority; and

(g)  Award Gillette such other further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated: January 16, 2015

Respectfully submitted,

THE GILLETTE COMPANY,

By its counsel,

Christopher M. Morrison (BBO #651335)
Kristin D. Casavant (BBO #668050)
JONES DAY
100 High Street
Boston, Massachusetts 02110
Telephone:  (617) 960-3939
Facsimile:  (617) 449-6999
cmorrison@jonesday.com
kcasavant@jonesday.com

9

# Exhibit 22

# REDACTED

# Exhibit 23

# REDACTED