IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE GILLETTE COMPANY LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 15-1158-LPS-CJB |
| | : | |
| DOLLAR SHAVE CLUB, INC., et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM ORDER**

Pending before the Court are the parties' cross-motions for summary judgment on invalidity (D.I. 660, 664), including Plaintiff's motion for summary judgment as to the date of conception (D.I. 664), as well as the parties' motions to preclude certain expert testimony related to invalidity (D.I. 658, 665). The motions present several issues: (1) the date of conception for the '513 Patent; (2) whether two outplant tests rendered the invention publicly available or used, and/or constituted experimental use; and (3) whether the parties' experts may testify as to these matters. Having considered the parties' briefing (D.I. 659, 661, 666, , 689, 693, 695, 717, 718, 720) and related materials, and having heard oral argument on March 15,[1] IT IS HEREBY ORDERED that the parties' motions (D.I. 658, 660, 664, 665), to the extent they relate to conception, invalidity, or related expert testimony, are all DENIED.

1. Plaintiff seeks summary judgment that the invention of the '513 Patent was conceived before the prior art Bray Patent (D.I. 666 at 12-15; D.I. 695 at 9-16), but Plaintiff has

---

[1] Motions relating to issues of infringement, invalidity, and damages were argued at the March 15 hearing. The Court has already issued an order addressing infringement. (D.I. 751) One or more additional orders will resolve the parties' disputes with respect to damages.

not persuaded the Court that there is no genuine dispute of material fact with respect to conception.[2]

Determining the date of conception is a question of law based on underlying findings of fact. *See Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1322-23 (Fed. Cir. 2013). "[T]he test for conception is whether the inventor had an idea that was definite and permanent enough that one skilled in the art could understand the invention . . . . An idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue." *Burroughs Wellcome Co. v. Barr Laboratories, Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994). "[C]onception is not complete if the subsequent course of experimentation, especially experimental failures, reveals uncertainty that so undermines the specificity of the inventor's idea that it is not yet a definite and permanent reflection of the complete invention as it will be used in practice." *Id.* at 1228-29.

The parties appear to agree that the inventors used chromium coatings for outplant test OX-004 in February 1998, but the coating did not perform adequately. (D.I. 666 at 12; D.I. 695 at 10-11) Based on the test results, the parties dispute whether conception occurred at the time of the OX-004 test in February 1998, or not until Spring 1999, when the inventors realized the

---

[2] To warrant summary judgment, the moving party must establish "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a), when all facts are viewed "in the light most favorable to the non-moving party" and "all reasonable inferences [are drawn] in that party's favor," *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006). "The non-moving party must oppose the motion and, in doing so, may not rest upon the mere allegations or denials of [its] pleadings" but, instead, "must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice." *D.E. v. Central Dauphin School Dist.*, 765 F.3d 260, 268-69 (3d Cir. 2014) (internal citations omitted).

2

chromium needed to be under compression[3] to perform adequately. (D.I. 666 at 13; D.I. 695 at 12) A genuine dispute exists as to what problem the inventors were trying to solve at the time of the OX-004 test and whether the inventors knew and appreciated that chromium coatings, generally, solved that problem.

A reasonable juror could find conception of the '513 Patent's claims (as opposed to conception merely of the OX-004 test embodiment) did not occur in February 1998 based on, for example: (1) the lack of success of the OX-004 test; (2) evidence that the inventors did not know for months why the tests were unsuccessful; and (3) that it took another 14 months to find a solution to the issues raised by the test. (D.I. 695 at 9-11) The question of what the inventors knew and appreciated as of February 1998 presents a genuine issue of material fact for the trier of fact. *See generally Monsanto Co. v. Mycogen Plant Sci., Inc.*, 261 F.3d 1356, 1362-63 (Fed. Cir. 2001). Therefore, summary judgment for Plaintiff on the date of conception is not warranted.

---

[3] Plaintiff argues that compressing chromium is irrelevant to conception, because the asserted independent claims do not require compression. (D.I. 666 at 13-14) However, as Defendants correctly state: "[t]he relevance of the compressive stress . . . is not whether it is present in the claims, but the fact that it was *necessary* for the inventors to have the requisite understanding in their minds that the invention would work as it would be used in practice." (D.I. 695 at 14) Plaintiff has provided little more than inferences, based on the OX-004 test, and attorney argument as to what the inventors knew and appreciated in February 1998, all of which a reasonable juror may – but need not – credit. The OX-004 test, standing alone, does not show conception of a chromium coating to improve blade performance, as intended by the '513 Patent; a reasonable factfinder could equally see this as pre-conception (of the '513 Patent claims) testing of one of a number of materials, as part of an effort to discover performance improvements.

The cases relied on by Plaintiff stand only for the proposition that conception occurs when an embodiment "encompass[es] all limitations of the claimed invention." (*See* D.I. 666 at 13) (quoting *Cumberland Pharm. Inc. v. Mylan Institutional LLC*, 846 F.3d 1213, 1218 (Fed. Cir. 2017)) These cases say nothing about whether conception may be found to have occurred during testing before the patentee "had an idea that was definite and permanent enough that one skilled in the art could understand the invention."

2.  Both parties move for summary judgment with respect to invalidity (or no invalidity) based on two 1995 outplant tests conducted by Gillette, numbered OW-006 and OW-007. Both parties' motions turn on whether a reasonable finder of fact would have to (or would have to not) find that OW-006 and/or OW-007 were public uses (and are therefore invalidating) or qualify as experimental use (and are therefore not invalidating).[4] In the Court's view, while there is a genuine dispute of material fact as to public use/public availability, there is not with respect to the experimental use exception to public use. As a result, while experimental use of the '513 Patent will not be tried, both summary judgment motions must be denied, as the public use issue will have to be resolved by the jury.

Public Use. Under the applicable pre-AIA version of 35 U.S.C. § 102, a person is not entitled to a patent if it is known or used by others in the United States before the critical date, 35 U.S.C. § 102(a),[5] or if the claimed invention was (among other things) "in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention," 35 U.S.C. § 102(b). Under Section 102(a), "[t]he statutory language, 'known or used by others in this country' . . . means knowledge or use which is accessible to the public." *Edmark v. Telebrands Wholesale Corp.*, 41 F.3d 1521 (Fed. Cir. 1994) (internal citation omitted). Under 35 U.S.C. § 102(b), public use includes "any use of [the claimed] invention by a person other than

---

[4] It is undisputed that the devices tested as part of OW-006 and OW-007 meet all the limitations of the asserted claims. (*See* D.I. 661 at 2; D.I. 693 at 2-3; Tr. at 94) Therefore, the tested devices invalidate the asserted claims due to anticipation if (but only if) the tests are found to involve a public use (and are not found to constitute an experimental use).

[5] The Court is persuaded that Defendants have preserved both their § 102(a) and § 102(b) arguments. (*See* D.I. 695 Ex. 4 at A37-38; Pls. Resp. to Interrog. No. 16 at 4 (Aug. 22, 2018) (showing Defendants notified Plaintiff of contention that OW-006 and OW-007 "qualif[y] as prior art under 35 U.S.C. §§ 102 (a) and/or (b)" and that Plaintiffs understood contention and responded these "do not qualify as public-use type prior art under 35 U.S.C. § 102(a) and/or (b)"))

4

the inventor who is under no limitation, restriction or obligation of secrecy to the inventor." *Petrolite Corp. v. Baker Hughes Inc.*, 96 F.3d 1423, 1425 (Fed. Cir. 1996) (internal citation omitted).

The record demonstrates a genuine dispute of material fact as to whether the two outplant tests rendered the invention publicly available and/or constituted public use. A reasonable juror could find public use and/or public availability (and thereby invalidity) based on, for example: (1) Plaintiff's failure to produce any confidentiality agreements for the OW-006 and OW-007 tests; (2) that some test products were not returned; (3) that some family members of test participants (and not just test participants themselves) used the test products; and (4) that the tests were performed years before the '513 Patent's priority date. (D.I. 661 at 4-8) Alternatively, a reasonable juror could find secret, private use (and thereby no invalidity) based on, for example: (1) Plaintiff's use of friends and family (i.e., individuals who might reasonably be trusted to preserve confidentiality) for testing;[6] (2) Plaintiff's production of outplant confidentiality agreements from years around the OW-006 and OW-007 tests, and explanation (potential destruction due to flooding) for failing to find OW-006 and OW-007 agreements; (3) testimony from Plaintiff's employee, Ms. Zupkosky, addressing Plaintiff's confidentiality practices; (4) Plaintiff's requirement that test participants return test products; and (5) the "Confidential" labels on test documents. (D.I. 666 at 6-7) A question of fact, therefore, remains as to whether participants of the OW-006 and OW-007 outplant tests were under a sufficient

---

[6] Plaintiff correctly argues that, even if family members of test participants (i.e. third parties) used the devices, confidentiality may still be inferred when the inventive features – in this case, "super-thin" blade coatings – are undiscernible to the third party. (D.I. 693 at 8-9) (citing *Dey, L.P. v. Sunovion Pharm., Inc.*, 715 F.3d 1351, 1356-57 (Fed. Cir. 2013)) While discernibility of the inventive features is not dispositive of public use, it is evidence probative of the confidential or secret nature of the use, even in the absence of confidentiality agreements. *Id.*

5

"limitation, restriction or obligation of secrecy to the inventor"[7] to render the invention unavailable to the public under 102(a), and/or constitute secret, private use under 102(b).

Experimental Use. "The experimental use exception is not a doctrine separate or apart from the public use bar." *Clock Spring, L.P. v. Wrapmaster, Inc.*, 560 F.3d 1317, 1326 (Fed. Cir. 2009). Instead, it is an exception to the public use bar; that is, when demonstrated, proof that an otherwise invalidating public use constituted an experimental use can preserve the validity of a patent. *Id*; *see also Lough v. Brunswick Corp.*, 86 F.3d 1113, 1120 (Fed. Cir. 1996) ("If a use is experimental, it is not, as a matter of law, a public use within the meaning of section 102."). Here, no reasonable factfinder, even taking the evidence in the light most favorable to Plaintiff, could find experimental use of the '513 Patent.

Plaintiff asks the Court to find that the OW-006 and OW-007 tests involved experimental use of the invention of the '513 Patent but, at the same time, to also accept that conception of the '513 Patent did not occur until years later. (D.I. 693 at 11-12) While Plaintiff is correct that aspects of the inventive process may occur before conception, *see Burroughs Wellcome*, 40 F.3d at 1228 (Fed. Cir. 1994), experimental use may not, in the Court's view, predate conception, as the experimental use must be of the patented invention (which, in turn, cannot yet exist if it has not been conceived of). *See Clock Spring*, 560 F.3d at 1326 ("A use may be experimental only if it designed to (1) test claimed features of ***the invention*** or (2) to determine whether ***an invention***

---

[7] Defendants insist that the OW-006 and OW-007 tests were essentially "third party" tests, that not all of the inventors of the '513 Patent were involved, and those who were involved lacked sufficient control over the tests. (D.I. 661 at 7-8; Tr. at 103-05) The Court does not agree with Defendants that a reasonable factfinder would have to, as a matter of law, make such a finding. To the contrary, there is evidence in the record that at least one of the inventors of the '513 Patent (Mr. Clipstone) was involved (at least as a supervisor) in the tests, and may even have controlled them, notwithstanding Mr. Clipstone's (perhaps, to a reasonable juror, understandable) failure to recall any involvement in those tests over 20 years later. (*See* D.I. 661 at 8)

6

will work with its intended purpose. . . .") (emphasis added); *Atlanta Attachment Co. v. Leggett & Platt, Inc.*, 516 F.3d 1361, 1369 (Fed. Cir. 2008) (Prost, C.J., concurring) (stating current experimental use doctrine is limited to time "between when an invention is ready for patenting and when it is reduced to practice.").[8]

3. Neither side has persuaded the Court that the opposing parties' experts should be precluded from testifying, except to the extent that either expert would testify as to experimental use, which will not be a subject of the forthcoming trial.

There are three distinct requirements for admissible expert testimony: (1) the expert must be qualified; (2) the opinion must be reliable; and (3) the opinion must relate to the facts. *See generally Elcock v. Kmart Corp.*, 233 F.3d 734, 741-46 (3d Cir. 2000). Hence, expert testimony is admissible if "the testimony is based on sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d). Rule 702 embodies a "liberal policy of admissibility." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (internal citations omitted). Motions to exclude evidence are committed to the Court's discretion. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 749 (3d Cir. 1994).

---

[8] It may be that the OW-006 and/or OW-007 tests constituted "experimental use" of some invention **other than** the '513 Patent, but that is unclear from the record and the parties' arguments – and, more importantly, is not the relevant inquiry. The Court's holding addresses only whether the OW-006 and OW-007 tests constitute experimental use **of the invention of the '513 Patent**, which no reasonable juror could find they were.

For similar reasons, the Court need not decide whether there is sufficient evidence to support a finding that the devices tested in the OW-006 and OW-007 tests were (or were not) "ready for patenting," because the "ready for patenting" standard appears to concern only experimental use of the invention at issue (i.e., here, the '513 Patent).

7

Defendants have failed to show that Dr. Ennis's testimony should be excluded. Dr. Ennis is qualified based on his extensive experience in product testing (D.I. 689 at 5-6; D.I. 659-2 at 42-43), and bases his opinions on reliable (albeit contested) facts, such as: (1) a review of the outplant requests; (2) Ms. Zupkosky's testimony; and (3) discussions with the named inventors. (D.I. 689 at 7-8) The Court is not persuaded by Defendants' arguments to the contrary, which relate more to the sufficiency of the evidence underlying Dr. Ennis's opinion rather than his methodology. (*See* D.I. 659 at 5-10)

Likewise, Plaintiff has failed to show that Mr. Bray's testimony should be excluded. Mr. Bray is qualified based on his extensive experience in razor blade design and testing. (D.I. 695 at 27-29) While Mr. Bray may not have personal experience designing outplant testing procedures (D.I. 666 at 45), he has experience in inplant testing and hired consultants for outplant testing. (D.I. 695 at 27-29) He has sufficient knowledge of what is to be gained from each type of test as it relates to razor blade design. Finally, as experimental use is not going to be a subject of trial, neither is whether an embodiment of the '513 Patent was "ready for patenting" at the time of the OW-006 and OW-007 tests. Hence, whether or not Mr. Bray provided an opinion sufficient to support a finding of "ready for patenting" is immaterial.

March 21, 2019
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE